FORM 1. Notice of Appeal from a United States Federal Court (District Court, Court of Appeals for   **Form 1**
Veterans Claims, Court of Federal Claims (non-vaccine appeals), and Court of International Trade)   **March 2023**

# UNITED STATES

# COURT OF APPEALS FOR VETERANS CLAIMS

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that the appellant(s) listed below hereby appeal(s) the below-noted case to the United States Court of Appeals for the Federal Circuit.

Case number being appealed: <u>24-4591</u>

Case title being appealed: <u>Karissa Wiggins</u> v. <u>Douglas A. Collins</u>

Date of final judgment or order being appealed: <u>08/25/2025</u>

**List all Appellants** (List each party filing this appeal.  Do not use "et al." or other abbreviations.  Attach continuation pages if necessary.)

Karissa Wiggins

Date: <u>10/01/2025</u>

Signature: _____

Name: <u>Rose Carmen Goldberg</u>

Address: <u>Yale Law School</u>

<u>Jerome N. Frank Legal Services Org.</u>

<u>P.O. Box 209090, New Haven, CT 06520</u>

Phone Number: <u>203-436-4508</u>

Email Address: <u>rose.goldberg@ylsclinics.org</u>

## General Docket
### United States Court of Appeals for Veterans Claims

**Case Number:** 24-4591
Karissa Wiggins v. Douglas A. Collins
**Appeal From:** Department of Veteran Affairs
**Fee Status:** fee paid

**Docketed:** 07/02/2024

**Case Type Information:**
   **1)** Petition
   **2)** -
   **3)** -

Karissa Wiggins
      Petitioner



True Copy
By: _Jeffrey Messer_
Deputy Clerk

Michael J. Wishnie, Esq., Attorney
Direct: 203-436-4780
[COR LD NTC]
Firm: 203-436-4780
Yale Law School
127 Wall Street
New Haven, CT 06511

Ashley H. Anderson, Esq., Attorney
Direct: 203-432-4800
[COR NTC]
Firm: 203-432-4800
Jerome N. Frank Legal Services Organization
127 Wall Street
New Haven, CT 06511

Rose C. Goldberg, Esq., Attorney
Direct: 203-432-4800
[COR NTC]
Firm: 203-432-4800
Yale Law School
127 Wall Street
New Haven, CT 06511

Romina Lilollari, Law Student
Direct: 203-436-4780
[NTC]
Firm: 203-436-4780
Yale Law School
P.O. Box 209090
New Haven, CT 06520

Claire Sullivan, Law Student
Direct: 203-436-4780
[NTC]
Firm: 203-436-4780

Yale Law School
P.O. Box 209090
New Haven, CT 06520

Gabriela Torres-Lorenzotti, Law Student
Direct: 203-436-4780
[NTC]
Firm: 203-436-4780
Yale Law School
P.O. Box 209090
New Haven, CT 06520

v.

| Douglas A. Collins, Secretary of Veterans Affairs Respondent | Jonathan G. Scruggs, Esq., Attorney<br>Direct: 202-632-4390<br>[COR LD NTC]<br>Firm: 202-632-4390<br>U.S. Department of Veterans Affairs (027G)<br>810 Vermont Avenue, NW<br>Washington, DC 20420<br><br>OGC-ICM1, Non-Attorney<br>Direct: 202-632-7104<br>[COR NTC]<br>Department of Veterans Affairs, OGC (027)<br>810 Vermont Avenue, N.W.<br>Washington, DC 20420<br><br>Alexander You, Esq., Attorney<br>Direct: 202-632-4337<br>[COR NTC]<br>Firm: 202-632-4337<br>Office of General Counsel (027C) Dept. of<br>Veterans Affairs<br>810 Vermont Ave NW<br>Washington, DC 20420 |

| | | |
|---|---|---|
| 07/02/2024 | 🔒 | Petition for extraordinary relief (AAM) |
| 07/02/2024 | 🔒 | Notice of Docketing for petition for extraordinary relief; Filing Fee or Dec of Financial Hardship w/in 14 days; Notice of Appearance w/ attachments w/in 14 days; Fee Agreement w/in 14 days (AAM) |
| 07/02/2024 | | (p) USCAVC filing fee $50 from Petitioner (AAM) |
| 07/03/2024 | | Assigned case to Judge Toth (PTD) |
| 07/03/2024 | 📄 | Appearance of Jonathan G Scruggs for Denis McDonough, in case 24-4591 as lead counsel (JGS) |

| | | |
|---|---|---|
| 07/10/2024 | | Appearance of Attorney(s) Michael J Wishnie for party(s) Petitioner Karissa Wiggins, in case 24-4591 as lead counsel (SNT) |
| 07/10/2024 | | Fee Agreement (SNT) |
| 07/12/2024 | | ORDERED that the Secretary, within 30 days from the date of this order, file an answer to Ms. Wiggins's petition, responding to the issues raised therein, and providing any documentation pertinent to the Court's resolution of the matter. It is further ORDERED that this order shall be automatically revoked if Ms. Wiggins moves to dismiss her petition before the Secretary files a response. (TOTH) (SNT) |
| 07/17/2024 | | Appearances of law students Claire Sullivan, Gabriela Torres-Lorenzotti and Romina Lilollari for the Petitioner (SL) |
| 08/12/2024 | | Response by Respondent *to the Court's July 12, 2024, Order and to Petitioner's July 2, 2024, Petition for Extraordinary Relief in the Nature of A Writ of Mandamus* (JGS) |
| 08/22/2024 | | ORDERED that the Secretary direct the Board to "promptly determine whether" Ms. Wiggins's "[N]otice of [D]isagreement filed with the Board is a covered case" per 38 U.S.C. § 7112(b) and direct the Board to issue such a determination within 30 days from the date of this order. It is further ORDERED that, within 14 days of the Board's determination, the Secretary will inform this Court of the result of such determination and whether the veteran's appeal before the Board will be expedited. (TOTH) (SM) |
| 09/06/2024 | | Appearance of Alexander You for Denis McDonough, in case 24-4591 as co-counsel (AY) |
| 09/12/2024 | | Motion of Respondent for leave to file *out fo time motion for extension* (AY) |
| 09/12/2024 | | Motion of Respondent to ext time to file response to Court Order until 09/23/2024. (AY) |
| 09/13/2024 | | Judge's stamp order granting Respondent's motion for leave to file a motion for extension to respond to the court's 8/22/2024 order. (TOTH) (TM) |
| 09/13/2024 | | Motion of Respondent to ext time to file response to Court Order until 09/23/2024. (TM) |
| 09/13/2024 | | Judge's stamp order granting Respondent's motion to extend time to file response to Court Order until 9/23/2024. (TOTH) (TM) |
| 09/23/2024 | | Response by Respondent *to the Court's 8/22/24 Order* (AY) |
| 09/26/2024 | | Motion of Petitioner for leave to file a reply to defendant's September 23, 2024 response to the Court's August 22, 2024 Order (SM) |
| 10/01/2024 | | Judge's stamp order granting motion for leave to file a reply to Defendant's September 23, 2024 response to the Court's August 22, 2024 Order (TOTH) (SNT) |

| | | |
|---|---|---|
| 10/04/2024 | | Reply by Petitioner to Respondent's September 23, 2024 response to the August 22, 2024 Court Order (SNT) |
| 10/16/2024 | | It is ORDERED that this case is submitted to the panel of Judge Meredith, Judge Toth, and Judge Jaquith for decision. (RG) |
| 10/21/2024 | | Motion of Petitioner for oral argument (MJW) |
| 10/23/2024 | | Motion of Petitioner for oral argument *(corrected)* (MJW) |
| 10/24/2024 | | Judge's stamp for the Panel granting motion for oral argument (TOTH) (SNT) |
| 11/07/2024 | | It is ORDERED, pursuant to Rule 34 of the Court's Rules of Practice and Procedure, that oral argument is set for Tuesday, February 4, 2025, at 10:00 a.m. before the panel of Judges Meredith, Toth, and Jaquith in the Frank Q. Nebeker Courtroom at Suite 900, 625 Indiana Avenue, NW, Washington, DC 20004, subject to change at the Court's discretion. Counsel for the parties are allotted 30 minutes each for presentation of argument. (DB) |
| 11/13/2024 | | PER CURIAM ORDERED that the parties be prepared to discuss the issue described above at the oral argument. (MEREDITH, TOTH and JAQUITH) (SNT) |
| 11/22/2024 | | Motion of Petitioner *to Divide Argument (unopposed)* (MJW) |
| 11/25/2024 | | Judge's stamp order for the Panel granting motion to divide oral argument (TOTH) (SNT) |
| 01/27/2025 | | Supplemental authorities under Rule 30(b). (AY) |
| 02/04/2025 | | Case argued before Judges Meredith, Toth, and Jaquith. (DB) |
| 08/01/2025 | | PER CURIAM: ORDERED that the July 2, 2024, petition for extraordinary relief is DENIED. (MEREDITH, TOTH and JAQUITH) JAQUITH, Judge, dissenting.--[Edited 08/01/2025 by JM] (JM) |
| 08/25/2025 | | Judgment (SNT) |
| 09/25/2025 | | Appearance of Ashley H Anderson for Karissa Wiggins, in case 24-4591 as co-counsel (AHA) |
| 09/25/2025 | | Appearance of Rose C Goldberg for Karissa Wiggins, in case 24-4591 as co-counsel (RCG) |
| 10/01/2025 | | Notice or other pleading by Petitioner *Petitioner's Notice of Appeal to the U.S. Court of Appeals for the Federal Circuit* (AHA) |
| 10/01/2025 | | Letter regarding the U.S. Court of Appeals for the Federal Circuit filing fee $600 (SNT) |
| 10/02/2025 | | (p) RECEIVED: U.S. Court of Appeals for the Federal Circuit filing fee ($600) (SRS) |

| 10/10/2025 |  | Petitioner's Notice of Appeal transmitted to U.S. Court of Appeals for the Federal Circuit (JM) |

UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-4591

KARISSA WIGGINS, PETITIONER,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before MEREDITH, TOTH, and JAQUITH, *Judges*.

