No. 2026-1053

In The

# United States Court of Appeals for the Federal Circuit

———

KARISSA WIGGINS,

*Petitioner-Appellant,*

v.

DOUGLAS A. COLLINS,
Secretary of Veterans Affairs,

*Respondent-Appellee.*

———

ON APPEAL FROM THE UNITED STATES COURT OF APPEALS FOR
VETERANS CLAIMS, No. 24-4591, Judges Amanda L. Meredith, Joseph
L. Toth, Grant C. Jaquith

———

**PRINCIPAL BRIEF OF PETITIONER-APPELLANT**

———

MARGARET BAUGHMAN*
SHREYA JOSHI*
NATALIE KELLY*
ANTHONY POTTS**
ASHLEY ANDERSON
ROSE CARMEN GOLDBERG
MICHAEL J. WISHNIE
Jerome N. Frank
Legal Services Organization
Yale Law School
P.O. Box 209090
New Haven, CT 06520
Phone: (203) 432-4800
*Counsel for Petitioner-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

Case Number  No. 26-1053

Short Case Caption Wiggins v. Collins

Filing Party/Entity Karissa Wiggins

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/28/2025

Signature: *Rose Carmen Goldberg*

Name: Rose Carmen Goldberg

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Karissa Wiggins | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable  ☐ Additional pages attached

| | | |
|---|---|---|
| Jerome N. Frank Legal Services Organization | Anthony Potts, Law Student Intern | Gabriela Torres-Lorenzotti, Law Student Intern |
| Natalia Friedlander, Supervising Attorney | Natalie Kelly, Law Student Intern | Romina Lilollari, Law Student Intern |
| Shreya Joshi, Law Student Intern | Maggie Baughman, Law Student Intern | Claire Sullivan, Law Student Intern |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)  ☑ No  ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable  ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF CONTENTS ............................................................................... iv

TABLE OF AUTHORITIES ......................................................................... vi

INTRODUCTION ........................................................................................ 1

JURISDICTIONAL STATEMENT ............................................................ 2

STATEMENT OF THE ISSUES ................................................................ 2

STATEMENT OF THE CASE ..................................................................... 3

I.      Factual History ................................................................................ 3

II.     Procedural History ......................................................................... 5

SUMMARY OF THE ARGUMENT ........................................................... 9

ARGUMENT .............................................................................................. 12

I.      Standard of Review ....................................................................... 12

II.     Ms. Wiggins is entitled to expedited treatment under § 7112's
        clear mandate ............................................................................... 13

        A.      Section 7112(b) is unambiguous that VA must expedite all
                appeals the Board determines are "covered cases" .............. 15

        B.      In the alternative, canons of statutory interpretation clarify
                that § 7112 mandates expedited review .............................. 26

III.    Mandamus Is Warranted ............................................................. 40

        A.      Ms. Wiggins has a clear and indisputable right to a writ
                because VA unlawfully withheld expedited treatment ........ 40

B.  Ms. Wiggins has a clear and indisputable right to a writ due to VA's unreasonable delay ...................................................... 41

C.  The Veterans Court erred in finding an adequate alternative to mandamus in this case ...................................................... 61

D.  Under the circumstances, a writ of mandamus is appropriate .......................................................................... 68

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ................. 71

ADDENDUM ............................................................................................73

CERTIFICATE OF COMPLIANCE ........................................................ 95

# TABLE OF AUTHORITIES

## CASES

*Am. Airlines, Inc. v. Austin,*
  75 F.3d 1535 (Fed. Cir. 1996) ...................................................... 21, 22

*Babb v. McDonough,*
  No. 2024-1182, 2024 WL 2873785 (Fed. Cir. June 7, 2024) ............... 40

*BASR P'ship v. United States,*
  795 F.3d 1338 (Fed. Cir. 2015) ........................................................ 20

*Beaudette v. McDonough,*
  93 F.4th 1361 (Fed. Cir. 2024) ........................................................ 13

*Boone v. Lightner,*
  319 U.S. 561 (1943) ......................................................................... 33

*Bostock v. Clayton Cnty.,*
  590 U.S. 644 (2020) ......................................................................... 23

*Brown v. Gardner,*
  513 U.S. 115 (1994) ......................................................................... 27

*Bufkin v. Collins,*
  604 U.S. 369 (2025) .................................................................... 35, 36

*Cheney v. U.S. Dist. Ct.,*
  542 U.S. 367 (2004) .................................................................. passim

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
  401 U.S. 402 (1971) ......................................................................... 62

*Davalos v. Collins,*
  No. 25-5076, 2025 WL 3043076 (Vet. App. Oct. 31, 2025) ................. 54

*Dubin v. United States,*
  599 U.S. 110 (2023) ............................................................ 17

*Erspamer v. Derwinski,*
  1 Vet. App. 3 (1990) ........................................................... 63

*Ex parte Fahey,*
  332 U.S. 258 (1947) ....................................................... 61, 66

*Ford v. Collins,*
  No. 25-8182, 2025 WL 3281685 (Vet. App. Nov. 25, 2025) ............... 54

*Gardner-Dickson v. Wilkie,*
  33 Vet. App. 50 (2020) ........................................................ 57

*Gayudan v. Collins,*
  No. 24-9666, 2025 WL 2778558 (Vet. App. Sep. 30, 2025) ............... 54

*Heller v. McDonough,*
  38 Vet. App. 75 (2024) ................................................. passim

*Henderson v. Shinseki,*
  562 U.S. 428 (2011) ...................................................... 35, 36

*Hibbs v. Winn,*
  542 U.S. 88 (2004) ............................................................. 27

*HMTX Indus. LLC v. United States,*
  156 F.4th 1236 (Fed. Cir. 2025) .......................................... 28

*In re Paralyzed Veterans of Am.,*
  392 F. App'x 858 (Fed. Cir. 2010) ....................................... 69

*In re Princo Corp.,*
  478 F.3d 1345 (Fed. Cir. 2007) ........................................... 63

*In re TS Tech United States Corp.,*
  551 F.3d 1315 (Fed. Cir. 2008) ........................................... 65

*King v. St. Vincent's Hosp.*,
502 U.S. 215 (1991) .................................................... 15

*Kirtsaeng v. John Wiley & Sons, Inc.*,
568 U.S. 519 (2013) .................................................... 23

*Kramer v. Wilkie*,
842 F. App'x 599 (Fed. Cir. 2021) ........................................ 13

*Lamb v. Principi*,
284 F.3d 1378 (Fed. Cir. 2002) ........................................... 2

*Martin v. O'Rourke*,
891 F.3d 1338 (Fed. Cir. 2018) ..................................... passim

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .................................................... 52

*Monk v. Wilkie*,
32 Vet. App. 87 (2019) ............................................. 49, 50

*Montclair v. Ramsdell*,
107 U.S. 147 (1883) .................................................... 27

*Mote v. Wilkie*,
976 F.3d 1337 (Fed. Cir. 2020) ..................................... passim

*N. States Power Co. v. United States*,
224 F.3d 1361 (Fed. Cir. 2000) .......................................... 62

*Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*,
48 F.4th 1307 (Fed. Cir. 2022) .......................................... 34

*Nijhawan v. Holder*,
557 U.S. 29 (2009) ..................................................... 20

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ..................................................... 41

*Procopio v. Wilkie,*
913 F.3d 1371 (Fed. Cir. 2019) ........................................................ 35

*Pugin v. Garland,*
599 U.S. 600 (2023) ............................................................... 17, 37

*Qualcomm Inc. v. Apple Inc.,*
134 F.4th 1355 (Fed. Cir. 2025) ..................................................... 15, 16

*Redwood v. McDonough,*
37 Vet. App. 58 (2023) ................................................................. 53

*Reese v. McDonough,*
No. 22-2627, 2022 WL 10967998 (Vet. App. Oct. 19, 2022) ................. 55

*Robinson v. Shell Oil Co.,*
519 U.S. 337 (1997) ..................................................................... 15

*Rudisill v. McDonough,*
601 U.S. 294 (2024) ................................................................. 34, 35

*Russello v. United States,*
464 U.S. 16 (1983) ....................................................................... 30

*Serv. Women's Action Network v. Sec. of Veterans Affairs,*
815 F.3d 1369 (Fed. Cir. 2016) ........................................................ 58

*Smith v. Nicholson,*
451 F.3d 1344 (Fed. Cir. 2006) ........................................................ 13

*Tanzin v. Tanvir,*
592 U.S. 43 (2020) ....................................................................... 15

*Taylor v. McDonough,*
71 F.4th 909 (Fed. Cir. 2023) .......................................................... 62

*Telecomm. Rsch. & Action Ctr. v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) ........................................................ 8, 52

*TRW Inc. v. Andrews,*
534 U.S. 19 (2001) ........................................................................ 27

*United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,*
484 U.S. 365 (1998) .................................................................. 23, 26

*United States v. Atl. Rsch. Corp.,*
551 U.S. 128 (2007) ...................................................................... 22

*W. Va. Univ. Hosps. Inc. v. Casey,*
499 U.S. 83 (1991) ........................................................................ 29

*Windsor v. Collins,*
No. 25-0664, 2025 WL 1342281 (Vet. App. May 8, 2025) ................... 56

*Wis. Cent. Ltd. v. United States,*
585 U.S. 274 (2018) ...................................................................... 29

*Wright v. Collins,*
145 F.4th 1336 (Fed. Cir. 2025) ..................................................... 13

*Wright v. Wilkie,*
839 F. App'x 466 (Fed. Cir. 2020) ............................................. 15, 40

*Yates v. United States,*
574 U.S. 528 (2015) ...................................................................... 17

*Ziglar v. Abbasi,*
582 U.S. 120 (2017) ...................................................................... 38

## STATUTES

28 U.S.C. § 1651(a). ......................................................................... 2

38 U.S.C. § 1166 ............................................................. 25, 30, 32, 33
§ 1166(a) ........................................................................... 25
§ 1166(b) ........................................................................... 25
§ 1166(d) ....................................................................... 1, 25
§ 5103A(a)(1) ...................................................................... 37

x

§ 5107(b) ............................................................. 37

§ 7102 ................................................................ 30

§ 7102(c) ........................................................ 25, 32

§ 7107(a) ............................................................ 60

§ 7107(b) .............................................................. 6

§ 7107(b)(3)(C) ................................................... 65

§ 7112 ......................................... 9, 14, 25, 53

§ 7112(a) ................................... 18, 20, 21, 26

§ 7112(b) ....................................................passim

§ 7112(c) ...................................... 1, 24, 25, 32

§ 7261 ................................................................ 63

§ 7261(d)(1)(A) ................................................. 63

§ 7292(a) .............................................................. 2

§ 7292(e)(1) ...................................................... 13

§ 7621(a)(2) ................................... 2, 10, 41, 42

5 U.S.C. § 706(2)(A) ...................................................... 63

Appeals Modernization Act, Pub. L. No. 115-25, 131 Stat. 1105 (Aug. 23, 2017) ..................................................................... 32

Dignity for MST Survivors Act, Pub. L. No. 117-300, 136 Stat. 4379 (Dec. 27, 2022) (codified at 38 U.S.C. §§ 101, 1166, 7102, 7112) ....................................................16, 19, 40, 58

MST Claims Coordination Act, Pub. L. No. 117-303, 136 Stat. 4387 (Dec. 27, 2022) (codified at 38 U.S.C. § 1166) ..................................... 59

Pub. L. No. 116-283, § 538, 134 Stat 3388 ............................................ 39

VA Peer Support Enhancement for MST Survivors Act, Pub. L. No. 117-271, 136 Stat. 4179 (Dec. 27, 2022) (codified at 38 U.S.C. § 1166)..... 58

# REGULATIONS

38 C.F.R. § 20.700(c)...............................................................37

§ 20.800(c)(1) ...............................................65

§ 3.103(a) ...................................................37

# OTHER AUTHORITIES

168 CONG. REC. H5107-01 (daily ed. May 18, 2022) (statement of Rep. Mrvan). ...................................................39

168 CONG. REC. H5108 (daily ed. May 18, 2022) (statement of Rep. Takano)...................................................38

168 CONG. REC. H5142 ...................................................40

168 CONG. REC. S7302-06 (daily ed. Dec. 19, 2022). ...........................40

Anita S. Krishnakumar, *Reconsidering Substantive Canons*, 84 U. Chi. L. Rev. 825 (2017) .................................35

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .................................30

*Board Appeals*, U.S. Dep't Veterans Affs., https://www.va.gov/decision-reviews/board-appeal (last accessed Nov. 30, 2025)..................47

Daniel B. Listwa & Adam Flaherty, *Interpreting Code*, 61 Harv. J. on Legis. Online 69 (2024) ...........................17, 28

Daniel B. Listwa, Comment, *Uncovering the Codifier's Canon: How Codification Informs Interpretation*, 127 YALE L.J. 464 (2017) .................................17

*Decision Wait Times*, Bd. of Veterans' Appeals, https://department.va.gov/board-of-veterans-appeals/decision-wait-times (last accessed Dec. 7, 2025) .................................47

Erika N. Dugas, et al., *Recurrent Suicidal Ideation in Young Adults,*106 Can. J. Pub. Health (2015) .................................................. 57

*Healing the Wounds: Evaluating Military Sexual Trauma Issues: Hearing Before the Subcomm. on Disability Assistance & Memorial Affs. and the Subcomm. on Health of the H. Comm. on Veterans' Affs.,* 111th Cong. (2010) ............................................................. 39

Lindsey L. Monteith, *Identifying Factors Associated With Suicidal Ideation and Suicide Attempts Following Military Sexual Trauma,* 252 J. Affective Disorders 300 (2019) .................................................. 57

Nat'l Veterans Legal Servs. Program, *Veterans Benefits Manual,* § 13.2.3 (2025) ........................................................... 32, 38

# INTRODUCTION

Those who serve our country brave countless dangers—grueling training, perilous missions, and life-threatening armed conflict. But they should never have to face the danger of sexual assault and harassment from the very people who are meant to have their backs: their fellow service members. When such betrayals do occur, the U.S. Department of Veterans Affairs (VA) is duty-bound to care for service members, like Ms. Karissa Wiggins, who have "borne the battle" of sexual trauma. Yet VA has historically failed to adjudicate Military Sexual Trauma (MST) claims promptly and fairly.[1] Attempting to remedy this, Congress established a special pathway—38 U.S.C. § 7112(b)—to guarantee the expedited treatment of MST claims. VA, however, has not followed Congress's command. Instead of expediting Ms. Wiggins's MST claim as required, the Board of Veterans' Appeals (Board) has delayed resolution

---

[1] The term MST throughout the brief "means, with respect to a veteran, a physical assault of a sexual nature, battery of a sexual nature, or sexual harassment during active military, naval, air, or space service." 38 U.S.C. § 1166(d)(2). "MST Claims" are those that "concern[] a claim for compensation based on military sexual trauma." *Id.* § 7112(c)(1)(A).

of her appeal for over four years, exacerbating her significant psychological and financial hardships. Ms. Wiggins now seeks review of a decision of the U.S. Court of Appeals for Veterans Claims (Veterans Court) denying her request for a writ of mandamus directing the VA Secretary to adjudicate her claim promptly.

## JURISDICTIONAL STATEMENT

The Veterans Court had authority pursuant to 38 U.S.C. § 7261(a)(2) to "compel action of the Secretary unlawfully withheld or unreasonably delayed" and pursuant to the All Writs Act to issue writs in aid of its jurisdiction. 28 U.S.C. § 1651(a). This Court has jurisdiction over this appeal because the Veterans Court entered a final judgment denying the petition for extraordinary relief on August 25, 2025, and Ms. Wiggins timely filed a notice of appeal on October 1, 2025. 38 U.S.C. § 7292(a); *Lamb v. Principi*, 284 F.3d 1378, 1381-82 (Fed. Cir. 2002).

## STATEMENT OF THE ISSUES

Whether the Veterans Court (1) misinterpreted 38 U.S.C. § 7112 in holding that it does not compel expedited adjudication of MST cases, (2) misinterpreted the *TRAC* factors to hold that the Board's delay in

adjudicating Ms. Wiggins's appeal was not unreasonable, and (3) erred in finding that Ms. Wiggins had failed to demonstrate no adequate alternative means of obtaining relief.

## STATEMENT OF THE CASE

## I. Factual History

Appellant Ms. Karissa Wiggins served in the U.S. Air Force from September 2013 to July 2016. Appx23. During her service, Ms. Wiggins endured both MST and Intimate-Partner Violence (IPV). *Id.*

Toward the end of basic training, Ms. Wiggins entered a relationship with Airman Dorian Walker. Appx24. Mr. Walker soon began to abuse Ms. Wiggins. Then, while Ms. Wiggins remained in Texas for tech school and Mr. Walker was stationed in Florida, she was raped by another airman at a social gathering. *Id.* A friend disclosed the assault to superiors without her consent, triggering an unwanted investigation in September 2014. *Id.* Uncomfortable with the investigation and her superiors knowing about the MST she had experienced, Ms. Wiggins requested a transfer. *Id.*

In November 2014, she was reassigned to Hurlburt Field, an Air Force Base in Florida, where Mr. Walker was stationed. *Id.* There, the abuse escalated. On one occasion, after Ms. Wiggins confronted Mr. Walker about his infidelity, he choked her, threw her to the ground, and ripped her clothing. *Id.* On another, he punched her in the face and shoved her into a wall, leaving a hole in the drywall. Appx24-25. Although a roommate called security, Ms. Wiggins denied the abuse in discussions with military authorities out of fear of reprisal and isolation. Appx25. Investigators wrongly concluded she was the aggressor, issuing a thirty-day no-contact order and a three-year military protective order. *Id.*

Following her discharge, Ms. Wiggins struggled to rebuild her life while coping with untreated Post-Traumatic Stress Disorder (PTSD). *Id.* She lost two jobs in 2017 after symptoms interfered with her ability to focus and interact with coworkers. *Id.* Facing homelessness, she turned to the Mercy Housing and Shelter Corporation, which assists veterans. *Id.* With their help, she secured housing, re-enrolled in part-time studies at Central Connecticut State University, and obtained part-time work.

4

*Id.* Her diligence earned her a Pratt & Whitney Scholarship in 2021. *Id.* While this provided some increased stability, her financial situation remained precarious. Even after obtaining this scholarship, she has struggled to make rent and utility payments, and has had to turn to a food pantry when she did not have the money to purchase groceries. Appx183.

As a result of her MST and IPV, she still experiences PTSD and major depressive disorder (MDD), as diagnosed by both a VA clinician and an independent forensic psychiatrist. Appx25-26. These conditions have been debilitating—causing her to miss work because she is unable to get out of bed, and interfering with her ability to focus on schoolwork or form friendships. Appx182. She has also experienced repeated suicidal ideation, to the point that she has needed to call the VA Suicide Prevention Hotline. *Id.*

## II.   Procedural History

In March 2021, Ms. Wiggins filed an initial claim for VA disability compensation, seeking service connection for PTSD resulting from MST and IPV, as well as for MDD. Appx113. The following month, VA granted

service connection for MDD at 30 percent but denied service connection for PTSD. Appx119. In November 2021, after requesting higher-level review, Ms. Wiggins received an increased MDD rating of 50 percent, but VA adhered to its denial of her PTSD claim. Appx157-58.

