No. 26-1053

IN THE

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

———————————

KARISSA WIGGINS,

*Petitioner-Appellant,*

-v.-

DOUGLAS COLLINS,

Secretary of Veterans Affairs,

*Respondent- Appellee.*

———————————

On Appeal from the United States Court of Appeals for Veterans Claims

**BRIEF FOR *AMICI CURIAE* NATIONAL ALLIANCE TO END SEXUAL VIOLENCE, PROTECT OUR DEFENDERS FOUNDATION, SERVICE WOMEN'S ACTION NETWORK & VICTIM RIGHTS LAW CENTER IN SUPPORT OF PETITIONER-APPELLANT**

Brad Adams
American Civil Liberties Union
425 California Street
San Francisco, CA 94104
(415) 343-0760
DRP_BAdams@aclu.org

Ashley Johnson
American Civil Liberties Union
125 Broad Street
New York, NY 10004
(212) 519-7891
Ashley.johnson@aclu.org
*Counsel for Amici Curiae*

December 19, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|---|
| **Case Number** | 26-1053 |
| **Short Case Caption** | Wiggins v. Collins |
| **Filing Party/Entity** | American Civil Liberties Union |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.


Date: 12/19/2025

Signature: *Ashley Johnson*

Name: Ashley Johnson

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| National Alliance to End Sexual Violence | | |
| Protect Our Defenders Foundation | | |
| Service Women's Action Network | | |
| Victim Rights Law Center | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Ashley Johnson, American Civil Liberties Union | | |
| Brad Adams, American Civil Liberties Union | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF INTEREST OF AMICI CURIAE ...............................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................1

ARGUMENT ..........................................................................................3

  I.   Timely Access to Benefits Is Crucial for Veterans with Disabilities Stemming from MST. ....................................................................3

    A.  Disability Benefits Provide Critical Financial Support to Veterans with Significant and Costly Disabling Conditions Associated with MST...........4

    B.  Delays in Adjudication Create Additional Harms for MST Survivors........8

    C.  Compensation for Injuries Stemming from MST is Essential for Recovery in Redressing Dignitary Harm and Encourages Veterans to Report MST. ............................................................................10

    D.  Expedited Adjudication is Consistent with Congress's Intent to Make Compensation for MST Survivors More Readily Available. ....................13

  II.  Access to Timely MST-related Benefits is Often the Only Way Survivors Can Be Compensated for the Harm They Experienced. ...........................15

  III.  Delays in Accessing Benefits Have a Discriminatory Impact. ....................17

    A.  Women and LGBTQ Veterans Are Overrepresented Among Survivors of MST and Thus Bear the Brunt of a Dysfunctional Claims Process...........18

    B.  Stigma and Implicit Biases Infect The Claims Process and Impact Men and Black Veterans Disproportionately. ...................................................20

CONCLUSION ....................................................................................23

ADDENDUM: INTEREST OF AMICI CURIAE...................................25

CERTIFICATE OF COMPLIANCE.....................................................27

CERTIFICATE OF SERVICE .............................................................27

# TABLE OF AUTHORITIES

**Cases**

*Burns v. Wilson*, 346 U.S. 137 (1953) ....................................................................15

*Feres v. United States*, 340 U.S. 135 (1950) .........................................................15

*Mackey v. United States,* 226 F.3d 773 (6th Cir. 2000).........................................16

*Morris v. Thompson*, 852 F.3d 416 (5th Cir. 2017)................................................16

*Noah v. McDonald*, 28 Vet. App. 120, 130 (2016) ..................................................2

*Orloff v. Willoughby*, 345 U.S. 83 (1953).............................................................15

*Parker v. Levy*, 417 U.S. 733 (1974) .....................................................................15

*Spletstoser v. Hyten*, 44 F.4th 938 (9th Cir. 2022) ................................................16

*Stauber v. Cline,* 837 F.2d 395 (9th Cir. 1988) .....................................................16

*United States v. Johnson*, 481 U.S. 681 (1987)......................................................15

**Statutes**

*Dignity for MST Survivors Act*, 38 U.S.C. § 7112....................................................3

*Dignity for MST Survivors Act*, Pub. L. No. 117-300 (2022)..................................13

*MST Claims Coordination Act*, Pub. L. No. 117-303 (2022)...................................13

*VA Peer Support Enhancement for MST Survivors Act*, Pub. L. No. 117-271 (2022)
.................................................................................................................................14

**Other Authorities**

2023 Workplace and Gender Relations Survey of Military Members, U.S.
DEPARTMENT OF DEFENSE, OFFICE OF PEOPLE ANALYTICS (2024), available at
https://www.opa.mil/research-analysis/health-well-being/sexual-assault-
prevention-and-response/2023-workplace-and-gender-relations-survey-of-

military-members-c5211883-43a0-44b1-8ef4-7ec3984ed199/2023-workplace-and-gender-relations-survey-of-military-members-overview-report...................20

Aliya R. Webermann, et al., *Military Sexual Trauma and its Association with Mental Health Among Sexual Minority and Heterosexual Veterans in the United States*, 10 LGBT HEALTH 61 (2023)........................................................ 18, 19, 20

Aliya R. Webermann, et al., *Military sexual trauma-related posttraumatic stress disorder service-connection: Characteristics of claimants and award denial across gender, race, and compared to combat trauma*, PLOS ONE 19(1), at 1 (Jan. 2024) ............................................................................. 21, 22, 23

Amy Street, et al., *Providing Mental Health Care for Those Who Experienced Military Sexual Trauma*, U.S. DEPT. OF VETERANS AFFAIRS (2025), https://www.ptsd.va.gov/professional/treat/type/providing_care_mst.asp#one [https://perma.cc/92C4-QBXM] (last visited November 21, 2025) ............. 10, 12, 13

Andrew R. Morral & Terry L. Schell, *Sexual Assault of Sexual Minorities in the U.S. Military*, RAND CORPORATION (2021), available at https://www.rand.org/content/dam/rand/pubs/research_reports/RRA1300/RRA1390-1/RAND_RRA1390-1.pdf .............................................................................19

Angela K. Drake & Charlotte R. Burgess-Mundwiller, *Military Sexual Trauma: A Current Analysis of Disability Claims Adjudication Under Veterans Benefits Law*, 84 MO. L. REV. 661 (2019)...........................................................................7

