# United States Court of Appeals for the Federal Circuit

KARISSA WIGGINS,

*Petitioner-Appellant,*

v.

DOUGLAS A. COLLINS,
Secretary of Veterans Affairs,

*Respondent-Appellee.*

Appeal from the United States Court of Appeals for
Veterans Claims, No. 24-4591

## BRIEF OF *AMICI CURIAE* MILITARY AND VETERANS LAW PROFESSORS AND PRACTITIONERS IN SUPPORT OF PETITIONER-APPELLANT AND REVERSAL

Emily M. Wexler
ewexler@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Jillian Stonecipher
jstonecipher@sidley.com
Victor T. Hiltner
vhiltner@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

*Counsel for Amici Curiae*

# CERTIFICATE OF INTEREST

Counsel for *Amici Curiae* certifies the following:

1.  **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Fed. Cir. R. 47.4(a)(1).

    Zach Baumgarten
    Daniel Bernhard
    Hon. Ann Ching
    Holly Christian
    Yelena Duterte
    Kristine Huskey
    Daniel Nagin
    Mark Maxwell
    Hugh McClean
    Dana Montalto
    Zachary Outzen
    Franklin Rosenblatt
    Cormac Smith
    Dyllan Taxman
    Hillary Wandler
    Jessica Wherry
    Morgan Zimarakos

2.  **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. Fed. Cir. R. 47.4(a)(2).

    None.

3.  **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. Fed. Cir. R. 47.4(a)(3).

    None.

4. **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   None.

5. **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5).

   None.

6. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   Not Applicable.


Dated: December 22, 2025          */s/ Jillian Stonecipher*
                                  Jillian Stonecipher
                                  SIDLEY AUSTIN LLP
                                  *Counsel for Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST .................................................................i

TABLE OF AUTHORITIES.................................................................... v

STATEMENT OF INTEREST OF *AMICI CURIAE* ............................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 2

ARGUMENT ....................................................................................... 3

I.     MILITARY SEXUAL TRAUMA IS UNIQUELY HARMFUL
      AND HISTORICALLY NEGLECTED............................................ 3

      A.    Military Sexual Trauma is Pervasive, Disruptive, and
            Chronically Damaging to Survivors and the Armed
            Forces Writ Large. ................................................... 3

      B.    Accountability and Care Systems Have Historically
            Failed Military Sexual Trauma Survivors Both During
            and After Their Service........................................... 6

II.    SECTION 7112 IS THE CULMINATION OF A GROWING
      CONGRESSIONAL RECOGNITION THAT MILITARY
      SEXUAL TRAUMA'S SPECIAL HARMS REQUIRE
      SPECIALIZED SOLUTIONS. ...................................................... 10

      A.    Congress Has Tried to Address Military Sexual
            Trauma for Decades. ............................................. 10

      B.    Military Justice and VA Benefits Systems Nonetheless
            Remained Largely Ineffective and Insensitive..................... 14

      C.    Congress Amended Sections 7102 and 7112 to Correct
            Prior Failures by Promoting Accurate *and* "Expedited"
            Resolution of Military Sexual Trauma Claims..................... 17

III.   THE DECISION BELOW DEFIES CONGRESSIONAL
      INTENT AND HARMS SURVIVORS. ......................................... 22

CONCLUSION ................................................................................... 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM A ................................................................................ 1a

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babb v. Wilkie*,
589 U.S. 399 (2020)...................................................................23

*Boone v. Lightner*,
319 U.S. 561 (1943)...................................................................26

*In re City of Houston*,
731 F.3d 1326 (Fed. Cir. 2013) ..............................................24

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000)...................................................................24

*Feres v. United States*,
340 U.S. 135 (1950).....................................................................7

*King v. St. Vincent's Hosp.*,
502 U.S. 215 (1991)...................................................................26

*Nat'l Veterans Legal Servs. Program v. United States*,
968 F.3d 1340 (Fed. Cir. 2020) ..............................................24

*Rudisill v. McDonough*,
601 U.S. 294 (2024)...................................................................27

*Schism v. United States*,
316 F.3d 1259 (Fed. Cir. 2002) (en banc) ...........................24

*Walton v. Cotton*,
60 U.S. (19 How.) 355 (1856) ...........................................26, 28

**Statutes**

38 U.S.C. § 7102 ....................................................................2, 19

38 U.S.C. § 7112 ..................................................2, 19, 22, 23, 25

38 U.S.C. § 7112 (2003) ...............................................................21

iv

38 U.S.C. § 7112 (2022) ............................................................ 21

Caregivers and Veterans Omnibus Health Services Act,
  Pub. L. No. 111-163, 124 Stat. 1130 (2010) ....................... 12

Consolidated Appropriations Act,
  Pub. L. No. 115-141, 132 Stat. 348 (2018) ...................... 9, 12

Dignity for MST Survivors Act,
  Pub. L. No. 117-300, 136 Stat. 4379 (2022) ....................... 19

Jonny Isakson & David P. Roe, M.D. Veterans Health Care
  and Benefits Improvement Act of 2020,
  Pub. L. No. 116-315, 134 Stat. 4932 (2021) ....................... 18

MST Claims Coordination Act,
  Pub. L. No. 117-303, 136 Stat. 4387 (2022) ................... 18, 25

National Defense Authorization Act for Fiscal Year 2005,
  Pub. L. No. 108-375, 118 Stat. 118 (2004) ......................... 12

National Defense Authorization Act for Fiscal Year 2006,
  Pub. L. No. 109-163, 119 Stat. 3136 (2006) ....................... 13

National Defense Authorization Act for Fiscal Year 2012,
  Pub. L. No. 112-81, 125 Stat. 1298 (2011) .................... 14, 25

National Defense Authorization Act for Fiscal Year 2013,
  Pub. L. No. 112–239, 127 Stat. 1632 (2013) ....................... 13

National Defense Authorization Act for Fiscal Year 2014,
  Pub. L. No. 113-66, 127 Stat. 672 (2013) ................. 13, 14, 25

National Defense Authorization Act for Fiscal Year 2022,
  Pub. L. No. 117-81, 135 Stat. 1541 (2021) .............. 18, 19, 25

Veterans Access, Choice, and Accountability Act,
  Pub. L. No. 113-146, 128 Stat. 1754 (2014) ....................... 12

Veterans Health Care Act,
  Pub. L. No. 102-585, 106 Stat. 4943 (1992) ....................... 11

Veterans Health Programs Extension Act,
Pub. L. No. 103-452, 108 Stat. 4783 (1994)......................................... 11

Veterans Health Programs Improvement Act,
Pub. L. No. 108-422, 118 Stat. 2379 (2004)......................................... 11

