No. 26-1053

# In the United States Court of Appeals
### *for the*
### Federal Circuit

KARISSA WIGGINS,
*Plaintiff-Appellee,*

v.

DOUGLAS A. COLLINS, in his official capacity
as Secretary of Veterans Affairs,
*Defendant-Appellant,*

On Appeal from the United States Court of Appeals for Veterans Claims
(Case No. 24-4591)

## BRIEF OF *AMICI CURIAE* PUBLIC HEALTH AND MENTAL HEALTH SPECIALISTS IN SUPPORT OF APPELLEE AND REVERSAL

RENÉE M. MIHAIL
  *Counsel of Record*
MATTHEW S. BLUMENTHAL
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 Fairfield Ave.
Bridgeport, CT 06604
(203) 336-4421
rmihail@koskoff.com
mblumenthal@koskoff.com

*Counsel for* Amici Curiae

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 26-1053 |
| **Short Case Caption** | Wiggins v. Collins |
| **Filing Party/Entity** | Renee Mihail; Koskoff, Koskoff, and Bieder P.C. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/22/2025

Signature: 

Name: Renee Mihail

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Nicholas Barr | | |
| David Bringhurst | | |
| Carl Castro | | |
| Umeka Franklin | | |
| Danitza James | | |
| Kathleen McNamara | | |
| Samuel Odom | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Koskoff, Koskoff, and Bieder P.C. | Renee M. Mihail | Matthew S. Blumenthal |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

IDENTITY OF *AMICI*, THEIR INTEREST IN THE CASE, AND SOURCE OF AUTHORITY TO FILE .............................................. 1

INTRODUCTION ..................................................................... 4

ARGUMENT ............................................................................ 7

I.    PTSD from MST is distinct from other forms of PTSD, which is why MST survivors' claims should be adjudicated in an expedited fashion............................................................... 7

II.   Supportive organizational response is the most important factor in facilitating recovery for a survivor of MST. ................... 10

III.  Delaying recovery can lead to retraumatization, which exacerbates health outcomes. ........................................... 13

IV.  Ensuring MST survivors attain access to proper treatment is of the utmost importance, from a mental health and public health perspective. ...................................................................... 17

V.   The CAVC's standard for undue hardship is extreme, blinks reality, and would likely vitiate the benefit to expedited adjudication for many MST survivors. ......................................... 19

CONCLUSION ...................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Wiggins v. Collins*,
  38 Vet. App. 341, 355 (2025)....................................................................5

## Statutes

H.R. 6961, 117th Cong.............................................................................19

H.R. Rep. No. 100-963, at 13 (1988) ......................................................21

## Rules

Fed. R. App. P. 29(a)(4)(E) .......................................................................1

## Other Authorities

Alan Fontana & Robert Rosenheck, *Duty-Related and Sexual
  Stress in the Etiology of PTSD among Women Veterans Who
  Seek Treatment*, 49 PSYCHIATRIC SERVICES 658, 662 (1998)..................7

Alina Suris & Lisa Lind, *Military Sexual Trauma: A Review of
  Prevalence and Associated Health Consequences in Veterans*, 9
  TRAUMA, VIOLENCE, AND ABUSE 250, 259 (2008) ..............................7, 17

Board of Veterans' Appeals, *Fiscal Year 2024 Annual Report*,
  U.S. DEP'T OF VETERANS AFFAIRS, at 40 (2024) ...................................20

Carly Parnitzke Smith & Jennifer J. Freyd, *Dangerous
  Safe Havens: Institutional Betrayal Exacerbates Sexual Trauma*,
  26 J. TRAUMATIC STRESS 119, 120 (2013)........................................10, 11

Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*,
  69(6) AM. PSYCHOLOGIST 575, 575–587 (2014) ...............................10, 14

iii

Chris Brewin et al., *Meta-analysis of Risk Factors for Posttraumatic Stress Disorder in Trauma-Exposed Adults*, 68 J. CONSULT. CLIN. PSYCHOL. 748 (2000).............................................................12