**O R D E R**

TOTH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a dissenting opinion.

In November 2021, Karissa Wiggins filed a Notice of Disagreement (NOD) challenging the denial of service connection for post-traumatic stress disorder (PTSD) and the rating assigned for major depressive disorder (MDD). Four months later, she sought to advance her appeal on the docket, but the Board denied the motion in May 2022 on the grounds that her alleged financial hardship did not demonstrate sufficient cause. The Board informed Ms. Wiggins that it would be willing to consider a subsequent motion if she submitted additional evidence.

In July 2024, Ms. Wiggins petitioned this Court for extraordinary relief in the form of a writ of mandamus ordering the Board to adjudicate her administrative appeal within 30 days. We sent the matter to a panel to assess whether and how our consideration of the petition is impacted by 38 U.S.C. § 7112(b), which mandates that VA employ special procedures when adjudicating claims involving military sexual trauma (MST). We conclude that section 7112(b) does not compel expedited adjudication of such cases, even though MST can potentially serve as a relevant consideration for the Board in assessing whether to advance an appeal on the docket under 38 U.S.C. § 7107(b) or for this Court in evaluating Agency delay under the "*TRAC*" factors. *Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984). And here, even considering that the claim at issue involves MST, Ms. Wiggins has not shown a clear and indisputable right to mandamus or that she lacks an adequate alternative means of relief; thus, we deny the petition.

**I. BACKGROUND**

Ordinarily, "each case before the Board will be decided in regular order according to its respective place on the docket to which it is assigned by the Board." 38 U.S.C. § 7107(a)(4). However, subsection 7107(b) allows for advancement on the docket for "cause shown." The statute then sets out three subsections containing examples where advancement may be appropriate, specifically—cases involving interpretation of generally applicable laws affecting other claims, section 7107(b)(3)(A); serious illness or severe financial hardship, section 7107(b)(3)(B); or "other sufficient cause shown," section 7107(b)(3)(C).

Also relevant here is 38 U.S.C. § 7112, titled "Expedited treatment of certain claims." Subsection (b) of this statute pertains to claims involving MST and provides that "[t]he Board shall promptly determine whether [an NOD] filed with the Board is a covered case." And a "covered case" is one that concerns a claim based on MST and for which a Board hearing on the claim was requested in the NOD. 38 U.S.C. § 7112(c).

Turning to the facts, Ms. Wiggins served in the Air Force from 2013 until 2016. She filed an NOD on November 29, 2021, challenging the denial of her PTSD claim as well as the assignment of a 50% rating for MDD. She selected the Board hearing docket as part of the NOD and was placed in the queue of claimants awaiting a hearing before a Board member.

Her petition alleges that she has endured financial hardship since her separation from the Air Force, though the bulk of the evidence pertains to the period before 2022. Indeed, in response to questions from the Court, petitioner's counsel noted that Ms. Wiggins was in her final year of school and would thereafter transition from a full-time student to a full-time employee. Counsel further suggested that Ms. Wiggins will face some level of financial hardship as she works to pay off her student loans and accrued bills from her prior period of financial difficulties. *See* Oral Argument at 15:25-15:52, https://www.youtube.com/watch?v= yrbko4AgBdY. But as to that earlier period, the petition notes that she sought assistance from a local shelter that provides housing to veterans; it helped her save enough money to rent an apartment, obtain part-time employment, and enroll in part-time classes at a local university. Petition (Pet.) at 4. In the fall of 2021, she secured a scholarship that provided financial support for her education; however, she soon discovered that her mother repeatedly stole the tuition assistance checks intended for Ms. Wiggins and which the latter needed to support herself. *Id.* at 4-5.

As a result, in March 2022, she filed a motion to advance her appeal on the docket under 38 U.S.C. § 7107 on grounds of financial insecurity. She noted that she experienced "severe financial hardship" and that "further delay in resolving her appeal will exacerbate her financial distress." Secretary's Aug. 12, 2024, Response (Resp.), Attachment G; *see* Pet. at 5, 7. She also asserted that her mental health disorders had been "severely aggravated by her stressful financial situation, causing suicidal ideations." Pet. at 11. The Board denied the motion in May 2022 for lack of sufficient cause.[1] Specifically, it found that the evidence failed to show serious illness or "severe financial hardship such as pending bankruptcy, home foreclosure, or homelessness." Pet., Ex. G. Notwithstanding the denial, the Board informed Ms. Wiggins that it would be willing to consider another motion if she submitted additional evidence. *Id.*

In April 2024, Ms. Wiggins withdrew her request for a hearing and sought to transfer to the direct review docket; VA informed her that her appeal would be adjudicated "according to its place on the docket," alongside evidence that had been submitted within 90 days from the date of her request to transfer dockets. Secretary's Aug. 12, 2024, Resp., Attachment J. However, the Secretary clarified at oral argument that Ms. Wiggins's appeal remained on the hearing docket because her request to change dockets was not timely, though her appeal is awaiting distribution to a veterans law judge (VLJ). Oral Argument at 47:11-47:51.

---

[1] Thomas M. Rodrigues, the Deputy Vice Chairman of the Board, decided Ms. Wiggins's motion to advance on the docket. Pet., Exhibit (Ex.) G.

In July 2024, Ms. Wiggins petitioned this Court for a writ of mandamus ordering the Board to adjudicate her administrative appeal within 30 days. The petition noted that during service Ms. Wiggins had been the victim of MST, and she asserted a clear and undisputed right to mandamus because the delay in her case is unreasonable in light of the expeditious treatment that Congress intended claims involving MST to receive under 38 U.S.C. § 7112. Pet. at 9. The Court requested a response from the Secretary and, later, ordered the Secretary to direct the Board to determine whether Ms. Wiggins's NOD is a "covered case" under section 7112(b) and whether her appeal will be expedited. In his response, the Secretary notified the Court that the Board indeed found in August 2024 that Ms. Wiggins's NOD is a covered case but that it would nevertheless adjudicate her appeal in the order it was placed on the Board's docket. Secretary's Sept. 23, 2024, Resp. In reply, Ms. Wiggins reiterated that her appeal should be expedited under section 7112. In February 2025, the Court heard argument addressing the impact of section 7112 on our analysis of Agency delay.

Ms. Wiggins argues that the text and structure of section 7112 are ambiguous, and the pro-veteran canon and clear legislative purpose of the Training on Military Sexual Trauma, Pub. L. No. 117–300, 136 Stat. 4379, 4380 (2022), collectively impel the Court to resolve any ambiguity in the veteran's favor. Expediting MST claims, she reasons, "accomplishes the legislative purpose of improving the appeals process for MST survivors, making it easier for MST survivors to pursue appeals, and supporting MST survivors when they seek benefits for injuries during their service." Pet. Oct. 4, 2024, Reply at 10. However, her argument as to how this interpretation affects the Court's analysis of her petition has varied. In her petition, she performed a *TRAC* factor analysis and, relevant here, asserted that Congress, by mandating expedited treatment of MST claims in section 7112, essentially provided a timetable for adjudicating MST claims that VA has failed to follow in her case. In other words, *TRAC* factor two weighs in her favor. But in her October 4, 2024, reply, she seemingly changed course and argued that the statute alone requires expedited treatment and that, alternatively, the Board has been unreasonably delayed in adjudicating her appeal. And, at oral argument, petitioner's counsel argued both positions at times, simultaneously contending that the Court should decide the petition on grounds of unreasonable delay and that the statutory interpretation analysis exists separate and apart from the *TRAC* factors. *See* Oral Argument at 3:02-3:54; 10:17-12:00.

The Secretary leans on 38 U.S.C. § 7107(a)(4)'s default rule that the Board decides appeals in the order in which they are placed on the docket. He contends that Ms. Wiggins has not met any exception to this rule because she has not shown sufficient cause consistent with section 7107(b) and, absent another statutory exception to section 7107's docket order requirement, the Secretary posits that he has no grounds to advance Ms. Wiggins's case. For this reason, VA asserts that it has complied with the requirements set out in section 7107: it docketed the appeal the day after it received the NOD and adjudicated the motion to advance on the docket within two months. As to the specific length of delay, VA notes that, although lamentable, the three-plus-year delay is consistent with the standard wait-time for claimants such as Ms. Wiggins who have selected the hearing docket and that such delays are well publicized to allow claimants to make an informed decision about which docket to choose. Secretary's Aug. 12, 2024, Resp. at 5-6 (citing *Decision wait times – Board of Veterans' Appeals*, https://www.bva.va.gov.decision-wait-times.asp). Accordingly, the Secretary says, the *TRAC* factors weigh against Ms. Wiggins's petition because any delay in the adjudication of her case has not been unreasonable.