That same month, Ms. Wiggins filed a notice of disagreement (NOD) electing the Board hearing docket. Appx168. Her appeal was formally docketed on November 30, 2021. Appx172. Four months later, in March 2022, she filed a motion to advance her appeal on the docket under 38 U.S.C. § 7107(b), citing severe financial hardship and a worsening mental state marked by suicidal ideation due to MST and IPV. Appx176. The Board denied the motion in May 2022, finding that her circumstances did not meet the statutory threshold of "severe financial hardship," such as bankruptcy, foreclosure, or homelessness. Appx194. The Board invited her to submit additional evidence in support of a renewed motion but took no further action. *Id.*

In April 2024, Ms. Wiggins attempted to withdraw her hearing request and transfer her case to the direct-review docket, believing that would expedite resolution. Appx196. The Board did not respond until

July 24, 2024, after the Veterans Court ordered it to do so. *See* Appx86-87. It stated that it had "processed" her request and would consider evidence submitted within 90 days of the date it had received the request—which they listed as April 22, 2024. *See* Appx198. The Board did not note that this newly noticed deadline had come and gone by the time it responded, and instead informed Ms. Wiggins only that her appeal would remain in regular docket order. *See id.*; Appx19.

After nearly three years without Board action, Ms. Wiggins filed a petition for extraordinary relief with the Veterans Court on July 2, 2024, requesting that the court compel the Board to adjudicate her appeal within thirty days. Appx22. The Veterans Court first ordered the Secretary to respond to Ms. Wiggins's petition, and subsequently ordered him to direct the Board to determine whether her NOD qualified as a "covered [MST] case" under 38 U.S.C. § 7112(b). Appx86-87; Appx199-200. In August 2024, the Board determined—nearly three years after the original NOD was filed—that her appeal did qualify as a covered case. However, it stated that it would proceed "according to her place on the docket based on the date of her November 29, 2021, NOD." Appx209.

Following briefing and oral argument, the Veterans Court issued its order and opinion on August 1, 2025, denying the petition. Appx1. The court held that § 7112(b) does not require expedited adjudication of MST claims but may inform the reasonableness inquiry under the *Telecommunications Research & Action Center v. FCC* [*TRAC*] factors. 750 F.2d 70 (D.C. Cir. 1984); Appx5. Although acknowledging the significant delay in Ms. Wiggins's appeal and the special importance of MST cases, the panel majority determined that the Board's inaction did not constitute unreasonable delay under *TRAC* and that Ms. Wiggins retained adequate alternative means of relief. *See* Appx12.

Judge Jaquith dissented, concluding that Ms. Wiggins had demonstrated that her right to a writ mandating expedited treatment was clear, indisputable, and appropriate. Appx21. In his view, Congress's 2022 amendment to § 7112 plainly requires expedited treatment of MST claims and the Board's failure to act violated that statutory command. Appx12-13. He further determined that "the majority's analysis of the *TRAC* factors le[ft] the egregious delay here unchecked." Appx20. Judgment was entered August 25, 2025. Appx216.

8

Ms. Wiggins timely filed a notice of appeal to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) on October 1, 2025. The appeal was docketed on October 15, 2025.

## SUMMARY OF THE ARGUMENT

The Veterans Court's denial of Ms. Wiggins's writ petition was erroneous for several reasons. Critically, the court misinterpreted 38 U.S.C. § 7112, a statute that mandates expedited treatment for covered MST claims. In considering whether VA unlawfully withheld action, the Veterans Court found that subsection 7112(b) does not "convey[] a clear intent on the part of Congress to require expeditious adjudication of cases involving MST." Appx8. This is incorrect. The statutory text is unambiguous and creates an entitlement to expedited treatment for veterans pursuing cases involving MST. The Veterans Court overlooked that the section's caption language—"Expedited treatment of certain claims"—asserts an unambiguous legislative intent to expedite adjudication of claims that fall under its heading. And even if subsection 7112(b) were ambiguous, the interpretive canons, which the Veterans Court misapplied, resolve any ambiguity in Ms. Wiggins's favor.

The Veterans Court also failed to recognize Ms. Wiggins's entitlement to a writ of mandamus under *Cheney v. U.S. Dist. Ct.*, which requires courts to consider whether the following exist: (1) a clear and indisputable right to the writ; (2) a lack of adequate alternative means to obtain the desired relief; and (3) compelling circumstances that warrant issuance of the writ. 542 U.S. 367, 380-81 (2004).

With regard to the first *Cheney* factor, the Veterans Court mistakenly held that Ms. Wiggins does not have a clear and indisputable right to a writ. Ms. Wiggins's right to a writ is grounded in two independent bases: VA unlawfully withheld agency action, and VA unreasonably delayed agency action. *See* 38 U.S.C. § 7621(a)(2) (requiring that the Veterans Court "compel action of the Secretary unlawfully withheld or unreasonably delayed"). Under the first basis, the Veterans Court misinterpreted the relevant legal standards and failed to recognize that VA had unlawfully withheld expedited treatment under 38 U.S.C. § 7112(b) for Ms. Wiggins's covered claim.

Under the second basis, the Veterans Court misinterpreted the *TRAC* factors for unreasonable delay, which led it to erroneously find Ms.

Wiggins did not have a right to mandamus. Notably, it assessed VA's "rule of reason" by comparing Ms. Wiggins's wait time to the Board's general averages, rather than to the "expedited" timeline required by § 7112. The Veterans Court also minimized the nature and importance of the interests at stake, including Ms. Wiggins's severe mental health and financial hardships, contrary to *TRAC* factors three and five. Finally, it treated the agency's resource constraints under factor four as dispositive, disregarding that Congress, through § 7112, explicitly prioritized MST appeals in allocating those resources.

For the second *Cheney* factor, the Veterans Court incorrectly found that Ms. Wiggins had not demonstrated a lack of adequate alternative means of relief. The Veterans Court has held that it lacks jurisdiction to review appeals from the denial of an advancement on the docket (AOD) motion. *See* Appx4. Submitting additional evidence in support of her AOD request would be futile, as the Board already failed to engage with Ms. Wiggins's initial submission meaningfully and has indicated its unwillingness to expedite covered cases under § 7112. Ms. Wiggins has even gone outside of her statutorily and judicially provided routes and

11

contacted her congressional representatives for assistance, but to no avail. Regardless, these mechanisms for pressuring the agency to resolve her claim do not fundamentally address the significant delay, and the toll of that delay, that Ms. Wiggins has borne. Nor is the hypothetical possibility of other citizen action outside the statutory review channels (such as submitting a petition for rulemaking) relevant to the "adequate alternative" inquiry on a writ.

Finally, the Veterans Court did not consider the third *Cheney* factor explicitly, deciding instead on the basis of the first two factors that a writ was unwarranted. Appx12. But a writ is appropriate: the only way to vindicate Ms. Wiggins's right to expedited treatment is through the grant of mandamus. Failure to do so would thwart Congress's statutory design and further harm a veteran already wounded by her service to her country.

## ARGUMENT

### I. Standard of Review

While this Court reviews the Veterans Court's denial of a petition for a writ of mandamus for abuse of discretion, *Kramer v. Wilkie*, 842 F.

App'x 599, 603 (Fed. Cir. 2021), this Court reviews legal determinations made by the Veterans Court *de novo. See Smith v. Nicholson*, 451 F.3d 1344, 1347 (Fed. Cir. 2006); *Wright v. Collins*, 145 F.4th 1336, 1339 (Fed. Cir. 2025). "[I]nterpreting constitutional and statutory provisions" is a question of law. *See Beaudette v. McDonough*, 93 F.4th 1361, 1366 (Fed. Cir. 2024). In the context of mandamus, the Federal Circuit will "consider whether the [plaintiffs] have a 'clear and indisputable' right to Board review under the correct interpretation" of the underlying statute. *Id.* This consideration is *de novo. Id.* "Upon such review, the Court of Appeals for the Federal Circuit shall have power . . . if the decision of the Court of Appeals for Veterans Claims is not in accordance with law, to modify or reverse the decision . . . or to remand the matter, as appropriate." 38 U.S.C. § 7292(e)(1).

## II. Ms. Wiggins is entitled to expedited treatment under § 7112's clear mandate

Ms. Wiggins is statutorily entitled to expedited treatment of her MST-related VA benefits claim under 38 U.S.C. § 7112. The statute reflects Congress's unequivocal judgment that veterans asserting MST claims are entitled to special treatment, including expedited adjudication

of appeals in the Board's hearing track.[2] On its face, § 7112 creates a cohesive scheme for expeditious claim processing, rendering the statute unambiguous. But even if the text of § 7112 is read as ambiguous, the canons of statutory construction, including the pro-veteran canon, demonstrate that the statute must be understood as mandating expedited treatment for all MST claims meeting § 7112(c)'s definition of "covered case." VA's refusal to act on this entitlement constitutes refusal to take required agency action, an unlawful withholding that justifies

---

[2] The text of 38 U.S.C. § 7112 ("Expedited treatment of certain claims") provides:

> (a) Remanded Claims.—The Secretary shall take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court of Appeals for Veterans Claims.
> (b) Claims Involving Military Sexual Trauma.—
> The Board shall promptly determine whether a notice of disagreement filed with the Board is a covered case.
> (c) Definitions.—In this section:
> > (1) The term "covered case" means a case—
> > > (A) that concerns a claim for compensation based on military sexual trauma; and
> > > (B) for which the appellant has requested a hearing in the notice of disagreement filed with the Board pursuant to section 7105 of this title.
> > (2) The term "military sexual trauma" has the meaning given that term in section 1166 of this title.

14

mandamus. *See Wright v. Wilkie*, 839 F. App'x at 468 (reading the All Writs Act "in conjunction with § 7261(a)(2)" to provide for mandamus relief "where the Secretary is withholding benefits"). In the words of the dissent below, "[t]he Board's complete failure to fulfill that statutory obligation on its own accord is itself sufficient to establish the veteran's entitlement to a writ." Appx18.

A. **Section 7112(b) is unambiguous that VA must expedite all appeals the Board determines are "covered cases"**

Any exercise in statutory interpretation begins with the text. *Tanzin v. Tanvir*, 592 U.S. 43, 46 (2020); *see also Qualcomm Inc. v. Apple Inc.*, 134 F.4th 1355, 1364 (Fed. Cir. 2025) ("When interpreting a statute, we first look to its language and plain meaning, including its text and structure."). Courts consider the statutory structure and scheme, because "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but also by] the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997); *see also King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (holding courts should read the statutory text "as a whole since the meaning of statutory

language, plain or not, depends on context" (internal citations omitted)). "If the language is 'unambiguous and the statutory scheme is coherent and consistent,' the inquiry ends there." *Qualcomm,* 134 F.4th at 1364 (quoting *Thaler v. Vidal,* 43 F.4th 1207, 1213 (Fed. Cir. 2022)).

      i.  *The text passed by Congress, including § 7112's title, unambiguously provides expedited treatment for MST claims*

First, the text of the statute is clear that claims related to MST are subject to expedited treatment, given that § 7112 is titled "Expedited treatment of certain claims." Contrary to the Veterans Court's assertion that section headings carry limited weight, Appx6, § 7112's title possesses the same authority as the section language beneath it because both houses of Congress enacted the heading as part of the statutory language in Pub. L. No. 117-300, § 2, 136 Stat. 4379, 4380 (Dec. 27, 2022). "In modern bicameralism and presentment, '[a] legislature considers and passes an entire act, including the title. The same conventions which ensure the accuracy of the remainder of the act also ensure the authenticity of the title.'" Appx17 (quoting 2A Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 47:3 (7th ed. 2010)).

Indeed, a string of recent Supreme Court precedent contradicts the Veterans Court's exclusion of § 7112's title, Appx6, finding the caption to play an integral role in the unambiguous reading of a statute. *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 539-540 (2015) (emphasizing the placement and captioning of § 1519 in Title 18 of the U.S. Code); *Dubin v. United States*, 599 U.S. 110, 120 (2023) ("Start at the top, with the words Congress chose for § 1028A's title: 'Aggravated identity theft.'"); *Pugin v. Garland*, 599 U.S. 600, 605 (2023) (treating as indicative of a text's scope the title of 18 U.S.C. § 1512, "Obstruction of Justice").

This case law "should be understood as signaling to courts that placement and caption choices within the Code should be respected and considered when they originate in the decisions of Congress, but not when those choices are the result of intervention by the office that codifies the United States Code." Daniel B. Listwa, Comment, *Uncovering the Codifier's Canon: How Codification Informs Interpretation*, 127 Yale L.J. 464, 467 (2017); *see also* Daniel B. Listwa & Adam Flaherty, *Interpreting Code*, 61 Harv. J. on Legis. Online 69 (2024) (differentiating the import of captions drafted and passed by Congress from those added outside of

the legislative process by the unelected codifiers of the U.S. Code). Section 7112's title plays an integral interpretive role because, rather than being added by unelected codifiers of the U.S. Code, it was adopted explicitly by Congress along with changes to the statutory text.

Section 7112's title—"Expedited treatment of certain claims"— conveys a single purpose: expedited treatment. The claims identified under its umbrella include "remanded claims" and "claims involving military sexual trauma." 38 U.S.C. § 7112(a)-(b). The plain and most straightforward reading of the statute is therefore that "certain claims" introduces a two-part list providing expedited treatment for both remanded claims and claims involving MST, each of which Congress deemed deserving of expedited adjudication.

By changing § 7112's title, Congress conveyed unambiguously that MST claims were part of those "certain claims" that should be given expedited treatment. The Veterans Court acknowledged that "the section heading can only be read as covering all the types of claims identified in section 7112," yet insisted on ignoring the clear structure of the statute and its headings to find that "certain claims" only applied to subsection

18

(a) of the statute. *See* Appx6. Had Congress intended to expedite only remanded claims, it need not have changed the § 7112 title *at all*. The section heading *had* explicitly limited expedited treatment to remanded claims ("Expedited treatment of remanded claims")—before Congress voted on the following provision in the Dignity for MST Survivors Act:

> << 38 USCA § 7112 >>
> (A) SECTION HEADING.—The heading of such section is amended by striking "remanded" and inserting "certain".

Pub. L. No. 117-300, § 2, 136 Stat. 4379, 4380 (2022). The House of Representatives approved this revised heading by a vote of 405 to 12, while the Senate accepted it unanimously without modification. *Id.* Just one intention behind the change is plausible: to ensure the umbrella of expedited treatment encompasses claims involving MST.[3]

---

[3] The Veterans Court also erred in disregarding the section heading on the grounds that headings cannot confer a meaning at odds with or absent from the statutory text and finding that no language within § 7112 supported expedited adjudication of MST cases. Appx6. As noted, because Congress passed the heading, it constitutes a part of the statutory text, *see supra* p. 17, and directs expedited adjudication of MST cases. Further, the section heading is in no way contrary to the remaining statutory text: it is not at odds with the remainder of § 7112 which

In addition, the Veterans Court erroneously interpreted § 7112(b) outside of its statutory context. Appx7. The unambiguous meaning of § 7112(b) must be determined in context with subsection § 7112(a)'s command that "[t]he Secretary shall . . . provide for the expeditious treatment by the Board . . . ." *See BASR P'ship v. United States*, 795 F.3d 1338, 1343 (Fed. Cir. 2015) (emphasizing that "we cannot determine the meaning of the statutory language without examining that language in light of its place in the statutory scheme"). "Where, as here, Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations." *Nijhawan v. Holder*, 557 U.S. 29, 39 (2009). Section 7112(b) must be interpreted "in connection with the whole statute 'and the objects and policy of the law, as indicated by its various provisions [to] give it such

---

provides for special treatment for both remanded claims and MST-related covered cases, *see* Appx8 ("MST claims carry special significance"), nor even with § 7107(b), which allows for advancement on the docket for "other sufficient cause shown."

20

construction as will carry into execution the will of the legislature.'" *Am. Airlines, Inc. v. Austin*, 75 F.3d 1535, 1539 (Fed. Cir. 1996) (quoting *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974)).

Given the statutory scheme, subsections (a) and (b) must be read such that "the Secretary . . . shall provide for the expeditious treatment by the Board" of either "any claim that is remanded" or "claims involving military sexual trauma." *Id.* § 7112(a)-(b). Subsection (a)'s provision of expeditious treatment for claims "remanded to the Secretary by the Court of Appeals for Veterans Claims" does not restrict expeditious treatment by the Board to remanded claims only, as the Veterans Court assumed. Appx7. Rather, the immediately subsequent language of subsection (b), "Claims Involving Military Sexual Trauma," adds a category of claims to be expedited. Because the subsections are placed adjacent to one another and share "similar structures," identifying a subcategory of claims and directing "expeditious" and "prompt" action to be taken by the Board, they must be read together to "carry into execution the will of the legislature" to expedite both remanded and MST claims. *See United*

21

*States v. Atl. Rsch. Corp.*, 551 U.S. 128, 135 (2007); *Am. Airlines, Inc.*, 75 F.3d at 1539.

The Veterans Court erred in concluding that Congress did not envision expedited treatment of MST-related covered cases by looking to differences in phrasing between subsections (a) and (b), namely subsection (a)'s command of "expeditious treatment" of remanded cases as opposed to subsection (b)'s command of "prompt determination" of whether a case is a "covered case." *See* Appx7. Because Congress simultaneously passed the section heading change along with the addition of subsection (b), the Veterans Court was wrong to assume that any distinction in the language of subsections (a) and (b) could have meant that Congress intended for covered MST cases *not* to receive expedited treatment.

The Veterans Court also incorrectly drew an unsupported inference from the presumption of Congress's awareness of judicial precedent regarding § 7112 at the time it enacted its changes. *Id.* Had Congress been aware of the Veterans Court's precedent requiring expedited treatment for remanded claims prior to enacting subsection (b), *see id.*

22

(citing *Harvey v. Shinseki,* 24 Vet. App. 284, 288-91 (2011)), this would better support the inference that, by adding a category of claims to the *same* statutory section and amending and expanding its title, Congress reasonably intended such claims to also receive expedited adjudication.

 *iii.* *The only plausible interpretation of § 7112(b) provides for expedited treatment*

The only plausible interpretation of § 7112(b) is that it mandates expedited treatment of the entirety of a "covered case." The plain meaning of a statute is unambiguous even where there may be alternative interpretations proffered if there is only one plausible interpretation. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 531-32 (2013) (holding that where only one of two interpretations of 17 U.S.C. § 109(a) produced a reasonable result, there was only one plausible interpretation of the text); *see also Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020) (disregarding an alternative interpretation of Title VII as implausible); *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1998) (the meaning of a provision is clear when "only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law").