Associated Press Staff, *Military Sex Abuse Victims Seek VA Help*, CBS NEWS (May 20, 2013), available at https://www.cbsnews.com/news/military-sex-abuse-victims-seek-va-help/ [https://perma.cc/D9VX-K3SG].....................................6, 7

*Blumenthal, Murkowski, Pingree Lead Bipartisan Push to Support Survivors of Military Sexual Trauma*, U.S. SENATE COMMITTEE ON VETERANS' AFFAIRS (Apr. 3, 2025), https://www.veterans.senate.gov/2025/4/blumenthal-senators-introduce-sweeping-legislation-to-reverse-damage-from-trump-administration-s-egregious-cuts-at-va-assault-on-veterans [https://perma.cc/899E-CRYN]..........14

Claire P. Donohue, *Client, Self, Systems: A Framework for Integrated Skills-Justice Education*, 29 GEO. J. LEGAL ETHICS 439 (2016) .................................8, 9

Cooper T. Fyfe, *The Detrimental Pitfall of the FTCA: Overturning Feres & Endorsing the Sergeant First Class Richard Stayskal Military Medical Accountability Act of 2019*, 52 TEX. TECH L. REV. 877 (2020) ..........................15

Craig Westergard, *You Catch More Flies With Honey: Reevaluating the Erroneous Premises of the Military Exception to Title VII*, 20 MARQ. BEN. & SOC. WELFARE L. REV. 2 (2019) ......................................................................................17

Dave Philipps, *'This Is Unacceptable.' Military Reports a Surge of Sexual Assaults in the Ranks*, N.Y. TIMES (May 2, 2019), available at https://www.nytimes.com/2019/05/02/us/military-sexual-assault.html [https://perma.cc/6WGZ-SDX8] ........................................................18

*Department of Defense Annual Report on Sexual Assault in the Military Fiscal Year 2023*, DEP'T OF DEF. (2024), available at https://www.sapr.mil/sites/default/files/public/docs/reports/AR/FY23/FY23_Annual_Report.pdf [https://perma.cc/VNV8-V7N8].................................................5

*Department of Defense Annual Report on Sexual Assault in the Military Fiscal Year 2024*, DEP'T OF DEF. (2025), available at https://www.sapr.mil/Portals/156/FY24_Annual_Report.pdf [https://perma.cc/4MEH-AJ2S]...........................................................................4

Diana L. Grimes, *Practice What You Preach: How Restorative Justice Could Solve the Judicial Problems in Clergy Sexual Abuse Cases*, 63 WASH. & LEE L. REV. 1693 (2006)....................................................................................9

Emma Wardour, *Believing Survivors of Military Sexual Trauma: The Imperativeness of Altering the Claim Interpretation and Adjudication Process for Veterans Seeking Disability Compensation and Benefits*, 33 FED. CIRCUIT B.J. 325 (2025)................................................................................ 5, 6, 7, 8

Evan R. Seamone & David M. Traskey, *Maximizing VA Benefits for Survivors of Military Sexual Trauma: A Practical Guide for Survivors and Their Advocates*, 26 COLUM. J. GENDER & L. 343 (2014) .............................................. 7, 10, 12, 19

Exec. Order No. 14183, 90 Fed. Reg. 8757 (Jan. 27, 2025) .................................... 2

Felicia J. Andresen, et al., *Institutional betrayal following military sexual trauma is associated with more severe depression and specific posttraumatic stress disorder symptom clusters*, 75 J. CLIN. PSYCHOL. 1305 (2019) .......................... 11

Gwendolyn Savitz, *Administrative Compensation for Military Harassment and Sexual Assault: A Win-Win for Victims and the Military*, 100 NEB. L. REV. 329 (2021) ............................................... 5, 12, 18, 19

Jeffrey A. Critchlow, *Propping Open the Courthouse Door: Why Service Members Should Be Able To Bring Sexual Harassment Suits Under The Feres Doctrine*, 104 IOWA L. REV. 855 (2019) .............................................................. 16

Jennifer C. Schingle, *A Disparate Impact on Female Veterans: The Unintended Consequences of Veterans Affairs Regulations Governing the Burdens of Proof for Post-Traumatic Stress Disorder Due to Combat and Military Sexual Trauma*, 16 WM. & MARY J. WOMEN & L. 155 (2009) ....................................... 22

Jennifer Greenburg, *Deserted: The U.S. Military's Sexual Assault Crisis as a Cost of War*, THE WATSON SCHOOL OF INTERNATIONAL & PUBLIC AFFAIRS, BROWN UNIVERSITY (Aug. 14, 2024), available at https://costsofwar.watson.brown.edu/sites/default/files/papers/Greenburg_Sexual-Assault-Crisis_Costs-of-War.pdf. ......................................................... 4

Jonathan A. D'Orazio, *Protecting Our Protectors: Why Title VII Should Apply to the Uniformed Military Following the Supreme Court's Decision in Bostock v. Clayton County*, 23 MARQ. BEN. & SOC. WELFARE L. REV. 9 (2021) ................. 17

Julie Dickerson, *A Compensation System for Military Victims of Sexual Assault and Harassment*, 222 MIL. L. REV. 211 (2014) ................................................. 6, 7

Krista D. Bordatto, *The Sexual Violence Epidemic vs. The Uniform Code of Military Justice & Feres Doctrine*, 60 GONZ. L. REV. 297 (2025) ......................11

Lisa Davis, et al., *2016 Workplace and Gender Relations Survey of Active Duty Members*, U.S. DEPARTMENT OF DEFENSE, OFFICE OF PEOPLE ANALYTICS (2017), available at https://apps.dtic.mil/sti/tr/pdf/AD1032638.pdf................................20

Margret E. Bell, et al., *Victims' Psychosocial Well-Being After Reporting Sexual Harassment in the Military*, 15 J. TRAUMA & DISSOCIATION, 133 (2014)...........12

Renée Burbank, *Stigmatizing Narratives in Military Sexual Trauma Cases*, 31 KAN. J.L. & PUB. POL'Y 185 (2022) ..............................................................21

Sara B. Cichowski, et al., *Military Sexual Trauma in Female Veterans is Associated With Chronic Pain Conditions*, 182(9) MIL. MED. 1895 (2017) . 7, 18, 19