**Rules & Regulations**

38 C.F.R. § 3.304(f)(1)–(5) ..................................................................... 10

Fed. R. App. P. 29(a)(4) ............................................................................. 1

**Congressional Materials**

151 Cong. Rec. H3912 (daily ed. May, 25, 2005) .................................... 13

168 Cong. Rec. H5108 (daily ed. May 18, 2022) ..................................... 21

*Eliminating the Gaps: Examining Women Veterans' Issues,
Joint Hearing before the Subcomm. on Disability
Assistance and Memorial Affs. and the Subcomm. on
Health of the H. Comm. on Veterans' Affs.,*
111th Cong. (2009) .................................................................................. 12

*Ensuring Access to Disability Benefits for Veteran Survivors
of Military Sexual Trauma: Hearing Before the Subcomm.
on Disability Assistance and Memorial Affs. of the Comm.
on Veterans' Affs.,* 116th Cong. (2019)................................................. 17

*Hearing to Receive Testimony on Sexual Assault in the
Military Before the S. Comm. on Armed Servs.,*
117th Cong. (2021) .................................................................................. 18

*Invisible Wounds: Examining the Disability Compensation
Benefits Process for Victims of Sexual Trauma: Hearing
Before the Subcomm. on Disability Assistance and
Memorial Affs. of the H. Comm. on Veterans' Affs.,*
112th Cong. (2012) .................................................................................. 20

*Pending Legislation Regarding Sexual Assaults in the Military: Hearing Before the S. Comm. on Armed Servs.*, 113th Cong. (2013) ............................................................... 14

S. Rep. No. 113-44 (2013) ........................................................ 13

*Safety for Survivors: Care and Treatment for Military Sexual Trauma: Hearing Before the Subcomm. on Health of the H. Comm. on Veterans' Affs.*, 113th Cong. (2013) .............................. 20

*Supporting Disabled Veterans: The State of Claims Processing During and After COVID-19: Hearing Before the S. Comm. on Veterans' Affs.*, 117th Cong. (2021)............. 17, 20, 21

*The Relationships Between Military Sexual Assault, Post-Traumatic Stress Disorder and Suicide, and on Dep't of Def. and Dep't of Veterans Affs. Medical Treatment and Management of Victims of Sexual Trauma: Hearing Before the Subcomm. on Pers. of the H. Comm. of Armed Servs.*, 113th Cong. (2014)................................................................ 20

*Women Veterans' Health Care: VA Efforts to Respond to the Challenge of Providing Sexual Trauma Counseling: Hearing on War-Related Illnesses and on the VA's Sexual Trauma Counseling Program Before the H. Subcomm. on Veterans' Affs.*, 105th Cong. (1998)....................................... 11

**Other Authorities**

Andrew R. Morral et al., RAND, *Effects of Sexual Assault and Sexual Harassment on Separation from the U.S. Military: Findings from the 2014 RAND Military Workplace Study* (2021) ........................................................ 4

Anne G. Sadler et al., *Health-Related Consequences of Physical and Sexual Violence: Women in the Military*, 96 Obstetrics & Gynecology 473 (2000)..................................... 5, 6, 27

Bevanne Bean-Mayberry et al., U.S. Dep't of Veteran Affs., *Systematic Review of Women Veterans Health Research 2004–2008* (2010) .......................................................... 6, 27

Carl Andrew Castro et al., *Sexual Assault in the Military*, 17 Current Psychiatry Rep. 1 (2015) ....................................9

Coreen Farris, et al., RAND, *Perceived Retaliation Against Military Sexual Assault Victims* (2021) ...............................7

Evan R. Seamone & David M. Traskey, *Maximizing VA Benefits for Survivors of Military Sexual Trauma: A Practical Guide for Survivors and Their Advocates*, 26 Colum. J. Gender & L. 343 (2014) .........................10, 16

Indep. Rev. Comm'n, U.S. Dep't of Def., *Hard Truths and the Duty to Change: Recommendations from the Independent Review Commission on Sexual Assault in the Military* (2021) ...............................................................................8, 15

Jennifer Greenburg, Watson Inst., *Deserted: The U.S. Military's Sexual Assault Crisis as a Cost of War* 2 (Aug. 14, 2024) ..............................................................................3

John Lancaster, *In Military Sex Harassment Cases, His Word Often Outranks Hers*, Wash. Post (Nov. 15, 1992) ....................8

Kaylee R. Gum, *Military Sexual Trauma and Department of Veterans Affairs Disability Compensation for PTSD: Barriers, Evidentiary Burdens and Potential Remedies*, 22 Wm. & Mary J. Women & L. 689 (2016) ......................16

Kristy N. Kamarck & Barbara Salazar Torreon, Cong. Rsch. Serv., R44944, *Military Sexual Assault: A Framework for Congressional Oversight* (2021).............................................4

Kyra Ziesk-Socolov, *Two-Front War: The Struggle for Legitimacy in Military Sexual Assault Adjudications*, 44 Harv. J.L. & Gender 101 (2021) ....................................11

Logan Kenney, *Climate Crisis: Removing Authority from U.S. Military Commanders Over Sexual Assault Cases May Remedy the Prevalence and Underreporting of Sexual Assault*, Cornell J.L. & Pub. Pol'y (Oct. 9, 2019) ...............15

Michael J. Wishnie, *"A Boy Gets Into Trouble": Service Members, Civil Rights, and Veterans' Law Exceptionalism*, 97 B.U. L. Rev. 1709 (2017) .................................... 16

Nikki Levy, Note, *Easing the Burden: Military Sexual Trauma, Retaliation, and Veterans Benefits*, 27 Fed. Cir. B.J. 377 (2018) ............................................... 7

Off. Inspector Gen., U.S. Dep't of Veterans Affs., *Denied Posttraumatic Stress Disorder Claims Related to Military Sexual Trauma* (Aug. 21, 2018) ......................................... 15

Off. Inspector Gen., U.S. Dep't of Veterans Affs., *Improvements Still Needed in Processing Military Sexual Trauma Claims* (Aug. 5, 2021) ......................................... 16

Protect our Defenders, *Facts on United States Military Sexual Violence* (2023) .................................................... 7, 8

Rachel Kimerling, *No Mission Too Difficult: Responding to Military Sexual Assault*, 107 AJPH Eds. 642 (2017) ................ 6, 7, 27

Sally A. Mead, *Military Sexual Trauma Survivors' Experiences and Perceptions of Cognitive Processing Therapy 1* (2019) ................................................... 5

Sexual Assault Prevention & Response Off., U.S. Dep't of Def., *Annual Report on Sexual Assault in the Military Fiscal Year 2021* (2022) .................................................... 3, 4