Christine A. Courtois & Julian D. Ford, *Treating Complex Traumatic Stress Disorders (Adults): An Evidence-Based Guide* (2009) ..............14

Courtney E. Ahrens, *Being Silenced: The Impact of Negative Social Reactions on the Disclosure of Rape*, 38 AM. J. CMTY. PSYCHOLOGY 263, 269 (2006) ...................................................8

Department of Veterans Affairs, *Military Sexual Trauma and Disability Compensation*, https://perma.cc/N647-9AA7.................9

Emily Ozer et al., *Predictors of Posttraumatic Stress Disorder and Symptoms in Adults: A Meta-Analysis*, 129(1) PSYCHOLOGICAL BULLETIN 52, 52–73 (2008) ...................................................12

*Examining How the Department of Veterans Affairs Supports Survivors of Military Sexual Trauma: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Veterans' Affairs*, 116th Cong. (2020)......................................8

Felicia J. Andresen, et al., *Institutional Betrayal Following Military Sexual Trauma is Associated with More Severe Depression and Specific Posttraumatic Stress Disorder Symptom Clusters*, 75 J. CLIN. PSYCHOL. 1305, 1306 (2019) ........................................12

*Improving VA Training for Military Sexual Trauma Claims Act*, H.R. 2201, 119th Cong. ........................................................13

Jessica Turchik et al, *Perceived Barriers to Care Among Veterans Health Administration Patients with Posttraumatic Stress Disorder*, 8 PSYCHOLOGICAL SERVICES 212, 223 (2011)...........................8

Kathryn K. Carroll, et al, *Negative Posttraumatic Cognitions Among Military Sexual Trauma Survivors*, 238 J. AFFECTIVE DISORDERS 88, 92 (2018) ........................................................9

iv

Keren Lehavot et al, *Barriers to Care for Women Veterans With Posttraumatic Stress Disorder and Depressive Symptoms*, 10 PSYCHOLOGICAL SERVICES 203, 208 (2013) ............................................. 18

Lindsey L. Monteith, et al, *Institutional Betrayal and Help-Seeking Among Women Survivors of Military Sexual* Trauma, 13 (7) PSYCHOLOGICAL TRAUMA 814, 815 (2021) ....................................... 11, 17

Maureen Murdoch et al., *Long-Term Outcomes of Disability Benefits in US Veterans with Posttraumatic Stress Disorder*, 68 (10) ARCH. GEN. PSYCHIATRY 1072, 1078 (2011) ....................................................... 18

Minden B. Sexton, et al, *Contrasting Gender and Combat Versus Military Sexual Trauma: Psychiatric Symptom Severity and Morbidities in Treatment-Seeking Veterans*, 26 J. WOMEN'S HEALTH 9 (2017) ...................................................................... 9

Rachel Campbell, *Rape Survivors' Experiences with the Legal and Medical Systems: Do Rape Victim Advocates Make a Difference?* 12 VIOLENCE AGAINST WOMEN 30–45 (2006) ............................................. 14

Ruff Institute of Global Homelessness, *Homelessness Research Guide: Understanding Homelessness*, https://perma.cc/UTJ5-2ARE ..20

# IDENTITY OF *AMICI*, THEIR INTEREST IN THE CASE, AND SOURCE OF AUTHORITY TO FILE[1]

*Amici Curiae* represent the interests of leading mental health professionals dedicated to providing proper health care and treatment for all individuals in need. *Amici* offer this brief to explain that delays in decision-making by the Department of Veterans Affairs ("VA") lead to undue hardships on veterans, particularly those who are survivors of military sexual trauma ("MST"). To analyze undue hardship simply through the lens of a veteran's financial situation misunderstands that delays lead to hardships to an individual veteran's whole-body health. This brief also seeks to demonstrate that a standard requiring homelessness, for example, in order to qualify as an undue hardship poses an extreme standard which would leave many veterans facing hardship without relief. *Amici* represent specialists working at the intersection of military service, sexual trauma, and mental health outcomes.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), counsel for amici represent that they authored this brief in its entirety and that none of the parties or their counsel, nor any other person or entity other than amici or their counsel, made a monetary contribution intended to fund the preparation or submission of this brief. All parties have consented to this brief's filing.