3

## II. ANALYSIS

The Court's jurisdiction is normally limited to reviewing final decisions of the Board. 38 U.S.C. § 7252(a). But the All Writs Act (AWA), 28 U.S.C. § 1651(a), empowers the Court to issue writs in aid of its statutory jurisdiction, that is, to "'remove obstacles to appeal'" that would otherwise frustrate our prospective jurisdiction. *Love v. McDonough*, 35 Vet.App. 336, 342 (2022) (per curiam order) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)), *aff'd*, 100 F.4th 1388 (Fed. Cir. 2024). And "[b]ecause the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction." *TRAC*, 750 F.2d at 76. To that end, in *Martin v. O'Rourke*, 891 F.3d 1338, 1343-44 (Fed. Cir. 2018), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) recognized the authority of this Court to employ the *TRAC* factors to remedy unreasonable delay under the AWA.

Three conditions must be satisfied for a Court to issue a writ: (1) the petitioner must show a lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used to replace the appeals process; (2) the petitioner must show a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuing the writ is warranted. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004).

Recently, in *Heller v. McDonough*, 38 Vet.App. 75, 83 (2024) (per curiam order), we were met with a similar issue that also implicated the relationship between advance on the docket (AOD) denials and unreasonable delay. There, we held that the denial of a motion to advance on the docket is not an appealable decision, as it was not related to the grant or denial of any benefit by the Board—at least at the time the petition was filed. The Court reasoned that the denial of a motion to advance "simply prevented [the petitioner] from moving up on the docket and having the Board decide his service-connection claim sooner." *Id.* at 84. However, the Court was nonetheless able to offer relief to Mr. Heller. Rather than entertaining the merits of the AOD denial under 38 U.S.C. § 7107(b) as an interlocutory appeal over which we lack jurisdiction, the Court considered, as part of the Court's long-recognized authority to assess whether an agency delay is reasonable under the *TRAC* factors, *see Martin*, 891 F.3d at 1343, that "Mr. Heller ha[d]n't been aided by advancement on the docket despite his ill health and financial difficulties, the Board ha[d]n't indicated why his situation [did] not warrant advancement, and the Secretary [did] not dispute that VA ha[d] not acted on his appeal for more than two years," *Heller*, 38 Vet.App. at 85. In other words, rather than reviewing whether the Board erred in denying the petitioner's motions to advance, the Court considered whether the pace of VA's actions on his case could satisfy a rule of reason under the totality of the circumstances pertinent to *TRAC*.

Additionally, the Court considered the petitioner's attempts to advance on the docket as well as VA's denials as relevant to whether administrative channels presented the petitioner with an adequate alternate means to obtaining the relief, or whether VA actions evinced a clear signal of its final position, thus foreclosing such relief. *Heller*, 38 Vet.App. at 87 ("With no likelihood of success at the Board, and an AOD appeal off the table, we find that Mr. Heller has shown he lacks adequate alternate means to have his case decided more quickly."). In short, assessing Mr. Heller's petition as one of unreasonable delay, including evidence of suicidal ideation and unemployment, rather than a strict statutory right to advancement under section 7107(b), allowed the Court to offer

4

relief to the petitioner while avoiding any jurisdictional problems attendant on an interlocutory review of the merits of a procedural ruling by the Board.[2]

We make a similar move here, as the same dynamics apply. The denial of a motion to advance on the docket—irrespective of whether advancement was sought under the authority of section 7107(b) or 7112(b)—does not, by itself, comprise an obstacle that effectively frustrates this Court's ability to exercise jurisdiction over a matter; it merely affects the timing under which such review occurs. *Heller*, 38 Vet.App. at 83. As in *Heller*, we lack authority under section 7252 or the AWA to review the merits of any denial under section 7107(b) or 7112 on its own terms; instead, our jurisdictional hook is to examine under the *TRAC* factors whether VA has unreasonably delayed the adjudication of the claim in light of the relevant facts and law. If, as Ms. Wiggins claims, the governing statutes mandate immediate advancement of her appeal, then this clearly informs whether any delay in adjudication can be deemed reasonable. But, to the extent that she requests relief on the grounds that the Board should have advanced her case on the docket under her interpretation of section 7112(b)—a merits determination—that relief is outside the bounds of our AWA jurisdiction because it would essentially amount to direct review in a petition context of an interlocutory determination that falls outside of our appellate jurisdiction.

## A. Applying the *TRAC* Factors

There are six *TRAC* factors that courts consider when assessing the reasonableness of a delay: (1) whether a "rule of reason" accounts for the length of time elapsed during agency consideration; (2) whether Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed; (3) the character of interests at stake; (4) the effect of expediting on competing agency resources; (5) the nature and extent of the interests prejudiced by the delays; and (6) the presence of bad faith or impropriety is not necessary to find unreasonable delay. *Martin*, 891 F.3d at 1344-45.

Ms. Wiggins's statutory construction argument falls within the second factor—whether there exists a Congressional timetable. If her interpretation is correct that section 7112(b) requires immediate and automatic advancement on the docket for any covered case (which the Board has found her case to be), then it is possible that even a small delay in adjudication may be deemed unreasonable depending on how the remaining *TRAC* factors play out. So, only after examination of section 7112 can we turn to the first factor—whether a "rule of reason" accounts for the length of time elapsed during VA's consideration of the appeal. For that reason, we take the second factor first.

*Congressional Timetable*: "The starting point in interpreting a statute is its language," *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993), and so in determining the meaning of a statutory provision, "'we look first to its language, giving the words used their ordinary meaning,'" *Artis v. Dist. of Columbia*, 583 U.S. 71, 83 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Of course, words "must be read in their context and with a view to their place in the

---

[2] This Court has never addressed whether an AOD denial is appealable to this Court as a procedural ruling relating to the denial of a claim properly before the Court on a Notice of Appeal. For obvious reasons, such a claim would raise mootness concerns pertaining to whether the Court can offer meaningful relief to speed up adjudication on a claim that's already been decided.

overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). Thus, plain meaning is examined by looking at the language, context, and design of the statute as a whole. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

Here, it bears reciting 38 U.S.C. § 7112 in full. Titled "Expedited treatment of certain claims," it reads:

> (a) Remanded claims.—The Secretary shall take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court of Appeals for Veterans Claims.
>
> (b) Claims involving military sexual trauma.—The Board shall promptly determine whether a notice of disagreement filed with the Board is a covered case.
>
> (c) Definitions. – In this section:
>
> > (1) The term "covered case" means a case—
> > (A) that concerns a claim for compensation based on military sexual trauma; and
> > (B) for which the appellant has requested a hearing in the notice of disagreement filed with the Board pursuant to section 7105 of this title.
> > (2) The term "military sexual trauma" has the meaning given that term in section 1166 of this title.

From the outset, Ms. Wiggins's argument encounters immediate headwinds insofar as it asks the Court to find a clear and undisputed right to a writ based on statutory language that she construes as ambiguous. It's true that section 7112's heading "Expedited treatment of certain claims" suggests that Congress intended that VA take some actions on a subset of claims more quickly than normal; likewise, the section heading can only be read as covering all the types of claims identified in section 7112—that is, both claims remanded from this Court described in subsection (a) as well as MST claims described in subsection (b).[3]

However, Ms. Wiggins's argument falters in one critical respect. It's a longstanding rule that section headings carry limited weight in statutory construction and "are of use only when they shed light on some ambiguous word or phrase." *Brotherhood of R.R. Trainmen v. B&O R.R. Co.*, 331 U.S. 519, 529 (1947). So, although "[t]he title and headings are permissible indicators of meaning," ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 221 (2012), "they cannot undo or limit that which the text makes plain." *Bhd. of R.R. Trainmen*, 331 U.S. at 529. In practical terms, this means that the title and heading of a statute are "'tools available for the resolution of a doubt about the meaning of a statute.'" *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). They cannot, however, "'override the plain words'" of a statute or supply meaning that

---

[3] There's no dispute here that Ms. Wiggins satisfies the express statutory conditions: on August 23, 2024, the Board determined that her case is a "covered case" for purposes of section 7112(b), insofar as she filed an NOD and selected the hearing docket, and her claims for compensation for PTSD and MDD both relate directly to her accounts of in-service sexual abuse that satisfies the statutory definition for MST laid out in 38 U.S.C. § 1166.

runs counter to its text and structure. *Fulton v. Philadelphia*, 593 U.S. 522, 536 (2021) (quoting SCALIA & GARNER at 222).