23

To interpret § 7112(b) to command *only* that the Board promptly determine whether a NOD is a covered case, as the Veterans Court mistakenly did, is implausible as it would require the Board to promptly make a determination to no further end or purpose—a nonsensical result that Congress could not have intended. *See* Appx8.[4] Subsection (b) reads that the Board "shall promptly determine whether a notice of disagreement filed with the Board is a covered case." 38 U.S.C. § 7112(b). Subsection (c)(1) then defines the terms "covered case" and "military sexual trauma." *Id.* § 7112(c). But the term "covered case" appears nowhere else in Title 38, the section of the U.S. Code concerning veterans' benefits.[5] Thus, the action triggered by the covered case determination must fall under § 7112's mandate to expedite.

---

[4] VA violated even its own interpretation of the statute. As noted by the dissent, "[t]he Board's 'prompt' determination was made at least 21 months after the statute required it (and responded to an NOD at least 33 months old)." Appx20.

[5] This section can also be understood by analogy to the structure of another MST-related statute in the same title. In 38 U.S.C. § 1166, Congress mandates a similarly structured process for providing a different kind of statutory benefit to MST survivors: specialized MST

Further, a "covered case" determination does not trigger any additional statutorily mandated procedural protections for MST claimants. The Veterans Court erred in suggesting that such a determination would implicate the training provision in § 7102(c), Appx8, as that provision has no "covered case" trigger, and applies to all proceedings concerning claims for MST-related compensation, in contrast to § 7112(c)'s "covered case" restriction to proceedings in which an appellant has requested a hearing. *See infra* pp. 30-31.

The Veterans Court also failed to adequately consider the broader statutory scheme in its interpretation. Appx8. Subsection (b) cannot plausibly be interpreted to require the Board to merely identify a covered case, because *no* substantive effect would flow from subsections (b) and

---

coordinators and "peer support specialists" for survivors at local Veterans Health Administration (VHA) facilities. *Id.* §§ 1166(a), (b). As in § 7112, the statute lists services to be provided to a specific category of claims—here, for claims related to "covered mental health conditions"—and then defines the meaning of that category within the Section. *See id.* §§ 1166(d), 7112(c). Both statutes define the category of claims they cover and list the extra processes owed to claimants at local VA offices raising such claims. §§ 1166, 7112. Neither determination entitles the claimant to benefits defined outside of the bounds of the specific statute. *Id.*

(c) in the absence of (a)'s demand that the Board "provide for the expeditious treatment" of the case. *Id.* § 7112(a). Reading subsection (b) not to mandate expedited treatment for "covered" cases that involve MST would render it devoid of substantive effect and out of step with the rest of the statute, and thereby implausible. *See United Savs. Ass'n*, 484 U.S. at 371.

---

This statute clearly and unambiguously requires the Board to expedite treatment of claims related to MST. As the dissent below recognized, "Congress said what it meant and meant what it said when it wrote that MST claims get expedited treatment . . . and [this Court] should be acting on [its] independent judgment to order expedited treatment of Ms. Wiggins's MST claims." Appx17 (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)).

B. **In the alternative, canons of statutory interpretation clarify that § 7112 mandates expedited review**

Even if this Court were to read § 7112 as ambiguous, interpretive tools demonstrate that Congress directed VA to expedite adjudication of MST claims by veterans like Ms. Wiggins. Ambiguity, or the existence of

26

"interpretive doubt," triggers the canons of statutory interpretation which help clarify the text's meaning. *Cf. Brown v. Gardner*, 513 U.S. 115, 117-18 (1994). As applied to § 7112, the canons—including the rule against surplusage, the presumption of meaningful variation, and the pro-veteran canon, as well as a reading of legislative history—clarify that the statute can mean only one thing: VA must expedite any appeal that meets the "covered case" determination.

*i. Section 7112(b)'s "covered case" determination must not be superfluous*

The Supreme Court has long instructed that courts should "give effect, if possible, to every clause and word of a statute." *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883); *see TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (collecting cases); *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (noting that a statute "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (quoting 2A Norman J. Singer, *Statutes and Statutory Construction* § 46.06, 181-86 (rev. 6th ed. 2000)).

Here, the rule against surplusage leans heavily in favor of interpreting § 7112 as mandating expedited treatment because such an

27

interpretation avoids rendering subsections (b) and (c) inoperative and pointless. Further, a construction such as the Veterans Court's that fails to read § 7112(b) as mandating expedited treatment for MST claims violates the prohibition on superfluities because it renders the congressionally adopted title change superfluous. As discussed above, Congress amended the title of § 7112 from "Expedited treatment of *remanded* claims" to "Expedited treatment of *certain* claims" at the same time it added subsections (b) and (c) to the text. *See supra* pp. 16-18. The title, therefore, has the same authority as the changes to the section language. *Cf.* Listwa & Flaherty, *supra* at 69, 76.

The Veterans Court's reading of § 7112(b) as not requiring expedited treatment renders the change to the title superfluous, ignores Congress's unmistakable signal that MST survivors' claims are among the "certain claims" deserving prompt resolution, and violates courts' "duty" not to construe any "clause, sentence, or word" as "superfluous, void, or insignificant." *HMTX Indus. LLC v. United States*, 156 F.4th 1236, 1253 (Fed. Cir. 2025) (internal citations omitted).

*ii. Under the canon of meaningful variation, § 7112(b) cannot be read to trigger alternative treatment for MST survivors*

Nor is it plausible to avoid the surplusage problem by reading § 7112(b) to mandate that "covered cases" receive the specific treatment afforded by other MST-related provisions in Title 38. The presumption of meaningful variation canon encourages courts to interpret deliberate variation in statutory language, particularly within a shared adjudicatory scheme, as reflecting a deliberate difference in purpose. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018). The canon relies on comparisons between similar provisions to give meaningful effect to their differences. *W. Va. Univ. Hosps. Inc. v. Casey*, 499 U.S. 83, 101 (1991) (noting that the judicial function is not to "treat alike subjects that different Congresses have chosen to treat differently").

Applying the meaningful-variation canon shows that the cases "covered" under this statute are not equivalent to the cases that fall under other MST-related statutes. *See, e.g.*, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012) ("[W]here [a] document has used one term in one place, and a materially different term in another, the presumption is that the different term

denotes a different idea."). Because Congress defined the categories of claims covered in the MST-related statutes differently, this Court must interpret the purposes of the statutes to be different as well.

Any argument that § 7112(b) mandates a covered case determination to apply one of the other MST-related statutes fails, as § 7112 defines "covered case" differently from the proceedings and claims covered by the other statutes. *See* 38 U.S.C. §§ 7112, 7102, 1166. Congress took a whole-of-government approach to providing swift and comprehensive support for MST survivors and enacted numerous statutes to provide various remedies for MST-survivor claimants. *See* 38 U.S.C. § 7112 (expedited treatment for certain claims at the Board); *id.* § 7102 (assignment of specially trained Board members); *id.* § 1166 (specialized support and processing for MST claims related to mental health concerns at local VHA offices). But these statutes cover different categories of proceedings and claims and employ different language in so doing. The Court should "refrain from concluding here that the differing language in the . . . subsections has the same meaning in each." *Russello v. United States*, 464 U.S. 16, 23 (1983). Instead, the Court must interpret

§ 7112(b)'s "covered cases" to mean something different than the other MST-related statutes in Title 38.

First, § 7112(b)'s "covered cases" are narrower and not equivalent to § 7102(c)'s subset of proceedings concerning MST claims, contrary to the Veterans Court's erroneous suggestion. *See* Appx8 n.6. Section 7102, which requires assignment of a specially trained Board member or panel in proceedings for claims involving MST, applies to proceedings in any of the three lanes for Board review,[6] including during direct review, evidence submissions, and hearings. *See* 38 U.S.C. § 7102(c)(1)-(2) (covering "proceedings that concern a claim for compensation based on military sexual trauma"). Section 7112, by contrast, more narrowly applies only to claims in the hearing lane. *Id.* § 7112(c)(1). Had Ms.

---

[6] Congress created three avenues for appealing a claims denial to the Board: direct review, which closes the administrative record and provides for Board review of the existing record for error; evidence submission, which allows the claimant to submit additional written evidence before a Board review adjudication; and hearing, which allows the claimant to present argument and testimony before the Board. Appeals Modernization Act, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017); Nat'l Veterans Legal Servs. Program, *Veterans Benefits Manual*, § 13.2.3 (2025).

Wiggins opted for direct review, her case would have triggered § 7102's mandate that it be reviewed by Board members trained on MST, but it would not have triggered § 7112's "covered case" determination. Because the two triggering conditions are defined differently, the presumption of meaningful variation demonstrates they are not equivalent.

Similarly, the MST-support services listed in § 1166 apply to the processing of compensation claims in the first instance by a local VA office, whereas § 7112's covered cases are limited to Board appeals. Section 1166 provides for specialized claim processing teams, a peer support specialist, and referrals to a VHA MST coordinator for any "claims for compensation for a covered mental health condition based on military sexual trauma." 38 U.S.C. § 1166. These protections apply during processing by a VA regional office of a claim for compensation— long before a veteran can appeal their initial rating decision, as Ms. Wiggins has.

And even if the protections provided by § 1166 were read to cover the entire claims process, including appeals, they apply only to the sub-category of MST claimants requesting compensation for a covered mental

health condition. *Id.* Had Ms. Wiggins appealed a rating decision for a physical disability related to MST, she would not receive the support services outlined in § 1166. She would, however, still meet the "covered case" definition in § 7112. Congress's delineations between the specific protections afforded to particular categories of MST claimants reflect its deliberate judgment that the sections serve different purposes. Thus, the surplusage problem in interpreting § 7112(b) as requiring only a determination that cases are "covered" is not resolved by looking to the other MST-related statutes, which apply to different categories of claims.

    iii.    *The pro-veteran canon requires reading any ambiguity in § 7112 in Ms. Wiggins's favor*

Courts have long construed veterans' benefits statutes liberally so as "to protect those who have been obliged to drop their own affairs to take up the burdens of the nation," recognizing that when Congress fails to speak with perfect clarity when expressing gratitude for veterans' sacrifices, the benefit of the doubt belongs to the veteran, not the government. *Boone v. Lightner*, 319 U.S. 561, 575 (1943). Should any ambiguity remain in § 7112, the pro-veteran canon "resolve[s] any doubt in [the veteran's] favor." *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of*

*Veterans Affs.*, 48 F.4th 1307, 1317 (Fed. Cir. 2022); *see also Rudisill v. McDonough*, 601 U.S. 294, 314 (2024). Even where the government's interpretation of a statute is plausible, "it would be appropriate under the pro-veteran canon *only if* the . . . language *unambiguously* support[s] the government's interpretation." *Nat'l Org. of Veterans' Advocs., Inc.,* 48 F.4th at 1317. (alterations adopted) (emphases added). Here, even if the statute is read as ambiguous, the pro-veteran canon resolves any doubt or ambiguity in Ms. Wiggins's favor.[7]

The pro-veteran canon, like other substantive canons of statutory construction, is founded on "important background norms derived from the Constitution, common-law practices, or policies related to particular

---

[7] The Veterans Court attempted to dodge the pro-veteran canon by claiming that there was no language in subsection (b) relating to expeditious adjudication or advancement. Appx8. But as that court had already noted, § 7112's heading is at least enough to suggest that it be read to cover all the types of claims identified within the section. Appx6. Given that Congress enacted the heading and so it cannot be disregarded, *see supra* p. 17, and must be read to avoid an implausible meaning or surplusage, *see supra* pp. 27-33, § 7112 does not *unambiguously* support the Veterans Court's interpretation. Assuming, therefore, at least this measure of ambiguity, the pro-veteran canon should resolve the interpretive question in Ms. Wiggins's favor.

subject areas." Anita S. Krishnakumar, *Reconsidering Substantive Canons*, 84 U. Chi. L. Rev. 825, 833 (2017). The practice of resolving close questions in the veteran's favor dates to at least the post-Civil War era, *see Bufkin v. Collins*, 604 U.S. 369, 373 (2025), and the interpretive canon has been explicitly accepted for at least seventy years. *See Henderson v. Shinseki*, 562 U.S. 428, 441 (2011) (tracing the pro-veteran canon to the 1940s).

The canon continues to carry interpretive power today. The Supreme Court has explicitly upheld the determinative power of the pro-veteran canon—going out of its way to say that "[i]f the statute were ambiguous, the pro-veteran canon would favor [the veteran]"—even in a case where the statute in question was unambiguous, and the Court need not have discussed the canon. *See Rudisill*, 601 U.S. at 314.

Applying the pro-veteran canon in Ms. Wiggins's favor is not simply a matter of adhering to generations of precedent, but also to congressional intent. Because courts "presume Congress legislates with the knowledge of judicial canons of statutory construction," *Procopio v. Wilkie*, 913 F.3d 1371, 1384 (Fed. Cir. 2019) (O'Malley, J., concurring), it

can be presumed that Congress passed § 7112 with the understanding and intent that any future interpretive questions would be answered in favor of veterans such as Ms. Wiggins.

Resolving in Ms. Wiggins's favor also aligns with a host of congressional policy choices. Congress designed VA's adjudicatory process to function "with a high degree of informality and solicitude for the claimant." *Henderson*, 562 U.S. at 431 (internal quotations omitted). For example, there is no statute of limitations for VA benefits claims. *Bufkin*, 604 U.S. at 373. The processes at the regional offices and the Board are *ex parte* and non-adversarial. *Id.* at 373; 38 C.F.R. §§ 3.103(a), 20.700(c). And VA must actively assist the veteran in developing their claims. *Bufkin*, 604 U.S. at 373; 38 U.S.C. § 5103A(a)(1). Congress has built an entire statutory scheme geared toward resolving doubts in favor of veterans. *Bufkin*, 604 U.S. at 373; 38 U.S.C. § 5107(b).

It would therefore be anomalous—and misaligned with Congress's intent and policy choices—to resolve any doubt here in favor of the government, instead of the veteran. In doing so, the Veterans Court

36

unfairly narrowed a remedial statute and disregarded the moral obligation at the heart of the veterans' benefits system.

iv. *The legislative history of § 7112(b) supports reading the statute as directing expedited treatment*

The goal of statutory interpretation is to interpret text as "what Congress intended that [provision] to mean when it enacted that statute." *Pugin*, 599 U.S. at 611 (Jackson, J., concurring). In § 7112(b), Congress intended to move MST survivors waiting in the hearing lane, the notoriously longest line for review,[8] to a different line—the expedited claims queue—for quicker resolution of their claims.[9] This intent was

---

[8] Congress's singling out claims in the hearing lane for expedited treatment makes sense in light of the unreasonably long wait times for such claims. Of the three lanes for BVA review, the hearing option has the longest average wait time of 1,206 days between filing of NOD and decision. Average wait times between NOD and decision in the direct review and evidence submission lanes are 727 days and 1,052 days, respectively. Nat'l Veterans Legal Servs. Program, *Veterans Benefits Manual*, § 13.2.3 (2025).

[9] The Veterans Court erred in finding a signal of congressional intent in the fact that Congress did not amend § 7107 to include MST claims or cross-reference § 7112. Appx7. First, as already noted by the Veterans Court, claims remanded to the Board are entitled to expedited treatment under § 7112, *see id.* (citing *Harvey,* 24 Vet. App. 288-91), despite not

well-recognized. *See* 168 CONG. REC. H5108 (daily ed. May 18, 2022) (statement of Rep. Takano) ("BVA has proven . . . ill-equipped to deal with appeals of denied MST claims," and "[w]hile the VA has taken steps in the right direction, more must be done to improve the claims appeal experience, show compassion, and safeguard the dignity of MST survivors.").

Further, this statute was enacted alongside other MST-related bills, evincing a broad congressional effort that lasted over a decade to overhaul MST response not only within VA, but also within the Department of Defense. *See, e.g., Healing the Wounds: Evaluating Military Sexual Trauma Issues: Hearing Before the Subcomm. on Disability Assistance & Memorial Affs. and the Subcomm. on Health of the H. Comm. on Veterans' Affs.*, 111th Cong. (2010); Pub. L. No. 116-283, § 538, 134 Stat. 3388 (adding a statutory note on "Coordination of

---

being cross-referenced or explicitly listed in § 7107(b)'s exceptions. Second, although it might sometimes be proper to read congressional silence or inaction as relevant, *see Ziglar v. Abbasi*, 582 U.S. 120, 144 (2017), here Congress *did* speak. Specifically, Congress amended § 7112 to add subsection (b) and amended the section heading so as to move MST claims into the expedited claims queue.

Support for Survivors of Sexual Trauma" requiring cooperation between the Department of Defense and VA).

Due to this broad and long-lasting congressional effort, by the time the bill was introduced, legislative debate around this specific bill was unsurprisingly brief, as MST-related topics had been well covered. *See* 168 CONG. REC. H5107-01 (daily ed. May 18, 2022) (statement of Rep. Mrvan). Further, legislative changes designed to assist MST survivors were uncontroversial and received broad support, as evidenced by the bill's unanimous passage by the Senate, and near-unanimous passage by the House. Pub. L. No. 117-300, 136 Stat. 4379 (Dec. 27, 2022); 168 CONG. REC. S7302-06 (daily ed. Dec. 19, 2022).[10] In light of the context and history of this unopposed MST-related legislation, § 7112(b) should be interpreted as providing an entitlement to expedited treatment.

---

[10] Only twelve Representatives voted against the bill. 168 CONG. REC. H5142.

Taken together, the Court's longstanding interpretive principles confirm that § 7112(b) mandates that the Secretary expedite MST-related claims that qualify as a covered case, such as Ms. Wiggins's.

## III. Mandamus Is Warranted

Courts apply the *Cheney* factors in assessing whether a writ is warranted, namely, whether the following exist: (1) a clear and indisputable right to the writ; (2) a lack of adequate alternative means to obtain the desired relief; and (3) compelling circumstances that warrant issuance of the writ. 542 U.S. 367, 380-81 (2004). Petitioners have a clear and indisputable right to a writ of mandamus where they can show VA either unlawfully withheld or unreasonably delayed agency action. *See* 38 U.S.C. § 7261(a)(2); *Babb v. McDonough,* No. 2024-1182, 2024 WL 2873785, at *2 (Fed. Cir. June 7, 2024).