Tara E. Galovski, et al., *The Relative Impact of Different Types of Military Sexual Trauma on Long-Term PTSD, Depression, and Suicidality*, 38(15-16) J. INTERPERSONAL VIOLENCE 9465 (2023) ..........................................................5, 6

Thomas Gutheil et al., *Preventing "Critogenic" Harms: Minimizing Emotional Injury from Civil Litigation*, 28 J. PSYCHIATRY & L. 5 (2005) .............................9

U.S. Dep't of Defense, *Additional Guidance on Prioritizing Military Excellence and Readiness* (Feb. 26, 2025), available at https://www.war.gov/Portals/1/Spotlight/2025/Guidance_For_Federal_Policies/Prioritizing_Military_Excellence_and_Readiness_P&R_Guidance.pdf .................3

Vincent Cardi, *Litigation As Violence*, 49 WAKE FOREST L. REV. 6772 (2014) .......8

# STATEMENT OF INTEREST OF AMICI CURIAE[1]

*Amici* are four organizations advocating for the civil rights of survivors of military sexual trauma ("MST"), who include servicemembers, veterans, and civilians assaulted by members of the military. *Amici* include organizations that represent the interests of servicemembers and veterans in a broad array of matters and anti-sexual violence organizations advocating for survivors, building safer communities, and educating the public. They submit this brief to inform the Court of the importance of disability benefits to veterans with mental health conditions arising from MST and the harm of unreasonably long delay before resolution of veterans' appeals from decisions denying benefits. *Amici* advocate on behalf of veterans, including Appellant Karissa Wiggins, who have been unfairly impacted by the erroneous interpretation and implementation of federal laws designed to compensate veterans for their service to this country. More detailed descriptions of each *amicus* appear in the addendum.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

Military Sexual Trauma ("MST") is a pervasive problem in the armed forces that threatens the strength and morale of the military and has devastating personal

---

[1]    Pursuant to Federal Rule of Appellate Procedure Rule 29(a), *amici* certify that all parties have consented to the timely filing of this brief. *Amici* also certify that no person or entity, other than *amicus*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part.

effects on survivors. Expedited adjudication of MST claims is crucial to ensuring

that servicemembers have access to the compensation they need and prevents the

extension of the harms of delay in the claims process itself.

Veteran's benefits "reflect[] a core value of our Nation" and a commitment

to care for those who have served. *See Noah v. McDonald*, 28 Vet. App. 120, 130

(2016). That promise is broken when veterans who experienced MST must wait

unreasonably long periods of time to resolve appeals from decisions denying

benefits. Such delays significantly harm MST survivors because the adjudication

process itself creates harm and delays recovery. Prompt resolution of these claims

is all the more important where veterans suffering from MST often have no other

avenue for relief, with the *Feres* Doctrine often closing off avenues for civil

liability.

Left uncorrected, the decision below will harm marginalized populations

most. Women and LGBTQ[2] servicemembers, two groups underrepresented in the

---

[2]    Transgender and nonbinary people have bravely served in all branches of the
military; however, the Trump administration has enacted policies to push
transgender troops out of the military. On January 27, 2025, President Trump
signed EO 14183, titled "Prioritizing Military Excellence and Readiness," which
directed the Department of Defense ("DOD") to adopt policies that would prohibit
transgender, nonbinary, and gender-nonconforming people from serving in the
military. Exec. Order No. 14183, 90 Fed. Reg. 8757 (Jan. 27, 2025). On February
26, 2025, the DOD issued the new policy, declaring that transgender and nonbinary
individuals will no longer be eligible to join the military, and directing that all
transgender people currently serving be separated from service.  U.S. Dep't of
Defense, *Additional Guidance on Prioritizing Military Excellence and Readiness*

military, experience MST at substantially higher rates than the general military population and thus are more in need of pursuing claims and appeals of denials. In addition, disparities in rates of denials for MST-related claims exist across race and gender lines, with Black veterans and men receiving denials at higher rates.

The United States Court of Appeals for Veterans Claims' ("CAVC") decision that the *Dignity for MST Survivors Act*, 38 U.S.C. § 7112 ("Section 7112"), does not require expedited adjudication of MST claims breaches the promise our country has made to veterans. The Court should reverse.

## ARGUMENT

### I. Timely Access to Benefits Is Crucial for Veterans with Disabilities Stemming from MST.

Disability benefits are a critical tool in supporting MST survivors' recovery. Timely disability benefits facilitate recovery by easing financial burdens, resolving the unique distress associated with an ongoing legal process, and validating the traumatic experience, in turn encouraging veterans to come forward and report MST. In recent years, Congress recognized this need and enacted legislation aimed at making disability benefits more readily available for MST survivors.

---

(Feb. 26, 2025), available at https://www.war.gov/Portals/1/Spotlight/2025/Guidance_For_Federal_Policies/Prioritizing_Military_Excellence_and_Readiness_P&R_Guidance.pdf.

**A. Disability Benefits Provide Critical Financial Support to Veterans with Significant and Costly Disabling Conditions Associated with MST.**

MST can cause or exacerbate mental and physical health disabilities in veterans. Treatment can be costly, and MST survivors may need financial assistance when their disabilities impact their ability to work. Disability benefits provide the compensation necessary for survivors recovering from MST.

In 2023, the Department of Defense ("DOD") estimated that 29,061[3] servicemembers experienced sexual assault while in service that year.[4] *See*

---

[3]     An independent report suggests that the actual prevalence of MST is 2.5 times higher than the figures calculated by the DOD. *See* Jennifer Greenburg, *Deserted: The U.S. Military's Sexual Assault Crisis as a Cost of War*, THE WATSON SCHOOL OF INTERNATIONAL & PUBLIC AFFAIRS, BROWN UNIVERSITY at 37 (Aug. 14, 2024), available at https://costsofwar.watson.brown.edu/sites/default/files/papers/Greenburg_Sexual-Assault-Crisis_Costs-of-War.pdf.