Tamara Obradovic et al., *Mental Health Outcomes Associated with Military Sexual Trauma in Serving and Ex-servicewomen: A Systemic Review*, 55 Psych. Med. 1 (2025) ................................................... 5

U.S. Comm'n on Civil Rights, *Sexual Assault in the Military* (2013).................................................. 4, 8, 9, 15

U.S. Dep't of Def., Directive-Type Memorandum (DTM) No. 11-063, *Expedited Transfer of Military Service Members Who File Unrestricted Reports of Sexual Assault* (Dec. 16, 2011, rev. Dec. 7, 2012) ....................................................................... 14

U.S. Gov't Accountability Off., GAO-23-105381, *Unwanted Sexual Behavior: Improved Guidance, Access to Care, and Training Needed to Better Address Victim's Behavioral Health Needs* (2023) .............................................................. 3

# STATEMENT OF INTEREST OF *AMICI CURIAE*[1]

*Amici* are seventeen military and veterans law professors and practitioners at universities across the nation who have, in many cases, dedicated decades of their lives to serving the United States military and its veterans. They are current or former military officers, legal clinic directors, and scholars who have followed, and seen the effects of, legislative efforts to reform systems of military justice and post-service care that have historically failed survivors of military sexual trauma. They share an interest in ensuring these efforts are not thwarted by judicial error. *Amici* thus write to provide historical context for the amended section 7112 that informs the correct reading of the statute and underscores why the decision below is incorrect. A list of *amici* is provided in Addendum A.

---

[1] *Amici* submit this brief with the consent of all parties pursuant to Fed. R. App. P. 29(a)(2). *See* Fed. R. App. P. 29(a)(4)(D). No party's counsel authored this brief in whole or in part, and no entity or person, other than amici, their members, or their counsel, made any monetary contribution intended to fund the brief's preparation or submission. *See* Fed. R. App. P. 29(a)(4)(E).

## INTRODUCTION AND SUMMARY OF ARGUMENT

The statute at the heart of this case is the product of a multidecade legislative effort to address the unique harms posed by military sexual trauma by guaranteeing that survivors' harms are taken seriously and addressed promptly. Year after year, in statute after statute, Congress responded to a long history of error, neglect, and delay in addressing military sexual trauma in both the military justice context and in veterans' care.

Congress's recent amendments to Title 38—in particular adding the relevant language to section 7112—were the culmination of its efforts to correct past wrongs by ensuring that, moving forward, military sexual trauma is handled both correctly (38 U.S.C. § 7102) and *quickly* (38 U.S.C. § 7112). The decision below ignored that context and reached a holding that is incompatible with the statutory text, flouts congressional intent, and puts survivors of military sexual trauma back where they were before Congress amended section 7112—unable to access crucial assistance when they need it.

# ARGUMENT

## I. MILITARY SEXUAL TRAUMA IS UNIQUELY HARMFUL AND HISTORICALLY NEGLECTED.

### A. Military Sexual Trauma is Pervasive, Disruptive, and Chronically Damaging to Survivors and the Armed Forces Writ Large.

Experiences of sexual violence in the military are, tragically, both extraordinarily common and long standing. At least tens of thousands of service members are sexually assaulted or harassed each year.[2] In fiscal year 2021 alone, for example, it is estimated that 24 percent of active-duty women experienced sexual assault, and 29 percent experienced sexual harassment. Greenburg, *supra* note 2, at 37; DoD 2021 Report, *supra* note 2, at 7. When veterans seek health care from the Department of Veterans Affairs ("VA"), tens of thousands of servicemen and women alike screen positive for military sexual trauma.[3]

---

[2] *See* Jennifer Greenburg, Watson Inst., *Deserted: The U.S. Military's Sexual Assault Crisis as a Cost of War* 2 (Aug. 14, 2024) (manuscript), https://tinyurl.com/greenberg-independent-data (estimating 75,569 sexual assaults in FY 2021); Sexual Assault Prevention & Response Off., U.S. Dep't of Def., *Annual Report on Sexual Assault in the Military Fiscal Year 2021*, at 6 (2022), https://tinyurl.com/53auxwnt (estimating 35,875 sexual assaults in FY 2021) (hereinafter, "DoD 2021 Report").

[3] U.S. Gov't Accountability Off., GAO-23-105381, Unwanted Sexual Behavior: Improved Guidance, Access to Care, and Training Needed to Better Address Victim's Behavioral Health Needs 163, 167 (2023),

Each instance of military sexual trauma impedes our military's operations.[4] "More often than not, sexual violence in the military is committed by someone known to the victim."[5] Most perpetrators are of the same rank and in the same unit as the victim, and roughly one quarter are in the victim's chain of command. DoD 2021 Report, *supra* note 2, at 14. As a result, survivors often must "remain in close proximity to the perpetrator" and grapple with the "ongoing influence of the offender on her life." Kamarck & Torreon, *supra* note 5, at 2. Given the hierarchical and group dynamics inherent to the military, survivors' experience with sexual violence strongly increases the odds of their premature separation from service.[6] This, in turn, harms our armed forces' manpower investments, as well as lifetime earnings for affected servicemembers. Kamarck & Torreon, *supra* note 5, at 2.

---

https://tinyurl.com/azyws4f2 (noting 362,507 veterans screened positive for MST from FY 2015 to FY 2021).

[4] *See* U.S. Comm'n on Civil Rights, *Sexual Assault in the Military* 2–3 (2013), https://tinyurl.com/3mxb5z3c.

[5] Kristy N. Kamarck & Barbara Salazar Torreon, Cong. Rsch. Serv., R44944, *Military Sexual Assault: A Framework for Congressional Oversight* 2 (2021), https://tinyurl.com/yc74sncz.

[6] Andrew R. Morral et al., RAND, *Effects of Sexual Assault and Sexual Harassment on Separation from the U.S. Military: Findings from the 2014 RAND Military Workplace Study* 17, 19 (2021), https://tinyurl.com/military-separation-statistics.

The personal impact on survivors is even more severe. Cumulative physical and emotional consequences of rape, for example, are "similar to or worse than those associated with major chronic illnesses."[7] Military sexual trauma more broadly is associated with elevated rates of major depressive disorder, generalized anxiety disorder, and—notably— posttraumatic stress disorder ("PTSD").[8] Approximately half of military sexual trauma survivors are diagnosed with PTSD.[9] These health outcomes have been linked to adverse coping behaviors, including substance use, disordered eating, and suicidality. Obradovic, *supra* note 8, at 29.

Survivors continue suffering long after they are subjected to sexual violence. Women with military sexual trauma are more likely to experience difficulties readjusting to civilian life after their service

---

[7] Anne G. Sadler et al., *Health-Related Consequences of Physical and Sexual Violence: Women in the Military*, 96 Obstetrics & Gynecology 473, 477 (2000).