**Nicholas Barr, Ph.D.,** is an associate professor of social work at the University of Nevada, Las Vegas. His research focuses on enhancing understanding of risk and protective factors for populations with an elevated likelihood of traumatic experiences, such as veterans. Dr. Barr is also a clinician who has specialized in treating trauma for over a decade.

**David Bringhurst, Ph.D., MSW,** is an associate teaching professor and co-lead of the Military Social Work Track for the Suzanne Dworak-Peck School of Social Work at the University of Southern California. He began working in the social services arena in 1986, including 21 years as an active-duty military social worker for the United States Air Force. He is a prior Air Force Wounded Warrior Program Chief, responsible for the administrative management of wounded warrior cases (75% of which were PTSD related).

**Carl Castro, Ph.D.,** is the Director of the Military and Veterans Programs at the Suzanne Dworack-Peck School of Social Work at the University of Southern California. Professor Castro's research focuses on the needs of active-duty servicemembers, veterans, and their families,

including trauma and suicidality. Professor Castro served in the United States Army for over 30 years.

**Umeka Franklin, EdD, MSW, LCSW** is an associate teaching professor of Social Work Practicum Education and Director of the Bachelor of Social Work and Undergraduate Education Program at the Suzanne Dworak-Peck School of Social Work at the University of Southern California. Her work focuses on trauma, integrated behavioral health, and military veterans. She previously served in a leadership role as a social work coordinator at the VA, and is still a licensed clinical social worker.

**Danitza James, MSW,** is the President and CEO of Repatriate Our Patriots. An Army combat veteran and MST survivor, she also serves as the Vice Chair of the League of United Latin American Citizens National Military and Veterans Affairs Committee. Ms. James currently works with survivors of MST across all military branches by providing peer support and advocating for permanent policy and legislative reform.

**Kathleen McNamara, Ph.D., LCSW,** is an assistant professor of social work at the University of Nevada, Las Vegas. Her research focuses on diversity and inclusion in the military and mental health among

servicemembers and veterans. She served in the United States Air Force for 12 years. Dr. McNamara is also a clinician who has specialized in treating trauma for over a decade.

**Samuel Odom, Ph.D., MPH, MSW, ACSW,** is an associate professor of social work at Simmons University, Director of the Graduate Certificate in Military Social Work, Adjunct Professor at Tulane University of Social Work, and a lecturer at the University of Southern California. His research interests are at the intersection of uniformed and military social work, coping strategies, moral injury, and mental health, particularly focused on ameliorating the effects of military trauma and stress. Professor Odom served in the United States Army for over 20 years.

Each individual supporting this *amici curiae* brief is dedicated to ensuring that our nation's veterans who are survivors of MST have a fair opportunity to obtain treatment and medical benefits.

## INTRODUCTION

*Amici* write to urge the Court to reverse the order of the Court of Appeals for Veterans Claims ("CAVC") denying Ms. Wiggins's writ of mandamus. The CAVC reasoned that "Ms. Wiggins has not shown

through her petition that the delay impacts her in ways that weigh heavily in favor of finding unreasonable delay." *Wiggins v. Collins*, 38 Vet. App. 341, 355 (2025) (order denying writing of mandamus). The court explained that it reached this conclusion because Ms. Wiggins did not report that she faced "a current crisis such as imminent homelessness or an inability to meet her basic financial needs." *Id.* at 356.