Here, the section heading comprises more or less the extent of the textual support that section 7112 provides to Ms. Wiggins's position. Notably, the text of the statute itself falls conspicuously short of signaling that MST claims should be provided expeditious adjudication: there is no indication that MST claims should be advanced on the docket or are otherwise excepted from section 7107's docket-order processing provisions. Unlike subsection (a) which requires the Board to provide "expeditious treatment" of cases remanded from this Court, subsection (b) requires only that the Board "promptly determine whether [an NOD] filed with the Board is a covered case."[4]

It is a longstanding principle of statutory construction that where "'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). The contrast between the express terms in subsections (a) and (b) is heightened by the fact that, years before Congress amended 7112 to include subsection (b), this Court held that subsection (a) of the statute required VA to expeditiously process cases remanded to the Board from this Court. *Harvey v. Shinseki*, 24 Vet.App. 284, 288-91 (2011) (per curiam order) (sanctioning VA for a 2-year delay in providing the petitioner with a final answer on a matter remanded by the Court). "We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent," *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010), and the use of disparate terminology in subsection (b) signals that Congress envisioned procedures for MST claims distinct from those employed for remanded claims.

Another important signal of Congressional intent comes in the form of section 7107(b), wherein Congress provided exceptions to the guidance—found in the same section—that cases be adjudicated based on the order in which they are assigned in the docket upon receipt of the NOD.[5] Those exceptions are enumerated as cases involving interpretation of generally applicable laws affecting other claims, serious illness or severe financial hardship, or "other sufficient cause shown." 38 U.S.C. § 7107(b). Once again, Congress is presumed to be aware of the existing statutory landscape and it would seem only natural, if Congress intended MST covered cases to receive treatment in the form of automatic advancement on the docket, to either amend 7107(b) to include MST claims or cross-reference section 7112 to signal the inclusion of such claims in the Board's analysis of whether to advance a claim on the docket.

And, although "other sufficient cause shown" admits of a broad range of considerations that may serve to qualify a claimant to advance on the docket, it's nonetheless significant that

---

[4] Although VA failed to make a prompt assessment as to whether Ms. Wiggins's appeal constituted a "covered case," this deficiency alone doesn't implicate the type of relief sought by Ms. Wiggins, namely faster adjudication of her appeal.

[5] We recognize that "section 7107 cannot be read as a mandated, exclusive set of rules by which the Board must consider and decide cases." *Ramsey v. Nicholson*, 20 Vet.App. 16, 32 (2006). Rather, it was intended "to set broad guidelines for the general order of processing of appeals at the Board to ensure fairness, efficiency, and timeliness in consideration and decision of appeals." *Id.* at 34.

section 7107(b) does not reference any other statutory provisions as providing additional exceptions to the docketing order requirement. Instead of setting out a detailed list of statutory exceptions, Congress opted to convey discretion to the Board to render case-by-case determinations regarding "other sufficient cause" in light of the factors extant in a given case. Put succinctly, there's no indication that a claim involving MST is one that is excepted from the Board's general guidance to decide appeals in regular docket order. *See* 38 U.S.C. § 7107(a)(4).

Acknowledging the lack of a clear textual mandate for expeditious adjudication of MST cases, Ms. Wiggins nonetheless maintains that section 7112 is ambiguous and that the pro-veteran canon is sufficient to resolve such ambiguity. The pro-veteran canon provides that any "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994). Here again the problem is not that section 7112 presents interpretive difficulties, but that subsection (b) contains no language relating to expeditious adjudication or docket advancement or otherwise suggests that Congress sought to have MST cases adjudicated in advance of other claims in the docket order queue. Indeed, the only action required by 7112(b) is for the Board to "determine" whether a case involves MST.[6]

Ultimately, it's impossible to read sections 7112 and 7107 as conveying a clear intent on the part of Congress to require expeditious adjudication of cases involving MST. Although section headings can "supply cues" about what Congress may have intended, *Yates v. United States*, 574 U.S. 528, 540 (2015), they cannot confer a meaning that stands at odds with, or is absent from, the statutory text. Standing alone, section 7112's heading doesn't provide a sufficient foothold to support the notion that Congress intended expeditious adjudication of MST cases, absent other factors. Ultimately, the Court discerns no specific language within section 7112 that sets out a particular timetable within which VA must adjudicate a case involving MST, as distinct from other claims.

All this said, we recognize that MST claims carry special significance, even if Congress did not intend for them to be adjudicated ahead of other claims. For example, 38 U.S.C. § 1166 requires the Secretary to establish specialized teams to process claims for any "covered mental health condition based on [MST]." This specialized treatment includes allowing veterans to elect to be referred to an MST coordinator of the Veterans Health Administration and ensuring that VA provides annual training to assist in the development and adjudication of MST claims. Although we discern no signal that Congress sought to automatically advance MST claims on the docket, there is no uncertainty that Congress intended MST claims to receive special attention from VA. To that end, VA's *Appeal and Reviews Manual*, M21-5, ch. 1. Sec. A.3.f., notes that MST claims

---

[6] The petitioner suggests that section 7112(b) is ambiguous because the statute does not appear to provide a consequence for failing to take this action and thus reading it as requiring only that action would render it meaningless. Pet. Oct. 4, 2024, Reply at 3. However, in enacting this provision, Congress also amended 38 U.S.C. § 7102(c) to require the Secretary to offer to Board members training on MST and proceedings that involve MST claims and to assign MST appeals to Board members who have undergone that training. Pub. L. No. 117-300, § 1(a). In other words, the statute may be read as a harmonious whole as directing the Board to identify which appeals will require a Board hearing as to an MST claim and then having those hearings handled by Board members who are trained in special MST procedures. *Laska v. McDonough*, 37 Vet.App. 460, 467 (2024) (explaining that the Court's reading of a statute brought "harmony to the statute as a whole").

should receive "high priority" within the agency.[7] For this reason, it would certainly be understandable if the Board considered the presence of a properly brought MST claim as a plus-factor when considering whether a claimant has demonstrated sufficient cause in a motion to advance on the docket.[8] So can this Court consider the presence of a properly brought MST claim when assessing, for example, how a delay affected a particular veteran.

*Rule of Reason*: Turning to the first *TRAC* factor, this inquiry addresses whether VA's adjudication of the case is governed by a "rule of reason" and requires the Court to evaluate the reasonableness of the delay in light of the specific factual circumstances in the record. *Monk v. Wilkie*, 32 Vet.App. 87, 102 (2019) (en banc order), *aff'd in part, dismissed in part sub nom. Monk v. Tran*, 843 F. App'x 275 (Fed. Cir. 2021). Here, section 7107(a)(4) provides that, subject to exceptions discussed above and set out in subsection (b), "each case before the Board will be decided in regular order according to its respective place on the docket to which it is assigned by the Board." VA stresses that the three-year delay experienced by Ms. Wiggins is consistent with the current wait for cases such as this where a hearing before a Board member was requested. Further, the Secretary cautioned at oral argument that average wait times represent only a median range, as many cases take longer to adjudicate for various reasons. Oral Argument at 49:23-50:15. At bottom, however, the delays in VA's system affect equally all claimants currently awaiting their hearings[9] and have been well publicized to allow claimants to select non-hearing dockets that allow for faster adjudication. Secretary's Aug. 12, 2024, Resp. at 6.

As noted, no statutory provision provides an express timetable for adjudication of appeals to the Board; Congress merely required that they be adjudicated according to the docket order assigned. And here, VA has taken action on the veteran's appeal—it considered Ms. Wiggins's motion to advance on the docket based on the materials submitted and indicated that it would be willing to consider subsequent motions in the event she presented updated evidence showing a deterioration in her health or financial situation. Although the Board has not yet acted on the merits of her appeal, part of the delay is due to her initial choice to be included in the docket known to have the longest wait—those seeking a Board hearing. That her delay exceeds the average wait for appellants on that docket is not an indication of whether the Board, in her particular case, has proceeded without a rule of reason. *See Martin*, 891 F.3d at 1346 n.10 ("With respect to Appellants' reliance on statistics regarding average delays, we agree . . . that reliance on such statistics is merely speculative.").

---

[7] The Court recognizes that this provision is specific to Decision Review Operations Centers at the Veterans Benefits Administration, which are not subject to the Board's requirement in section 7107(a)(4) to decide cases in docket order. It highlights, however, that VA, like Congress, provides special considerations for MST claims.

[8] To be clear, we need not and do not reach the question of whether the Board should have considered the nature of the petitioner's claim in denying advancement under section 7107(b) because the petitioner is not seeking to challenge the denial of advancement under that provision. And, if she was, under *Heller* we could not directly or indirectly review the correctness of VA's action on an interlocutory matter. Rather, because an MST may increase risks of mental and physical health conditions; readjustment problems, including difficulty finding employment; emotional reactions; and trust and interpersonal problems, *see* VA OIG REPORT No. 20-01979-199, VETERANS HEALTH ADMINISTRATION, CHALLENGES FOR MILITARY SEXUAL TRAUMA COORDINATORS AND CULTURE OF SAFETY CONSIDERATIONS, at ii (Aug. 5, 2021), the nature of the claim may inform a *TRAC* analysis.

[9] Beyond requesting immediate adjudication, Ms. Wiggins has not requested specific relief from the Court relating to her request to withdraw her right to a hearing.