### A. Ms. Wiggins has a clear and indisputable right to a writ because VA unlawfully withheld expedited treatment

Mandamus is the appropriate remedy for "compelling action . . . unlawfully withheld . . ." *Wright v. Wilkie*, 839 F. App'x 466, 468 (Fed. Cir. 2020); *see also id.* ("Together, [38 U.S.C. § 7261(a)(2) and the All Writs Act] give the Veterans Court power to issue writs of

mandamus when the Secretary is unlawfully withholding a veteran's benefits."); *Heller v. McDonough*, 38 Vet. App. 75, 84 (2024) (holding that mandamus is the appropriate remedy for "compelling action unlawfully withheld or unreasonably delayed"). Agency action is unlawfully withheld when "an agency [has] failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Here, Ms. Wiggins has a clear and indisputable right to mandamus because VA categorically refused to expedite her case, despite a statutory mandate that it do so. *See supra* Section II; Appx201-02; 38 U.S.C. § 7112. Because the Veterans Court misinterpreted § 7112 in concluding that it does not compel expedited treatment of MST-related claims, it also erred in failing to recognize Ms. Wiggins's right to a writ.

## B. Ms. Wiggins has a clear and indisputable right to a writ due to VA's unreasonable delay

Even if Ms. Wiggins's right to mandamus were not clear under § 7112, she would still be entitled to a writ due to VA's unreasonable delay in adjudicating her appeal. It is well established in this Court that "[m]andamus is . . . an appropriate procedural vehicle to address claims

of unreasonable delay." *Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018). Congress has instructed the Veterans Court to "resolve claims of unreasonable delay . . . in order to protect its future jurisdiction," even when the Board has not reached a final decision on the merits. *Id.* (quoting *TRAC*, 750 F.2d at 76); *see also* 38 U.S.C. § 7261(a)(2).

To determine when a delay is unreasonable, this Court requires that the Veterans Court assess the six *TRAC* factors:

(1) the time agencies take to make decisions must be governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find 'any impropriety lurking behind agency lassitude' in order to hold that agency action is unreasonably delayed.

*Martin*, 891 F.3d at 1344-45 (citing *TRAC*, 750 F.2d at 80); *see also Mote v. Wilkie*, 976 F.3d 1337, 1344 (Fed. Cir. 2020).

The Veterans Court misinterpreted the *TRAC* factors in holding that VA's delay in adjudicating Ms. Wiggins's appeal was not unreasonable. By waiting over four years without deciding Ms. Wiggins's claim, despite a clear congressional command that the agency act with speed and care toward MST claimants, VA has unreasonably delayed its duty to adjudicate her claim.[11]

---

[11] As the dissent concluded, "[t]he time the Board took to determine whether Ms. Wiggins's claims concerned MST and included a hearing request, warranting expedited treatment . . . was completely unreasonable." Appx20.

*i. The Veterans Court ignored the congressional timetable for "covered cases" in § 7112(b)*

The second *TRAC* factor is the proper starting point for the Court because of the centrality of the congressional timetable to the *TRAC* analysis here. First, the lengthy delay Ms. Wiggins has experienced contravenes Congress's "statutory instruction" in § 7112 that cases such as Ms. Wiggins's should receive "expedited treatment." *Martin*, 891 F.3d at 1343 (citing § 7112). Where Congress has issued such an instruction, "it is possible that even a small delay in adjudication may be deemed unreasonable depending on how the remaining *TRAC* factors play out." Appx5. In addition, the second factor also may be tied in with the first factor where Congress's timetable "may 'supply content' for the rule of reason." *Martin*, 891 F.3d at 1345 (quoting *TRAC*, 750 F.2d at 80).

The Veterans Court misapplied the second *TRAC* factor by misconstruing § 7112(b)'s mandate that VA provide expedited treatment to "covered cases." Rather than applying § 7112(b), the court relied only

44

on § 7107(a) to supply "a timetable or other indication of speed."[12] *Martin*, 891 F.3d at 1345. The court concluded that "the only action required by 7112(b) is for the Board to 'determine' whether a case involves MST." Appx8. But as discussed above, *supra* Section II.A, that interpretation of the statute would require the Board to make a determination with no consequence. A prompt "covered case" determination serves no purpose if no follow-on action is required.

Congress surely did not require a pointless determination. Instead, in enacting 38 U.S.C. § 7112(b), it created a clear mandate requiring VA to review covered claims on an expedited basis. The Veterans Court, therefore, should have considered the Board's four-year delay in light of that statutory mandate—just as this Court required for remanded claims

---

[12] The Veterans Court notes, without mentioning § 7112 directly, that "no statutory provision provides an express timetable for adjudication." Appx9. This does not appear to be a response to § 7112's mandate for expedited treatment but refers to the speed with which all appeals should be adjudicated. Moreover, the Veterans Court's analysis here considers only half of the second factor: the court should consider not only the "timetable" but "other indication of the speed with which it expects the agency to proceed in the enabling statute." *Martin*, 891 F.3d at 1344.

under § 7112 before the 2022 amendments added subsections (b) and (c). *See Martin*, 891 F.3d at 1346.

Whatever meaning "expedited" may take in § 7112(b), the statute must require that the Board process covered appeals more quickly than ordinary claims. The term "expedited" is left undefined in the section, but that does not mean it is bereft of meaning: a four-year delay for a benefits appeal is by no means expedited. While average wait times are not dispositive, a wait time *longer* than average cannot be considered "expedited."[13] Yet the Board "defied Congress's amendment of section 7112 to afford MST claims expedited treatment." Appx20.

Here, the Board has shelved Ms. Wiggins's claim for almost half a decade, exceeding the average wait time for a decision in the hearing

---

[13] Although the statute leaves "expedited treatment" undefined, Merriam-Webster's dictionary defines "expedite" as meaning either (1) "to accelerate the progress of: speed up," (2) "to execute promptly," or (3) to "issue, dispatch." The etymology of the word traces back to the Latin verb *expedire*, which means "to free from entanglement" or "to release (a person) especially from a confined position." As noted by the dissent, Cambridge defines expedite similarly as "to make something happen more quickly." Appx19 (quoting *Expedite*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY & THESAURUS, https://dictionary.cambridge.org/us/dictionary/english/expedite).

docket by more than a year, *see Decision Wait Times*, Bd. of Veterans' Appeals, https://department.va.gov/board-of-veterans-appeals/decision-wait-times, and overshooting VA's "goal" timeline by almost two years, *see Board Appeals*, U.S. Dep't Veterans Affs., https://www.va.gov/decision-reviews/board-appeal. That delay can by no means be considered "expedited." This second *TRAC* factor should therefore weigh heavily in favor of Ms. Wiggins and, under the majority's own account, provide decisive indication that VA's delay was unreasonable.

    ii.    *The Veterans Court failed to identify any rule of reason that governed VA's delay in adjudication*

The first *TRAC* factor "requir[es] that an agency's time to make decisions be governed by a 'rule of reason.'" *Mote*, 976 F.3d at 1345. This analysis "must, of course, look at the particular agency action for which unreasonable delay is alleged." *Martin,* 891 F.3d at 1346. It "should also consider whether delays are due to the agency's failure to perform certain ministerial tasks" or to "the VA's statutory duty to assist a claimant in developing her case." *Id.*

The Veterans Court did not conduct this required inquiry, instead concluding briefly that, because the Board adjudicated Ms. Wiggins's AOD motion, it had taken action. Appx9. In so doing, it committed three errors. First, it did not explain how ruling on Ms. Wiggins's AOD motion otherwise justified the four-year delay in adjudication of her appeal. Second, it failed to identify "whether the entire delay has been reasonable," instead improperly focusing on the more generalized presence of delay in the hearing lane. *See Mote*, 976 F.3d at 1345. Third, the Veterans Court failed to consider VA's neglect of its statutory duty to "promptly determine" whether an NOD is a covered case, which VA itself has admitted is a prerequisite to adjudication. Prior to Ms. Wiggins's petition, the Board had not taken any steps on her appeal since May 2022, and it was only after being twice ordered by the Veterans Court, and 21 months after § 7112(b) required it, that the Board determined Ms. Wiggins's appeal constituted a "covered case" under § 7112. VA's statutory duties cannot otherwise explain such inaction.

In other cases, courts have found VA deserves additional processing time, such as when it must issue hundreds of pages of decisions, perform

48

medical examinations, obtain evidence, or conduct hearings. *See, e.g.,
Monk v. Wilkie*, 32 Vet. App. 87, 103-04 (2019), *aff'd in part, dismissed in
part sub nom, Monk v. Tran*, 843 F. App'x 275 (Fed. Cir. 2021).

None of these justifications can excuse the prolonged delay of Ms.
Wiggins's appeal. The Board needs no additional evidence to adjudicate
her claim. This delay is rather the result of "complete inaction by the VA,"
with no reasonable explanation. *Martin*, 891 F.3d at 1346. VA's failure to
"promptly determine" whether Ms. Wiggins's appeal was a covered case
amounts to "the agency's failure to perform certain ministerial tasks." *Id.*
Given that the Secretary stated during oral argument before the
Veterans Court that a covered case determination was a prerequisite to
adjudication of Ms. Wiggins's appeal, VA all but acknowledged its
complete inaction for almost three years (from November 2021 to the
determination that the case was "covered" in August 2024). Appx211 at
28:19-48.

Additionally, the Veterans Court relied on a single, legally
insufficient justification for VA's delay: that Ms. Wiggins had requested
a hearing. Because VA's delay in adjudicating her case was consistent

with the average length of delay on the hearing track, the court found the delay reasonable.[14] But the court should have considered "whether the entire delay has been reasonable." *Mote*, 976 F.3d at 1345. This would entail consideration of "whether it was reasonable that the hearing had not already taken place" or "more generally, whether it was reasonable that after several years [Ms. Wiggins] had yet to receive a decision from the Board." *Id.* It did not do so.

Instead, the court concluded only that Ms. Wiggins's longer-than-average wait time did not show the absence of a rule of reason—an approach this Court has rejected. *See id.*; *see also Monk*, 32 Vet. App. at 102 (holding that the benchmark of "reasonableness" should not rely solely on average wait times). VA bore the burden of showing that the

_____

[14] In full, the majority opinion stated:
> Although the Board has not yet acted on the merits of her appeal, part of the delay is due to her initial choice to be included in the docket known to have the longest wait—those seeking a Board hearing. That her delay exceeds the average wait for appellants on that docket is not an indication of whether the Board, in her particular case, has proceeded without a rule of reason.

Appx9.

wait was reasonable given "the *particular agency action* for which unreasonable delay is alleged." *Martin*, 891 F.3d at 1345 (emphasis added). A statement that Ms. Wiggins requested a hearing and that wait times for hearings are generally longer is not sufficient.[15]

Ms. Wiggins's request for a hearing cannot possibly justify the delay. On the contrary, her request triggered her entitlement to a quicker than average adjudication, to include a prompt determination about whether her claim was a "covered case." The Veterans Court, however, inverted the statutory scheme. It treated her exercise of a statutory right that should have triggered special attention to her case as a reason to tolerate an even longer adjudication timeline.

Moreover, it would be unjust to conclude that Ms. Wiggins must waive her right to a hearing in order to receive consideration in a reasonable time. "The fundamental requirement of due process is the

_____

[15] Nor does the overburdened system outweigh evidence that the Board was indifferent to Ms. Wiggins's case. As Judge Jacquith explained in his dissent, "There undoubtedly is delay attributable to the overburdening of the system, but that cannot excuse the indicators of indifference to the law and to the veteran here." Appx20.

opportunity to be heard." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). But by denying Ms. Wiggins's claim to mandamus because she had requested a hearing, the effect of the Veterans Court's holding is that she was forced to forfeit her right to timely consideration in order to exercise her fundamental right to be heard.

Finally, the second *TRAC* factor "relates to the first factor, as 'a timetable or other indication of the speed with which [Congress] expects the agency to proceed' may 'supply content' for the rule of reason." *Martin*, 891 F.3d at 1345 (quoting *TRAC*, 750 F.2d at 80). The Veterans Court failed to incorporate Congress's mandate to "promptly determine" whether an NOD is a covered case and to provide expedited treatment. *See* 38 U.S.C. § 7112; *see also supra* Section II.A. Rather, the court concluded that VA's delay beyond its average processing time in Ms. Wiggins's appeal, without more, was insufficient to demonstrate that the Board had proceeded without a rule of reason. Appx9. But Ms. Wiggins had argued that her four-year wait meant VA failed the rule of reason test because it failed to adhere to a statutory mandate for expedited

treatment in § 7112(b), rather than § 7107(a)'s first-come, first-served model. *See* Appx30, 211 at 17:20-35.

  iii.  *The Veterans Court disregarded Ms. Wiggins's mental health conditions in assessing the prejudice of delay*

The Veterans Court rightly recognized that the third factor favors Ms. Wiggins, because "[v]eterans' disability claims always involve human health and welfare." *See* Appx10 (quoting *Martin*, 891 F.3d at 1346). However, it applied a standard inconsistent with its own precedent in its analysis of the nature and extent of the interests prejudiced by the delay. It also wholly ignored Ms. Wiggins's worsening and disabling service-connected mental health conditions, including her suicidal ideation.

The Veterans Court typically considers the fifth *TRAC* factor in conjunction with factor three and resolves both in favor of the veteran. *See Heller*, 38 Vet. App. at 86 (finding that factors three and five "typically weigh in favor of finding the alleged delay less tolerable"); *Redwood v. McDonough*, 37 Vet. App. 58, 64 (2023) ("[T]he third and fifth *TRAC* factors generally favor VA claimants."). The Veterans Court has found that factor five weighed in favor of the veteran without further analysis in almost every type of disability case. *See, e.g., Ford v.Collins*,

No. 25-8182, 2025 WL 3281685, at *3 (Vet. App. Nov. 25, 2025) ("Because '[v]eterans' disability claims always involve human health and welfare,' . . . [the third and fifth] factors weigh in [the claimant's] favor." (citation omitted)); *Davalos v. Collins*, No. 25-5076, 2025 WL 3043076, at *2 (Vet. App. Oct. 31, 2025) (same); *Gayudan v. Collins*, No. 24-9666, 2025 WL 2778558, at *2 (Vet. App. Sep. 30, 2025) (same).

Yet the Veterans Court applied a wholly different standard here, insisting that Ms. Wiggins marshal *additional* evidence of deterioration during the time of her delayed adjudication, a requirement inconsistent with prior judicial recognition and treatment of these factors as almost always favoring the veteran.

Moreover, the Veterans Court's decision was inconsistent with its own precedent recognizing suicidal ideation and financial insecurity as evidence of claims of "the nature and extent" that justifies finding unreasonable delay. *Heller*, 38 Vet. App. at 86. In *Heller*, a case cited by the majority, *see* Appx4, the Veterans Court previously found that the fifth factor should "typically weigh in favor of finding the alleged delay less tolerable," and that "severe suicidal ideation" should add weight to

54

that finding. 38 Vet. App. at 86. In other cases, the Veterans Court has found that demonstrating financial hardship and mental health issues is sufficient to show that factors three and five weigh in favor of the veteran. *See, e.g., Reese v. McDonough,* No. 22-2627, 2022 WL 10967998, at *4 (Vet. App. Oct. 19, 2022) (finding that "[t]hese two *TRAC* factors overlap and weigh in petitioner's favor," where a veteran described "mental health challenges and financial hardship," combined with "the toll of a long litigation history").

In contrast to its handling of comparable cases, the Veterans Court primarily focused on Ms. Wiggins's financial hardship and discounted her reports of suicidal ideation for having pre-dated 2022. Particularly troubling is its failure to account for her ongoing severe mental health symptoms,[16] especially in light of her well-documented recurrence of

---

[16] Many of Ms. Wiggins's filings to the Veterans Court highlighted the presence and severity of mental health struggles. *See* Appx32 ("Ms. Wiggins's PTSD, depression and anxiety—caused by the MST she experienced while serving—has been severely aggravated by her stressful financial situation, causing suicidal ideations. Even a negative Board decision would at least bring clarity to her circumstances."); Appx37 (providing Ms. Wiggins's twenty-one-page psychiatric report).

suicidal ideation—a problem pervasive among MST survivors. *See* Erika

N. Dugas, et al., *Recurrent Suicidal Ideation in Young Adults*, 106 Can.

J. Pub. Health (2015); Lindsey L. Monteith, *Identifying Factors*

*Associated With Suicidal Ideation and Suicide Attempts Following*

*Military Sexual Trauma*, 252 J. Affective Disorders 300 (2019).

Nevertheless, the Veterans Court found that these circumstances

did not "weigh heavily in favor of finding unreasonable delay." Appx10.

Instead, the court treated its perceived stability of Ms. Wiggins's

financial situation as evidence that her mental health was not

deteriorating. But factor five should favor Ms. Wiggins regardless of the

particularities of her disability claim, and her interests prejudiced by the

delay are of the "nature" the Veterans Court has found to be most

compelling, because they include severe and recurring mental health

concerns.[17]

---

[17] The "nature" test has been flexible in the past. The Veterans Court has found that the interests prejudiced by the delay are of the right "nature" where a veteran alleged delay in providing a dental exam, *Windsor v. Collins*, No. 25-0664, 2025 WL 1342281 (Vet. App. May 8, 2025). They

Finally, the Veterans Court erred in failing to consider MST when analyzing the "nature and extent" of the prejudiced interests. The Veterans Court mentioned MST only once in this section of its opinion, noting that MST "may lead to physical, mental, emotional, and readjustment issues," an acknowledgment from which no consequences followed in its analysis. Appx10. But the barrage of laws passed by Congress intended to help MST survivors access benefits indicates that these claims are of the character and extent that deserve special consideration. *See* VA Peer Support Enhancement for MST Survivors Act, Pub. L. No. 117-271, 136 Stat. 4179 (Dec. 27, 2022) (codified at 38 U.S.C. § 1166); Dignity for MST Survivors Act, Pub. L. No. 117-300, 136 Stat. 4379 (Dec. 27, 2022) (codified at 38 U.S.C. §§ 101, 1166, 7102, 7112); MST

---

have also found that the right "nature" in a case where the disabled veteran "passed away during [the] proceedings." *Gardner-Dickson v. Wilkie*, 33 Vet. App. 50 (2020). Thus, the court has used a low threshold in finding that the interests prejudiced by delay are sufficient for this factor to favor the veteran.