[4]     This brief relies on the 2023 DOD Annual Report. Although the DOD released a more recent annual report in 2024, the 2024 report does not include key data, including estimates for prevalence of sexual assault and estimated reporting rates. *See Department of Defense Annual Report on Sexual Assault in the Military Fiscal Year 2024*, DEP'T OF DEF. 1, 7 (2025), available at https://www.sapr.mil/Portals/156/FY24_Annual_Report.pdf [https://perma.cc/4MEH-AJ2S]. The estimated prevalence and reporting rates rely on results from the DOD's Workplace Experiences Survey of Military Members (WESM), a survey that was last conducted in 2023 and by law, is completed biennially. *Id.* ("This survey was last conducted in FY23 and by law is fielded biennially. No such survey was required or conducted in FY24. As a result, this report does not include a prevalence estimate or an estimated reporting rate for FY24. The Department will field the *WESM* in FY25 to a representative sample of military members.").

*Department of Defense Annual Report on Sexual Assault in the Military Fiscal Year 2023*, DEP'T OF DEF. 1, 4, 9 (2024), available at https://www.sapr.mil/sites/default/files/public/docs/reports/AR/FY23/FY23_Annual_Report.pdf [https://perma.cc/VNV8-V7N8] ("2023 DOD Annual Report"). That number is even higher when accounting for all forms of sexual harassment. Gwendolyn Savitz, *Administrative Compensation for Military Harassment and Sexual Assault: A Win-Win for Victims and the Military*, 100 NEB. L. REV. 329, 333–37 (2021).

MST survivors experience a multitude of mental and physical health conditions, including post-traumatic stress disorder ("PTSD"), anxiety, depression, and suicidality, which are well-documented to cause impairment across major life domains. *See* Tara E. Galovski, et al., *The Relative Impact of Different Types of Military Sexual Trauma on Long-Term PTSD, Depression, and Suicidality*, 38(15-16) J. INTERPERSONAL VIOLENCE 9465, 9466–80 (2023). These conditions can make working difficult and require costly medical treatment. Emma Wardour, *Believing Survivors of Military Sexual Trauma: The Imperativeness of Altering the Claim Interpretation and Adjudication Process for Veterans Seeking Disability Compensation and Benefits*, 33 FED. CIRCUIT B.J. 325, 328–29 (2025).

Indeed, veterans who experienced MST cite "crippling depression and PTSD" when filing benefits claims and describing their service-related

disabilities. Julie Dickerson, *A Compensation System for Military Victims of Sexual Assault and Harassment*, 222 MIL. L. REV. 211, 230 (2014). According to one study, "experiences of any type of MST resulted in statistically and clinically significant increases on symptom severity [of mental health disabilities]" in comparison to trauma-exposed veterans who denied experiencing MST. Galovski, *The Relative Impact,* J. INTERPERSONAL VIOLENCE at 9484. Other studies show that some of the most prevalent conditions are PTSD and depression, as well as other conditions characterized by symptoms such as disordered eating, relationship issues, emotional numbness, sleep disturbances, and attention issues, all of which require costly treatment and may affect a veteran's ability to earn a living. Wardour, *Believing Survivors*, 33 FED. CIRCUIT B.J. at 328–29.

The debilitating effects of MST are not solely psychological. MST also causes physical ailments and disabilities that require immediate intervention and treatment and, in some cases, render a veteran unable to work at all. *See* Associated Press Staff, *Military Sex Abuse Victims Seek VA Help*, CBS NEWS (May 20, 2013), available at https://www.cbsnews.com/news/military-sex-abuse-victims-seek-va-help/ [https://perma.cc/D9VX-K3SG]. Clinicians have documented statistically significant rates of hypothyroidism, substance abuse, liver and pulmonary diseases, and dangerous fluctuations in weight in veterans who reported MST. Angela K. Drake & Charlotte R. Burgess-Mundwiller, *Military Sexual Trauma: A Current*

*Analysis of Disability Claims Adjudication Under Veterans Benefits Law*, 84 Mo. L. Rev. 661, 695 (2019). Further, "female veteran survivors of MST face an increased burden of chronic pain," *id.*, including chronic back pain, chronic pelvic pain, headaches, abdominal pain, joint pain, irritable bowel syndrome, and fibromyalgia. *See* Sara B. Cichowski, et al., *Military Sexual Trauma in Female Veterans is Associated With Chronic Pain Conditions*, 182(9) Mil. Med. 1895, 1895 (2017).

Disability benefits thus provide critical financial support to address the devastating effects of MST. Wardour, *Believing Survivors*, 33 Fed. Circuit B.J. at 328–29. Compensation eases economic burdens by replacing lost income or earning potential and helping to offset the costs of essential medical care and treatment. *See* Evan R. Seamone & David M. Traskey, *Maximizing VA Benefits for Survivors of Military Sexual Trauma: A Practical Guide for Survivors and Their Advocates*, 26 Colum. J. Gender & L. 343, 347 (2014). For example, for veterans who cannot work due to MST-related disabilities, benefits provide approximately "$500,000 per victim over the course of a lifetime." Dickerson, *A Compensation System*, 222 Mil. L. Rev. at 230; *see also* Associated Press Staff, *Military Sex Abuse Victims Seek VA Help*, CBS News. Such aid is both meaningful and life-changing "in mitigating, treating, or eradicating these physical and mental manifestations by elevating one's ability to obtain and afford appropriate

medical care" and focus on recovery rather than worrying about making ends meet. Wardour, *Believing Survivors*, 33 FED. CIRCUIT B.J. at 328–29.

## B. Delays in Adjudication Create Additional Harms for MST Survivors.

While timely access to benefits is important for facilitating recovery, the converse is also true: delays in the adjudication hinder recovery for MST survivors. In fact, delays in the legal process themselves are a particular cause of psychological harm. *See* Vincent Cardi, *Litigation As Violence*, 49 WAKE FOREST L. REV. 677, 682 (2014) (discussing studies).

The claims process itself creates harm. The harm does not hinge on a survivor's eventual success on the merits of a claim but on navigating the process. This type of psychological distress "dissipates soon after the litigation ends, regardless of whether the underlying economic or physical harm continues, and regardless of who wins the lawsuit. It simply accompanies the litigation." Cardi, *Litigation As Violence*, 49 WAKE FOREST L. REV. at 682. Indeed, the constant fear of an unfavorable finding or hope for a favorable one can "foreclose the possibility of meaningful work toward healing." Claire P. Donohue, *Client, Self, Systems: A Framework for Integrated Skills-Justice Education*, 29 GEO. J. LEGAL ETHICS 439, 470 (2016). A long adjudication process prolongs these injuries, which may rise to

the level of mental health disabilities.[5] Diana L. Grimes, *Practice What You Preach: How Restorative Justice Could Solve the Judicial Problems in Clergy Sexual Abuse Cases*, 63 WASH. & LEE L. REV. 1693, 1709, 1712 (2006) (citing Thomas Gutheil et al., *Preventing "Critogenic" Harms: Minimizing Emotional Injury from Civil Litigation*, 28 J. PSYCHIATRY & L. 5, 6 (2005)).