[8] Tamara Obradovic et al., *Mental Health Outcomes Associated with Military Sexual Trauma in Serving and Ex-servicewomen: A Systemic Review*, 55 Psych. Med. 1, 1 (2025).

[9] Sally A. Mead, *Military Sexual Trauma Survivors' Experiences and Perceptions of Cognitive Processing Therapy* 1 (2019) (Doctoral Study, Walden University), https://tinyurl.com/mead-literature-review (collecting studies).

ends.[10] And women with histories of physical and sexual violence during military service are more likely to report poorer health outcomes than those without such histories even a decade after separation from service. Sadler, *supra* note 7, at 477. Military sexual trauma has also been associated with a "threefold increase in the odds of a suicide attempt" if a survivor does not get treatment.[11] Timely treatment may, quite literally, be a matter of life or death for some survivors.

**B.      Accountability and Care Systems Have Historically Failed Military Sexual Trauma Survivors Both During and After Their Service.**

Military sexual trauma survivors have confronted a two-step assault on their dignity when seeking redress for their abuse: the military system first denies them justice, then the veterans system denies them care.

1. As to accountability, survivors have run into many obstacles that frustrate and disincentivize any attempt to seek justice.

---

[10] Bevanne Bean-Mayberry et al., U.S. Dep't of Veteran Affs., *Systematic Review of Women Veterans Health Research 2004–2008*, at 7 (2010), https://tinyurl.com/38sy8saa.
[11] Rachel Kimerling, *No Mission Too Difficult: Responding to Military Sexual Assault*, 107 AJPH Eds. 642, 643 (2017).

Survivors have often faced substantial personal and professional risks when they report sexual violence. Over half of service women who report have faced personal retaliation.[12] And nearly one third of service women who report "perceive[d] some form of professional retaliation" as well. Kimerling, *supra* note 11, at 643. Similar "rates of perceived retaliation" are reported for male survivors too.[13] One third of service women who reported a sexual assault were discharged within a year of reporting.[14]

In light of these burdens, the majority of sexual assault survivors tend not to report. But even those who *do* report sexual violence have historically received little recourse. Survivors' opportunities to demand accountability for their military sexual trauma are limited as a matter of law, relegating them to the military justice system. *See, e.g.*, *Feres v. United States*, 340 U.S. 135, 146 (1950) (barring tort claims "for injuries

---

[12] Nikki Levy, Note, *Easing the Burden: Military Sexual Trauma, Retaliation, and Veterans Benefits*, 27 Fed. Cir. B.J. 377, 383 (2018).
[13] Coreen Farris, et al., RAND, *Perceived Retaliation Against Military Sexual Assault Victims* 2 (2021), https://tinyurl.com/y52x3t5v.
[14] Protect our Defenders, *Facts on United States Military Sexual Violence* (2023), https://tinyurl.com/cr7x8caj.

to servicemen where the injuries arise out of or are … incident to service").

The military justice system, in turn, has yielded disappointing results for military sexual trauma survivors seeking to hold their abusers to account. A significant proportion of survivors have had their cases dismissed.[15] Others have had their cases lie dormant for years, leading them to simply abandon the process.[16] As recently as 2022, only a small fraction of unrestricted reports resulted in an offender's conviction.[17] While "[t]he circumstances differ, … each case contains a common thread."[18] Survivors have described themselves "as victims twice over: first of individual male colleagues, second of a military justice system

---

[15] Comm'n on Civil Rights, *supra* note 4, at 64 ("[N]early half of the reported penetration-type sexual offenses, and nearly one-third of reported sexual contact offenses and attempted sexual offenses, were determined to have insufficient evidence to support command action.").

[16] Indep. Rev. Comm'n, U.S. Dep't of Def., *Hard Truths and the Duty to Change: Recommendations from the Independent Review Commission on Sexual Assault in the Military* 41–42 (2021), https://tinyurl.com/23pvpbnn (hereinafter, "DoD Hard Truths").

[17] Protect our Defenders, *supra* note 14 ("In FY 2022, of the 5,941 unrestricted reports of sexual assault, … just 123 (2.1%) offenders were convicted of a nonconsensual sex offense.").

[18] John Lancaster, *In Military Sex Harassment Cases, His Word Often Outranks Hers*, Wash. Post (Nov. 15, 1992), https://tinyurl.com/2addt2sb.

that they and many women in uniform believe is heavily weighted against them." Lancaster, *supra* note 18.

2. As to care, the struggles survivors faced during their service have often carried over to their post-service efforts to obtain medical treatment and benefits from the VA. When survivors have sought medical benefits, for example, many have been denied because their decision to timely report their military sexual trauma while enlisted led to a diagnosis of a pre-existing, non-service related "'adjustment disorder[]'" as an alternative to a medical discharge," a benefits-disqualifying "discharge[] without honorable conditions," or *both*.[19] "Some victims … have claimed that diagnosis and discharge operate hand in hand to deny them treatment." *See* U.S. Comm'n on Civil Rights, *supra* note 4, at 36–37.

Similarly, when survivors have sought compensation for PTSD arising out of their military sexual trauma, they have struggled to furnish corroborating evidence because, without a timely report, "investigation of [the] offense by law enforcement" was hindered (or never

---

[19] U.S. Comm'n on Civil Rights, *supra* note 4, at 36–37, 41 & n.66; *see* Carl Andrew Castro et al., *Sexual Assault in the Military*, 17 Current Psychiatry Rep. 1, 10 (2015). *But see* Consolidated Appropriations Act, Pub. L. No. 115-141, § 258(a), 132 Stat. 348, 826–28 (2018) (expanding benefits specifically for military sexual trauma).

happened), leading to a devastating "loss of valuable evidence."[20] These issues were then compounded by procedural hurdles—unique to military sexual trauma survivors—requiring survivors to support their claims with the very evidence that was likely lost due to the aforementioned delays in (or absence of) reporting. *See* 38 C.F.R. § 3.304(f)(1)–(5) (providing that "the veteran's lay testimony alone" may support a claim for PTSD benefits unless the claim "is based on in-service personal assault"). Consequently, survivors seeking compensation for PTSD in connection with military sexual trauma have often received no benefits at all. Seamone & Traskey, *supra* note 20, at 349.

## II. SECTION 7112 IS THE CULMINATION OF A GROWING CONGRESSIONAL RECOGNITION THAT MILITARY SEXUAL TRAUMA'S SPECIAL HARMS REQUIRE SPECIALIZED SOLUTIONS.