However, the hardship a survivor of MST faces goes beyond job prospects or one's financial situation. In fact, there are very real medical hardships that survivors face as their recovery from MST is delayed. *Amici* submit this brief to aid in the Court's understanding of mental health and public health studies addressing this issue, which support Ms. Wiggins's case.

First, *amici* provide insights into the ways in which post-traumatic stress disorder ("PTSD") from MST differs from PTSD resulting from other forms of trauma, such as combat exposure. They explain why survivors of MST should therefore be treated distinctly by the VA.

Second, *amici* outline how a supportive organizational response to a survivor's report of MST has been demonstrated to best facilitate their recovery. The opposite is true, as well. By failing to expedite claims

related to MST, the VA's poor organizational response indicates that it does not support MST survivors as it continues to delay their potential recovery. Such failures can therefore cause harms to MST survivors that are distinct and more acute compared to other veterans.

Third, *amici* note that delaying recovery can lead to a cycle of retraumatization, which can further worsen health outcomes. Not only do survivors have to continually relive their MST as they work through the process, but the lack of validation from, and timely response by, the VA may result in additional trauma.

Fourth, *amici* emphasize the importance, from a mental health and public health perspective, of ensuring that survivors of MST attain access to proper treatment.

Finally, *amici* explain why the CAVC's standard for "undue hardship" is extreme, conflicts with Congressional intent, and blinds itself to the realities of MST survivors. This Court should honor Congress's recognition that MST survivors face special harms and obstacles, reverse the CAVC's decision, and grant Ms. Wiggins a writ of mandamus ordering expedited adjudication of her claims.

## ARGUMENT

**I.    PTSD from MST is distinct from other forms of PTSD, which is why MST survivors' claims should be adjudicated in an expedited fashion.**

Studies show that MST survivors frequently develop PTSD as a result of their traumatic assault experiences. For example, women veterans with a history of MST are nine times more likely to develop PTSD compared to women with no sexual assault histories. Alina Suris & Lisa Lind, *Military Sexual Trauma: A Review of Prevalence and Associated Health Consequences in Veterans*, 9 TRAUMA, VIOLENCE, AND ABUSE 250, 259 (2008). And in a study of 327 women veterans treated by the VA for stress disorders, researchers found that sexual stress was almost four times more significant than duty-related stress in the development of PTSD. Alan Fontana & Robert Rosenheck, *Duty-Related and Sexual Stress in the Etiology of PTSD among Women Veterans Who Seek Treatment*, 49 PSYCHIATRIC SERVICES 658, 662 (1998).

Not only are survivors of MST more likely to develop PTSD, but the particularities surrounding PTSD resulting from MST demonstrate why the distinct needs of these survivors should be respected and treated differently. First and foremost, documenting MST is exceedingly difficult, often because survivors rarely report the traumatic event, as compared

to PTSD that may result from combat exposure. *See Examining How the Department of Veterans Affairs Supports Survivors of Military Sexual Trauma: Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Veterans' Affairs*, 116th Cong. (2020) (Paralyzed Veterans of America) ("[O]nly about 30 percent of sexual assaults are actually reported."). Survivors of MST often feel like they cannot report their assault as a result of intense social stigma in the military. Jessica Turchik et al, *Perceived Barriers to Care Among Veterans Health Administration Patients with Posttraumatic Stress Disorder*, 8 PSYCHOLOGICAL SERVICES 212, 223 (2011). And studies of female sexual assault survivors have found that stigma-related mental health barriers, such as feelings of shame and fears of negative consequences or reactions, were common reasons why women did not report an assault. *See, e.g.*, Courtney E. Ahrens, *Being Silenced: The Impact of Negative Social Reactions on the Disclosure of Rape*, 38 AM. J. CMTY. PSYCHOLOGY 263, 269 (2006). Because of the difficulty in documenting MST due to under-reporting, the VA accepts both direct evidence, such as civilian police reports, and indirect evidence, such as evidence of changes in work performance or relationships, to support a claim of PTSD from MST.