9

*Character of Interests at Stake and Nature of Interests Prejudiced by Delays*: The third and fifth factors focus on the veteran's individual interest and are often analyzed together. *Heller*, 38 Vet.App. at 86. The third factor lays down a marker to establish that delays are "'less tolerable when human health and welfare are at stake,'" while "the fifth factor 'considers the nature and extent of the interests prejudiced by the delay.'" *Id.* (quoting *Martin*, 891 F.3d at 1346). We have long recognized as a default position that the third factor favors petitioners because, as the Federal Circuit noted in *Martin*, "[v]eterans' disability claims always involve human health and welfare." 891 F.3d at 1346. The third factor pulls in Ms. Wiggins's favor insofar as her claims for MDD and PTSD readily involve health and welfare.

As noted, the fifth factor overlaps with the third. *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). Specifically, it centers on the nature and extent of the interests prejudiced by the delay, which effectively "incorporates an analysis of the effect of a delay on a particular veteran." *Martin*, 891 F.3d at 1347. Ultimately, although every instance of delay in adjudication is regrettable and carries negative consequences to the claimant experiencing it and even though the claim at issue involves MST, which may lead to physical, mental, emotional, and readjustment issues, Ms. Wiggins has not shown through her petition that the delay impacts her in ways that weigh heavily in favor of finding unreasonable delay. For example, the evidence submitted both in her 2024 petition and in her 2022 motion to the Board to advance on the docket focused on instances of financial hardship that pertain to the period before 2022. And although Ms. Wiggins asserted in March 2022 that she continued to experience severe financial hardship, she also noted in her motion that she had obtained part-time employment alongside a scholarship.

As far as the Court can tell, Ms. Wiggins has not alleged that her financial situation or health has deteriorated in the aftermath of the denial of her motion to advance. She doesn't report that her financial situation is dire or that she faces a current crisis such as imminent homelessness or an inability to meet her basic financial needs. She doesn't assert that she faces a pending crisis relating to her physical or mental health. Indeed, beyond arguing that VA was obligated under section 7112 to expedite her claims, Ms. Wiggins has not put forth any particular facts to show how the delay in adjudicating her case has negatively impacted her. Responding to the Court at oral argument, Ms. Wiggins's counsel noted that she was in her final year of college and projects to have stable employment upon graduation. This answer harmonizes with the overall picture presented in the petition and limited evidentiary record, namely that Ms. Wiggins's financial situation and employment prospects have improved generally since 2022 and that she is not wholly dependent on any potential increase in disability benefits from her appeal to the Board. *See Martin*, 891 F.3d at 1347 (explaining that this "Court may find that [the fifth factor] more strongly favors a finding of unreasonable delay where it is evident that a particular veteran is wholly dependent on the requested disability benefits").

Likewise, to the extent that she contends that her financial insecurity has aggravated her PTSD and that she had suicidal ideation, the evidence pertains to the pre-2022 period and there is no indication that her current mental health status should weigh heavily in favor of finding unreasonable delay. *Cf. Heller*, 38 Vet.App. at 86 (finding that "the effect of the delay on Mr. Heller, including evidence of severe suicidal ideation, with a prior attempt, unemployment, and his more desperate messages as his appeal languishes, . . . weigh[s] heavily in favor of finding

10

unreasonable delay"); *id.* at 87 (qualifying that allegations of financial difficulties and suicidal ideation will not "always reflect an extraordinary situation").

*The Effect of Expediting on Competing Agency Resources*: The fourth factor deals with "the impact granting mandamus in a particular appeal may have on other agency activities." *Martin*, 891 F.3d at 1347. The Board's duty to generally decide appeals on a first come, first served basis—which, we reiterate, is not affected by section 7112(b)—means that granting mandamus relief to Ms. Wiggins would "result in no more than line-jumping without resolving the underlying problem of overall delay." *Ebanks v. Shulkin*, 877 F.3d 1037, 1040 (Fed. Cir. 2017). Indeed, "[w]hile forcing the VA to focus such limited resources on addressing delays in certain appeals will inure to the benefit of some veterans, such efforts may work a detriment to other veterans who are also relying on the VA for various types of assistance." *Martin*, 891 F.3d at 1347. Thus, this factor weighs against granting the petition.

*Bad Faith or Impropriety*: Finally, though bad faith or impropriety are not necessary for the issuance of a writ, Ms. Wiggins has not claimed that VA's denial of her motion to advance on the docket was done in bad faith. And the record reflects that the Board considered the account of her financial situation as it stood at the time, finding that it fell short of constituting sufficient cause for advancement on the docket. Further, although VA acknowledges that the Board did not initially comply with section 7112(b)'s requirement to "promptly determine" whether her appeal involves a "covered case," there is no indication that this failure was an intentional refusal to uphold its duties.

On balance, the facts described in the petition are not sufficient to establish that VA has unreasonably delayed the adjudication of Ms. Wiggins's appeal. As noted earlier, section 7107's warrant that VA generally adjudicate appeals in their docket order supplies a rule of reason informing VA's actions. While acknowledging that a three-plus year wait for a hearing is undesirable, such delays are nonetheless systemic in nature, are widely publicized, and are borne equally by all claimants awaiting hearings. Endemic to VA's system of adjudication, these systemic delays have rightly been the focus of much deliberation from Congress, the Agency, and veterans advocacy groups alike—unfortunately to little avail so far.

## B. Adequate Alternative Means

We also note that, even if Ms. Wiggins could demonstrate an indisputable right to the writ, she fails to show that there exists no other adequate means of obtaining the relief sought. Notably, the Board's stated rationale for denying Ms. Wiggins's motion to advance was that evidence of "[g]eneral financial difficulties alone" was not sufficient and that she failed to show severe financial hardship such as a pending bankruptcy, home foreclosure, or potential homelessness and so fell short of demonstrating sufficient cause to advance on the docket. Pet., Ex. G. Significantly, in his denial of the motion, the Board member expressly noted: "If you submit additional evidence supporting advancement and set forth succinctly the grounds for consideration, I would be willing to consider another motion." *Id.*

11

Notably, Ms. Wiggins's March 2022 motion to advance did not base her request for advancement on the fact that her claims involved MST-induced trauma.[10] *See* Secretary's Aug. 12, 2024, Resp., Attachment G. Though her motion mentions the fact that she experienced MST in service, it nevertheless focuses solely on her alleged "severe financial hardship" and the exacerbation of her PTSD symptoms because of this hardship. *Id.* After the Board's May 2022 denial of that motion, she did not seek any further relief from VA, even after Congress enacted section 7112(b).

As such, the Court discerns no indication that Ms. Wiggins has sought from the Agency the same relief on the *same grounds* that she seeks through mandamus from this Court. She doesn't assert in her mandamus petition that she raised the MST issue as part of her motion to advance on the docket or that the Board ignored such evidence and improperly cabined its analysis to whether she made a showing of serious illness or financial hardship. She has not argued that she would be in any way precluded from raising the MST issue at the Board or that it would be futile to bring such motion because the Board would not entertain the possibility of relief.

The most salient factor attesting to availability of alternate means comes in the form of the Board's statement that it would be "willing to consider" any additional evidence supporting advancement as part of a new motion to advance on the docket. Pet., Ex. G. As far as the Court can tell, Ms. Wiggins has not presented to VA any evidence attesting to her financial position after March 2022 when she filed her motion to advance on the docket. Nor does it appear that she has raised before the Board any of the arguments that she now raises to this Court. In short, it's impossible for Ms. Wiggins to show a lack of adequate alternative means to obtain this relief when the Board member expressly solicited additional evidence and noted that he would welcome further consideration on whether to advance her case on the docket.

In sum, because Ms. Wiggins has not shown a clear and indisputable right to a writ nor a lack of alternative means of relief, we exercise our discretion to deny her petition for a writ of mandamus. *See Cheney*, 542 U.S. at 380-81 (noting that a court must, in exercising its discretion, be satisfied that mandamus is appropriate under the circumstances).

### III. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the July 2, 2024, petition for extraordinary relief is DENIED.

DATED: August 1, 2025                                                                    PER CURIAM.

JAQUITH, *Judge*, dissenting: Congress's amendment of 38 U.S.C. § 7112 in December 2022 plainly requires expedited treatment of claims involving MST. *See* Pub. L. No. 117-300, 136 Stat. 4379 (Dec. 27, 2022). From the time the proposed amendment was introduced—as part of the "Dignity for MST Survivors Act"—the relevant heading was changed from "Expedited treatment of remanded claims" to "Expedited treatment of certain claims," with the "certain claims"

---

[10] The Court notes that subsection 7112(b) was not added to title 38 until December 2022.

specified as remanded claims and claims involving MST. It is undisputed that (1) Ms. Wiggins's disability compensation claims for MDD and PTSD involve MST, (2) she requested a hearing in her NOD filed with the Board, and (3) she has not been afforded expedited treatment. So I would grant her petition to the extent that it seeks expedited treatment and thus respectfully dissent from the majority's petition denial.