Claims Coordination Act, Pub. L. No. 117-303, 136 Stat. 4387 (Dec. 27, 2022) (codified at 38 U.S.C. § 1166).[18]

The Veterans Court's failure to consider MST when looking at "the effect of a delay on a particular veteran" is a failure to fully consider the "nature" of Ms. Wiggins's interests. *Martin*, 891 F.3d at 1347. For Ms. Wiggins, an MST claimant who has provided evidence of her mental health concerns and her financial instability, the nature and extent of her interests prejudiced by the delay strongly favor a finding of unreasonable delay.

    iv.    *The Veterans Court disregarded § 7112(b)'s impact on Congress's intended division of agency resources*

The Veterans Court erred by failing to recognize that Congress, via § 7112(b), intended that agency resources be directed to effectuate improved experiences for MST survivors in the veterans' benefits system. Factor four requires the court to "consider the effect of expediting delayed

---

[18] Indeed, this Court has previously recognized VA's increased efforts to improve its adjudication of MST claims, noting the "growing recognition of the pervasive and continuing problem of sexual abuse in the military and the often severe effects it can have." *Serv. Women's Action Network v. Sec. of Veterans Affairs*, 815 F.3d 1369, 1372 (Fed. Cir. 2016).

action on agency activities of a higher or competing priority." *Heller*, 38 Vet. App. at 86. In analyzing Ms. Wiggins's case, the Veterans Court summarily dismissed this factor on the basis that expediting Ms. Wiggins's case would violate VA's first-come, first-served queueing process and would "result in no more than line-jumping." Appx11 (quoting *Ebanks v. Shulkin*, 877 F.3d 1037, 1040 (Fed. Cir. 2017)). It further held that "the Board's duty to generally decide appeals on a first come, first served basis . . . is not affected by section 7112(b)." *Id.*

Section 7112, however, does not allow MST claimants to "jump" the § 7107(a) line. Instead, it functions similarly to a TSA PreCheck line, routing MST claimants to the back of a separate, faster Board queue for expedited claims, which includes remanded claims, appeals for which an AOD motion has been granted, and MST claims. The Veterans Court ignored that Congress can—and did—create this alternative path to change the order and manner by which claims are adjudicated. The addition of § 7112(b) and amendment to the section heading revised the statutory scheme, demonstrating that Congress intended to prioritize MST-related cases.

The court similarly ignored that in enacting § 7112(b), Congress intended to change the allocation of agency resources. The Veterans Court has considered what "Congress [has] indicated may warrant earlier consideration and determination" as evidence that the allocation of resources to the case at hand is appropriate in finding that factor four weighs in favor of the veteran. *Heller*, 38 Vet. App. at 86 (finding that Congress would permit advancing the veteran's case because there was a statute permitting advancement for the seriously ill or those with severe financial hardship). Congress gave similar "indications" that certain cases warrant earlier consideration by passing § 7112(b).

As in *Heller*, the fact that Congress passed a statute directing the court to consider MST-related cases specifically—and to provide expedited treatment—should be read to indicate that Congress intended to affect the allocation of VA resources. If Congress intended § 7112(b) to have any effect—which, as a matter of statutory construction, courts assume they did—they also intended to guide the allocation of VA's resources. The Board, as noted by the dissent, "ignored Congressional action making Agency attention to MST claims a high priority." Appx20.

---

Had the Veterans Court properly interpreted and applied the *TRAC* factors, it would have found unreasonable delay. That finding, in turn, would have confirmed Ms. Wiggins's clear and indisputable right to mandamus relief.

**C.    The Veterans Court erred in finding an adequate alternative to mandamus in this case**

Courts must be satisfied that petitioners lack adequate alternative means of relief before issuing a writ. *See Cheney*, 542 U.S. at 380-81. This limit is designed to ensure that mandamus "will not be used as a substitute for the regular appeals process," *id.*, and "should be resorted to only where appeal is a clearly inadequate remedy." *Ex parte Fahey*, 332 U.S. 258, 260 (1947).

Here, in assessing the adequacy of alternative means to obtain expedited review of Ms. Wiggins's appeal, the Veterans Court failed to consider the "relevant factors," a clear abuse of discretion. *See Citizens to*

*Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).[19] These factors include: whether the right can be vindicated through appeal, whether the alternative provides substantially similar relief to that sought in the mandamus petition, and whether the alternative is futile or illusory. *See generally N. States Power Co. v. United States*, 224 F.3d 1361, 1366 (Fed. Cir. 2000). In addition, the Veterans Court erred by misconstruing the grounds upon which Ms. Wiggins's claim rested, and thus concluded she had avenues for relief that are in fact unavailable.

    i.    *The Veterans Court failed to consider the unavailability of appeal to achieve Ms. Wiggins's desired result*

Ms. Wiggins is unable to vindicate the denial of her AOD motion or remedy the unreasonable delay through appeal. *See In re Princo Corp.,*

---

[19] *Overton Park* describes the APA standards for abuse-of-discretion review. 401 U.S. at 416. While review of Veterans Court decisions relies on the organic statute, 38 U.S.C. § 7261, this Court has recognized that § 7261's provisions are "materially identical" to provisions in the APA, and has used APA-related precedent in reviewing Veterans Court decisions. *See, e.g., Taylor v. McDonough*, 71 F.4th 909, 943 (Fed. Cir. 2023). Here, the standard of review is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 38 U.S.C. § 7261(d)(1)(A), which is identical to 5 U.S.C. § 706(2)(A), the standard under consideration in *Overton Park*, 401 U.S. at 416.

478 F.3d 1345, 1357 (Fed. Cir. 2007). In *Heller*, the Veterans Court held that its jurisdictional statute barred appellate review of AOD denials. 38 Vet. App. at 84 ("[W]e find that an AOD denial is not a final Board decision. This means that it can't be fixed with an appeal."). Thus, like Mr. Heller, Ms. Wiggins's only opportunity for relief is mandamus. *Id.* at 87 ("With no likelihood of success at the Board, and an AOD appeal off the table, we find that Mr. Heller has shown he lacks adequate alternate means to have his case decided more quickly.").

> ii.  *The Veterans Court failed to evaluate the futility of continuing to seek relief through VA*

Rather than asking whether a petitioner may submit additional evidence or make additional requests to an agency denying a right or entitlement, the relevant question is whether future submissions would be "fruitless" or futile. *See Erspamer v. Derwinski*, 1 Vet. App. 3, 11 (1990). In finding that alternative means were available via another motion to the Board, in light of the Board's unsupported statement that it would be "willing to consider" another motion, the Veterans Court failed to consider the futility of such a motion. *See* Appx12.

First, it would be futile to submit further evidence of the exact same hardship factors that VA previously rejected. VA's denial of her March 2022 AOD request did not meaningfully engage with Ms. Wiggins's evidence of financial and psychological hardship and omitted any mention of her evidence of recent homelessness or suicidal ideation. Appx194. The evidence Ms. Wiggins submitted *already* provided "sufficient cause" to justify expedited treatment. *See* 38 U.S.C. § 7107(b)(3)(C); 38 C.F.R. § 20.800(c)(1).

Second, the prospect that a claimant may submit additional evidence for reconsideration of a denied AOD request does not, as a matter of law, constitute an adequate alternative. As in *Heller*, where the Board denied advancement with "conclusory response[s]" that failed to address the veteran's risk of suicide, Ms. Wiggins, too, lacks a "likelihood of success at the Board," which has already demonstrated its disinterest in seriously evaluating her worsening mental health conditions or

64

financial need. 38 Vet. App. at 79, 87.[20] Should Ms. Wiggins provide additional evidence of her financial insecurity and mental health struggles, she would have "no reasonable expectation that [such additional evidence] would . . . produce[] a different result." *In re TS Tech United States Corp.*, 551 F.3d 1315, 1322 (Fed. Cir. 2008).

Third, the Veterans Court also failed to consider that a renewed motion more squarely focused on MST-induced trauma under § 7112(b) would also be futile given VA's treatment of her claim. Ms. Wiggins's initial AOD motion had included her experiences of MST, its role in her PTSD, and the impact of the MST-caused PTSD on her worsening financial situation and mental health. *See* Appx177, 181.[21] Moreover, the Board refused even to make a covered case determination until ordered *twice* by the Veterans Court. Most notably, when the Board finally

---

[20] In dissent, Judge Jaquith commented that the "dismissive boilerplate Board decision" and overall treatment of Ms. Wiggins's case "belies the Board's stated willingness to consider another motion and undercuts the majority's reliance on such a rote, meaningless 'assurance'." Appx14.
[21] In dissent, Judge Jaquith noted both that the motion made clear it was "based on suffering resulting from MST" and that the Board had an obligation to liberally construe her arguments. *See* Appx14.

determined that Ms. Wiggins's appeal was a "covered case" under § 7112, it nevertheless refused to expedite her appeal. *See* Appx88-89. Therefore, although the Veterans Court believed that the MST argument had not been raised before the Board, the Board *did* have enough before it to determine that hers was a covered case. And VA's response to the Veterans Court order made it clear that any additional motion would be futile. *See* Appx97-98.

Finally, Ms. Wiggins even took measures beyond traditional alternative means to obtain relief, to no avail. *See Ex parte Fahey*, 332 U.S. at 260 (discussing appeal as the traditional alternative means of relief). She called VA in April 2024 to inquire about the status of her appeal and request an expedited decision, and she conducted outreach to her congressional representatives. Appx28. These efforts failed to provide any relief. *Id.*

   iii.   *The Veterans Court failed to consider the substantial dissimilarity between the relief sought and proposed alternatives*

The main proposed avenue for relief advanced by the Veterans Court—continuing to submit AOD motions—does not provide relief substantially similar to mandamus. Requiring Ms. Wiggins to pursue

another AOD motion is futile and would waste time and resources. It would only delay, and not advance, her right to timely and expedited consideration of her case. Because additional requests for advancement cannot deliver relief comparable to a mandamus order requiring timely adjudication, they are not *adequate* alternatives.

iv. *The Veterans Court failed to properly construe the grounds upon which Ms. Wiggins's claim rested*

The Veterans Court also erred as a matter of law in finding adequate alternatives to mandamus because it found "no indication that Ms. Wiggins has sought from the agency the same relief on the *same grounds* that she seeks through mandamus." Appx12. The Veterans Court's conclusion misses the crux of Ms. Wiggins's petition: that the Board denied her AOD request "without meaningfully engaging with the evidence of severe financial hardship" or the MST-based mental health struggles that exacerbated her condition. Appx28, Appx32. Ms. Wiggins raised these exact grounds in her initial request for AOD. Appx177.

When Congress added 38 U.S.C. § 7112(b) to the veterans' benefits adjudication scheme in December 2022, it provided another, separate legal justification for expedited treatment. The amendment, however, did

not create an adequate alternative means of relief. The Veterans Court's insistence that Ms. Wiggins bring a request for advancement on the docket under the right provided by § 7112 elevates form over substance, and ignores that this avenue would leave her mired in VA's delay and keep substantially similar relief out of reach. Critically, such an approach would be futile, given the Secretary's clear indication that VA will not provide advancement under § 7112. Appx203-07.

### D.   Under the circumstances, a writ of mandamus is appropriate

Considering Ms. Wiggins's case as a whole, a writ of mandamus is warranted. To satisfy this *Cheney* factor, "'the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" *Mote*, 976 F.3d at 1342 (quoting *Cheney*, 542 U.S. at 380-81). As this Court held in *Mote*, this factor is not to be used as a means of denying a writ of mandamus when the other two factors are met. 976 F.3d at 1343 (holding that this final factor "is intended more as a final check on granting the writ than as an amorphously discretionary means of denying it, without consulting the other two factors"). Indeed, this Court has occasionally described the test for

mandamus using only the first two factors, on the assumption that, when the first two are met, the writ is warranted. *See In re Paralyzed Veterans of Am.*, 392 F. App'x 858, 860 (Fed. Cir. 2010). Therefore, this factor requires little consideration of its own: if the other two factors are met, as they are here, a writ is appropriate.

A writ of mandamus is not merely appropriate, but necessary, because it is the only viable means of protecting Ms. Wiggins's statutory right to expedited treatment. Section 7112 imposes a clear obligation on VA to provide expedited treatment for covered MST claims, yet the agency has stated explicitly its intent to indefinitely ignore this obligation. Appx203. VA's prolonged inaction has nullified the right Congress created to grant MST claimants like Ms. Wiggins the dignity of process they deserve.

Mandamus should be granted to ensure that VA accurately and fairly considers congressional directives intended to set the agency's priorities. There is no other way: the Veterans Court has recently held that "an AOD denial is not a final Board decision. This means that it can't be fixed with an appeal." *Heller*, 38 Vet. App. at 84. Mandamus

"continues to be the way to aid . . . prospective jurisdiction by compelling action unlawfully withheld or unreasonably delayed." *Id.*; *see* Appx16.

In the more than four years that VA has delayed, and Ms. Wiggins has waited for a hearing on her appeal—years where she has experienced worsening disability and suicidal ideation—the Board has shown "the opposite of expedited treatment and promptness." *See* Appx21. When she applied for advancement on the docket—citing her severe financial hardship and deteriorating mental health—the Board responded with a single-page, form letter that made no mention of her MST. *See* Appx177; Appx194; Appx20. Then the Board took no action on her case for the following two years. When, desperate for a decision, Ms. Wiggins reluctantly withdrew her request for a hearing in an attempt to receive a decision faster, the Board ignored her until *ordered by the Veterans Court* to respond—and refused to grant her request. Appx199-200. Repeatedly, "the Board ignored Congress, and VA, for a time, ignored the [Veterans] Court." Appx20-21. Under these circumstances, a writ of mandamus is undoubtedly appropriate.

# CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons above, Appellant respectfully requests that the Court vacate the Veterans Court's August 1, 2025, order and remand with instructions to grant Ms. Wiggins's petition for a writ of mandamus directing the Board to adjudicate her NOD appeal within thirty days.

Respectfully submitted,

/s/ Rose Carmen Goldberg
Margaret Baughman, Law Student Intern*
Shreya Joshi, Law Student Intern*
Natalie Kelly, Law Student Intern*
Anthony Potts, Law Student Intern**
Ashley Anderson
Rose Carmen Goldberg
Michael J. Wishnie
Jerome N. Frank Legal Services Org.
Yale Law School†
P.O. Box 209090
New Haven, CT 06520-9090
Tel: (203) 432-4800
rose.goldberg@ylsclinics.org

*Counsel for Petitioner-Appellant*

*Motion for law student appearance forthcoming

**Law student appearance forthcoming

71

†This brief does not purport to represent the views of Yale Law School, if any

# ADDENDUM

Opinion, No. 24-4591, filed August 01, 2025.................................... Appx1

73

UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-4591

KARISSA WIGGINS, PETITIONER,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before MEREDITH, TOTH, and JAQUITH, *Judges*.

**O R D E R**

TOTH, *Judge*, filed the opinion of the Court. JAQUITH, *Judge*, filed a dissenting opinion.

In November 2021, Karissa Wiggins filed a Notice of Disagreement (NOD) challenging the denial of service connection for post-traumatic stress disorder (PTSD) and the rating assigned for major depressive disorder (MDD). Four months later, she sought to advance her appeal on the docket, but the Board denied the motion in May 2022 on the grounds that her alleged financial hardship did not demonstrate sufficient cause. The Board informed Ms. Wiggins that it would be willing to consider a subsequent motion if she submitted additional evidence.

In July 2024, Ms. Wiggins petitioned this Court for extraordinary relief in the form of a writ of mandamus ordering the Board to adjudicate her administrative appeal within 30 days. We sent the matter to a panel to assess whether and how our consideration of the petition is impacted by 38 U.S.C. § 7112(b), which mandates that VA employ special procedures when adjudicating claims involving military sexual trauma (MST). We conclude that section 7112(b) does not compel expedited adjudication of such cases, even though MST can potentially serve as a relevant consideration for the Board in assessing whether to advance an appeal on the docket under 38 U.S.C. § 7107(b) or for this Court in evaluating Agency delay under the "*TRAC*" factors. *Telecomms. Rsch. & Action Ctr. v. FCC (TRAC)*, 750 F.2d 70 (D.C. Cir. 1984). And here, even considering that the claim at issue involves MST, Ms. Wiggins has not shown a clear and indisputable right to mandamus or that she lacks an adequate alternative means of relief; thus, we deny the petition.

**I. BACKGROUND**

Ordinarily, "each case before the Board will be decided in regular order according to its respective place on the docket to which it is assigned by the Board." 38 U.S.C. § 7107(a)(4). However, subsection 7107(b) allows for advancement on the docket for "cause shown." The statute then sets out three subsections containing examples where advancement may be appropriate, specifically—cases involving interpretation of generally applicable laws affecting other claims, section 7107(b)(3)(A); serious illness or severe financial hardship, section 7107(b)(3)(B); or "other sufficient cause shown," section 7107(b)(3)(C).

Also relevant here is 38 U.S.C. § 7112, titled "Expedited treatment of certain claims." Subsection (b) of this statute pertains to claims involving MST and provides that "[t]he Board shall promptly determine whether [an NOD] filed with the Board is a covered case." And a "covered case" is one that concerns a claim based on MST and for which a Board hearing on the claim was requested in the NOD. 38 U.S.C. § 7112(c).

Turning to the facts, Ms. Wiggins served in the Air Force from 2013 until 2016. She filed an NOD on November 29, 2021, challenging the denial of her PTSD claim as well as the assignment of a 50% rating for MDD. She selected the Board hearing docket as part of the NOD and was placed in the queue of claimants awaiting a hearing before a Board member.

Her petition alleges that she has endured financial hardship since her separation from the Air Force, though the bulk of the evidence pertains to the period before 2022. Indeed, in response to questions from the Court, petitioner's counsel noted that Ms. Wiggins was in her final year of school and would thereafter transition from a full-time student to a full-time employee. Counsel further suggested that Ms. Wiggins will face some level of financial hardship as she works to pay off her student loans and accrued bills from her prior period of financial difficulties. *See* Oral Argument at 15:25-15:52, https://www.youtube.com/watch?v= yrbko4AgBdY. But as to that earlier period, the petition notes that she sought assistance from a local shelter that provides housing to veterans; it helped her save enough money to rent an apartment, obtain part-time employment, and enroll in part-time classes at a local university. Petition (Pet.) at 4. In the fall of 2021, she secured a scholarship that provided financial support for her education; however, she soon discovered that her mother repeatedly stole the tuition assistance checks intended for Ms. Wiggins and which the latter needed to support herself. *Id.* at 4-5.

As a result, in March 2022, she filed a motion to advance her appeal on the docket under 38 U.S.C. § 7107 on grounds of financial insecurity. She noted that she experienced "severe financial hardship" and that "further delay in resolving her appeal will exacerbate her financial distress." Secretary's Aug. 12, 2024, Response (Resp.), Attachment G; *see* Pet. at 5, 7. She also asserted that her mental health disorders had been "severely aggravated by her stressful financial situation, causing suicidal ideations." Pet. at 11. The Board denied the motion in May 2022 for lack of sufficient cause.[1] Specifically, it found that the evidence failed to show serious illness or "severe financial hardship such as pending bankruptcy, home foreclosure, or homelessness." Pet., Ex. G. Notwithstanding the denial, the Board informed Ms. Wiggins that it would be willing to consider another motion if she submitted additional evidence. *Id.*

In April 2024, Ms. Wiggins withdrew her request for a hearing and sought to transfer to the direct review docket; VA informed her that her appeal would be adjudicated "according to its place on the docket," alongside evidence that had been submitted within 90 days from the date of her request to transfer dockets. Secretary's Aug. 12, 2024, Resp., Attachment J. However, the Secretary clarified at oral argument that Ms. Wiggins's appeal remained on the hearing docket because her request to change dockets was not timely, though her appeal is awaiting distribution to a veterans law judge (VLJ). Oral Argument at 47:11-47:51.