MST survivors navigating the appeals process face an increased risk of injury related to lengthy or delayed adjudication. Experts have explained that during the adjudication process, survivors of trauma may experience "retraumatization […] loss of privacy; and prolongation, vitiation or even arrest of the emotional resolution or healing process from a claimed injury." Gutheil, *Preventing "Critogenic" Harms*, 28 J. PSYCHIATRY & L. at 11. The longer an MST survivor must engage in adjudication of their claim, the longer the psychological distress remains. Expediting adjudication through Section 7112 hastens a veteran's trauma recovery process on multiple fronts: by improving

---

[5] This type of injury is often referred to as "critogenic" harm, which is defined as the "intrinsic and often inescapable" emotional harms that the legal process creates for survivors of sexual trauma. Donohue, *Client, Self, Systems*, 29 GEO. J. LEGAL ETHICS at 468. Experts primarily use the term critogenic harm in the context of civil and criminal litigation, but the concept applies just as forcefully to regulatory adjudication. Critogenic harm stems from a party's ongoing obligation to reveal personal or intimate information in a public manner, an obligation present in both litigation and regulatory adjudication contexts. *See id.* at 469.

access to treatment, providing financial support, and more quickly removing the additional psychological stressors that adjudication brings.

### C. Compensation for Injuries Stemming from MST is Essential for Recovery in Redressing Dignitary Harm and Encourages Veterans to Report MST.

An award of disability compensation provides veterans who experienced MST "official recognition and validation of their traumatic experiences," which has consequences for the health of veterans and the military itself. Seamone & Traskey, *Maximizing VA Benefits*, 26 COLUM. J. GENDER & L. at 436 (citations omitted). Denials contribute to perceptions of institutional betrayal, with cascading effects for veterans and the military generally.

"Receiving invalidating or stigmatizing responses from legal, medical, or other sources of formal help can compound mental health difficulties for individuals after MST, increasing symptoms of PTSD, feelings of isolation, perceptions of self-blame, and other challenges." Amy Street, et al., *Providing Mental Health Care for Those Who Experienced Military Sexual Trauma*, U.S. DEPT. OF VETERANS AFFAIRS (2025), https://www.ptsd.va.gov/professional/treat/type/providing_care_mst.asp#one [https://perma.cc/92C4-QBXM] (last visited November 21, 2025). Outside the disability compensation system, survivors are too often ignored when they raise complaints about MST. Despite the known prevalence of sexual assault in the military and its

cascading impacts, the military rarely investigates MST complaints through its

own legal system, contributing to "perceptions of institutional betrayal." Krista D.

Bordatto, *The Sexual Violence Epidemic vs. The Uniform Code of Military Justice

& Feres Doctrine*, 60 GONZ. L. REV. 297, 303 (2025). Institutional betrayal is

defined as an "experience of a perceived failure by an institution to act or respond

supportively to a traumatic event," which in turn leads to negative mental and

physical health outcomes among trauma survivors. Felicia J. Andresen, et al.,

*Institutional betrayal following military sexual trauma is associated with more

severe depression and specific posttraumatic stress disorder symptom clusters*, 75

J. CLIN. PSYCHOL. 1305, 1306 (2019). This is especially salient in the military, an

institution built on trust and loyalty for which veterans have made tremendous

sacrifices. Institutional betrayal is associated with higher PTSD symptom severity,

higher depression symptom severity, and a higher likelihood of attempting suicide,

making prompt resolution of claims all the more necessary. *Id.*

A poor claims process for MST-related claims can also lead to feelings of

institutional betrayal.[6] *See* Margret E. Bell, et al., *Victims' Psychosocial Well-*

---

[6]     The risk of institutional betrayal was particularly great when Ms.
Wiggins was in the Air Force. During her service from 2013 to 2016, commanders
had unfettered discretion and control over which sexual violence cases to
investigate. At that time, MST survivors did not trust their commanders to validate
their experiences or take action to ensure their safety. *See* Bordatto, *The Sexual
Violence Epidemic*, 60 GONZ. L. REV. at 303–04.

*Being After Reporting Sexual Harassment in the Military*, 15 J. TRAUMA &

DISSOCIATION, 133, 136 (2014). When efforts to obtain benefits prove

unnecessarily complicated, MST survivors feel three times betrayed: first, by their

fellow servicemember who perpetrated the assault; second by a failure to

investigate any reporting; and third, by an institution that "unjustly denies

the benefits they need." Seamone & Traskey, *Maximizing VA Benefits*, 26 COLUM.

J. GENDER & L. at 436 (citations and quotations omitted).

Additionally, MST survivors' negative experiences with the Veterans

Affairs' ("VA") disability compensation system, the primary source of formal

redress, may engender feelings of mistrust among veterans, making other survivors

unwilling to report MST. The years' long delay of claims discourages MST

survivors from filing claims, believing it is fruitless or even harmful to embark on

the process. Street, *Providing Mental Health Care*, U.S. DEPT. OF VETERANS

AFFAIRS. This in turn means more veterans go without the care they need and

deserve, and a continued climate of underreporting persists.[7] The delay thus

contributes to a culture that jeopardizes the safety of servicemembers by allowing a

culture of sexual violence to proliferate.

---

[7]     MST is vastly underreported with roughly two-thirds of sexual assaults
going unreported; that proportion is even higher when accounting for all forms of
sexual harassment. *See* Savitz, *Administrative Compensation*, 100 NEB. L. REV. at
333.

Delay may even deter veterans from seeking out informal sources of support from peers, friends, and family. *Id.* This compounds the risk of negative health outcomes, "as social support is one of the strongest predictors of recovery from trauma." *Id.*

Ordering the Board of Veterans' Appeals to comply with Section 7112 and expedite Ms. Wiggins' appeal is both an essential step towards a veteran's recovery and addressing sexual violence in the military.