### A. Congress Has Tried to Address Military Sexual Trauma for Decades.

Following a torrent of military sexual assault cases in the early 1990s, Congress came to recognize the pervasiveness of military sexual

---

[20] Evan R. Seamone & David M. Traskey, *Maximizing VA Benefits for Survivors of Military Sexual Trauma: A Practical Guide for Survivors and Their Advocates*, 26 Colum. J. Gender & L. 343, 349 (2014).

trauma and the need for reform.[21] This kicked off years of legislative efforts to amend Title 10 and Title 38 to provide military sexual trauma survivors with accountability in the military justice system and responsive care and compensation in VA healthcare and benefits systems.

Congress started with military sexual trauma care in the VA healthcare system. Beginning in the 1990s, it authorized the VA to provide survivors of military sexual trauma with counseling and treatment programs and eliminated time limits on seeking such treatment.[22] The VA offered such counseling regardless of whether survivors could show "documentation of sexual trauma."[23] Years later,

---

[21] Kyra Ziesk-Socolov, *Two-Front War: The Struggle for Legitimacy in Military Sexual Assault Adjudications,* 44 Harv. J.L. & Gender 101, 106–07 (2021).

[22] Veterans Health Care Act, Pub. L. No. 102-585, § 102, 106 Stat. 4943, 4945–46 (1992); Veterans Health Programs Extension Act, Pub. L. No. 103-452, § 101, 108 Stat. 4783, 4783–84 (1994); Veterans Health Programs Improvement Act, Pub. L. No. 108-422, § 301, 118 Stat. 2379, 2382–83 (2004).

[23] *Women Veterans' Health Care: VA Efforts to Respond to the Challenge of Providing Sexual Trauma Counseling: Hearing on War-Related Illnesses and on the VA's Sexual Trauma Counseling Program Before the H. Subcomm. on Veterans' Affs.*, 105th Cong. 38–40, 98–104 (1998) (statement of Stephen P. Backhus, Dir. of Veterans' Affs.) (GAO/T-HEHS-98-138).

following concerns about the adequacy of military sexual trauma treatment,[24] Congress required the VA to report the treatment provided to veterans suffering from sexual trauma and required sexual-trauma training for VA health professionals.[25] Congress then expanded VA sexual trauma-related health care eligibility: first to active service members, and then to veterans with Other Than Honorable discharges.[26]

In parallel, Congress focused on accountability for sexual violence in the military justice system. In 2004, Congress recognized that the Uniform Code of Military Justice ("UCMJ") was out of step with contemporary federal laws addressing sexual assault and instructed the Department of Defense ("DoD") to review the matter.[27] The next year, Congress enacted a completely new Article 120 of the UCMJ, which

---

[24] E.g., *Eliminating the Gaps: Examining Women Veterans' Issues, Joint Hearing before the Subcomm. on Disability Assistance and Memorial Affs. and the Subcomm. on Health of the H. Comm. on Veterans' Affs.*, 111th Cong. 7 (2009) (statement of Anuradha P. Bhagwati, Exec. Dir., Serv. Women's Action Network).

[25] Caregivers and Veterans Omnibus Health Services Act, Pub. L. No. 111-163, § 202, 124 Stat. 1130, 1142–43 (2010).

[26] Veterans Access, Choice, and Accountability Act, Pub. L. No. 113-146, §§ 401–402, 128 Stat. 1754, 1789–90 (2014); Pub. L. No. 115-141, § 258(a), 132 Stat. at 826–28.

[27] National Defense Authorization Act for Fiscal Year 2005, Pub. L. No. 108-375, § 571, 118 Stat. 118, 1920–21 (2004).

adopted "a modern [and] complete sexual assault statute" that provided "clear definition[s]" of offenses and "increased protection for victims by emphasizing acts of the perpetrator rather than the reaction of the victim." 151 Cong. Rec. H3912, H3920 (daily ed. May, 25, 2005) (statement of Rep. Loretta Sanchez).[28]

As problems persisted into the 2010s, Congress enacted further amendments to Title 10 aimed at improving the military justice process for military sexual trauma by mandating, among other things, prevention and response training, enhanced data collection to identify further deficiencies in prevention and response, and an additional layer of review for non-referred charges of sex-related offenses.[29] *See also* Pub. L. No. 113-66, § 1701, 127 Stat. at 952–54 (guaranteeing survivors, among other things, "[t]he right to reasonable, accurate, and timely notice" of and "to be reasonably heard" at certain hearings involving their offender).

---

[28] *See* National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, §§ 552–553, 596, 119 Stat. 3136, 3256–64, 3282–83 (2006).
[29] National Defense Authorization Act for Fiscal Year 2013, Pub. L. No. 112–239, § 576(a)(1), 127 Stat. 1632, 1758 (2013); National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, §§ 1725(c), 1733–34, 1744, 127 Stat. 672, 972, 975–76, 980–82 (2013); S. Rep. No. 113-44 at 109 (2013).

Critically—as it passed these reform efforts—Congress increasingly recognized the importance of timeliness in handling military sexual trauma cases. In 2012, when the DoD failed to expedite base transfer requests made by military sexual trauma survivors, Congress demanded the agency collect data on such requests.[30] And in 2014, after hearing testimony on the need for "timely and appropriate victim care," Congress required the DoD to receive, review, and appropriately redirect reports of sexual assault with urgency.[31]

## B. Military Justice and VA Benefits Systems Nonetheless Remained Largely Ineffective and Insensitive.

While legislation amending Title 10 and Title 38 sought to improve treatment of military sexual trauma survivors, military and VA

---

[30] U.S. Dep't of Def., Directive-Type Memorandum (DTM) No. 11-063, *Expedited Transfer of Military Service Members Who File Unrestricted Reports of Sexual Assault* (rev. Dec. 7, 2012); National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, § 582, 125 Stat. 1298, 1432 (2011).

[31] *Pending Legislation Regarding Sexual Assaults in the Military: Hearing Before the S. Comm. on Armed Servs.*, 113th Cong. 76 (2013) (statement of the Gen. James F. Amos, Commandant of the U.S. Marine Corps.); Pub. L. No. 113-66, §§ 1742, 1743, 127 Stat. at 979 (providing that incident reports must be submitted "not later than eight days" after report, and that commanding officers must "immediate[ly] … "refer[]" certain reports of sex-related offenses to a "military criminal investigation organization with responsibility for investigating that offense").

responses to military sexual trauma remained sluggish and often unresponsive.

1. On the military justice side, experts, advocacy groups, and survivors criticized the commander-run nature of the military's reporting and accountability system.[32] Survivors believed that they would not receive fair treatment so long as their claims were handled within the chain of command. Such beliefs were exacerbated by the well-known "exceptionally long" delays in processing sexual assault-related cases. DoD Hard Truths, *supra* note 16, at 19, 41–42.