Department of Veterans Affairs, *Military Sexual Trauma and Disability Compensation*, https://perma.cc/N647-9AA7.

Survivors of MST are also more likely to exhibit feelings of self-blame and negative self-cognition than veterans with combat-related PTSD. Self-blame is prominent and unique to MST because of the inherent violation of trust and personal identity that goes hand-in-hand with the trauma. Self-blame can disrupt trust, relationships, and problem-solving, which can make survivors feel further isolated. Kathryn K. Carroll, et al, *Negative Posttraumatic Cognitions Among Military Sexual Trauma Survivors*, 238 J. AFFECTIVE DISORDERS 88, 92 (2018).

As discussed in more detail *infra*, studies have shown that veterans seeking care for MST-related events show more severe PTSD, depressive, and dissociative symptoms than those seeking care related to combat incidents. Minden B. Sexton, et al, *Contrasting Gender and Combat Versus Military Sexual Trauma: Psychiatric Symptom Severity and Morbidities in Treatment-Seeking Veterans*, 26 J. WOMEN'S HEALTH 9 (2017). Thus, not only may mental health conditions manifest differently for survivors of MST, but the harms are also more acute. It logically

follows that survivors of MST would be treated differently, considering their distinct medical needs.

## II. Supportive organizational response is the most important factor in facilitating recovery for a survivor of MST.

Certain factors specific to the military and veteran context exacerbate the mental health conditions of MST survivors. In particular, feelings of institutional betrayal can delay an MST survivor's recovery, as social support is critical throughout the process given the sense of self-blame that many MST survivors hold. Without a supportive organizational response, such as through expediting claims, the VA impairs the potential recovery for MST survivors.

Institutional betrayal occurs when an institution causes harm to an individual who depends upon that institution. Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*, 69(6) AM. PSYCHOLOGIST 575, 575–587 (2014). Betrayal trauma theory indicates that when an individual experiences sexual assault in a context where their safety depends upon an institution, such as the military, they will have increased difficulty within that environment after the assault. Carly Parnitzke Smith & Jennifer J. Freyd, *Dangerous Safe Havens: Institutional Betrayal Exacerbates Sexual Trauma*, 26 J. TRAUMATIC

STRESS 119, 120 (2013). Consequently, studies have shown that sexually assaulted women who also experienced institutional betrayal suffer from greater levels of PTSD symptoms than whose who experienced sexual assault outside of an institutional context. *Id.* at 122.

Given the nature of the environment, MST is likely to involve more institutional betrayal than civilian assault. Service members are dependent upon the military for safety and employment. Once MST survivors become veterans, the institutional betrayal and mistrust extends to the VA context, especially for veterans who depend on the VA for healthcare and benefits. Lindsey L. Monteith et al., *Institutional Betrayal and Help-Seeking Among Women Survivors of Military Sexual* Trauma, 13 (7) PSYCHOLOGICAL TRAUMA 814, 815 (2021). And women who experience institutional betrayal demonstrate more severe posttraumatic symptoms related to anxiety, sexual dysfunction, dissociation, and the Sexual Abuse Trauma Index. Carly Parnitzke Smith & Jennifer J. Freyd, *Dangerous Safe Havens: Institutional Betrayal Exacerbates Sexual Trauma*, 26 J. TRAUMATIC STRESS 119, 122 (2013). Specifically in the VA context, survivors of MST who experience institutional betrayal exhibit more severe symptoms of PTSD and depression, as well as more severe

suicidal ideations. Felicia J. Andresen et al., *Institutional Betrayal Following Military Sexual Trauma is Associated with More Severe Depression and Specific Posttraumatic Stress Disorder Symptom Clusters*, 75 J. CLIN. PSYCHOL. 1305, 1306 (2019).