## A. Background

Ms. Wiggins served on active duty in the United States Air Force from September 2013 to July 2016. In September 2014, investigative activity by the Air Force Office of Special Investigations revealed that she had been sexually assaulted a few months earlier, when she was 18 years old, by an airman at a hotel near Sheppard Air Force Base in Texas. Pet. Appendix, Ex. C. She was reassigned to Hurlburt Field, Florida, where she had a relationship with another airman who, she reported, physically abused her. Pet. Appendix, Ex. D.

In March 2021, the veteran applied for disability compensation for PTSD caused by MST and intimate partner violence dating from about July 2014. Secretary's August 12, 2024, Pet. Resp., Attachment (Att.) A. In April 2021, VA responded by granting "[s]ervice connection for [MDD] with anxious distress, MST . . . with an evaluation of 30 percent," and denying service connection for PTSD. *Id*. at Att. B. The veteran requested higher level review of both her MDD rating and the service connection denial for PTSD. *Id.* at Att. C. In November 2021, VA increased her disability rating for MDD from MST (sexual trauma/assault) to 50% but continued to deny service connection for PTSD. *Id.* at Att. D. That same month, she appealed the MDD rating and PTSD denial to the Board via an NOD that opted for a hearing with a veterans law judge. *Id.* at Att. E.

## B. Motion for Advancement on the Docket

In March 2022, the veteran submitted a motion for advancement of her case on the docket. *Id.* at Att. G. Although the majority opinion focused almost exclusively on Ms. Wiggins's description of her financial hardship, *ante* at 1-2, 10-12, her motion made clear that it was based on both her "severe financial hardship" and her "worsening mental state, including recent suicidal ideation." *Id.* The Board did not address either of Ms. Wiggins's contentions or acknowledge the MST and resulting disability from which they arose, denying the veteran's motion in a form letter that merely paraphrased the statutory grounds for advancement. *Id.* at Att. H. Such conclusory boilerplate denials are inadequate. *See Heller v. McDonough*, 38 Vet.App. 75, 79–80 (2024) (noting that "the Board rejected each of Mr. Heller's motions for advancement with substantially the same conclusory response," which the veteran characterized as "boilerplate conclusions").[11]

The majority's contention that Ms. Wiggins's motion for advancement was not based on her claims involving MST-induced trauma misses the mark. *See ante* at 12. First, the Board has "a

---

[11] Ironically, except for the addressees and the dates of the motions, the denial letter the Board's Deputy Vice Chairman sent to Ms. Wiggins is exactly the same as the denial letter he sent to Mr. Heller on March 21, 2022, and the denial letter a veterans law judge sent to Mr. Heller on May 23, 2023. *Heller*, 38 Vet.App. at 79, Pet. Att. 26 (March 2022 Board letter) and 45 (May 2023 Board letter). The veterans law judge also sent two nearly identical letters to Mr. Heller on November 28, 2023, and January 4, 2024, changed only to delete "pending bankruptcy" as an example of severe financial hardship. *Id.*, Pet. Att. 49 (November 2023 Board letter) and 53 (January 2024 Board letter).

13

duty to construe veterans' submissions sympathetically." *Perciavalle v. McDonough*, 35 Vet.App. 11, 30 (2021) (en banc), *aff'd in part, vacated in part on other grounds*, 74 F.4th 1374 (Fed. Cir. 2023). The Board's obligation to "give a liberal construction to arguments made by the veteran" applies when veterans are represented by counsel and "extends to all proceedings before the Board." *Scott v. McDonald*, 789 F.3d 1375, 1380 (Fed. Cir. 2015); *see Velez v. West*, 11 Vet.App. 148, 157 (1998) ("[T]he Board must liberally construe all submissions.").

Second, the motion made clear that it was based on suffering resulting from the MST she experienced. She opened her motion by stating that she had "suffered through numerous instances of [MST] and intimate partner violence (IPV) during service, which led her to develop [PTSD]." Secretary's Aug. 12, 2024, Pet. Resp., Att. G. Then she cited her resulting severe financial hardship and "worsening mental state, including recent suicidal ideation" as justifying advancement. *Id.* She asserted that her "PTSD, depression, and anxiety have been severely aggravated by the stresses related to her financial situation. She has had thoughts of suicide, and her acutely distressed mental state as well as the possibility that she might harm herself establish 'other sufficient cause' for granting advancement on the docket." *Id.* And her supporting declaration related that "[w]hile in the Air Force, [she] developed clinically diagnosed [PTSD] and [MDD] after being raped by another airman and physically abused by [her] partner." *Id.* Moreover, the record—though sparse—makes clear that (1) Air Force members were involved in both the perpetration and the investigation of the MST, and (2) VA knew this was an MST case from the outset because the veteran said so in her March 2021 PTSD claim, *id.* at Att. A, and VA said so in its April 2021 rating decision, Att. B, and in its November 2021 higher level review decision, Att. D—all predating the veteran's NOD. Yet the Board's denial of Ms. Wiggins's motion was a form letter that did not even acknowledge her MST or address any of the evidence except to say that it was insufficient. And that form letter is emblematic of the Board's inattention to her MST case.

The dismissive, boilerplate Board decision on Ms. Wiggins's motion for advancement, and especially the Board's failure to acknowledge and address her suicidal ideation—which was an expressly stated basis for the November 2021 increase of her MDD disability evaluation to 50%, reflecting her worsening mental state—belies the Board's stated willingness to consider another motion and undercuts the majority's reliance on such a rote, meaningless "assurance," as *Heller* illustrates. *See Heller*, 38 Vet.App. at 79-87.

And the Board's inattention is inexcusable in the context of an MST case, because VA knows that "MST is a distinct risk factor for suicide attempt and completion" by veterans. *Military Sexual Trauma – A Risk Factor for Suicide*, U.S. Department of Veterans Affairs, https://mentalhealth.va.gov/suicide_prevention/docs/FSTP-Military-Sexual-Trauma-A-Risk-Factor-for-Suicide.pdf (November 2021) (last accessed Jul. 14, 2025). "Increased depression, PTSD-related anhedonia, and decreased sense of life meaning among MST survivors have been identified as potential links" between MST and suicide. *Id.* VA highlighted that increased suicidality in MST survivors has been found to be associated with "negative cognitions such as blaming oneself, feeling like a burden, and believing that one is damaged," as well as a "[l]ack of social support, perceived disapproval from others, and feelings of institutional betrayal from the military." *Id.*

In addition, a 2023 VA study found that women veterans who screened positive for MST had 3.20 times the prevalence of post-military suicidal ideation, 3.02 times the prevalence of a post-military suicide attempt, and 4.05 times the prevalence of past-month suicidal ideation, compared to those who screened negative, and those numbers rose to 3.81, 3.84, and 4.86 for women veterans who reported experiencing military sexual assault. MONTEITH, L., ET AL., *Military Sexual Trauma Among Women Veterans Using Veterans Health Administration Reproductive Health Care: Screening Challenges and Associations with Post-Military Suicidal Ideation and Suicide Attempts*, 38 J INTERPERS VIOLENCE 7578, 7585 (June 2023), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC10175204/pdf/nihms-1877408.pdf (page 7) (last accessed Jul. 14, 2025). VA even recognizes by regulation the increased risk of suicide for veterans who experienced MST. 38 C.F.R. § 78.10(b) (2025) ("[R]isk of suicide means exposure to, or the existence of, any of the following factors, to any degree, that increase the risk for suicidal ideation and/or behaviors: . . . (3) Historical risk factors, including . . . [MST]."). MST and its resulting disabilities obviously could constitute serious illness and sufficient cause for advancement. But the Board did not meaningfully consider the veteran's motion.

### C. *Heller* Hope Halted?

Somewhat surprisingly, the majority mortally wounds the case it principally relies upon— *Heller v. McDonough*, 38 Vet.App. 75 (2024), written by the same Judge just 8 months ago. The majority observes that, in *Heller*, the Court "held that the denial of a motion to advance on the docket is not an appealable decision, as it was not related to the grant or denial of any benefit by the Board." *Ante* at 4; *see Heller*, 38 Vet.App. at 83. As I noted in *Skaar v. Collins*, *Heller* failed to address two important matters. First, it failed to address whether the advancement decision is one made under a law that affects the provision of benefits, circumventing the *Bates* test and the fact that the right to seek advancement on the docket was specifically codified by Congress among laws specifically denominated "Veterans Benefits" in title 38 of the United States Code.

Second, it failed to address whether the Board's denial of a motion for advancement was a final decision regarding the benefit that the veteran sought in his motion—as VA defines "benefit" in 38 C.F.R. § 20.3(e). *Skaar v. Collins*, No. 24-5887, 2025 WL 1231033, at **4-5 (Vet. App. Apr. 29, 2025) (Jaquith, J., concurring). In my view, remedying these shortcomings would lead to a different result—a holding that the Board's denial of an advancement motion is a final Board decision that (1) denies the benefit sought, advancement of an appeal on the docket; (2) is made under a law that affects the provision of benefits, as enacted (per *Bates*) and functionally, by hastening the benefits determination or declining to do so[12]; and (3) would be unreviewable on appeal of the final decision on an appellant's underlying claim.