---

[1] Thomas M. Rodrigues, the Deputy Vice Chairman of the Board, decided Ms. Wiggins's motion to advance on the docket. Pet., Exhibit (Ex.) G.

2

In July 2024, Ms. Wiggins petitioned this Court for a writ of mandamus ordering the Board to adjudicate her administrative appeal within 30 days. The petition noted that during service Ms. Wiggins had been the victim of MST, and she asserted a clear and undisputed right to mandamus because the delay in her case is unreasonable in light of the expeditious treatment that Congress intended claims involving MST to receive under 38 U.S.C. § 7112. Pet. at 9. The Court requested a response from the Secretary and, later, ordered the Secretary to direct the Board to determine whether Ms. Wiggins's NOD is a "covered case" under section 7112(b) and whether her appeal will be expedited. In his response, the Secretary notified the Court that the Board indeed found in August 2024 that Ms. Wiggins's NOD is a covered case but that it would nevertheless adjudicate her appeal in the order it was placed on the Board's docket. Secretary's Sept. 23, 2024, Resp. In reply, Ms. Wiggins reiterated that her appeal should be expedited under section 7112. In February 2025, the Court heard argument addressing the impact of section 7112 on our analysis of Agency delay.

Ms. Wiggins argues that the text and structure of section 7112 are ambiguous, and the pro-veteran canon and clear legislative purpose of the Training on Military Sexual Trauma, Pub. L. No. 117–300, 136 Stat. 4379, 4380 (2022), collectively impel the Court to resolve any ambiguity in the veteran's favor. Expediting MST claims, she reasons, "accomplishes the legislative purpose of improving the appeals process for MST survivors, making it easier for MST survivors to pursue appeals, and supporting MST survivors when they seek benefits for injuries during their service." Pet. Oct. 4, 2024, Reply at 10. However, her argument as to how this interpretation affects the Court's analysis of her petition has varied. In her petition, she performed a *TRAC* factor analysis and, relevant here, asserted that Congress, by mandating expedited treatment of MST claims in section 7112, essentially provided a timetable for adjudicating MST claims that VA has failed to follow in her case. In other words, *TRAC* factor two weighs in her favor. But in her October 4, 2024, reply, she seemingly changed course and argued that the statute alone requires expedited treatment and that, alternatively, the Board has been unreasonably delayed in adjudicating her appeal. And, at oral argument, petitioner's counsel argued both positions at times, simultaneously contending that the Court should decide the petition on grounds of unreasonable delay and that the statutory interpretation analysis exists separate and apart from the *TRAC* factors. *See* Oral Argument at 3:02-3:54; 10:17-12:00.

The Secretary leans on 38 U.S.C. § 7107(a)(4)'s default rule that the Board decides appeals in the order in which they are placed on the docket. He contends that Ms. Wiggins has not met any exception to this rule because she has not shown sufficient cause consistent with section 7107(b) and, absent another statutory exception to section 7107's docket order requirement, the Secretary posits that he has no grounds to advance Ms. Wiggins's case. For this reason, VA asserts that it has complied with the requirements set out in section 7107: it docketed the appeal the day after it received the NOD and adjudicated the motion to advance on the docket within two months. As to the specific length of delay, VA notes that, although lamentable, the three-plus-year delay is consistent with the standard wait-time for claimants such as Ms. Wiggins who have selected the hearing docket and that such delays are well publicized to allow claimants to make an informed decision about which docket to choose. Secretary's Aug. 12, 2024, Resp. at 5-6 (citing *Decision wait times − Board of Veterans' Appeals*, https://www.bva.va.gov.decision-wait-times.asp). Accordingly, the Secretary says, the *TRAC* factors weigh against Ms. Wiggins's petition because any delay in the adjudication of her case has not been unreasonable.

3

## II. ANALYSIS

The Court's jurisdiction is normally limited to reviewing final decisions of the Board. 38 U.S.C. § 7252(a). But the All Writs Act (AWA), 28 U.S.C. § 1651(a), empowers the Court to issue writs in aid of its statutory jurisdiction, that is, to "'remove obstacles to appeal'" that would otherwise frustrate our prospective jurisdiction. *Love v. McDonough*, 35 Vet.App. 336, 342 (2022) (per curiam order) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)), *aff'd*, 100 F.4th 1388 (Fed. Cir. 2024). And "[b]ecause the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction." *TRAC*, 750 F.2d at 76. To that end, in *Martin v. O'Rourke*, 891 F.3d 1338, 1343-44 (Fed. Cir. 2018), the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) recognized the authority of this Court to employ the *TRAC* factors to remedy unreasonable delay under the AWA.

Three conditions must be satisfied for a Court to issue a writ: (1) the petitioner must show a lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used to replace the appeals process; (2) the petitioner must show a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuing the writ is warranted. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004).

Recently, in *Heller v. McDonough*, 38 Vet.App. 75, 83 (2024) (per curiam order), we were met with a similar issue that also implicated the relationship between advance on the docket (AOD) denials and unreasonable delay. There, we held that the denial of a motion to advance on the docket is not an appealable decision, as it was not related to the grant or denial of any benefit by the Board—at least at the time the petition was filed. The Court reasoned that the denial of a motion to advance "simply prevented [the petitioner] from moving up on the docket and having the Board decide his service-connection claim sooner." *Id.* at 84. However, the Court was nonetheless able to offer relief to Mr. Heller. Rather than entertaining the merits of the AOD denial under 38 U.S.C. § 7107(b) as an interlocutory appeal over which we lack jurisdiction, the Court considered, as part of the Court's long-recognized authority to assess whether an agency delay is reasonable under the *TRAC* factors, *see Martin*, 891 F.3d at 1343, that "Mr. Heller ha[d]n't been aided by advancement on the docket despite his ill health and financial difficulties, the Board ha[d]n't indicated why his situation [did] not warrant advancement, and the Secretary [did] not dispute that VA ha[d] not acted on his appeal for more than two years," *Heller*, 38 Vet.App. at 85. In other words, rather than reviewing whether the Board erred in denying the petitioner's motions to advance, the Court considered whether the pace of VA's actions on his case could satisfy a rule of reason under the totality of the circumstances pertinent to *TRAC*.

Additionally, the Court considered the petitioner's attempts to advance on the docket as well as VA's denials as relevant to whether administrative channels presented the petitioner with an adequate alternate means to obtaining the relief, or whether VA actions evinced a clear signal of its final position, thus foreclosing such relief. *Heller*, 38 Vet.App. at 87 ("With no likelihood of success at the Board, and an AOD appeal off the table, we find that Mr. Heller has shown he lacks adequate alternate means to have his case decided more quickly."). In short, assessing Mr. Heller's petition as one of unreasonable delay, including evidence of suicidal ideation and unemployment, rather than a strict statutory right to advancement under section 7107(b), allowed the Court to offer

4

relief to the petitioner while avoiding any jurisdictional problems attendant on an interlocutory review of the merits of a procedural ruling by the Board.[2]

We make a similar move here, as the same dynamics apply. The denial of a motion to advance on the docket—irrespective of whether advancement was sought under the authority of section 7107(b) or 7112(b)—does not, by itself, comprise an obstacle that effectively frustrates this Court's ability to exercise jurisdiction over a matter; it merely affects the timing under which such review occurs. *Heller*, 38 Vet.App. at 83. As in *Heller*, we lack authority under section 7252 or the AWA to review the merits of any denial under section 7107(b) or 7112 on its own terms; instead, our jurisdictional hook is to examine under the *TRAC* factors whether VA has unreasonably delayed the adjudication of the claim in light of the relevant facts and law. If, as Ms. Wiggins claims, the governing statutes mandate immediate advancement of her appeal, then this clearly informs whether any delay in adjudication can be deemed reasonable. But, to the extent that she requests relief on the grounds that the Board should have advanced her case on the docket under her interpretation of section 7112(b)—a merits determination—that relief is outside the bounds of our AWA jurisdiction because it would essentially amount to direct review in a petition context of an interlocutory determination that falls outside of our appellate jurisdiction.

## A. Applying the *TRAC* Factors

There are six *TRAC* factors that courts consider when assessing the reasonableness of a delay: (1) whether a "rule of reason" accounts for the length of time elapsed during agency consideration; (2) whether Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed; (3) the character of interests at stake; (4) the effect of expediting on competing agency resources; (5) the nature and extent of the interests prejudiced by the delays; and (6) the presence of bad faith or impropriety is not necessary to find unreasonable delay. *Martin*, 891 F.3d at 1344-45.

Ms. Wiggins's statutory construction argument falls within the second factor—whether there exists a Congressional timetable. If her interpretation is correct that section 7112(b) requires immediate and automatic advancement on the docket for any covered case (which the Board has found her case to be), then it is possible that even a small delay in adjudication may be deemed unreasonable depending on how the remaining *TRAC* factors play out. So, only after examination of section 7112 can we turn to the first factor—whether a "rule of reason" accounts for the length of time elapsed during VA's consideration of the appeal. For that reason, we take the second factor first.

*Congressional Timetable*: "The starting point in interpreting a statute is its language," *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993), and so in determining the meaning of a statutory provision, "'we look first to its language, giving the words used their ordinary meaning,'" *Artis v. Dist. of Columbia*, 583 U.S. 71, 83 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Of course, words "must be read in their context and with a view to their place in the

---

[2] This Court has never addressed whether an AOD denial is appealable to this Court as a procedural ruling relating to the denial of a claim properly before the Court on a Notice of Appeal. For obvious reasons, such a claim would raise mootness concerns pertaining to whether the Court can offer meaningful relief to speed up adjudication on a claim that's already been decided.

5

overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). Thus, plain meaning is examined by looking at the language, context, and design of the statute as a whole. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004).

Here, it bears reciting 38 U.S.C. § 7112 in full. Titled "Expedited treatment of certain claims," it reads:

> (a) Remanded claims.—The Secretary shall take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court of Appeals for Veterans Claims.

> (b) Claims involving military sexual trauma.—The Board shall promptly determine whether a notice of disagreement filed with the Board is a covered case.

> (c) Definitions. – In this section:

> > (1) The term "covered case" means a case—
> > (A) that concerns a claim for compensation based on military sexual trauma; and
> > (B) for which the appellant has requested a hearing in the notice of disagreement filed with the Board pursuant to section 7105 of this title.
> > (2) The term "military sexual trauma" has the meaning given that term in section 1166 of this title.

From the outset, Ms. Wiggins's argument encounters immediate headwinds insofar as it asks the Court to find a clear and undisputed right to a writ based on statutory language that she construes as ambiguous. It's true that section 7112's heading "Expedited treatment of certain claims" suggests that Congress intended that VA take some actions on a subset of claims more quickly than normal; likewise, the section heading can only be read as covering all the types of claims identified in section 7112—that is, both claims remanded from this Court described in subsection (a) as well as MST claims described in subsection (b).[3]

However, Ms. Wiggins's argument falters in one critical respect. It's a longstanding rule that section headings carry limited weight in statutory construction and "are of use only when they shed light on some ambiguous word or phrase." *Brotherhood of R.R. Trainmen v. B&O R.R. Co.*, 331 U.S. 519, 529 (1947). So, although "[t]he title and headings are permissible indicators of meaning," Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 221 (2012), "they cannot undo or limit that which the text makes plain." *Bhd. of R.R. Trainmen*, 331 U.S. at 529. In practical terms, this means that the title and heading of a statute are "'tools available for the resolution of a doubt about the meaning of a statute.'" *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). They cannot, however, "'override the plain words'" of a statute or supply meaning that

---

[3] There's no dispute here that Ms. Wiggins satisfies the express statutory conditions: on August 23, 2024, the Board determined that her case is a "covered case" for purposes of section 7112(b), insofar as she filed an NOD and selected the hearing docket, and her claims for compensation for PTSD and MDD both relate directly to her accounts of in-service sexual abuse that satisfies the statutory definition for MST laid out in 38 U.S.C. § 1166.

6

runs counter to its text and structure. *Fulton v. Philadelphia*, 593 U.S. 522, 536 (2021) (quoting SCALIA & GARNER at 222).

Here, the section heading comprises more or less the extent of the textual support that section 7112 provides to Ms. Wiggins's position. Notably, the text of the statute itself falls conspicuously short of signaling that MST claims should be provided expeditious adjudication: there is no indication that MST claims should be advanced on the docket or are otherwise excepted from section 7107's docket-order processing provisions. Unlike subsection (a) which requires the Board to provide "expeditious treatment" of cases remanded from this Court, subsection (b) requires only that the Board "promptly determine whether [an NOD] filed with the Board is a covered case."[4]

It is a longstanding principle of statutory construction that where "'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). The contrast between the express terms in subsections (a) and (b) is heightened by the fact that, years before Congress amended 7112 to include subsection (b), this Court held that subsection (a) of the statute required VA to expeditiously process cases remanded to the Board from this Court. *Harvey v. Shinseki*, 24 Vet.App. 284, 288-91 (2011) (per curiam order) (sanctioning VA for a 2-year delay in providing the petitioner with a final answer on a matter remanded by the Court). "We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent," *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010), and the use of disparate terminology in subsection (b) signals that Congress envisioned procedures for MST claims distinct from those employed for remanded claims.

Another important signal of Congressional intent comes in the form of section 7107(b), wherein Congress provided exceptions to the guidance—found in the same section—that cases be adjudicated based on the order in which they are assigned in the docket upon receipt of the NOD.[5] Those exceptions are enumerated as cases involving interpretation of generally applicable laws affecting other claims, serious illness or severe financial hardship, or "other sufficient cause shown." 38 U.S.C. § 7107(b). Once again, Congress is presumed to be aware of the existing statutory landscape and it would seem only natural, if Congress intended MST covered cases to receive treatment in the form of automatic advancement on the docket, to either amend 7107(b) to include MST claims or cross-reference section 7112 to signal the inclusion of such claims in the Board's analysis of whether to advance a claim on the docket.

And, although "other sufficient cause shown" admits of a broad range of considerations that may serve to qualify a claimant to advance on the docket, it's nonetheless significant that

---

[4] Although VA failed to make a prompt assessment as to whether Ms. Wiggins's appeal constituted a "covered case," this deficiency alone doesn't implicate the type of relief sought by Ms. Wiggins, namely faster adjudication of her appeal.

[5] We recognize that "section 7107 cannot be read as a mandated, exclusive set of rules by which the Board must consider and decide cases." *Ramsey v. Nicholson*, 20 Vet.App. 16, 32 (2006). Rather, it was intended "to set broad guidelines for the general order of processing of appeals at the Board to ensure fairness, efficiency, and timeliness in consideration and decision of appeals." *Id.* at 34.

section 7107(b) does not reference any other statutory provisions as providing additional exceptions to the docketing order requirement. Instead of setting out a detailed list of statutory exceptions, Congress opted to convey discretion to the Board to render case-by-case determinations regarding "other sufficient cause" in light of the factors extant in a given case. Put succinctly, there's no indication that a claim involving MST is one that is excepted from the Board's general guidance to decide appeals in regular docket order. *See* 38 U.S.C. § 7107(a)(4).

Acknowledging the lack of a clear textual mandate for expeditious adjudication of MST cases, Ms. Wiggins nonetheless maintains that section 7112 is ambiguous and that the pro-veteran canon is sufficient to resolve such ambiguity. The pro-veteran canon provides that any "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 117-18 (1994). Here again the problem is not that section 7112 presents interpretive difficulties, but that subsection (b) contains no language relating to expeditious adjudication or docket advancement or otherwise suggests that Congress sought to have MST cases adjudicated in advance of other claims in the docket order queue. Indeed, the only action required by 7112(b) is for the Board to "determine" whether a case involves MST.[6]

Ultimately, it's impossible to read sections 7112 and 7107 as conveying a clear intent on the part of Congress to require expeditious adjudication of cases involving MST. Although section headings can "supply cues" about what Congress may have intended, *Yates v. United States*, 574 U.S. 528, 540 (2015), they cannot confer a meaning that stands at odds with, or is absent from, the statutory text. Standing alone, section 7112's heading doesn't provide a sufficient foothold to support the notion that Congress intended expeditious adjudication of MST cases, absent other factors. Ultimately, the Court discerns no specific language within section 7112 that sets out a particular timetable within which VA must adjudicate a case involving MST, as distinct from other claims.

All this said, we recognize that MST claims carry special significance, even if Congress did not intend for them to be adjudicated ahead of other claims. For example, 38 U.S.C. § 1166 requires the Secretary to establish specialized teams to process claims for any "covered mental health condition based on [MST]." This specialized treatment includes allowing veterans to elect to be referred to an MST coordinator of the Veterans Health Administration and ensuring that VA provides annual training to assist in the development and adjudication of MST claims. Although we discern no signal that Congress sought to automatically advance MST claims on the docket, there is no uncertainty that Congress intended MST claims to receive special attention from VA. To that end, VA's *Appeal and Reviews Manual*, M21-5, ch. 1. Sec. A.3.f., notes that MST claims

---

[6] The petitioner suggests that section 7112(b) is ambiguous because the statute does not appear to provide a consequence for failing to take this action and thus reading it as requiring only that action would render it meaningless. Pet. Oct. 4, 2024, Reply at 3. However, in enacting this provision, Congress also amended 38 U.S.C. § 7102(c) to require the Secretary to offer to Board members training on MST and proceedings that involve MST claims and to assign MST appeals to Board members who have undergone that training. Pub. L. No. 117-300, § 1(a). In other words, the statute may be read as a harmonious whole as directing the Board to identify which appeals will require a Board hearing as to an MST claim and then having those hearings handled by Board members who are trained in special MST procedures. *Laska v. McDonough*, 37 Vet.App. 460, 467 (2024) (explaining that the Court's reading of a statute brought "harmony to the statute as a whole").

should receive "high priority" within the agency.[7] For this reason, it would certainly be understandable if the Board considered the presence of a properly brought MST claim as a plus-factor when considering whether a claimant has demonstrated sufficient cause in a motion to advance on the docket.[8] So can this Court consider the presence of a properly brought MST claim when assessing, for example, how a delay affected a particular veteran.

*Rule of Reason*: Turning to the first *TRAC* factor, this inquiry addresses whether VA's adjudication of the case is governed by a "rule of reason" and requires the Court to evaluate the reasonableness of the delay in light of the specific factual circumstances in the record. *Monk v. Wilkie*, 32 Vet.App. 87, 102 (2019) (en banc order), *aff'd in part, dismissed in part sub nom. Monk v. Tran*, 843 F. App'x 275 (Fed. Cir. 2021). Here, section 7107(a)(4) provides that, subject to exceptions discussed above and set out in subsection (b), "each case before the Board will be decided in regular order according to its respective place on the docket to which it is assigned by the Board." VA stresses that the three-year delay experienced by Ms. Wiggins is consistent with the current wait for cases such as this where a hearing before a Board member was requested. Further, the Secretary cautioned at oral argument that average wait times represent only a median range, as many cases take longer to adjudicate for various reasons. Oral Argument at 49:23-50:15. At bottom, however, the delays in VA's system affect equally all claimants currently awaiting their hearings[9] and have been well publicized to allow claimants to select non-hearing dockets that allow for faster adjudication. Secretary's Aug. 12, 2024, Resp. at 6.