**D. Expedited Adjudication is Consistent with Congress's Intent to Make Compensation for MST Survivors More Readily Available.**

In December 2022, Congress passed a trio of legislation, requiring the VA to improve its treatment of MST survivors and, in so doing, affirmed its view that disability benefits are a critical facet of justice. The decision below thwarts that command.

One of these statutes, the *Dignity for MST Survivors Act*, at issue in Ms. Wiggins' case, mandates that the VA employ special expedited procedures when adjudicating claims involving MST. *Dignity for MST Survivors Act*, Pub. L. No. 117-300 (2022). The *MST Claims Coordination Act* requires the Veterans Benefits Administration ("VBA") to coordinate with the Veterans Health Administration ("VHA") to provide veterans materials on available resources relating to MST. *MST Claims Coordination Act*, Pub. L. No. 117-303 (2022). The statute also requires the VHA and the VBA to provide information to a claimant for disability

benefits. *Id.* The *VA Peer Support Enhancement for MST Survivors Act*, the third

statute, requires the VA to better integrate emotional support into the benefits

process by establishing a program specific to MST claims that assigns claimants a

peer support specialist throughout the duration of the claims process. *VA Peer*

*Support Enhancement for MST Survivors Act*, Pub. L. No. 117-271 (2022). The

statute also requires the VA, as part of the claims process, to include an option for

a veteran to elect referral to an MST trauma coordinator at the VA facility closest

to the veteran's residence.[8] *Id.*

 Yet, those statutes fall flat in addressing the need if courts interpret them in a

way that runs counter to Congress's intention, as CAVC did in Ms. Wiggins' case

with its interpretation of Section 7112.

---

[8] Legislative efforts to dismantle barriers for veterans in accessing disability
benefits are essential and ongoing. In April 2025, a bipartisan group of lawmakers
introduced the *Servicemembers and Veterans Empowerment and Support Act*,
aimed to eliminate bureaucratic hurdles to help MST survivors more easily access
care and benefits and improve MST claims processing. *Blumenthal, Murkowski,*
*Pingree Lead Bipartisan Push to Support Survivors of Military Sexual Trauma*,
U.S. SENATE COMMITTEE ON VETERANS' AFFAIRS (Apr. 3, 2025),
https://www.veterans.senate.gov/2025/4/blumenthal-senators-introduce-sweeping-
legislation-to-reverse-damage-from-trump-administration-s-egregious-cuts-at-va-
assault-on-veterans [https://perma.cc/899E-CRYN].

## II. Access to Timely MST-related Benefits is Often the Only Way Survivors Can Be Compensated for the Harm They Experienced.

Outside of MST-related benefits, civil remedies – like lawsuits brought under the Federal Tort Claims Act ("FTCA") and Title VII – are largely unavailable to address the harm of sexual assault in the military. As a consequence, veterans with disabling health conditions stemming from MST have fewer options available to them to pursue damages via civil remedies than do survivors of sexual assault in a non-military context.

The *Feres* Doctrine can often bar FTCA recovery for "injuries to servicemen [and women] where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950); *United States v. Johnson*, 481 U.S. 681, 686 (1987).[9] Several courts have concluded that the military "constitutes a specialized community governed by a separate discipline from that of the civilian," in which the rights of service members "must perforce be conditioned to meet certain overriding demands of discipline and duty." *Parker v. Levy*, 417 U.S. 733, 744 (1974) (quoting *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)); *id.* (quoting *Burns v. Wilson*, 346 U.S. 137, 140 (1953)).

---

[9] In creating the *Feres* doctrine, courts expressed concern about the "effects of the maintenance of lawsuits on military discipline." Cooper T. Fyfe, *The Detrimental Pitfall of the FTCA: Overturning Feres & Endorsing the Sergeant First Class Richard Stayskal Military Medical Accountability Act of 2019*, 52 Tex. Tech L. Rev. 877, 887 (2020).

Courts have construed *Feres* to bar even intentional tort claims under the FTCA. *See* Jeffrey A. Critchlow, *Propping Open the Courthouse Door: Why Service Members Should Be Able To Bring Sexual Harassment Suits Under The Feres Doctrine*, 104 Iowa L. Rev. 855, 864–68 (2019). For example, in *Mackey v. United States*, the Sixth Circuit applied *Feres* to bar a sexual harassment claim brought by a servicemember against her superior officers. 226 F.3d 773 (6th Cir. 2000). The Fifth Circuit dismissed the claims of a servicemember who was grabbed by the throat by another servicemember, concluding that under *Feres*, the intentionality of the act was irrelevant because the injury stemmed from the plaintiff's military service. *Morris v. Thompson*, 852 F.3d 416, 418 (5th Cir. 2017). And in *Stauber v. Cline*, the Ninth Circuit held that *Feres* barred an intentional infliction of emotional distress claim for repeated harassment between civilian technicians who were National Guard members when the action arose. 837 F.2d 395 (9th Cir. 1988). *But see Spletstoser v. Hyten*, 44 F.4th 938 (9th Cir. 2022) (holding that *Feres* did not bar the plaintiff's claims relating to MST). Notably, the Supreme Court has never addressed the issue.

Courts have also applied *Feres* to bar Title VII claims, obstructing yet another possible route to compensation for those who are sexually assaulted or harassed. *See* Jonathan A. D'Orazio, *Protecting Our Protectors: Why Title VII Should Apply to the Uniformed Military Following the Supreme Court's Decision*

*in Bostock v. Clayton County*, 23 MARQ. BEN. & SOC. WELFARE L. REV. 9, 12–13 (2021) (collecting cases). Until Congress abrogates the military exception to Title VII to address widespread discrimination in the armed forces, servicemembers are left without a Title VII remedy despite their service. *See* Craig Westergard, *You Catch More Flies With Honey: Reevaluating the Erroneous Premises of the Military Exception to Title VII*, 20 MARQ. BEN. & SOC. WELFARE L. REV. 2, 217 (2019).

With limited FTCA or Title VII liability available, claims for disability benefits are often the only form of compensation for veterans with disabling health conditions arising from MST, making prompt resolution all the more critical.