2. The veterans' benefits side was also resistant to change. Issues of accuracy in resolving military sexual trauma claims had *worsened* over time. In 2018, the VA Office of Inspector General ("OIG") reported that nearly half (49 percent) of denied claims for military sexual trauma-related benefits were processed incorrectly by the Veterans Benefits Administration ("VBA").[33] By 2021, the VA OIG had revisited the matter

---

[32] Comm'n on Civil Rights, *supra* note 4, at 66–68; Logan Kenney, *Climate Crisis: Removing Authority from U.S. Military Commanders Over Sexual Assault Cases May Remedy the Prevalence and Underreporting of Sexual Assault*, Cornell J.L. & Pub. Pol'y (Oct. 9, 2019).
[33] Off. Inspector Gen., U.S. Dep't of Veterans Affs., *Denied Posttraumatic Stress Disorder Claims Related to Military Sexual Trauma*, at ii (Aug. 21, 2018).

and found that "about *57 percent* of denied military sexual trauma claims were still not being processed correctly."[34]

To make matters worse, military sexual trauma claims remained backlogged, with experts commenting that "baffling, enduring, [and] outrageous delays" remained the "most notorious problem" plaguing VA claims adjudication.[35] *See also* Seamone & Traskey, *supra* note 20, at 376 n.185 (citing a common disabled veterans' slogan as to the VBA: "Delay, Deny, Wait Till I Die"). This "long, arduous process" left survivors deeply skeptical of "the VA's ability to efficiently and fairly adjudicate [their] disability claims."[36]

---

[34] Off. Inspector Gen., U.S. Dep't of Veterans Affs., *Improvements Still Needed in Processing Military Sexual Trauma Claims*, at ii (Aug. 5, 2021) (emphasis added).

[35] Michael J. Wishnie, *"A Boy Gets Into Trouble": Service Members, Civil Rights, and Veterans' Law Exceptionalism*, 97 B.U. L. Rev. 1709, 1750 (2017).

[36] Kaylee R. Gum, *Military Sexual Trauma and Department of Veterans Affairs Disability Compensation for PTSD: Barriers, Evidentiary Burdens and Potential Remedies*, 22 Wm. & Mary J. Women & L. 689, 706 (2016).

**C. Congress Amended Sections 7102 and 7112 to Correct Prior Failures by Promoting Accurate *and* "Expedited" Resolution of Military Sexual Trauma Claims.**

By 2021, Congress was fully aware that military sexual trauma claims were being handled incorrectly and in an untimely manner (if they were handled at all) and thus enacted historic legislation guaranteeing specialized treatment for military sexual trauma claims. Congress made clear it would not tolerate continued failures of accuracy or timeliness in processing such important claims. Survivors needed both, and Congress reworked the U.S. Code to ensure both needs were met. The amendments at issue below—sections 7102 and 7112—were part and parcel of this wave of reform.

1. When enacting these changes, Congress knew that military sexual trauma claims processing had been failing and aimed to respond with specialized solutions. For example, after hearing testimony about the need for "trained specialists" to reduce "errors associated with denied [military sexual trauma] claims," Congress required the VA to establish specialized teams to evaluate such claims.[37] Similarly, in light of

---

[37] *Ensuring Access to Disability Benefits for Veteran Survivors of Military Sexual Trauma: Hearing Before the Subcomm. on Disability Assistance*

testimony that military sexual trauma claimants should be "automatically" made "aware that mental health services are available," Congress required the VA to "immediately" coordinate the provision of such resources with the Veterans Health Administration when a covered event occurs in relation to a military sexual trauma claim.[38] And, as to military justice, Congress decisively responded to the growing arguments about "eliminat[ing] command bias" by finally removing prosecutorial discretion from commanders and establishing specialized, independent trial counsel to review certain sexual assault-related offenses.[39] To ensure the "independent investigation" process moved swiftly, Congress

---

[38] *and Memorial Affs. of the Comm. on Veterans' Affs.*, 116th Cong. 42 (2019) (prepared statement of Steve Bracci, Dir., Denver Benefits Inspection, Dep't of Veterans Affs.); Jonny Isakson & David P. Roe, M.D. Veterans Health Care and Benefits Improvement Act of 2020, Pub. L. No. 116-315, § 5501, 134 Stat. 4932, 5048–50 (2021)

[38] *Supporting Disabled Veterans: The State of Claims Processing During and After COVID-19: Hearing Before the S. Comm. on Veterans' Affs.*, 117th Cong. 19 (2021) (statement of Carmen McGinnis, Nat'l Servs. Off., Disabled Am. Veterans) (hereinafter "Supporting Veterans Hearing"); MST Claims Coordination Act, Pub. L. No. 117-303, § 2, 136 Stat. 4387, 4387–88 (2022).

[39] *Hearing to Receive Testimony on Sexual Assault in the Military Before the S. Comm. on Armed Servs.*, 117th Cong. 5–6 (2021) (statement of Sen. Kirsten Gillibrand)**,** https://tinyurl.com/3-24-2021-senate-hearing; National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, §§ 531–539G, 135 Stat. 1541, 1692–1708 (2021).

made clear that this specialized substantive review was subject to strict deadlines.[40]

2. At the apex of this mountain of reform was the Dignity for MST Survivors Act ("Dignity Act"), which amended 38 U.S.C. § 7102 and 38 U.S.C. § 7112, the statute misapplied in the decision below.

These amendments emphasized both accuracy and expeditiousness. The changes to section 7102 promoted accuracy: all military sexual trauma claims before the Board of Veterans' Appeals must be handled by board members with specialized "training on military sexual trauma." Dignity for MST Survivors Act, Pub. L. No. 117-300, 136 Stat. 4379 (2022). The changes to section 7112 promoted timeliness: all "claims involving military sexual trauma" must be "promptly" identified and receive "[e]xpedited treatment" if appealed to the Board. *Id.*

The dual aims of the Dignity Act follow naturally from the testimony, data, and reports that were before Congress alerting legislators to the neglect of military sexual trauma survivors. Navy Veteran Ruth Moore, for example, shared with Congress how her quality

_____

[40] *See* Pub. L. No. 117-81, § 543(b)–(d), 135 Stat. at 1709–10 (requiring, *inter alia*, that complaints be forwarded "to an independent investigator within 72 hours after receipt of the complaint").

of life was "degraded" during her decades-long battle for relief.[41] Marine Corps Veteran Tara Johnson similarly testified to the "significant amount of time" that she was forced to endure her "extremely fragile financial and emotional state" while waiting for "VA care and compensation."[42] Navy Veteran Brian Lewis canvassed survivors' stories—including his own—and likewise spoke to how the "drawn out process of fighting for benefits" exacerbated emotional stressors.[43] And contemporary VA reports shined a further, harsh light on the severe delays affecting military sexual trauma claims in particular.[44]

In the Dignity Act, Congress responded, recognizing that the special harms suffered by military sexual trauma survivors demanded

---

[41] *Invisible Wounds: Examining the Disability Compensation Benefits Process for Victims of Sexual Trauma: Hearing Before the Subcomm. on Disability Assistance and Memorial Affs. of the H. Comm. on Veterans' Affs.*, 112th Cong. 69 (2012) (statement of Ruth Moore).