The VA's response to a survivor of MST directly impacts their mental health outcomes. If the survivor feels harmed by the VA—such as Ms. Wiggins, who has been waiting for over four years for a decision— she is more likely to develop severe symptoms of PTSD, depression, and suicidal ideations. Without a supportive response from the VA, including demonstrating trust and respect for the veteran by providing them with care, the mental health outcomes for MST survivors can worsen. This sense of support offered to a survivor is one of the strongest predictors of PTSD. Chris Brewin et al., *Meta-analysis of Risk Factors for Posttraumatic Stress Disorder in Trauma-Exposed Adults*, 68 J. CONSULT. CLIN. PSYCHOL. 748 (2000). Individuals who report lower levels of perceived social support after a traumatic event reported higher levels of PTSD symptoms or rates of current PTSD. Emily Ozer et al., *Predictors of Posttraumatic Stress Disorder and Symptoms in Adults: A Meta-Analysis*, 129(1) PSYCHOLOGICAL BULLETIN 52, 52–73 (2008).

Taken together, a strong organizational response by the VA is a critical factor in facilitating the recovery of an MST survivor. And this organizational response includes efficient adjudication of their claims, not only for the survivor to feel heard by the VA, but also so that they can access the resources they need in a timely manner. The converse is also true: where MST survivors experience delays in the adjudication of their claims—as Ms. Wiggins has—their recoveries are distinctly harmed and they are likely to experience more acute, harmful, and longstanding symptoms.

### III. Delaying recovery can lead to retraumatization, which exacerbates health outcomes.

Delays exacerbated by the VA process lead to feelings of institutional betrayal. Just as importantly, they also lead to retraumatization. Survivors are first retraumatized by having to continually relive their MST as they work their way through the VA system. Not only are there many bureaucratic hurdles that make it a slow, arduous process (as clearly evidenced by Ms. Wiggins's timeline), but survivors are sometimes forced to repeatedly recount traumatic details to untrained staff, which can result in further retraumatization. *See, e.g., Improving VA Training for Military Sexual Trauma Claims Act,*

H.R. 2201, 119th Cong. (proposed bipartisan bill strengthening training for VA staff to handle processing of MST claims with sensitivity, care, and respect).

Additionally, this phenomenon of "secondary victimization" occurs when veterans seek help from institutions following a sexual assault and, instead of receiving help, encounter difficulties, such as victim-blaming or lack of support. Carly Parnitzke Smith & Jennifer J. Freyd, *Institutional Betrayal*, 69(6) AM. PSYCHOLOGIST 575, 583 (2014). "When victims reach out for help, they place a great deal of trust in the legal, medical, and mental health systems as they risk disbelief, blame, and refusals of help." Rachel Campbell, *Rape Survivors' Experiences with the Legal and Medical Systems: Do Rape Victim Advocates Make a Difference?* 12 VIOLENCE AGAINST WOMEN 30–45 (2006). When the VA questions the nature or even existence of these veterans' traumatic experiences, this deep lack of validation may result in additional trauma. Christine A. Courtois & Julian D. Ford, *Treating Complex Traumatic Stress Disorders (Adults): An Evidence-Based Guide* (2009) (deep lack of validation of interpersonal trauma by institution mirrors mechanism thought to predict development of complex posttraumatic responses).

To further illustrate the potentially dire consequences for MST survivors and the importance of providing them timely, supportive care, *Amicus* Dr. McNamara shares the story of one particular female servicemember. This servicemember had been groomed and assaulted by one of her supervisors. She was new to the military and thought she could report the assault, the supervisor would be punished, and justice would be served. Unfortunately, that isn't what happened. Instead, she was advised not to seek mental health resources, not to tell anyone else what had happened, and to keep showing up to work and doing a good job. This was so painful for her because she had to keep her truth inside, which caused panic attacks on the way to work, trouble concentrating on work, and the development of deep depression and constant suicidal ideations.