---

[12] Within VA, "'the Board acts on behalf of the Secretary in making the ultimate decision on claims'" by providing appellate review of questions the Secretary decides under laws that affect the provision of benefits to veterans or the dependents or survivors of veterans. *Kuppamala v. McDonald*, 27 Vet.App. 447, 452 (2015) (quoting *Disabled Am. Veterans v. Sec. of Veterans Affairs*, 327 F.3d 1339, 1347 (Fed. Cir. 2003)); *see* 38 U.S.C. §§ 511(a), 7104(a). In other words, "a 'final decision' of the Board involves reviewing and deciding questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits." *Clark v. McDonough*, 35 Vet.App. 317, 322 (2022). In determining whether a law affects the provision of benefits, we look beyond a particular statutory subsection to "a single statutory enactment that bears a Public Law number in the Statutes at Large." *Bates v. Nicholson*, 398 F.3d 1355, 1361 (Fed. Cir. 2005). Here, the public law that originally enacted what became section 7107 was Public Law 85-857, 72 Stat. 1105-1274 (Sep. 2, 1958), which consolidated into one act all of the laws

Even with the majority's doubtful determination that the Court had no jurisdiction, "the Court was nonetheless able to offer relief to Mr. Heller" and declared that "a petition continues to be the way to aid [the Court's] prospective jurisdiction by compelling action unlawfully withheld or unreasonably delayed." *Heller*, 38 Vet.App. at 84. Now the majority eliminates the Court's ability to aid its prospective jurisdiction to compel action unlawfully withheld by the Board's denial of advancement on the docket, regardless of the basis for the denial (or lack thereof), asserting that such denial does not "comprise[] an obstacle that effectively frustrates a Court's ability to exercise jurisdiction over a matter; it merely affects the timing under which such review occurs." *Ante* at 4. The majority seems to acknowledge the silliness of that assertion in a footnote, because the only possible answer to "whether the Court can offer meaningful relief to speed up adjudication on a claim that's already been decided" is "no." *See ante* at 4 n.2. Review of a Board denial of advancement on the docket obviously must be accomplished before the Board decides the underlying claim to have any effect. Whether judicial review is sought by filing a petition or an appeal, it would be too late to hasten a decision the Board has already made, and perhaps too late to deliver justice to a veteran who was of advanced age, seriously ill, under severe financial hardship, or unable to bear the lasting effects of MST when a meritorious motion for advancement was made.

In my view, the majority is clearly wrong. If *Heller* is right that "an [advancement on the docket] denial is not a final Board decision" such that "it can't be fixed with an appeal," then we must reject the majority's assertion that denial of docket advancement—even baseless denial—is no obstacle frustrating the Court's jurisdiction over the matter, *ante* at 4, and give meaning to *Heller*'s promise that "a petition continues to be the way to aid our prospective jurisdiction by compelling action unlawfully withheld or unreasonably delayed." *Heller*, 38 Vet.App. at 84.

D. Statutory Construction

The majority opinion devotes three pages straining to get around the most basic principle of statutory construction: "When the words of a statute are clear, that is the end of our inquiry." *Held v. McDonough*, 37 Vet.App. 28, 33 (2023); *see Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992). Read in context, the words Congress chose here speak for themselves. *See* SCALIA & GARNER at 167 (2012) ("Context is a primary determinant of meaning."); *Lacey v. Wilkie*, 32 Vet.App. 71, 76 (2019) ("[S]tatutory terms . . . 'must be read in their context[.]'") (quoting *Davis*

---

administered by the Veterans Administration and codified those laws as title 38, United States Code, "Veterans Benefits." 72 Stat. at 1105. As originally enacted, this section was part of a Public Law "that affects the provision of benefits" and "therefore is subject to review by the Board and the Court under the terms of 38 U.S.C. § 511." *See Bates*, 398 F.3d at 1362. As currently constituted, section 7107(b) remains a law that affects the provision of benefits.

Moreover, the Board denied the benefit that the veteran sought. A "benefit" is "[t]he advantage or privilege something gives; the helpful or useful effect something has." *Benefit*, BLACK'S LAW DICTIONARY 193 (11th ed. 2019). As used in the rules of practice governing appeals to the Board, "[b]enefit means any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e) (2025). "Status" is a "position or rank in relation to others." *Status*, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/status (accessed Jan. 12, 2024). Since each case before the Board "will be decided in regular order according to its respective place on the docket to which it is assigned," section 7107(a)(4), that place on the docket reflects the status of the claimant's appeal in relation to other appeals. And advancement on the docket is a benefit that betters a claimant's appeal status—the advanced claimant's position in relation to others.

*v. Mich. Dep't. of Treasury*, 489 U.S. 803, 809 (1989)). In modern bicameralism and presentment, "[a] legislature considers and passes an entire act, including the title. The same conventions which insure the accuracy of the remainder of the act also insure the authenticity of the title." 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 47:3 (7th ed. 2010). The majority acknowledges that section 7112's "heading"—"Expedited treatment of certain claims"— "can only be read as covering . . . both claims remanded from this Court described in subsection (a) as well as MST claims described in subsection (b)." *Ante* at 6. However, rather than acting on this stark reality, the majority is paralyzed by perusing presumptions flowing from canons of construction that apply only when the words aren't clear. "Presumptions have their place in statutory interpretation, but only to the extent that they approximate reality." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 399 (2024). The reality here is that judicial inquiry into the construction of section 7112 should end with our recognition that Congress said what it meant and meant what it said when it wrote that MST claims get expedited treatment, *see Conn. Nat. Bank*, 503 U.S. at 254, and we should be acting on our independent judgment to order expedited treatment of Ms. Wiggins's MST claims.

This is not to say that Congress's amendment of section 7112 has answered every question. I share the majority's interest in the interplay between section 7112 and the advancement on the docket provisions of section 7107(b). Congress has not addressed that issue, but our Court has— at least in part—holding that "the phrase 'expeditious treatment' . . . does not require that remanded cases be advanced on the docket pursuant to 38 U.S.C. § 7107(a)(2) [now 7107(b)] and 38 C.F.R. § 20.900(c) [now 20.800(c)]." *Dailey v. Principi*, 17 Vet.App. 61, 67 (2003). Noting the separate origin of exceptions to docket-order consideration for special cases and expeditious treatment of remanded claims, the Court declared that a claimant is not entitled to advancement of a claim on the Board docket simply because that claim previously was remanded. *Id.* The Court also observed that giving a remanded case its prior docket number "does not appear to equal expeditious treatment." *Id.* at 68. What constitutes expedited treatment has not been defined by Congress or VA. In section 7112(b), Congress specified one example of the expedited treatment required for MST claims—a prompt determination whether the NOD is a covered case, which is important to the timing and conduct of a Board hearing. Section 7112(a) merely repeats the section's expeditious treatment standard.

In promulgating AMA regulations, VA seemed to equate expediting cases with advancement on the docket in response to a comment, advising that a proposed regulation did not remove the Board Chairman's authority to "*expedite (advance on docket)* cases on his or her own motion." VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 159 (Jan. 18, 2019) (codified as amended in scattered sections of 38 U.S.C.) (emphasis added). But in the regulation itself, VA says a case remanded by our Court "will be treated expeditiously by the Board without regard to its place on the Board's docket." 38 C.F.R. §§ 20.802(d) (2025), 20.902(d) (2025). In connection with the amendment of 38 U.S.C. § 5109B to provide for expeditious treatment of claims returned by a higher-level adjudicator or remanded by the Board, VA said the following:

> The statute does not further define what is meant by "expeditious," leaving timely treatment of claims to the Secretary. Clearly, Congress intended that VA would process these claims as expeditiously as possible depending upon available resources. VA will similarly not further define "expeditious" in the rule to provide

the Secretary the discretion to direct expeditious processing of actions through allocation of available resources, appropriate prioritization of workload, and issuance of procedures.

*VA Claims and Appeals Modernization*, 84 Fed. Reg. at 146-47. Though the Court can specify a timeframe for expedited treatment, and has done so, *see, e.g.*, *Friscia v. Brown*, 7 Vet.App. 294, 297-98 (1994), it should be enough here to hold that expedited treatment is required and has not been provided.

### E. The Board's Failure to Fulfill Its Statutory Obligation

Under section 7112(b), "the Board shall promptly determine whether a[n NOD] filed with the Board is a covered case," meaning a case "that concerns a claim for compensation based on [MST]" and "for which the appellant has requested a hearing." The Board's complete failure to fulfill that statutory obligation on its own accord is itself sufficient to establish the veteran's entitlement to a writ. In November 2021, Ms. Wiggins filed an NOD that would trigger the Board's prompt determination requirement. Secretary's Aug. 12, 2024, Pet. Resp., Att. E. Earlier that month, VA amended its appeals manual to include "new procedures for designating individuals as specialized claims processors . . . to ensure *high priority* and complex processing of claims." VA Appeals Manual, M21-5, ch.1, sec.A.3.f. (Nov. 10, 2021) (emphasis added). Several years earlier, the U.S. Court of Appeals for the Federal Circuit noted the increased efforts by VA to improve its adjudication of disability claims related to MST and highlighted that, "in 2011, the Veterans Benefits Administration (VBA) directed regional offices to designate adjudicators with experience in processing complex claims to assist in development of MST claims and adjudications [and] developed guidance and training for these adjudicators," resulting in increased grant rates for MST-based PTSD claims. *Serv. Women's Action Network v. Sec. of Veterans Affairs*, 815 F.3d 1369, 1376 (Fed. Cir. 2016). In light of the "growing recognition of the pervasive and continuing problem of sexual abuse in the military and the often severe effects it can have" and VA's efforts to improve its adjudication of MST claims, *id.* at 1372, Congressional action to spur expedited Board treatment of MST claims should not have gone unnoticed nor shocked the Board to inaction.