As noted, no statutory provision provides an express timetable for adjudication of appeals to the Board; Congress merely required that they be adjudicated according to the docket order assigned. And here, VA has taken action on the veteran's appeal—it considered Ms. Wiggins's motion to advance on the docket based on the materials submitted and indicated that it would be willing to consider subsequent motions in the event she presented updated evidence showing a deterioration in her health or financial situation. Although the Board has not yet acted on the merits of her appeal, part of the delay is due to her initial choice to be included in the docket known to have the longest wait—those seeking a Board hearing. That her delay exceeds the average wait for appellants on that docket is not an indication of whether the Board, in her particular case, has proceeded without a rule of reason. *See Martin*, 891 F.3d at 1346 n.10 ("With respect to Appellants' reliance on statistics regarding average delays, we agree . . . that reliance on such statistics is merely speculative.").

---

[7] The Court recognizes that this provision is specific to Decision Review Operations Centers at the Veterans Benefits Administration, which are not subject to the Board's requirement in section 7107(a)(4) to decide cases in docket order. It highlights, however, that VA, like Congress, provides special considerations for MST claims.

[8] To be clear, we need not and do not reach the question of whether the Board should have considered the nature of the petitioner's claim in denying advancement under section 7107(b) because the petitioner is not seeking to challenge the denial of advancement under that provision. And, if she was, under *Heller* we could not directly or indirectly review the correctness of VA's action on an interlocutory matter. Rather, because an MST may increase risks of mental and physical health conditions; readjustment problems, including difficulty finding employment; emotional reactions; and trust and interpersonal problems, *see* VA OIG REPORT No. 20-01979-199, VETERANS HEALTH ADMINISTRATION, CHALLENGES FOR MILITARY SEXUAL TRAUMA COORDINATORS AND CULTURE OF SAFETY CONSIDERATIONS, at ii (Aug. 5, 2021), the nature of the claim may inform a *TRAC* analysis.

[9] Beyond requesting immediate adjudication, Ms. Wiggins has not requested specific relief from the Court relating to her request to withdraw her right to a hearing.

9

*Character of Interests at Stake and Nature of Interests Prejudiced by Delays*: The third and fifth factors focus on the veteran's individual interest and are often analyzed together. *Heller*, 38 Vet.App. at 86. The third factor lays down a marker to establish that delays are "'less tolerable when human health and welfare are at stake,'" while "the fifth factor 'considers the nature and extent of the interests prejudiced by the delay.'" *Id.* (quoting *Martin*, 891 F.3d at 1346). We have long recognized as a default position that the third factor favors petitioners because, as the Federal Circuit noted in *Martin*, "[v]eterans' disability claims always involve human health and welfare." 891 F.3d at 1346. The third factor pulls in Ms. Wiggins's favor insofar as her claims for MDD and PTSD readily involve health and welfare.

As noted, the fifth factor overlaps with the third. *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). Specifically, it centers on the nature and extent of the interests prejudiced by the delay, which effectively "incorporates an analysis of the effect of a delay on a particular veteran." *Martin*, 891 F.3d at 1347. Ultimately, although every instance of delay in adjudication is regrettable and carries negative consequences to the claimant experiencing it and even though the claim at issue involves MST, which may lead to physical, mental, emotional, and readjustment issues, Ms. Wiggins has not shown through her petition that the delay impacts her in ways that weigh heavily in favor of finding unreasonable delay. For example, the evidence submitted both in her 2024 petition and in her 2022 motion to the Board to advance on the docket focused on instances of financial hardship that pertain to the period before 2022. And although Ms. Wiggins asserted in March 2022 that she continued to experience severe financial hardship, she also noted in her motion that she had obtained part-time employment alongside a scholarship.

As far as the Court can tell, Ms. Wiggins has not alleged that her financial situation or health has deteriorated in the aftermath of the denial of her motion to advance. She doesn't report that her financial situation is dire or that she faces a current crisis such as imminent homelessness or an inability to meet her basic financial needs. She doesn't assert that she faces a pending crisis relating to her physical or mental health. Indeed, beyond arguing that VA was obligated under section 7112 to expedite her claims, Ms. Wiggins has not put forth any particular facts to show how the delay in adjudicating her case has negatively impacted her. Responding to the Court at oral argument, Ms. Wiggins's counsel noted that she was in her final year of college and projects to have stable employment upon graduation. This answer harmonizes with the overall picture presented in the petition and limited evidentiary record, namely that Ms. Wiggins's financial situation and employment prospects have improved generally since 2022 and that she is not wholly dependent on any potential increase in disability benefits from her appeal to the Board. *See Martin*, 891 F.3d at 1347 (explaining that this "Court may find that [the fifth factor] more strongly favors a finding of unreasonable delay where it is evident that a particular veteran is wholly dependent on the requested disability benefits").

Likewise, to the extent that she contends that her financial insecurity has aggravated her PTSD and that she had suicidal ideation, the evidence pertains to the pre-2022 period and there is no indication that her current mental health status should weigh heavily in favor of finding unreasonable delay. *Cf. Heller*, 38 Vet.App. at 86 (finding that "the effect of the delay on Mr. Heller, including evidence of severe suicidal ideation, with a prior attempt, unemployment, and his more desperate messages as his appeal languishes, . . . weigh[s] heavily in favor of finding

10

unreasonable delay"); *id.* at 87 (qualifying that allegations of financial difficulties and suicidal ideation will not "always reflect an extraordinary situation").

*The Effect of Expediting on Competing Agency Resources*: The fourth factor deals with "the impact granting mandamus in a particular appeal may have on other agency activities." *Martin*, 891 F.3d at 1347. The Board's duty to generally decide appeals on a first come, first served basis—which, we reiterate, is not affected by section 7112(b)—means that granting mandamus relief to Ms. Wiggins would "result in no more than line-jumping without resolving the underlying problem of overall delay." *Ebanks v. Shulkin*, 877 F.3d 1037, 1040 (Fed. Cir. 2017). Indeed, "[w]hile forcing the VA to focus such limited resources on addressing delays in certain appeals will inure to the benefit of some veterans, such efforts may work a detriment to other veterans who are also relying on the VA for various types of assistance." *Martin*, 891 F.3d at 1347. Thus, this factor weighs against granting the petition.

*Bad Faith or Impropriety*: Finally, though bad faith or impropriety are not necessary for the issuance of a writ, Ms. Wiggins has not claimed that VA's denial of her motion to advance on the docket was done in bad faith. And the record reflects that the Board considered the account of her financial situation as it stood at the time, finding that it fell short of constituting sufficient cause for advancement on the docket. Further, although VA acknowledges that the Board did not initially comply with section 7112(b)'s requirement to "promptly determine" whether her appeal involves a "covered case," there is no indication that this failure was an intentional refusal to uphold its duties.

On balance, the facts described in the petition are not sufficient to establish that VA has unreasonably delayed the adjudication of Ms. Wiggins's appeal. As noted earlier, section 7107's warrant that VA generally adjudicate appeals in their docket order supplies a rule of reason informing VA's actions. While acknowledging that a three-plus year wait for a hearing is undesirable, such delays are nonetheless systemic in nature, are widely publicized, and are borne equally by all claimants awaiting hearings. Endemic to VA's system of adjudication, these systemic delays have rightly been the focus of much deliberation from Congress, the Agency, and veterans advocacy groups alike—unfortunately to little avail so far.

## B. Adequate Alternative Means

We also note that, even if Ms. Wiggins could demonstrate an indisputable right to the writ, she fails to show that there exists no other adequate means of obtaining the relief sought. Notably, the Board's stated rationale for denying Ms. Wiggins's motion to advance was that evidence of "[g]eneral financial difficulties alone" was not sufficient and that she failed to show severe financial hardship such as a pending bankruptcy, home foreclosure, or potential homelessness and so fell short of demonstrating sufficient cause to advance on the docket. Pet., Ex. G. Significantly, in his denial of the motion, the Board member expressly noted: "If you submit additional evidence supporting advancement and set forth succinctly the grounds for consideration, I would be willing to consider another motion." *Id.*

Notably, Ms. Wiggins's March 2022 motion to advance did not base her request for advancement on the fact that her claims involved MST-induced trauma.[10] *See* Secretary's Aug. 12, 2024, Resp., Attachment G. Though her motion mentions the fact that she experienced MST in service, it nevertheless focuses solely on her alleged "severe financial hardship" and the exacerbation of her PTSD symptoms because of this hardship. *Id.* After the Board's May 2022 denial of that motion, she did not seek any further relief from VA, even after Congress enacted section 7112(b).

As such, the Court discerns no indication that Ms. Wiggins has sought from the Agency the same relief on the *same grounds* that she seeks through mandamus from this Court. She doesn't assert in her mandamus petition that she raised the MST issue as part of her motion to advance on the docket or that the Board ignored such evidence and improperly cabined its analysis to whether she made a showing of serious illness or financial hardship. She has not argued that she would be in any way precluded from raising the MST issue at the Board or that it would be futile to bring such motion because the Board would not entertain the possibility of relief.

The most salient factor attesting to availability of alternate means comes in the form of the Board's statement that it would be "willing to consider" any additional evidence supporting advancement as part of a new motion to advance on the docket. Pet., Ex. G. As far as the Court can tell, Ms. Wiggins has not presented to VA any evidence attesting to her financial position after March 2022 when she filed her motion to advance on the docket. Nor does it appear that she has raised before the Board any of the arguments that she now raises to this Court. In short, it's impossible for Ms. Wiggins to show a lack of adequate alternative means to obtain this relief when the Board member expressly solicited additional evidence and noted that he would welcome further consideration on whether to advance her case on the docket.

In sum, because Ms. Wiggins has not shown a clear and indisputable right to a writ nor a lack of alternative means of relief, we exercise our discretion to deny her petition for a writ of mandamus. *See Cheney*, 542 U.S. at 380-81 (noting that a court must, in exercising its discretion, be satisfied that mandamus is appropriate under the circumstances).

### III. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the July 2, 2024, petition for extraordinary relief is DENIED.

DATED: August 1, 2025                                              PER CURIAM.

JAQUITH, *Judge*, dissenting: Congress's amendment of 38 U.S.C. § 7112 in December 2022 plainly requires expedited treatment of claims involving MST. *See* Pub. L. No. 117-300, 136 Stat. 4379 (Dec. 27, 2022). From the time the proposed amendment was introduced—as part of the "Dignity for MST Survivors Act"—the relevant heading was changed from "Expedited treatment of remanded claims" to "Expedited treatment of certain claims," with the "certain claims"

---

[10] The Court notes that subsection 7112(b) was not added to title 38 until December 2022.

specified as remanded claims and claims involving MST. It is undisputed that (1) Ms. Wiggins's disability compensation claims for MDD and PTSD involve MST, (2) she requested a hearing in her NOD filed with the Board, and (3) she has not been afforded expedited treatment. So I would grant her petition to the extent that it seeks expedited treatment and thus respectfully dissent from the majority's petition denial.

## A. Background

Ms. Wiggins served on active duty in the United States Air Force from September 2013 to July 2016. In September 2014, investigative activity by the Air Force Office of Special Investigations revealed that she had been sexually assaulted a few months earlier, when she was 18 years old, by an airman at a hotel near Sheppard Air Force Base in Texas. Pet. Appendix, Ex. C. She was reassigned to Hurlburt Field, Florida, where she had a relationship with another airman who, she reported, physically abused her. Pet. Appendix, Ex. D.

In March 2021, the veteran applied for disability compensation for PTSD caused by MST and intimate partner violence dating from about July 2014. Secretary's August 12, 2024, Pet. Resp., Attachment (Att.) A. In April 2021, VA responded by granting "[s]ervice connection for [MDD] with anxious distress, MST . . . with an evaluation of 30 percent," and denying service connection for PTSD. *Id.* at Att. B. The veteran requested higher level review of both her MDD rating and the service connection denial for PTSD. *Id.* at Att. C. In November 2021, VA increased her disability rating for MDD from MST (sexual trauma/assault) to 50% but continued to deny service connection for PTSD. *Id.* at Att. D. That same month, she appealed the MDD rating and PTSD denial to the Board via an NOD that opted for a hearing with a veterans law judge. *Id.* at Att. E.

## B. Motion for Advancement on the Docket

In March 2022, the veteran submitted a motion for advancement of her case on the docket. *Id.* at Att. G. Although the majority opinion focused almost exclusively on Ms. Wiggins's description of her financial hardship, *ante* at 1-2, 10-12, her motion made clear that it was based on both her "severe financial hardship" and her "worsening mental state, including recent suicidal ideation." *Id.* The Board did not address either of Ms. Wiggins's contentions or acknowledge the MST and resulting disability from which they arose, denying the veteran's motion in a form letter that merely paraphrased the statutory grounds for advancement. *Id.* at Att. H. Such conclusory boilerplate denials are inadequate. *See Heller v. McDonough*, 38 Vet.App. 75, 79–80 (2024) (noting that "the Board rejected each of Mr. Heller's motions for advancement with substantially the same conclusory response," which the veteran characterized as "boilerplate conclusions").[11]

The majority's contention that Ms. Wiggins's motion for advancement was not based on her claims involving MST-induced trauma misses the mark. *See ante* at 12. First, the Board has "a

---

[11] Ironically, except for the addressees and the dates of the motions, the denial letter the Board's Deputy Vice Chairman sent to Ms. Wiggins is exactly the same as the denial letter he sent to Mr. Heller on March 21, 2022, and the denial letter a veterans law judge sent to Mr. Heller on May 23, 2023. *Heller*, 38 Vet.App. at 79, Pet. Att. 26 (March 2022 Board letter) and 45 (May 2023 Board letter). The veterans law judge also sent two nearly identical letters to Mr. Heller on November 28, 2023, and January 4, 2024, changed only to delete "pending bankruptcy" as an example of severe financial hardship. *Id.*, Pet. Att. 49 (November 2023 Board letter) and 53 (January 2024 Board letter).

duty to construe veterans' submissions sympathetically." *Perciavalle v. McDonough*, 35 Vet.App. 11, 30 (2021) (en banc), *aff'd in part, vacated in part on other grounds*, 74 F.4th 1374 (Fed. Cir. 2023). The Board's obligation to "give a liberal construction to arguments made by the veteran" applies when veterans are represented by counsel and "extends to all proceedings before the Board." *Scott v. McDonald*, 789 F.3d 1375, 1380 (Fed. Cir. 2015); *see Velez v. West*, 11 Vet.App. 148, 157 (1998) ("[T]he Board must liberally construe all submissions.").

Second, the motion made clear that it was based on suffering resulting from the MST she experienced. She opened her motion by stating that she had "suffered through numerous instances of [MST] and intimate partner violence (IPV) during service, which led her to develop [PTSD]." Secretary's Aug. 12, 2024, Pet. Resp., Att. G. Then she cited her resulting severe financial hardship and "worsening mental state, including recent suicidal ideation" as justifying advancement. *Id.* She asserted that her "PTSD, depression, and anxiety have been severely aggravated by the stresses related to her financial situation. She has had thoughts of suicide, and her acutely distressed mental state as well as the possibility that she might harm herself establish 'other sufficient cause' for granting advancement on the docket." *Id.* And her supporting declaration related that "[w]hile in the Air Force, [she] developed clinically diagnosed [PTSD] and [MDD] after being raped by another airman and physically abused by [her] partner." *Id.* Moreover, the record—though sparse—makes clear that (1) Air Force members were involved in both the perpetration and the investigation of the MST, and (2) VA knew this was an MST case from the outset because the veteran said so in her March 2021 PTSD claim, *id.* at Att. A, and VA said so in its April 2021 rating decision, Att. B, and in its November 2021 higher level review decision, Att. D—all predating the veteran's NOD. Yet the Board's denial of Ms. Wiggins's motion was a form letter that did not even acknowledge her MST or address any of the evidence except to say that it was insufficient. And that form letter is emblematic of the Board's inattention to her MST case.

The dismissive, boilerplate Board decision on Ms. Wiggins's motion for advancement, and especially the Board's failure to acknowledge and address her suicidal ideation—which was an expressly stated basis for the November 2021 increase of her MDD disability evaluation to 50%, reflecting her worsening mental state—belies the Board's stated willingness to consider another motion and undercuts the majority's reliance on such a rote, meaningless "assurance," as *Heller* illustrates. *See Heller*, 38 Vet.App. at 79-87.

And the Board's inattention is inexcusable in the context of an MST case, because VA knows that "MST is a distinct risk factor for suicide attempt and completion" by veterans. *Military Sexual Trauma – A Risk Factor for Suicide*, U.S. Department of Veterans Affairs, https://mentalhealth.va.gov/suicide_prevention/docs/FSTP-Military-Sexual-Trauma-A-Risk-Factor-for-Suicide.pdf (November 2021) (last accessed Jul. 14, 2025). "Increased depression, PTSD-related anhedonia, and decreased sense of life meaning among MST survivors have been identified as potential links" between MST and suicide. *Id.* VA highlighted that increased suicidality in MST survivors has been found to be associated with "negative cognitions such as blaming oneself, feeling like a burden, and believing that one is damaged," as well as a "[l]ack of social support, perceived disapproval from others, and feelings of institutional betrayal from the military." *Id.*

In addition, a 2023 VA study found that women veterans who screened positive for MST had 3.20 times the prevalence of post-military suicidal ideation, 3.02 times the prevalence of a post-military suicide attempt, and 4.05 times the prevalence of past-month suicidal ideation, compared to those who screened negative, and those numbers rose to 3.81, 3.84, and 4.86 for women veterans who reported experiencing military sexual assault. MONTEITH, L., ET AL., *Military Sexual Trauma Among Women Veterans Using Veterans Health Administration Reproductive Health Care: Screening Challenges and Associations with Post-Military Suicidal Ideation and Suicide Attempts*, 38 J INTERPERS VIOLENCE 7578, 7585 (June 2023), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC10175204/pdf/nihms-1877408.pdf (page 7) (last accessed Jul. 14, 2025). VA even recognizes by regulation the increased risk of suicide for veterans who experienced MST. 38 C.F.R. § 78.10(b) (2025) ("[R]isk of suicide means exposure to, or the existence of, any of the following factors, to any degree, that increase the risk for suicidal ideation and/or behaviors: . . . (3) Historical risk factors, including . . . [MST]."). MST and its resulting disabilities obviously could constitute serious illness and sufficient cause for advancement. But the Board did not meaningfully consider the veteran's motion.