### III.     Delays in Accessing Benefits Have a Discriminatory Impact.

An ineffective benefits appeals process harms marginalized groups the most. First, women and LGBTQ people, although a minority of the armed forces, experience MST at higher rates than the general military population and therefore will disproportionately suffer harms at the hands of a slow, prolonged claim process. Second, Black veterans and men, respectively, experience distinct harms from delay because they face significantly higher rates of denials when applying for MST-related disability benefits and thus need to appeal their claims decisions more often than their white and women counterparts.

**A. Women and LGBTQ Veterans Are Overrepresented Among Survivors of MST and Thus Bear the Brunt of a Dysfunctional Claims Process.**

Both women and LGBTQ servicemembers, two underrepresented groups of servicemembers, face an increased risk of MST during their time in the military. These groups also present with higher symptom severity following MST, making prompt access to benefits all the more important. *See* Cichowski, *Military Sexual Trauma in Female Veterans,* 182(9) MIL. MED. at 1898; Aliya R. Webermann, et al., *Military Sexual Trauma and its Association with Mental Health Among Sexual Minority and Heterosexual Veterans in the United States*, 10 LGBT HEALTH 61, 67 (2023).

Women make up a mere 20 percent of the military but account for the majority of MST survivors. Savitz, *Administrative Compensation*, 100 NEB. L. REV. at 333–34; Dave Philipps, *'This Is Unacceptable.' Military Reports a Surge of Sexual Assaults in the Ranks*, N.Y. TIMES (May 2, 2019), available at https://www.nytimes.com/2019/05/02/us/military-sexual-assault.html [https://perma.cc/6WGZ-SDX8] (compiling data showing women are the targets of most assaults, "with the youngest and lowest-ranking women most at risk.").

The disparities are jarring: one in four female servicemembers report experiencing sexual assault over the course of their service career, compared to one in one-hundred men. Savitz, *Administrative Compensation*, 100 NEB. L. REV. at

334; *see also* Seamone & Traskey, *Maximizing VA Benefits*, 26 COLUM. J. GENDER & L. at 344. When accounting for all sexual harassment, the numbers skyrocket, showing that over 80 percent of women experience sexual harassment at some point during service. Savitz, *Administrative Compensation*, 100 NEB. L. REV. at 333. Additionally, because women are particularly at risk for developing chronic pain conditions after experiencing MST, Cichowski, *Military Sexual Trauma in Female Veterans,* 182(9) MIL. MED. at 1898, delays in accessing benefits harms women acutely.

The data tells a similar, if not more concerning, story for LGBTQ members of the military. LGBTQ servicemembers make up just a small fraction of the military, with about six percent of active-duty personnel self-identifying as LGBTQ in 2018. Webermann, *Military Sexual Trauma and its Association with Mental Health*, 10 LGBT HEALTH at 61. In a study of 1,285,800 military personnel, 43 percent of those who experienced MST identified as members of the LGBTQ community, despite accounting for only 12 percent of the study's sample. *See* Andrew R. Morral & Terry L. Schell, *Sexual Assault of Sexual Minorities in the U.S. Military*, RAND CORPORATION, at 3–4 (2021), available at https://www.rand.org/content/dam/rand/pubs/research_reports/RRA1300/RRA139 0-1/RAND_RRA1390-1.pdf. In 2023, LGBTQ servicemembers reported unwanted sexual contact at a rate nearly fivefold that of their heterosexual counterparts. *See*

19

2023 Workplace and Gender Relations Survey of Military Members, U.S. DEPARTMENT OF DEFENSE, OFFICE OF PEOPLE ANALYTICS, at vii (2024), available at https://www.opa.mil/research-analysis/health-well-being/sexual-assault-prevention-and-response/2023-workplace-and-gender-relations-survey-of-military-members-c5211883-43a0-44b1-8ef4-7ec3984ed199/2023-workplace-and-gender-relations-survey-of-military-members-overview-report; Lisa Davis, et al., *2016 Workplace and Gender Relations Survey of Active Duty Members*, U.S. DEPARTMENT OF DEFENSE, OFFICE OF PEOPLE ANALYTICS, at 357–58 (2017), available at https://apps.dtic.mil/sti/tr/pdf/AD1032638.pdf.

Notably, LGBTQ MST survivors tend to present with more severe symptoms and higher rates of mental health disabilities as compared to heterosexual MST survivors. *See* Webermann, *Military Sexual Trauma and its Association with Mental Health*, 10 LGBT HEALTH at 67. This means that they are also more likely to need costly treatment or be unable to work due to disabling conditions and suffer greater harms without timely disability benefits.

### B. Stigma and Implicit Biases Infect The Claims Process and Impact Men and Black Veterans Disproportionately.

Men and Black veterans experience higher rates of denial for MST-related claims, meaning they too are disproportionately harmed by a delayed appeals process. *See* Aliya R. Webermann, et al., *Military sexual trauma-related posttraumatic stress disorder service-connection: Characteristics of claimants and*

*award denial across gender, race, and compared to combat trauma*, PLoS One

19(1), at 1 (Jan. 2024).

Male servicemembers are less likely to be awarded MST-related PTSD

disability than women. *Id.* at 3. When controlling for age, race, and gender, male

veterans have a 1.78 times higher odds of having MST-related claims denied

compared to female veterans (36.6 percent vs. 25.4 percent). *Id.* at 1. This may be

due to several factors. First, men often demonstrate different mental and physical

symptoms following MST compared to women, which may be less recognized due

to significant differences in prevalence rates. Second, men are far less likely to

report MST, whether while in service or after, which contributes to higher denial

rates because their claims become more difficult to prove without an official

record. *Id.* at 2; *see also* Renée Burbank, *Stigmatizing Narratives in Military*

*Sexual Trauma Cases*, 31 Kan. J.L. & Pub. Pol'y 185, 197–98 (2022).

Discrepancies in reporting rates for men may be due to stigmatized reactions to

MST disclosure, a disrupted sense of masculinity, and discomfort in seeking MST

care.

The heightened rate of denials is particularly concerning considering that

when men experience MST, they are more likely than women to develop PTSD.

Jennifer C. Schingle, *A Disparate Impact on Female Veterans: The Unintended*

*Consequences of Veterans Affairs Regulations Governing the Burdens of Proof for*

*Post-Traumatic Stress Disorder Due to Combat and Military Sexual Trauma*, 16 WM. & MARY J. WOMEN & L. 155, 175 (2009). Indeed, men have a higher likelihood of developing PTSD from MST than they do from combat exposure: 65 percent compared to 39 percent. *Id.* In other words, male survivors of MST might be particularly at risk for disabling conditions in the aftermath of the sexual trauma, and even more troubling, will have a more difficult time securing crucial disability benefits.