[42] *Safety for Survivors: Care and Treatment for Military Sexual Trauma: Hearing Before the Subcomm. on Health of the H. Comm. on Veterans' Affs.*, 113th Cong. 60 (2013) (statement of Tara Johnson) (cleaned up).

[43] *The Relationships Between Military Sexual Assault, Post-Traumatic Stress Disorder and Suicide, and on Dep't of Def. and Dep't of Veterans Affs. Medical Treatment and Management of Victims of Sexual Trauma: Hearing Before the Subcomm. on Pers. of the H. Comm. of Armed Servs.*, 113th Cong. 30 (2014) (statement of Brian Lewis, Protect Our Defenders).

[44] Supporting Veterans Hearing, 117th Cong. at 114 (report of Dep't of Veterans' Affs.).

special solutions. Congress knew that the existing claims process "ha[d] the unfortunate potential to retraumatize [military sexual trauma] survivors." 168 Cong. Rec. H5108 (daily ed. May 18, 2022) (statement of Rep. Frank Mrvan). And Congress had queried the VA as to whether it would work through its backlog by "afford[ing] preference to … particularly complex or time-sensitive claims [including those] for [military sexual trauma]."[45]

By amending sections 7102 and 7112, Congress demanded that military sexual trauma claims be handled "with the proper amount of sensitivity *and* speed." Supporting Veterans Hearing, *supra* note 45, at 80 (emphasis added). As to speed in particular, Congress spoke clearly. In amending section 7112, it expanded the class of claims entitled to "[e]xpedited treatment" from (a) "remanded claims" alone to (b) "remanded claims" *and* "claim[s] for compensation based on military sexual trauma." *Compare* 38 U.S.C. § 7112 (2003) ("Expedited treatment of remanded claims."), *with* 38 U.S.C. § 7112 (2022) ("Expedited treatment of certain claims.").

---

[45] Supporting Veterans Hearing, 117th Cong. at 80–81 (statement of Sen. Mazie Hirono).

The Dignity Act—and the accompanying reform legislation of the 2020s—embodies Congress's conclusion that safeguarding the dignity of military sexual trauma survivors requires both accuracy and, crucially, timeliness: section 7102 promotes the former, and section 7112 the latter.

## III.  THE DECISION BELOW DEFIES CONGRESSIONAL INTENT AND HARMS SURVIVORS.

Through a series of interpretive errors, the majority concluded that "Congress did not intend for [military sexual trauma claims] to be adjudicated ahead of other claims" and that "the only action required" under section 7112 "is for the Board to 'determine' whether a case involves [military sexual trauma]." Appx8. That holding is atextual, ignores the context in which Congress acted, fails to apply the veterans canon, and is dangerous.

1. The holding below is atextual because it disregards Congress's express instruction that "[c]laims involving military sexual trauma" be treated as part of the narrow class of "certain claims" subject to "[e]xpedited treatment." 38 U.S.C. § 7112. The majority acknowledged this textual reality. In fact, the majority correctly observed that section 7112's "heading can *only* be read as covering all the types of claims identified in section 7112 … [including] MST claims described in

subsection (b)." Appx6 (emphasis added). Because section 7112 is "unambiguous," the judicial inquiry below should have ended there. *See Babb v. Wilkie*, 589 U.S. 399, 413 (2020).

Instead, rather than take Congress at its word (i.e., the text of section 7112), the majority reached the conclusion that Congress created a new class of "covered case[s]," defined exclusively under a provision requiring "[e]xpedited treatment of certain *claims,*" 38 U.S.C. § 7112 (emphasis added), merely so the Board would more quickly *identify*—but not act on—such claims.[46] That tortured construction defies both text and common sense.

2. The holding below also ignores crucial context that informs the meaning of section 7112. The past three decades of Congressional reform, in particular that surrounding the passage of section 7112, demonstrate that the Dignity Act is an integral component of Congress's efforts to improve responsiveness to military sexual trauma survivors from the UCMJ through the VBA.

---

[46] As articulated in Judge Jacquith's dissent, even if the Board's statutory obligations were so limited, it still failed to fulfill them. Appx19 ("Ms. Wiggins waited nearly 29 months for the Board hearing she requested in November 2021 … and the Board did not determine, in all that time, whether her case was covered by the statute.").

It is fundamental that statutes "must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). This Court has correctly held that a court "always" may—and often should—interpret a statute by "explor[ing] the statutory context," including "other contemporary statutory provisions that are relevant to the … provision under review." *In re City of Houston*, 731 F.3d 1326, 1332–33 (Fed. Cir. 2013); *see also Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1356 (Fed. Cir. 2020) (relying on decades of "historical background" of congressional reform of the PACER and CM/ECF systems); *Schism v. United States*, 316 F.3d 1259, 1271 (Fed. Cir. 2002) (en banc) (relying on "over 100 years" of legislation governing military health care). The lower court's ruling ignores this principle and runs contrary to the "overwhelming thrust" of Congress's years of rigorous efforts to provide specialized care for military sexual trauma survivors. *Nat'l Veterans Legal Servs.*, 968 F.3d at 1356.

Congress enacted section 7112 to address longstanding delays in providing effective relief to survivors of military sexual trauma. It is part

of a decades-long effort to provide timely treatment to survivors, and was passed as part of a legislative package addressed specifically to streamlining and accelerating access to justice and treatment. In the lead up to the revisions to section 7112 at issue here, Congress accelerated accountability in the military justice system by streamlining reporting, investigation, and prosecution of military sexual trauma-related offenses.[47] It likewise accelerated in-service care by demanding expedited review of all base transfer requests arising out of military sexual trauma.[48] And it accelerated post-service care by ensuring that mental health resources are "immediately" available to any veteran engaging the VA for a military sexual trauma-related compensation claim.[49]

The Dignity Act is of a piece. Through it, Congress accelerated the post-service compensation process by mandating "[e]xpedited treatment" for all military sexual trauma-related compensation claims on appeal. 38 U.S.C. § 7112. Congress did not inexplicably decide that military

---

[47] Pub. L. No. 113-66, § 1743, 127 Stat. at 979–80; Pub. L. No. 117-81, § 543(a), 135 Stat. at 1709.
[48] Pub. L. No. 112-81, § 582, 125 Stat. at 1432 (setting a deadline of "72 hours" for initial decision, and "72 hours" for second-level review if defined).
[49] Pub. L. No. 117-303, § 2, 136 Stat. at 4387.

sexual trauma survivors deserve expedient care and claims-processing in all circumstances *except* for when they seek review from the Board after being denied post-service compensation. Put differently, context confirms what section 7112's text already makes clear: Congress intended for military sexual trauma claims to receive expedited treatment.