As *Amicus* Dr. McNamara explains based on her professional experience, when left untreated by a trained mental health provider, these type of cases worsen quickly. After trauma, especially interpersonal trauma, the brain wants to (1) protect itself from the trauma happening again so the survivor retreats physically and emotionally from the world, and (2) have corrective experiences with those who hurt them. Without support, the individual is left to vacillate between these two dichotomous

goals and can be further victimized. Her patient had to re-tell her story numerous times, often in an emotionally unsupportive environment, which made her question herself, blame herself, and regret even reporting the assault.

Once Dr. McNamara was finally able to work with this survivor, she had developed a number of trauma triggers including certain foods that reminded her of the grooming period, his name or any name similar to his, and being touched at all even from friends and family. She was having panic attacks daily based on the above triggers and fear of these triggers. Once in treatment, they worked on re-introducing her triggers in manageable ways, reducing the amount of brain space this trauma took up in her mind by focusing on other hobbies and interests that she had long since abandoned due to being so traumatized, and Dr. McNamara was also able to provide a warm and supportive space for her, which the survivor had been denied for over a year.

The compounding trauma caused by delay where survivors repeatedly relive the trauma, face prolonged uncertainty and stress, and expose themselves to insensitive treatment from institutional actors only serves to worsen the mental health conditions of MST survivors. By

creating a separate queue for MST survivors, the VA can better serve the unique needs of these veterans by providing them with particularized resources which would decrease the unique, harmful consequences that they face due to delays in treatment and provide the survivors with a better sense of support.

## IV. Ensuring MST survivors attain access to proper treatment is of the utmost importance, from a mental health and public health perspective.

Delaying treatment to MST survivors not only affects their mental health, but also can wreak havoc on their physical health, employment, income level, and housing. Thus, delaying recovery for MST survivors impacts both the individual veteran and society, as MST has been associated with physical and physiological symptoms which can worsen if left untreated.

For example, MST is associated with increased risk of alcohol and substance abuse disorders. Lindsey L. Monteith et al., *Institutional Betrayal and Help-Seeking Among Women Survivors of Military Sexual Trauma*, 13 (7) PSYCHOLOGICAL TRAUMA 814, 815 (2021). In fact, one study found that women with MST were twice as likely as women without MST to develop alcohol abuse problems. Alina Suris & Lisa Lind, *Military*

*Sexual Trauma: A Review of Prevalence and Associated Health Consequences in Veterans*, 9 TRAUMA, VIOLENCE, AND ABUSE 250, 259 (2008). And female MST survivors report significantly more physical symptoms compared with women veterans without MST, including pelvic pain, menstrual problems, back pain, headaches, gastrointestinal symptoms, and chronic fatigue. *Id.* at 262.

Furthermore, studies show that PTSD may have pervasive negative effects on employment status and income, work absenteeism, as well as functional impairment. Keren Lehavot et al., *Barriers to Care for Women Veterans With Posttraumatic Stress Disorder and Depressive Symptoms*, 10 PSYCHOLOGICAL SERVICES 203, 208 (2013). But veterans with PTSD who receive VA benefits, as opposed to those who were denied them, report meaningful reductions in PTSD symptoms and report meaningful improvements in work, role, and social functioning. Maureen Murdoch et al., *Long-Term Outcomes of Disability Benefits in US Veterans with Posttraumatic Stress Disorder*, 68 (10) ARCH. GEN. PSYCHIATRY 1072, 1078 (2011). Nevertheless, functioning for all veterans claiming PTSD remained poor. *Id.* This is important to note because while receiving VA benefits is associated with reductions in PTSD symptoms and less

poverty, veterans who believe they have PTSD, but have been denied benefits by the VA, still have generally worse outcomes than those who do not. And these outcomes are further exacerbated for survivors of MST.

## V. The CAVC's standard for undue hardship is extreme, blinks reality, and would likely vitiate the benefit to expedited adjudication for many MST survivors.