A 2016 VA study assessed that 41.5% of women veterans experienced MST. https://www.publichealth.va.gov/epidemiology/studies/new-generation/military-sexual-trauma-infographic.asp (last accessed Jul. 12, 2025). In an August 2021 report, the VA Office of Inspector General (OIG) found that "about 57 percent of denied [MST] claims were still not being processed correctly from October 1 to December 31, 2019"—worse than the rate noted in an OIG report 3 years earlier—because VA "was not properly implementing recommended changes to assist veterans who had experienced [MST] in obtaining the care and benefits to which they are entitled." VA OIG, *Improvements Still Needed in Processing Military Sexual Trauma Claims*, Report No. 20-00041-163 at ii (August 5, 2021).

In response to this VA OIG report, VA said it had "implemented several actions to effectively improve [MST] claims processing," including mandating that only specialized groups of trained representatives "who have demonstrated high quality standards process these *high priority* and complex claims." *Id.* at 37 (emphasis added). VA added that it had "centralized this important work to five regional offices (ROs) to further improve benefits delivery to [v]eterans

who file MST-related claims by enhancing efficiency, accuracy, and *timeliness* by placing these cases in the hands of well-trained, experienced employees." *Id.* (emphasis added). "Priority" is "[t]he status of being earlier in time or higher in degree or rank; precedence." *Priority*, BLACK'S LAW DICTIONARY (12th ed. 2024). Another definition is "something that is very important and must be dealt with before other things." *Priority*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY & THESAURUS, https://dictionary.cambridge.org/us/dictionary/english/priority [hereinafter CAMBRIDGE (last visited Jul. 14, 2025). "Expedite" is "to make something happen more quickly." CAMBRIDGE at expedite. Both expedition and priority communicate urgency.[13] *See Urgency*, BURTON'S LEGAL THESAURUS (6th ed. 2021).

The majority excuses VA's failure to promptly determine whether Ms. Wiggins's appeal constituted a covered case as not implicating faster adjudication of her appeal. *Ante* at 7, n.4. However, at oral argument, the Secretary's counsel said:

> As part of [the] overall statutory scheme, [section] 7112(b) sits before the adjudication process—at the early stage of the adjudication process—and so, as required under [section] 7112(b), the Board must identify those claims, those appeals with claims involving MST so that at the hearing the VLJ will conduct the hearings with the requisite level of sensitivity consistent with their MST training and to ensure that veterans are not being re-traumatized through the use of insensitive language.

OA at 28:19-48. In other words, a veteran's hearing could not be scheduled until after the Board made the covered case determination required by section 7112(b). Ms. Wiggins waited nearly 29 months for the Board hearing she requested in November 2021—16 of those months after the amendment of section 7112(b)—and the Board did not determine, in all that time, whether her case was covered by the statute. In April 2024, Ms. Wiggins wrote the Board to withdraw her hearing request because of the Board's extended delay in acting on her NOD, asking for direct review by a veterans law judge to adjudicate her claims as soon as possible. Secretary's Aug. 12, 2024, Pet. Resp., Att. I. Ms. Wiggins filed her petition for extraordinary relief on July 2, 2024. On July 12, 2024, the Court ordered the Secretary to file an answer to her petition. The Board responded to her April 2024 letter on July 24, 2024, indicating that it had processed her request and would consider evidence submitted within 90 days of the date it had received the request—which it said was April 22, 2024, meaning that her time to submit evidence had already expired, although the Board did not note that its newly noticed deadline had come and gone. *Id*. at Att. J.

Nothing spurred the Board to fulfill its obligation to promptly determine whether Ms. Wiggins's case was a covered one, not even her petition or the Court order to answer it. And the Court order included very specific instructions: state "whether the processing and adjudication of Ms. Wiggin[s]'s 2021 Board appeal has been delayed" and "address whether [s]ection 7112(b) or other qualifiers allow Ms. Wiggins's appeal to be expedited or resolved without undue delay," noting that "claims involving MST must be expedited under 38 U.S.C. § 7112(b)," and that "for

---

[13] For example, the definitions for disclosure of VA records under the Freedom of Information Act provide that "[e]xpedited processing means giving a FOIA request priority for processing ahead of other pending requests because VA has determined that the requester has shown an exceptional need or urgency for the records as provided in these regulations." 38 C.F.R. § 1.551 (2025).

claims involving MST, the Board 'shall promptly determine whether [an NOD] filed with the Board is a covered case.'" Court's July 12, 2024, Order. The Secretary responded that section 7112 did not require expedited treatment of Ms. Wiggins's MST claims, but only the Board's prompt determination of whether hers was a covered case. Secretary's Aug. 12, 2024, Pet. Resp. at 10-11. The Secretary neither acknowledged that such a determination had not been made nor said it was coming.

So the Court issued a follow-up order, finding that the Secretary had "skirted around" the Court's request and "did not assure the Court that the Board has promptly made or will make such a decision." Court's Aug. 22, 2024, Order. The Court ordered that the Secretary direct the Board to determine, within 30 days, whether Ms. Wiggins's NOD is a covered case. On September 23, 2024, the Secretary responded that the Board had determined that Ms. Wiggins's appeal was a covered case on August 23, 2024, and furnished a September 3, 2024, declaration by a Deputy Vice Chairman of the Board certifying that the determination had been made but not specifying the date. Secretary's Sept. 23, 2024, Resp. The Board's "prompt" determination was made at least 21 months after the statute required it (and responded to an NOD at least 33 months old).

### F. Off the *TRAC*

As the majority acknowledges, *ante* at 4, the Federal Circuit has adopted the *TRAC* standard for evaluating mandamus petitions based on alleged unreasonable delay. *Martin v. O'Rourke*, 891 F.3d 1338, 1348 (Fed. Cir. 2018); *see Telecomm. Research & Action Ctr. v. F.C.C. (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984). But the majority's analysis of the *TRAC* factors leaves the egregious delay here unchecked. The time the Board took to determine whether Ms. Wiggins's claims concerned MST and included a hearing request, warranting expedited treatment, (1) was completely unreasonable; (2) defied Congress's amendment of section 7112 to afford MST claims expedited treatment, including a prompt determination of whether her case was covered; (3) ignored the veteran's worsening suffering from conditions resulting from MST, including suicidal ideation (human health and welfare circumstances that emphatically refute the Secretary's characterization of that factor as "of reduced import," Secretary's Aug. 12, 2024, Pet. Resp. at 12); (4) ignored Congressional action making Agency attention to MST claims a high priority (notwithstanding VA's attention to MST issues outside of Board inaction); and (5) subjected a suffering veteran with a worsening service-connected disability involving suicidal ideation to lengthy, ongoing, and yet unquantifiable delay. *See Green v. McDonough*, 37 Vet.App. 127, 137 (2024) ("When the effect of a Board error on the outcome of a proceeding is unquantifiable, we should not speculate as to what the outcome might be; we should vacate the erroneous decision that could adversely affect the determination."). There undoubtedly is delay attributable to the overburdening of the system, but that cannot excuse the indicators of indifference to the law and to the veteran here.

Ms. Wiggins was but 18 years old when she experienced MST—a sexual assault by a fellow Air Force member—over a decade ago. VA has acknowledged that she has suffered from disabling MDD resulting from that MST since April 2021, and that her disability worsened—including involving suicidal ideation—just 7 months later. Yet when she sought advancement on the docket in March 2022 and brought these circumstances before the Board, it answered with an unresponsive form letter that did not even note her MST. Then the Board ignored Congress, and

20

VA, for a time, ignored the Court. These circumstances are the opposite of expedited treatment and promptness. Ms. Wiggins has demonstrated that her right to the issuance of a writ mandating expedited treatment is clear, indisputable, and appropriate. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004). I respectfully but emphatically dissent.

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

625 Indiana Avenue, NW, Suite 900
Washington, DC 20004-2950

Date: October 10, 2025

Mr. Jarrett B. Perlow, Clerk
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

RE:    KARISSA WIGGINS V. DOUGLAS A. COLLINS
OUR CASE NO. 24-4591

Dear Mr. Perlow:

Enclosed is a notice of appeal to your Court. It was filed by this Court on October 1, 2025. The judgment of this Court was entered on August 25, 2025.

A total of 37 days elapsed between judgment and filing of the appeal. Section 7292(a), Title 38, United States Code, requires that a notice of appeal of the decision of this Court be filed within the time prescribed for appeal to the United States courts of appeals from United States district courts, which is 60 days where the United States is a party.

TIFFANY M. WAGNER
Clerk of the Court

By: /s/ Shelby N. Turner
Deputy Clerk

Enclosures:    Notice of Appeal
Order
Certified docket entries