## C. *Heller* Hope Halted?

Somewhat surprisingly, the majority mortally wounds the case it principally relies upon—*Heller v. McDonough*, 38 Vet.App. 75 (2024), written by the same Judge just 8 months ago. The majority observes that, in *Heller*, the Court "held that the denial of a motion to advance on the docket is not an appealable decision, as it was not related to the grant or denial of any benefit by the Board." *Ante* at 4; *see Heller*, 38 Vet.App. at 83. As I noted in *Skaar v. Collins*, *Heller* failed to address two important matters. First, it failed to address whether the advancement decision is one made under a law that affects the provision of benefits, circumventing the *Bates* test and the fact that the right to seek advancement on the docket was specifically codified by Congress among laws specifically denominated "Veterans Benefits" in title 38 of the United States Code.

Second, it failed to address whether the Board's denial of a motion for advancement was a final decision regarding the benefit that the veteran sought in his motion—as VA defines "benefit" in 38 C.F.R. § 20.3(e). *Skaar v. Collins*, No. 24-5887, 2025 WL 1231033, at **4-5 (Vet. App. Apr. 29, 2025) (Jaquith, J., concurring). In my view, remedying these shortcomings would lead to a different result—a holding that the Board's denial of an advancement motion is a final Board decision that (1) denies the benefit sought, advancement of an appeal on the docket; (2) is made under a law that affects the provision of benefits, as enacted (per *Bates*) and functionally, by hastening the benefits determination or declining to do so[12]; and (3) would be unreviewable on appeal of the final decision on an appellant's underlying claim.

---

[12] Within VA, "'the Board acts on behalf of the Secretary in making the ultimate decision on claims'" by providing appellate review of questions the Secretary decides under laws that affect the provision of benefits to veterans or the dependents or survivors of veterans. *Kuppamala v. McDonald*, 27 Vet.App. 447, 452 (2015) (quoting *Disabled Am. Veterans v. Sec. of Veterans Affairs*, 327 F.3d 1339, 1347 (Fed. Cir. 2003)); *see* 38 U.S.C. §§ 511(a), 7104(a). In other words, "a 'final decision' of the Board involves reviewing and deciding questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits." *Clark v. McDonough*, 35 Vet.App. 317, 322 (2022). In determining whether a law affects the provision of benefits, we look beyond a particular statutory subsection to "a single statutory enactment that bears a Public Law number in the Statutes at Large." *Bates v. Nicholson*, 398 F.3d 1355, 1361 (Fed. Cir. 2005). Here, the public law that originally enacted what became section 7107 was Public Law 85-857, 72 Stat. 1105-1274 (Sep. 2, 1958), which consolidated into one act all of the laws

15

Even with the majority's doubtful determination that the Court had no jurisdiction, "the Court was nonetheless able to offer relief to Mr. Heller" and declared that "a petition continues to be the way to aid [the Court's] prospective jurisdiction by compelling action unlawfully withheld or unreasonably delayed." *Heller*, 38 Vet.App. at 84. Now the majority eliminates the Court's ability to aid its prospective jurisdiction to compel action unlawfully withheld by the Board's denial of advancement on the docket, regardless of the basis for the denial (or lack thereof), asserting that such denial does not "comprise[] an obstacle that effectively frustrates a Court's ability to exercise jurisdiction over a matter; it merely affects the timing under which such review occurs." *Ante* at 4. The majority seems to acknowledge the silliness of that assertion in a footnote, because the only possible answer to "whether the Court can offer meaningful relief to speed up adjudication on a claim that's already been decided" is "no." *See ante* at 4 n.2. Review of a Board denial of advancement on the docket obviously must be accomplished before the Board decides the underlying claim to have any effect. Whether judicial review is sought by filing a petition or an appeal, it would be too late to hasten a decision the Board has already made, and perhaps too late to deliver justice to a veteran who was of advanced age, seriously ill, under severe financial hardship, or unable to bear the lasting effects of MST when a meritorious motion for advancement was made.

In my view, the majority is clearly wrong. If *Heller* is right that "an [advancement on the docket] denial is not a final Board decision" such that "it can't be fixed with an appeal," then we must reject the majority's assertion that denial of docket advancement—even baseless denial—is no obstacle frustrating the Court's jurisdiction over the matter, *ante* at 4, and give meaning to *Heller*'s promise that "a petition continues to be the way to aid our prospective jurisdiction by compelling action unlawfully withheld or unreasonably delayed." *Heller*, 38 Vet.App. at 84.

### D. Statutory Construction

The majority opinion devotes three pages straining to get around the most basic principle of statutory construction: "When the words of a statute are clear, that is the end of our inquiry." *Held v. McDonough*, 37 Vet.App. 28, 33 (2023); *see Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992). Read in context, the words Congress chose here speak for themselves. *See* SCALIA & GARNER at 167 (2012) ("Context is a primary determinant of meaning."); *Lacey v. Wilkie*, 32 Vet.App. 71, 76 (2019) ("[S]tatutory terms . . . 'must be read in their context[.]'") (quoting *Davis*

---

administered by the Veterans Administration and codified those laws as title 38, United States Code, "Veterans Benefits." 72 Stat. at 1105. As originally enacted, this section was part of a Public Law "that affects the provision of benefits" and "therefore is subject to review by the Board and the Court under the terms of 38 U.S.C. § 511." *See Bates*, 398 F.3d at 1362. As currently constituted, section 7107(b) remains a law that affects the provision of benefits.

Moreover, the Board denied the benefit that the veteran sought. A "benefit" is "[t]he advantage or privilege something gives; the helpful or useful effect something has." *Benefit*, BLACK'S LAW DICTIONARY 193 (11th ed. 2019). As used in the rules of practice governing appeals to the Board, "[b]enefit means any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e) (2025). "Status" is a "position or rank in relation to others." *Status*, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY, https://unabridged.merriam-webster.com/unabridged/status (accessed Jan. 12, 2024). Since each case before the Board "will be decided in regular order according to its respective place on the docket to which it is assigned," section 7107(a)(4), that place on the docket reflects the status of the claimant's appeal in relation to other appeals. And advancement on the docket is a benefit that betters a claimant's appeal status—the advanced claimant's position in relation to others.

*v. Mich. Dep't. of Treasury*, 489 U.S. 803, 809 (1989)). In modern bicameralism and presentment, "[a] legislature considers and passes an entire act, including the title. The same conventions which insure the accuracy of the remainder of the act also insure the authenticity of the title." 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 47:3 (7th ed. 2010). The majority acknowledges that section 7112's "heading"—"Expedited treatment of certain claims"—"can only be read as covering . . . both claims remanded from this Court described in subsection (a) as well as MST claims described in subsection (b)." *Ante* at 6. However, rather than acting on this stark reality, the majority is paralyzed by perusing presumptions flowing from canons of construction that apply only when the words aren't clear. "Presumptions have their place in statutory interpretation, but only to the extent that they approximate reality." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 399 (2024). The reality here is that judicial inquiry into the construction of section 7112 should end with our recognition that Congress said what it meant and meant what it said when it wrote that MST claims get expedited treatment, *see Conn. Nat. Bank*, 503 U.S. at 254, and we should be acting on our independent judgment to order expedited treatment of Ms. Wiggins's MST claims.

This is not to say that Congress's amendment of section 7112 has answered every question. I share the majority's interest in the interplay between section 7112 and the advancement on the docket provisions of section 7107(b). Congress has not addressed that issue, but our Court has—at least in part—holding that "the phrase 'expeditious treatment' . . . does not require that remanded cases be advanced on the docket pursuant to 38 U.S.C. § 7107(a)(2) [now 7107(b)] and 38 C.F.R. § 20.900(c) [now 20.800(c)]." *Dailey v. Principi*, 17 Vet.App. 61, 67 (2003). Noting the separate origin of exceptions to docket-order consideration for special cases and expeditious treatment of remanded claims, the Court declared that a claimant is not entitled to advancement of a claim on the Board docket simply because that claim previously was remanded. *Id.* The Court also observed that giving a remanded case its prior docket number "does not appear to equal expeditious treatment." *Id.* at 68. What constitutes expedited treatment has not been defined by Congress or VA. In section 7112(b), Congress specified one example of the expedited treatment required for MST claims—a prompt determination whether the NOD is a covered case, which is important to the timing and conduct of a Board hearing. Section 7112(a) merely repeats the section's expeditious treatment standard.

In promulgating AMA regulations, VA seemed to equate expediting cases with advancement on the docket in response to a comment, advising that a proposed regulation did not remove the Board Chairman's authority to "*expedite (advance on docket)* cases on his or her own motion." VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 159 (Jan. 18, 2019) (codified as amended in scattered sections of 38 U.S.C.) (emphasis added). But in the regulation itself, VA says a case remanded by our Court "will be treated expeditiously by the Board without regard to its place on the Board's docket." 38 C.F.R. §§ 20.802(d) (2025), 20.902(d) (2025). In connection with the amendment of 38 U.S.C. § 5109B to provide for expeditious treatment of claims returned by a higher-level adjudicator or remanded by the Board, VA said the following:

> The statute does not further define what is meant by "expeditious," leaving timely treatment of claims to the Secretary. Clearly, Congress intended that VA would process these claims as expeditiously as possible depending upon available resources. VA will similarly not further define "expeditious" in the rule to provide

17

the Secretary the discretion to direct expeditious processing of actions through allocation of available resources, appropriate prioritization of workload, and issuance of procedures.

*VA Claims and Appeals Modernization*, 84 Fed. Reg. at 146-47. Though the Court can specify a timeframe for expedited treatment, and has done so, *see, e.g.*, *Friscia v. Brown*, 7 Vet.App. 294, 297-98 (1994), it should be enough here to hold that expedited treatment is required and has not been provided.

### E. The Board's Failure to Fulfill Its Statutory Obligation

Under section 7112(b), "the Board shall promptly determine whether a[n NOD] filed with the Board is a covered case," meaning a case "that concerns a claim for compensation based on [MST]" and "for which the appellant has requested a hearing." The Board's complete failure to fulfill that statutory obligation on its own accord is itself sufficient to establish the veteran's entitlement to a writ. In November 2021, Ms. Wiggins filed an NOD that would trigger the Board's prompt determination requirement. Secretary's Aug. 12, 2024, Pet. Resp., Att. E. Earlier that month, VA amended its appeals manual to include "new procedures for designating individuals as specialized claims processors . . . to ensure *high priority* and complex processing of claims." VA Appeals Manual, M21-5, ch.1, sec.A.3.f. (Nov. 10, 2021) (emphasis added). Several years earlier, the U.S. Court of Appeals for the Federal Circuit noted the increased efforts by VA to improve its adjudication of disability claims related to MST and highlighted that, "in 2011, the Veterans Benefits Administration (VBA) directed regional offices to designate adjudicators with experience in processing complex claims to assist in development of MST claims and adjudications [and] developed guidance and training for these adjudicators," resulting in increased grant rates for MST-based PTSD claims. *Serv. Women's Action Network v. Sec. of Veterans Affairs*, 815 F.3d 1369, 1376 (Fed. Cir. 2016). In light of the "growing recognition of the pervasive and continuing problem of sexual abuse in the military and the often severe effects it can have" and VA's efforts to improve its adjudication of MST claims, *id.* at 1372, Congressional action to spur expedited Board treatment of MST claims should not have gone unnoticed nor shocked the Board to inaction.

A 2016 VA study assessed that 41.5% of women veterans experienced MST. https://www.publichealth.va.gov/epidemiology/studies/new-generation/military-sexual-trauma-infographic.asp (last accessed Jul. 12, 2025). In an August 2021 report, the VA Office of Inspector General (OIG) found that "about 57 percent of denied [MST] claims were still not being processed correctly from October 1 to December 31, 2019"—worse than the rate noted in an OIG report 3 years earlier—because VA "was not properly implementing recommended changes to assist veterans who had experienced [MST] in obtaining the care and benefits to which they are entitled." VA OIG, *Improvements Still Needed in Processing Military Sexual Trauma Claims*, Report No. 20-00041-163 at ii (August 5, 2021).

In response to this VA OIG report, VA said it had "implemented several actions to effectively improve [MST] claims processing," including mandating that only specialized groups of trained representatives "who have demonstrated high quality standards process these *high priority* and complex claims." *Id.* at 37 (emphasis added). VA added that it had "centralized this important work to five regional offices (ROs) to further improve benefits delivery to [v]eterans

18

who file MST-related claims by enhancing efficiency, accuracy, and *timeliness* by placing these cases in the hands of well-trained, experienced employees." *Id.* (emphasis added). "Priority" is "[t]he status of being earlier in time or higher in degree or rank; precedence." *Priority*, BLACK'S LAW DICTIONARY (12th ed. 2024). Another definition is "something that is very important and must be dealt with before other things." *Priority*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY & THESAURUS, https://dictionary.cambridge.org/us/dictionary/english/priority [hereinafter CAMBRIDGE (last visited Jul. 14, 2025). "Expedite" is "to make something happen more quickly." CAMBRIDGE at expedite. Both expedition and priority communicate urgency.[13] *See Urgency*, BURTON'S LEGAL THESAURUS (6th ed. 2021).

The majority excuses VA's failure to promptly determine whether Ms. Wiggins's appeal constituted a covered case as not implicating faster adjudication of her appeal. *Ante* at 7, n.4. However, at oral argument, the Secretary's counsel said:

> As part of [the] overall statutory scheme, [section] 7112(b) sits before the adjudication process—at the early stage of the adjudication process—and so, as required under [section] 7112(b), the Board must identify those claims, those appeals with claims involving MST so that at the hearing the VLJ will conduct the hearings with the requisite level of sensitivity consistent with their MST training and to ensure that veterans are not being re-traumatized through the use of insensitive language.

OA at 28:19-48. In other words, a veteran's hearing could not be scheduled until after the Board made the covered case determination required by section 7112(b). Ms. Wiggins waited nearly 29 months for the Board hearing she requested in November 2021—16 of those months after the amendment of section 7112(b)—and the Board did not determine, in all that time, whether her case was covered by the statute. In April 2024, Ms. Wiggins wrote the Board to withdraw her hearing request because of the Board's extended delay in acting on her NOD, asking for direct review by a veterans law judge to adjudicate her claims as soon as possible. Secretary's Aug. 12, 2024, Pet. Resp., Att. I. Ms. Wiggins filed her petition for extraordinary relief on July 2, 2024. On July 12, 2024, the Court ordered the Secretary to file an answer to her petition. The Board responded to her April 2024 letter on July 24, 2024, indicating that it had processed her request and would consider evidence submitted within 90 days of the date it had received the request— which it said was April 22, 2024, meaning that her time to submit evidence had already expired, although the Board did not note that its newly noticed deadline had come and gone. *Id.* at Att. J.

Nothing spurred the Board to fulfill its obligation to promptly determine whether Ms. Wiggins's case was a covered one, not even her petition or the Court order to answer it. And the Court order included very specific instructions: state "whether the processing and adjudication of Ms. Wiggin[s]'s 2021 Board appeal has been delayed" and "address whether [s]ection 7112(b) or other qualifiers allow Ms. Wiggins's appeal to be expedited or resolved without undue delay," noting that "claims involving MST must be expedited under 38 U.S.C. § 7112(b)," and that "for

---

[13] For example, the definitions for disclosure of VA records under the Freedom of Information Act provide that "[e]xpedited processing means giving a FOIA request priority for processing ahead of other pending requests because VA has determined that the requester has shown an exceptional need or urgency for the records as provided in these regulations." 38 C.F.R. § 1.551 (2025).

claims involving MST, the Board 'shall promptly determine whether [an NOD] filed with the Board is a covered case.'" Court's July 12, 2024, Order. The Secretary responded that section 7112 did not require expedited treatment of Ms. Wiggins's MST claims, but only the Board's prompt determination of whether hers was a covered case. Secretary's Aug. 12, 2024, Pet. Resp. at 10-11. The Secretary neither acknowledged that such a determination had not been made nor said it was coming.

So the Court issued a follow-up order, finding that the Secretary had "skirted around" the Court's request and "did not assure the Court that the Board has promptly made or will make such a decision." Court's Aug. 22, 2024, Order. The Court ordered that the Secretary direct the Board to determine, within 30 days, whether Ms. Wiggins's NOD is a covered case. On September 23, 2024, the Secretary responded that the Board had determined that Ms. Wiggins's appeal was a covered case on August 23, 2024, and furnished a September 3, 2024, declaration by a Deputy Vice Chairman of the Board certifying that the determination had been made but not specifying the date. Secretary's Sept. 23, 2024, Resp. The Board's "prompt" determination was made at least 21 months after the statute required it (and responded to an NOD at least 33 months old).

F. Off the *TRAC*

As the majority acknowledges, *ante* at 4, the Federal Circuit has adopted the *TRAC* standard for evaluating mandamus petitions based on alleged unreasonable delay. *Martin v. O'Rourke*, 891 F.3d 1338, 1348 (Fed. Cir. 2018); *see Telecomm. Research & Action Ctr. v. F.C.C. (TRAC)*, 750 F.2d 70, 80 (D.C. Cir. 1984). But the majority's analysis of the *TRAC* factors leaves the egregious delay here unchecked. The time the Board took to determine whether Ms. Wiggins's claims concerned MST and included a hearing request, warranting expedited treatment, (1) was completely unreasonable; (2) defied Congress's amendment of section 7112 to afford MST claims expedited treatment, including a prompt determination of whether her case was covered; (3) ignored the veteran's worsening suffering from conditions resulting from MST, including suicidal ideation (human health and welfare circumstances that emphatically refute the Secretary's characterization of that factor as "of reduced import," Secretary's Aug. 12, 2024, Pet. Resp. at 12); (4) ignored Congressional action making Agency attention to MST claims a high priority (notwithstanding VA's attention to MST issues outside of Board inaction); and (5) subjected a suffering veteran with a worsening service-connected disability involving suicidal ideation to lengthy, ongoing, and yet unquantifiable delay. *See Green v. McDonough*, 37 Vet.App. 127, 137 (2024) ("When the effect of a Board error on the outcome of a proceeding is unquantifiable, we should not speculate as to what the outcome might be; we should vacate the erroneous decision that could adversely affect the determination."). There undoubtedly is delay attributable to the overburdening of the system, but that cannot excuse the indicators of indifference to the law and to the veteran here.

Ms. Wiggins was but 18 years old when she experienced MST—a sexual assault by a fellow Air Force member—over a decade ago. VA has acknowledged that she has suffered from disabling MDD resulting from that MST since April 2021, and that her disability worsened— including involving suicidal ideation—just 7 months later. Yet when she sought advancement on the docket in March 2022 and brought these circumstances before the Board, it answered with an unresponsive form letter that did not even note her MST. Then the Board ignored Congress, and

VA, for a time, ignored the Court. These circumstances are the opposite of expedited treatment and promptness. Ms. Wiggins has demonstrated that her right to the issuance of a writ mandating expedited treatment is clear, indisputable, and appropriate. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 381 (2004). I respectfully but emphatically dissent.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-1053

**Short Case Caption:** Wiggins v. Collins

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __13612__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: __12/15/2025__        Signature: _____

Name: __Rose Carmen Goldberg__

Save for Filing