There is also a well-established pattern of racial disparities in the awarding of PTSD claims, both MST-related and not, resulting in more claim denials and lower ratings for Black veterans relative to white and other non-Black veterans. *See* Webermann, et al., *Military sexual trauma-related posttraumatic stress disorder service-connection*, PLOS ONE 19(1), at 3. Between 2001–2020, the VA was 21.9 percent more likely to reject claim applications, of any kind, from Black veterans than white veterans. *Id.* The disparities as to MST are likely due to a confluence of factors. Some scholars have observed that the narratives around MST predominantly focus on white women, which tends to deprioritize sexual assault against men and Black veterans, making denial of their claims more likely. *Id.* at 8. Damaging and racialized stereotypes around hypersexuality have led to a cultural dismissal of Black women's sexual victimization. *Id.* Implicit biases about credibility stemming from unfounded beliefs about Black veterans being less

vulnerable to unwanted sexual advances are likely also a contributing factor. All these disparities also discourage Black veterans from reporting abuse.

The patterns of MST-related claims denials along gender and race lines may arise from differences in how veterans of distinct genders and races experience the claims process. Men and Black veterans who file MST-related disability claims experience different challenges due to stigma, VA staff bias, and less documented evidence regarding markers for MST. *Id.* at 9. These factors might influence how factfinders and investigators compile and assemble the evidence supporting claims, possibly in a way that makes claim denial more likely among men veterans and Black veterans. Taken together, these patterns mean that men and Black veterans face substantial systemic barriers to receiving benefits for their MST.

## CONCLUSION

For the reasons stated above, *amici* respectfully request the Court reverse the decision of the CAVC and direct it to grant Ms. Wiggins' Petition for Extraordinary Relief and order the Secretary to adjudicate her 2021 appeal.

Dated: December 19, 2025        Respectfully submitted,

*/s/ Ashley Johnson*

Ashley Johnson
American Civil Liberties Union
Women's Rights Project
125 Broad Street

New York, NY 10004
(212) 519-7891
Ashley.johnson@aclu.org

Brad Adams
American Civil Liberties Union
Disability Rights Project
425 California Street
San Francisco, CA 94104
(415) 343-0760
DRP_BAdams@aclu.org
*Counsel for Amici Curiae*

# ADDENDUM: INTEREST OF *AMICI CURIAE*

1.    **The National Alliance to End Sexual Violence** ("NAESV") is the voice in Washington for the 56 state and territorial sexual assault coalitions and more than 1,000 rape crisis centers working in their communities to end sexual violence and support survivors. Sexual violence in the U.S. is a crisis that harms us all: it erodes families and public safety, burdens our health and justice systems, increases addiction and homelessness, disrupts schools and workplaces, and hurts our economy. The rape crisis centers in NAESV's network see every day the widespread and devastating impacts of sexual violence upon survivors, regardless of where and when they have experienced sexual violence in their lives. When sexual violence occurs in an institutional context, such as the military, survivors may face additional barriers and limitations related to the process through which they can access support. NAESV opposes any impediments to survivors feeling safe to come forward, receive services, and seek justice.

2.    **Protect Our Defenders Foundation** ("POD") is an independent nonprofit organization that is dedicated to ending sexual violence in the military through legal reform, advocacy, public education, and pro bono services for survivors of military sexual assault and harassment.  It seeks to safeguard service members and civilians from sexual violence, improve safety, promote equality in the military, and ensure the most effective and complete support possible for survivors of sexual assault. POD believes that effective and timely access to VA benefits and services is an essential component of our nation's duty to care for people who experience sexual violence while serving their country.

3.    **Service Women's Action Network** ("SWAN") submits this brief to offer the Court a unique perspective: the lived reality of the servicewomen and women veterans most affected by delays in adjudicating Military Sexual Trauma (MST) related disability claims. SWAN is the nation's leading, non-partisan organization dedicated to the rights, health, and safety of servicewomen and women veterans. Since 2007, SWAN has served as a primary resource to Congress, the Department of Defense, and the Department of Veterans Affairs (VA) on the unique injuries, evidentiary barriers, and systemic inequities that disproportionately burden women who experience MST. SWAN's expertise is

directly relevant to the question presented in this case, whether the VA must afford expedited treatment to appeals involving MST, as Congress required. Women are both more likely to experience MST and more likely to develop disabling trauma-related conditions that worsen under prolonged adjudications. Through its policy work, survivor assistance, and extensive research, SWAN has documented how delays in the VA appeals process cause ongoing retraumatization, financial instability, and deterioration in health for MST survivors. These harms fall most heavily on women servicemembers, who often have no alternative legal remedy and therefore depend on timely VA benefits for medical treatment, stability, and recovery. SWAN offers the Court a specialized understanding of the gender-specific consequences of delayed MST adjudications and of Congress's intent to eliminate those delays through the Dignity for MST Survivors Act. Its perspective sheds light on why the decision below not only undermines statutory mandates, but also imposes grave, avoidable harm on a vulnerable population whose service the Nation has pledged to honor. SWAN's expertise will assist the Court in evaluating the broader implications of this case for the integrity of the VA benefits system and the well-being of MST survivors nationwide.

4. **Victim Rights Law Center** ("VRLC") is a national nonprofit organization based in Massachusetts. VRLC was founded in 2003 as the first nonprofit agency in the country dedicated to meeting the legal needs of sexual assault survivors. VRLC is dedicated to seeking justice for every rape and sexual assault survivor. To this end, VRLC provides legal counsel to help sexual assault and stalking survivors rebuild their lives. VRLC also provides training, consulting, mentoring and legal resources to thousands of legal professionals across the United States and U.S. territories each year on the use of civil laws to protect and promote the rights of sexual assault survivors.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation for motions under Fed. R. App. P. 27(d)(2). Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f) and Fed. Cir. R. 32 (b)(2), the brief contains 5,123 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), I have relied on the word count feature of this word processing system in preparing this certificate.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.

Dated: December 19, 2025       */s/ Ashley Johnson*
                                      Ashley Johnson