3. If any doubt remained after surveying the text, context, and purpose of the Dignity Act, it is difficult to imagine a stronger case to apply the veterans canon. That canon compels courts to liberally construe veterans benefits statutes in furtherance of Congress's "benign policy" to "alleviate" service members of the "hardships they endured." *Walton v. Cotton*, 60 U.S. (19 How.) 355, 358 (1856). Congress's beneficial motive— and thus the veterans canon—is salient here.

The veteran beneficiaries covered by the Dignity Act not only "t[ook] up the burdens of the nation" during their service, *Boone v. Lightner*, 319 U.S. 561, 575 (1943), they now bear the lifelong burden of having been sexually victimized by a fellow servicemember. Congress enacted section 7112 to relieve this select class of veterans of the additional, unconscionable burden of delay they have historically faced. The Dignity Act must be read "in the beneficiaries' favor." *King v. St.*

*Vincent's Hosp.*, 502 U.S. 215, 221 n.9 (1991); *cf. Rudisill v. McDonough*, 601 U.S. 294, 314 (2024) ("If the statute were ambiguous, the pro-veteran canon would favor [the veteran] ….").

4. The holding below is dangerous because it perpetuates the unique harms suffered by military sexual trauma survivors that Congress sought to address.

Military sexual trauma survivors endure severe and continuing distress long after their service ends. Bean-Mayberry, *supra* note 10, at 7; Sadler, *supra* note 8, at 477. Delays and denials of treatment pose life-altering and potentially life-ending risks to survivors. *See* Kimerling, *supra* note 11, at 643; *supra* Section II.C. Yet these survivors have been subjected to especially arduous and time-consuming claims processes relative to those with non-military sexual trauma-related claims. *See supra* Section II.C.

According to the lower court, all section 7112 requires is a prompt determination of whether a case before the Board involves military sexual trauma. That does nothing to address the hardships that military sexual trauma survivors endure while seeking benefits and therefore falls well "short of carrying out the humane motive of Congress"

emanating from the Dignity Act. *Walton*, 60 U.S. at 358. Congress amended section 7112 to improve conditions for military sexual trauma survivors trapped in never-ending claims processes. The decision below flies in the face of that effort and perpetuates the harmful status quo that motivated Congress to pass the Dignity Act in the first place.

## CONCLUSION

This Court should construe section 7112 in accordance with Congress's intent and reverse the judgment below.


Dated: December 22, 2025        */s/ Jillian Stonecipher*

Jillian Stonecipher
Victor T. Hiltner
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

Emily M. Wexler
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and the Rules of this Court, because it contains 6,133 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word O365 in 14-point Century Schoolbook font.

Dated: December 22, 2025          /s/ *Jillian Stonecipher*
_____
Jillian Stonecipher
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of December, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

*/s/ Jillian Stonecipher*

Jillian Stonecipher
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000

*Counsel for Amici Curiae*

# ADDENDUM A

## LIST OF *AMICI CURIAE* LAW PROFESSORS[±]

**Zach Baumgarten** is the Director of the Veteran Legal Services Clinic at the University of Arkansas at Little Rock William H. Bowen School of Law and a former Specialist in the U.S. Army.

**Daniel Bernhard** is a Legal Fellow at the Veterans Law Clinic of the University of Detroit Mercy School of Law, and a Major in the U.S. Army Reserve.

**Hon. Ann Ching** is a Clinical Professor at the Arizona State University Sandra Day O'Connor College of Law, Judge Pro Tempore of the East Valley Regional Veterans Court, and a former Major in the U.S. Army Judge Advocate General's Corps.

**Holly Christian** is an Assistant Professor and Director of the Veterans Law Clinic at the University of Detroit Mercy School of Law.

**Yelena Duterte** is an Associate Professor and Director of the Veterans Legal Clinic at the University of Illinois Chicago School of Law.

---

[±] Institutional affiliations are included for identification purposes only; signatories to this brief provide their own views and do not represent the views of any institution.

**Kristine Huskey** is a Clinical Professor and Director of the Veterans' Advocacy Law Clinic at the University of Arizona James E. Rogers College of Law.

**Daniel Nagin** is a Clinical Professor and Faculty Director of the Veterans Legal Clinic at Harvard Law School.

**Mark Maxwell** is a Clinical Instructor and Director of the Veterans Law Clinic at the Texas Tech University School of Law, and a retired Colonel in the U.S. Army Judge Advocate General's Corps.

**Hugh McClean** is an Associate Professor and Director of the Bob Parsons Veterans Advocacy Clinic at the University of Baltimore School of Law, and a former Major in the U.S. Air Force Judge Advocate General's Corps.

**Dana Montalto** is a Lecturer-on-Law and Associate Director of the Veterans Legal Clinic at Harvard Law School.

**Zachary Outzen** is a Professor of Practice and Assistant Director of the Veterans Benefits Clinic at William & Mary Law School, and a First Lieutenant in the U.S. Army Reserve Judge Advocate General's Corps.

**Franklin Rosenblatt** is an Associate Professor at the Mississippi College School of Law and a former Lieutenant Colonel in the U.S. Army Judge Advocate General's Corps.

**Cormac Smith** is an Assistant Professor of Practice and Director of the Veterans Law Clinic at the Washington University School of Law and a former Lieutenant Colonel in the U.S. Army Judge Advocate General's Corps.

**Dyllan Taxman** is an Assistant Professor at the Baylor University School of Law and a former Lieutenant in the U.S. Navy Judge Advocate General's Corps.

**Hillary Wandler** is a Professor of Law and Director of the Veterans Advocacy Clinic at the University of Montana School of Law.

**Jessica Wherry** is an Associate Professor of Law at the University of Baltimore School of Law, former Assistant Counsel for the U.S. Navy Office of the General Counsel, and former Petty Officer Second Class in the U.S. Navy.

**Morgan Zimarakos** is the Interim Director of the Veterans Advocacy Clinic and Associate Director of the Veterans Law Institute at the Stetson University College of Law.