To require a veteran to either be homeless or destitute in order to demonstrate undue hardship is an extreme standard that is inconsistent with research and clinical literature, and is particularly harmful for MST survivors. The combination of increased rates of mental health conditions, alcohol and substance use disorders, associated physical conditions, along with generally impaired functioning demonstrates that survivors of MST who believe they have PTSD face hardships that go well beyond what the average veteran faces. These hardships can be highly debilitating and have devastating and irreversible consequences for MST survivors. Congress itself recognized this reality by passing legislation requiring expedited treatment of MST claims. *See* H.R. 6961, 117th Cong. (2022).

Moreover, this extreme standard blinks the realities of life for MST survivors suffering from PTSD. Hardships like bankruptcy and

homelessness often occur without warning as a result of an exogenous shock. Ruff Institute of Global Homelessness, *Homelessness Research Guide: Understanding Homelessness*, https://perma.cc/UTJ5-2ARE. The distinct and aggravated symptoms of MST survivors, such as increased likelihood of developing substance use disorder, increased isolation, and decreased general functioning, mean that they are at significantly higher risk for experiencing homelessness suddenly during the pendency of their case. *See id.* This is especially true given the long time periods over which non-expedited VA cases like Ms. Wiggins await adjudication. *See* Board of Veterans' Appeals, *Fiscal Year 2024 Annual Report*, U.S. DEP'T OF VETERANS AFFAIRS, at 40 (2024) (outlining that veterans who file notice of disagreement to Board of Veterans Appeals requesting hearing wait on average 1,091 days for decision).

Requiring an MST survivor to submit advance evidence of impending bankruptcy or homelessness would be a Catch-22 that functionally vitiated their ability to avoid these hardships through expedited adjudication. Additionally, given the time it could take the VA to grant expedited adjudication, there is a significant likelihood that even if an MST survivor could present this evidence, they would be

experiencing the hardship before their claim was adjudicated. Finally, an MST survivor in danger of hardship akin to bankruptcy or homelessness is unlikely to be able to vigorously pursue their right to expedited adjudication on their own. This would fly in the face of Congress's intent that the VA claims system be an *ex parte*, non-adversarial system where a veteran can pursue their claims without an attorney. *See* H.R. Rep. No. 100-963, at 13 (1988) ("Congress has designed and fully intends to maintain a beneficial non-adversarial system of veterans benefits.").

The debilitating, and in some cases life-altering, effects of delaying recovery for MST survivors on their mental health, physical health, employment, income, and housing status support the conclusion that Ms. Wiggins's writ of mandamus should be granted such that she receives an expedited decision on her PTSD claim.

## CONCLUSION

For the foregoing reasons, *amici* ask that the decision of the Court of Appeals for Veterans Claims be reversed.

Respectfully submitted,

RENÉE M. MIHAIL
   *Counsel of Record*
MATTHEW S. BLUMENTHAL
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 Fairfield Ave.
Bridgeport, CT 06604
(203) 336-4421
rmihail@koskoff.com
mblumenthal@koskoff.com

*Counsel for Amici Curiae*

December 22, 2025

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5), because this brief contains 3,907 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 14-point font.

RENÉE M. MIHAIL
    *Counsel of Record*
MATTHEW S. BLUMENTHAL
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 Fairfield Ave.
Bridgeport, CT 06604
(203) 336-4421
rmihail@koskoff.com
mblumenthal@koskoff.com

DATED:  December 22, 2025

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF system on this day, which will send notice of such filing to all counsel who are CM/ECF registered users.

RENÉE M. MIHAIL
    *Counsel of Record*
MATTHEW S. BLUMENTHAL
KOSKOFF, KOSKOFF & BIEDER, P.C.
350 Fairfield Ave.
Bridgeport, CT 06604
(203) 336-4421
rmihail@koskoff.com
mblumenthal@koskoff.com

DATED: December 22, 2025