No. 26-1053

In The

# United States Court of Appeals for the Federal Circuit

**KARISSA WIGGINS,**
*Plaintiff-Appellant,*

v.

**DOUGLAS A. COLLINS,**
**SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES COURT OF APPEALS
FOR VETERANS CLAIMS, Case No. 24-4591,
Judges Amanda L. Meredith, Jospeh L. Toth, and Grant C. Jaquith

**BRIEF OF FORMER MILITARY OFFICERS AS *AMICI CURIAE*
IN SUPPORT OF APPELLANT KARISSA WIGGINS AND
REVERSAL**

JOHN W. KEKER
BROOK DOOLEY
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 391 5400
jkeker@keker.com • bdooley@keker.com

*Attorneys for Amici Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

| | |
|---:|:---|
| **Case Number** | 26-1053 |
| **Short Case Caption** | Wiggins v. Collins |
| **Filing Party/Entity** | Keker, Van Nest & Peters |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/22/2025

Signature: /s/ Brook Dooley

Name: Brook Dooley

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Steven J. Lepper | | |
| F. Andrew Turley | | |
| Linell Letendre | | |
| Don Christensen | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☐   No    ☑   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ............................................................i

I.    INTEREST AND IDENTITY OF AMICI CURIAE .............................1

II.   INTRODUCTION ..................................................................3

III.  ARGUMENT ........................................................................4

     A.   Military Recruiting and Retention are Critical to
        National Security ............................................................4

     B.   Military Sexual Assault and Harassment Harms
        Recruitment and Retention Efforts.................................7

     C.   The Department of Veterans Affairs' (VA) Failure to
        Provide Timely and Adequate Benefits to Veterans with
        MST Harms Military Recruitment and Retention ......................18

IV.   CONCLUSION .....................................................................24

CERTIFICATE OF COMPLIANCE.....................................................25

CERTIFICATE OF SERVICE ...........................................................26

3915721

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Statutes**

38 U.S.C. § 7112(b) ..........................................................................22

National Defense Authorization Act for Fiscal Year 2022, Pub. L. No.
117-81, 135 Stat. 1541 (2021) ....................................................9

**Rules**

Federal Rule of Appellate Procedure 29(a) ..............................................1

**Other Authorities**

Adam J. Prichard, *Military Sexual Assault, Post-Service Employment,
and Transition Preparation among U.S. Military Veterans*, 19
INT'L J. EVIDENCE-BASED RESEARCH, POLICY, AND PRACTICE 692,
699 (2023) ....................................................................12, 13

Ahmed Al-Nahhas, *Why I Wouldn't Want my Daughter to Join the
Military*, WAVELLROOM (Dec. 22, 2023),
https://wavellroom.com/2023/12/22/servicewomen-why-i-
wouldnt-want-my-daughter-to-join-the-military/ ..............................15

Amanda Barroso, *The Changing Profile of the U.S. Military: Smaller
in Size, More Diverse, More Women in Leadership*, PEW
RESEARCH CENTER (Sept. 10, 2019),
https://www.pewresearch.org/short-reads/2019/09/10/the-
changing-profile-of-the-u-s-military/ ..............................................16

Anita S. Hargrave et al., *Veterans Health Administration Screening
for Military Sexual Trauma May Not Capture over Half of Cases
Among Midlife Women Veterans*, 32 WOMEN HEALTH ISSUES 509,
509 (2023), available at
https://pmc.ncbi.nlm.nih.gov/articles/PMC9949350/ ........................8

Ashton M. Lofgreen, An Overview of Sexual Trauma in the U.S.
Military, 15 PSYCHIATRY ONLINE 411, 412 (2017), available at
https://pmc.ncbi.nlm.nih.gov/articles/PMC6519533/ ........................8

3915721

Ben Kesling, *The Military Crisis: Even Veterans Don't Want Their Families to Join*, WALL STREET J. (June 30, 2023), https://www.wsj.com/politics/military-recruiting-crisis-veterans-dont-want-their-children-to-join .........................................................15

Bill Chappell, *Vanessa Guillén's Murder Led the U.S. To Deem Military Sexual Harassment a Crime*, NPR (Jan. 27, 2022), https://www.npr.org/2022/01/27/1076143481/vanessa-guillen-murder-military-sexual-harassment-crime .......................................................16

Blake Stilwell, *The Talihook Scandal: How a 'Top Gun Mentality' Led to a Disastrous Navy Conference* (Aug. 11, 2022), https://www.military.com/history/tailhook-scandal-how-top-gun-mentality-led-disastrous-navy-conference.html .................................................15

Dan Boyce, *20 Years after a National Scandal, the U.S. Air Force Academy is Still Dealing with Rising Sexual Assault Rates*, CPR NEWS (Mar. 24, 2023), https://www.cpr.org/2023/03/24/us-air-force-academy-sexual-assault-response/ .........................................................16

Dave Spiva, *Fewer Veterans are Recommending Military Service*, VFW (Nov. 30, 2022), https://www.vfw.org/media-and-events/latest-releases/archives/2022/11/fewer-veterans-are-recommending-military-service........................................................15

David Vergun, *DOD Addresses Recruiting Shortfall Challenges,* DOD NEWS (Dec. 13, 2023), https://www.war.gov/News/News-Stories/Article/Article/3616786/dod-addresses-recruiting-shortfall-challenges/...............................................................................................6

DEPARTMENT OF VETERAN AFFAIRS OFFICE OF INSPECTOR GENERAL, DENIED POSTTRAUMATIC STRESS DISORDER CLAIMS RELATED TO MILITARY SEXUAL TRAUMA, Rep. No. 17-05248-241, p. ii (Aug. 21, 2018), available at https://www.vaoig.gov/sites/default/files/reports/2018-08/VAOIG-17-05248-241.pdf ..............................................................................19

DOUGLAS YEUNG ET AL., RAND CORPORATION, RECRUITING POLICIES AND PRACTICES FOR WOMEN IN THE MILITARY: VIEWS FROM THE FIELD, 26 (2017).........................................................................15, 17

vi

FACTS ON UNITED STATES MILITARY SEXUAL VIOLENCE, PROTECT OUR DEFENDERS (2023), available at https://www.protectourdefenders.com/wp-content/uploads/2023/07/MSA-Fact-Sheet-2023-Final-Update-1.pdf ..................................................................................12

Goldberg SB et al., *A Positive Screen for Military Sexual Trauma is Associated with Greater Risk for Substance Use Disorders in Women Veterans*, 33 PSYCH. OF ADDICTIVE BEHAVIORS, 477, 477-483 (2019), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC6682420/........................................11

INDEPENDENT REVIEW COMMISSION, HARD TRUTHS AND THE DUTY TO CHANGE: RECOMMENDATIONS FROM THE INDEPENDENT REVIEW COMMISSION ON SEXUAL ASSAULT IN THE MILITARY (July 1, 2021), available at https://media.defense.gov/2021/Jul/02/2002755437/-1/-1/0/IRC-FULL-REPORT-FINAL-1923-7-1-21.PDF/IRC-FULL-REPORT-FINAL-1923-7-1-21.PDF..................................................17, 23

Jennifer Greenburg, *Deserted: The U.S. Military's Sexual Assault Crisis as a Cost of War*, WATSON INSTITUTE INTERNATIONAL & PUBLIC Affairs (Aug. 14, 2024) at 2, available at https://costsofwar.watson.brown.edu/paper/deserted-us-militarys-sexual-assault-crisis-cost-war ...............................................................7, 8, 9, 16

Jennifer Mathews, *Mental Health Counseling can Boost Resilience after Military Sexual Assault*, EDNA BENNETT PIERCE PREVENTION RESEARCH CENTER (May 9, 2025), https://prevention.psu.edu/news/mental-health-counseling-can-boost-resilience-after-military-sexual-trauma/ ..................................................20

Joseph Clark, *DOD Report: Prevalence of Sexual Assault Declined Across Services in 2023,* DoD News (May 17, 2024), https://www.war.gov/News/News-Stories/Article/Article/3779672/dod-report-prevalence-of-sexual-assault-declined-across-services-in-2023/ ...........................................................9

Joyce A. Akwe & Daniel P. Hunt, *Enhancing Awareness and Care: Addressing Military Sexual Trauma Among Women Veterans*, 118 S. MED. J. 517, 517-521 (2025) ........................................................11

3915721

K.J. Holland et al., *Collateral Damage: Military Sexual Trauma and Help-Seeking Barriers*, 6 PSYCH. OF VIOLENCE 253, 255 (2016), available at https://www.researchgate.net/publication/282447734_Collateral_D amage_Military_Sexual_Trauma_and_Help-Seeking_Barriers..................13, 14

Kayla Willims, *Increasing Diversity in the Military -Recruiting and Retaining Talented Women,* Written Testimony Before the Subcomm. On Military Personnel of the H. Comm. on Armed Servs., 116th Cong. (Dec. 10, 2019), https://www.cnas.org/publications/congressional-testimony/increasing-diversity-in-the-military-recruiting-and-retaining-talented-women ...............................................................10

*Less than Half of Americans would Recommend Military Service for Teens*, IPSOS (Jan. 30, 2025), https://www.ipsos.com/en-us/less-half-americans-would-recommend-military-service-teens...............................21

Mark Thompson, *Here's Why the U.S. Military is a Family Business,* TIME (Mar. 10, 2016), https://time.com/4254696/military-family-business/ ..........................................................................................6, 15

MEREDITH KLEYKAMP ET AL, WHAT AMERICANS THINK ABOUT VETERANS AND MILITARY SERVICE: FINDINGS FROM A NATIONALLY REPRESENTATIVE SURVEY, RAND (2023), available at https://www.rand.org/pubs/research_reports/RRA1363-7.html..........................21

OFFICE OF PEOPLE ANALYTICS, 2018 WORKPLACE AND GENDER RELATIONS SURVEY OF ACTIVE DUTY MEMBERS OVERVIEW REPORT, 35 (2018).............................................................................10

OFFICE OF PEOPLE ANALYTICS, PUBLIC RELEASE SPRING 2024 PROPENSITY UPDATE: YOUTH POLL STUDY FINDINGS (2024), available at https://jamrs.defense.gov/Portals/20/Documents/YP60Fall2024PU BLICRELEASEPropensityUpdate_20250623_Briefing.pdf ............................10

Quil Lawrence & Marisa Peñaloza, *Off the Battlefield, Military Women Face Risks from Male Troops*, NPR (Mar. 20, 2013), https://www.npr.org/2013/03/20/174756788/off-the-battlefield-military-women-face-risks-from-male-troops ..............................................16, 17

3915721

Rabelo et. al., *From Distrust to Distress: Associations Among Military Sexual Assault, Organizational Trust, and Occupational Health*, 9 PSYCH. OF VIOLENCE 78, 80 (2018).........................................................11, 13, 14

Secretary Lloyd Austin, *Department of Defense Actions and Implementation Guidance to Address Sexual Assault and Sexual Harassment in the Military* (July 2, 2021)..............................................................8

Statement of Elizabeth H. Curda, et. al., VA Disability Benefits: Agency Has Taken Steps, but Challenges Remain with Managing and Modernizing Program, AO-26-108789 (Oct. 29, 2025) ("Curda Statement"), available at https://www.gao.gov/assets/gao-26-108789.pdf ..............................................................................18, 19, 22

Tara E. Galovski et al., *State of the Knowledge of VA Military Sexual Trauma Research*, J Gen Intern Med 825, 826 (2022), available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ptsd.va.gov/professional/articles/article-pdf/id1598938.pdf.........................................14

Tom Bowman, *Low Enlistment Numbers has the Army Rethinking Their Tactics to Attract New Recruits*, NPR (Sept. 25, 2023), https://www.npr.org/2023/09/25/1201617590/low-enlistment-numbers-has-the-army-rethinking-their-tactics-to-attract-new-recr..................17

U.S. DEPARTMENT OF DEFENSE INSPECTOR GENERAL, EVALUATION OF THE SEPARATION OF SERVICE MEMBERS WHO MADE A REPORT OF SEXUAL ASSAULT 35-37 (2016), available at https://media.defense.gov/2016/May/09/2001714241/-1/-1/1/DODIG-2016088.pdf...............................................................12, 19

U.S. DEPARTMENT OF VETERANS AFFAIRS, VETERANS BENEFITS ADMINISTRATION REPORTS: AMA METRICS REPORT - NOVEMBER 2025, available at https://www.benefits.va.gov/REPORTS/ama/ ......................18

U.S. Gov't Accountability Off., *DOD Active-Duty Recruitment and Retention Challenges* (Mar. 28, 2023), available at https://www.gao.gov/products/gao-23-106551 .....................................4, 5, 6, 10

ix

U.S. Gov't Accountability Off., *Sexual Assault: DOD and Coast Guard Should Ensure Laws are Implemented to Improve Oversight of Key Prevention and Response Efforts, Report to Congressional Committees* (2022), available at https://www.gao.gov/assets/gao-22-103973.pdf .................................................................................9

U.S. GOVERNMENT ACCOUNTABILITY OFFICE, VA DISABILITY BENEFITS: PLANNING GAPS COULD IMPEDE READINESS FOR SUCCESSFUL APPEALS IMPLEMENTATION (Dec. 12, 2018), available at https://www.gao.gov/products/gao-19-272t ...................................................18

VETERANS LEGAL CLINIC, TURNED AWAY: HOW VA UNLAWFULLY DENIES HEALTH CARE TO VETERANS WITH BAD PAPER DISCHARGES, 1 (2020) ...........................................................................11, 12, 19

Whitney S. Livingston & Rebecca K. Blais, *Military Sexual Trauma and Lower Relationship Satisfaction are Associated with Suicide Risk Among Male Services Members and Veterans*, 10 FRONTIERS IN PSYCHIATRY 1, 3 (2024), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11176543/pdf/fpsyt-15-1355355.pdf ..........................................................................................11

## I.    INTEREST AND IDENTITY OF AMICI CURIAE

*Amici curiae* are four retired officers of the United States Air Force. Each formerly served as a judge advocate general (JAG).[1]

Major General Steven J. Lepper is an Air Force veteran who served on active duty for 35 years. From 2010 to 2014, he served as a Deputy Judge Advocate General of the United States Air Force. In that role, he was responsible for the administration of justice—prosecution, defense, and adjudication—involving, among other things, sexual offenses under the Uniform Code of Military Justice.

Major General F. Andrew Turley is an Air Force veteran who served on active duty and in the Air Force Reserve and Air National Guard with assignments at the wing, major command, and Pentagon level. Beginning in 2009, he served as the Ninth Air National Guard Assistant to the Air Force Judge Advocate General. In addition to his military experience, Major General Turley has held senior-level attorney positions at the Department of Justice, the White House, the Department of the Air Force, and the Department of Defense. He is a retired member of the Senior Executive Service.

Brigadier General Linell Letendre is an Air Force veteran who served 29 years

---

[1] No counsel for a party authored this brief in whole or in part.  No person other than amici curiae or their counsel made a monetary contribution intended to fund the preparation or submission of this brief.  Pursuant to Federal Rule of Appellate Procedure 29(a), all parties consented to the filing of this brief.

on active duty. During her service, she served as a Staff JAG, the Deputy Chief Trial and Appellate Counsel, and the Legal Advisor for the Department of Defense Comprehensive Review Working Group. From 2019 to 2025, she served as the Provost and Dean of the Faculty at the United States Air Force Academy where, she drove the Academy's response to sexual assault, developing the "Let's Be Clear" campaign and reviewing curriculum to reduce sexual assault.

Colonel Don Christensen is an Air Force veteran who served on active duty for over 23 years as a Judge Advocate General. He held multiple litigation positions both as a prosecutor and a defense counsel. He also served as a military judge and concluded his service as the chief prosecutor for the Air Force from 2010 to 2014. In this role, he oversaw the prosecution of over 300 allegations of sexual assault and rape. After retiring, he was the president of a non-profit that advocated for victims of military sexual assault.

Together, *amici* share a common interest that arises from their service in the military, and their dedication to the integrity of the Armed Forces and the national security of the United States. With decades of cumulative experience as JAGs, *amici* write to stress the institutional importance of ensuring prompt and diligent review of veteran claims connected to Military Sexual Trauma (MST)—not only for the benefit of veterans impacted by MST—but to protect U.S. national security interests by ensuring the U.S. military can attract and retain talented personnel to secure and

3915721

defend the U.S.. *Amici*, therefore, submit this brief in support of their interest in the institutional integrity of the U.S. military and the national security of our nation.

## II.    INTRODUCTION

Since 1973, the United States military has been an all-volunteer force. To ensure our military forces are equipped to handle their critical mission, the military must recruit, retain, and protect the people who volunteer to put their lives on the line to defend our country. Through their decades of experience with the military justice system, *amici* understand that our military's capacity to carry out its essential role faces threats not only from external forces, but from within.

Over the past decade, the military has made significant strides to address the indefensible prevalence of sexual assault and harassment within its ranks. This is not only a critical human project but an issue of the utmost importance to our national security. Military sexual assault—and the failure to respond to its occurrence with speed and determination—undermines the military's core tenets of respect and trust and its ability to recruit and retain talented and experienced service personnel. Likewise, the Department of Veterans Affairs' (VA) failure to provide timely resources and benefits for veterans who experience MST further weakens this critical enterprise. It does so by accelerating exits from service; by alienating the military's strongest recruiting base—its own retired workforce; and by wreaking reputational harm on its institutions. While Karissa Wiggins is but one of many

3915721

affected, this Court's vindication of her right to a prompt hearing will have lasting, positive ramifications for the military's institutional capacity and our country's future security.

## III. ARGUMENT

### A. Military Recruiting and Retention are Critical to National Security

The U.S. military is only as strong as its members. The military is comprised of approximately 1.3 million active-duty personnel—each of whom serves an important role in executing the U.S. Department of Defense's (DOD) mission.[2] The DOD's primary responsibility is to ensure the United States has sufficient and capable military forces to deter and defend against threats to U.S. security. To achieve its mission, the DOD must rely solely on the voluntary enlistment of its citizens—a difficult task given the intense demands associated with military service. Given the importance of our military to our safety and security, "[e]nsuring the United States has a sufficient number of qualified active-duty military personnel is a matter of national security."[3]

As a matter of national security, the DOD and Military Services prioritize robust recruitment practices to encourage a diverse array of qualified and skilled

---

[2] *See* U.S. Gov't Accountability Off., *DOD Active-Duty Recruitment and Retention Challenges*, GAO-23-106551 at 1 (Mar. 28, 2023) ("R&R Report"), available at https://www.gao.gov/products/gao-23-106551.

[3] *Id.*

candidates to join the military. Once recruited, the military has a strong vested interest in retaining its skilled workforce to preserve unit cohesion, institutional knowledge, and subject matter expertise—all essential to military readiness. Recruiting and retaining "qualified enlisted personnel and officers is critical to maintaining unit readiness and morale, ensuring sufficient levels of experienced leaders, and avoiding unnecessary costs" associated with duplicative recruiting and training efforts that follow high levels of attrition.[4]

Strong recruitment and retention programs require a multi-faceted approach to compete with private sectors employers—including robust outreach, targeted messaging, enlistment incentives, strong organizational culture, competitive benefits, and professional development opportunities for career growth. The VA plays an important role in the recruitment project when it administers critical benefits to veterans in a timely manner. When the VA accurately and efficiently distributes these benefits, it affirms that our government honors and values the service and sacrifices of its members—a sentiment that attracts future candidates to military service.

No effort to bolster the military's recruitment efforts is too small or insignificant, since the military faces several challenges in recruiting its all-volunteer

---

[4] *Id.*

force. To start, only one in four Americans between the ages of 17 and 24 meet the educational, medical, fitness, and moral standards for military service.[5] This small pool of qualified individuals is also the same group for which the private sector competes. With less financial capital at its disposal, the military must emphasize other incentives of military service to recruit these candidates—including strong organizational culture and comprehensive benefit packages.

Moreover, the military is quickly becoming a dwindling "family business." Nearly 80% of all service members hail from a family where at least one parent, grandparent, aunt or uncle, sibling or cousin served in the military.[6] While the military has historically benefited from these familial ties, those numbers have diminished substantially over time. "In 1995, 40% of young people had a parent who served in the military."[7] In 2022, that number shrank to just 12%.[8]

Retention of military personnel is also a difficult endeavor. The skills and experience service members acquire are valuable assets to the private sector and any attrition to other employers leads to a loss of critical, highly trained military

---

[5] *See id.*

[6] *See* Mark Thompson, *Here's Why the U.S. Military is a Family Business,* TIME (Mar. 10, 2016), https://time.com/4254696/military-family-business/.

[7] David Vergun, *DOD Addresses Recruiting Shortfall Challenges,* DOD NEWS (Dec. 13, 2023), https://www.war.gov/News/News-Stories/Article/Article/3616786/dod-addresses-recruiting-shortfall-challenges/.

[8] *See id.*

personnel. Moreover, organizational culture and quality of life issues unique to the military make it difficult for the military to retain its workforce. These include a culture of strict hierarchy and intense cohesion, difficult work schedules, and frequent deployments and relocations. Within this frequently demanding environment, a high incidence of sexual harassment and assault also threatens the safety and wellbeing of service members. To improve retention, political and military leadership continue to focus on confronting these issues and improving the quality of its service members' experience. One area of intense focus has been the military's efforts to address sexual assault and harassment for active-duty personnel and veterans. Particular focus has been paid to improving and accelerating the VA's administration of disability benefits to veterans who experienced MST while in the service.

## B. Military Sexual Assault and Harassment Harms Recruitment and Retention Efforts

While the military has diligently focused on eradicating military sexual assault and harassment, the problem persists. Indeed, independent sources estimate that, in 2023 alone, there were 73,695 incidences of sexual assault in the military.[9] Military sexual assault does not discriminate. In terms of raw numbers, more men

---

[9] *See* Jennifer Greenburg, *Deserted: The U.S. Military's Sexual Assault Crisis as a Cost of War*, Watson Institute International & Public Affairs (Aug. 14, 2024) at 2, available at https://costsofwar.watson.brown.edu/paper/deserted-us-militarys-sexual-assault-crisis-cost-war.

experience MST, while racial, gender, and sexual minorities experience MST at higher rates.[10] To illustrate, in 2024, an estimated 24% of active-duty women experienced sexual assault, compared to about 1.9% of active-duty men.[11] National data from the VA's screening program confirms this trend, revealing that about 1 in 3 women and 1 in 50 men respond "yes," when asked if they experienced MST.[12]

Military and political leadership is well aware of "the scourge of sexual assault and sexual harassment in our military" and has taken dramatic steps to remedy it.[13] For example, an Independent Review Commission (IRC) established by the DOD in 2021 recommended a series of reforms to the military justice system in an effort to combat sexual assault and harassment.[14] These changes significantly disrupted how military justice was administered, including a transfer of prosecutorial discretion from commanders to independent military prosecutors.[15] Recognizing the severity

---

[10] *See* Ashton M. Lofgreen, An Overview of Sexual Trauma in the U.S. Military, 15 PSYCHIATRY ONLINE 411, 412 (2017), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC6519533/.

[11] *See Greenburg*, *supra* note 9, at 36.

[12] *See* Anita S. Hargrave et al., *Veterans Health Administration Screening for Military Sexual Trauma May Not Capture over Half of Cases Among Midlife Women Veterans*, 32 WOMEN HEALTH ISSUES 509, 509 (2023), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC9949350/.

[13] Secretary Lloyd Austin, *Department of Defense Actions and Implementation Guidance to Address Sexual Assault and Sexual Harassment in the Military,* (July 2, 2021).

[14] *See id.*

[15] *See id.*

3915721

of the problem, Congress ultimately incorporated these reforms into the Fiscal Year

2022 National Defense Authorization Act (NDAA).[16]

Congress's commitment to addressing MST goes far beyond the NDAA:

Congress has passed roughly 250 statutory requirements directing the DOD and

Coast Guard to address the prevalence of sexual assault in our military.[17] These

statutory requirements dovetail with "10 DoD Inspector General engagements, 60

Government Accountability Office recommendations, over 200 government panel

and task force recommendations, over 150 Congressional provisions, and more than

50 Secretary of Defense initiatives."[18] In 2023, the DOD reported the first decline in

the prevalence of sexual assault in the active-duty force in nearly a decade.[19]

Despite a decline in recent years, MST continues to pose an obstacle to

recruitment and retention. DOD surveys reveal that concerns around physical safety

and mental wellbeing consistently rank among the top ten barriers to service for new

---

[16] *See* National Defense Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, 135 Stat. 1541 (2021).

[17] *See* U.S. Gov't Accountability Off., *Sexual Assault: DOD and Coast Guard Should Ensure Laws are Implemented to Improve Oversight of Key Prevention and Response Efforts, Report to Congressional Committees* (2022), available at https://www.gao.gov/assets/gao-22-103973.pdf.

[18] *Greenburg*, *supra* note 9, at 2.

[19] *See* Joseph Clark, *DOD Report: Prevalence of Sexual Assault Declined Across Services in 2023,* DoD News (May 17, 2024), https://www.war.gov/News/News-Stories/Article/Article/3779672/dod-report-prevalence-of-sexual-assault-declined-across-services-in-2023/.

3915721

recruits.[20] Likewise, military personnel explicitly identify "sexual harassment and sexual assault" as impediments to retention.[21]

As a matter of common sense, MST impacts retention because survivors are more likely to leave the service.[22] 43% of women who reported their sexual assault to the military took steps to leave the military.[23] A RAND Military Workplace Study likewise found that of service members who experienced sexual harassment or gender discrimination in the past year, 42% said the events made them "want to leave the military."[24] Among women with these experiences, roughly a quarter indicated they were "very unlikely" to stay on active duty, compared to 11% who had not had those experiences.[25]

---

[20] *See* OFFICE OF PEOPLE ANALYTICS, PUBLIC RELEASE SPRING 2024 PROPENSITY UPDATE: YOUTH POLL STUDY FINDINGS (2024), available at https://jamrs.defense.gov/Portals/20/Documents/YP60Fall2024PUBLICRELEASE PropensityUpdate_20250623_Briefing.pdf.

[21] R&R Report, *supra* note 2.

[22] *See* OFFICE OF PEOPLE ANALYTICS, 2018 WORKPLACE AND GENDER RELATIONS SURVEY OF ACTIVE DUTY MEMBERS OVERVIEW REPORT, 35 (2018).

[23] *See id.*

[24] Kayla Willims, *Increasing Diversity in the Military –Recruiting and Retaining Talented Women,* Written Testimony Before the Subcomm. On Military Personnel of the H. Comm. on Armed Servs., 116th Cong. (Dec. 10, 2019), https://www.cnas.org/publications/congressional-testimony/increasing-diversity-in-the-military-recruiting-and-retaining-talented-women.

[25] *Id.*

3915721

MST also indirectly impacts retention because personnel who choose to stay in the service after experiencing MST are more likely to report negative health and occupational consequences and difficulties performing job functions.[26] Specifically, MST survivors often face social functional impairments, difficulties in occupational performance and educational achievements, impaired productivity, and greater symptoms of depression and post-traumatic stress disorder (PTSD).[27] Moreover, MST is a "unique predictor" for alcohol and substance-related problems and suicidal behavior.[28] These physical, mental, and behavioral consequences of MST lead to higher incidents of discharge for survivors.[29]

---

[26] *See* Joyce A. Akwe & Daniel P. Hunt, *Enhancing Awareness and Care: Addressing Military Sexual Trauma Among Women Veterans*, 118 S. MED. J. 517, 517-521 (2025); *see also* Rabelo et. al., *From Distrust to Distress: Associations Among Military Sexual Assault, Organizational Trust, and Occupational Health*, 9 PSYCH. OF VIOLENCE 78, 80 (2018).

[27] *See* Akwe & Hunt, *supra* note 26, at 517; Rabelo et al., *supra* note 26, at 78.

[28] Goldberg SB et al., *A Positive Screen for Military Sexual Trauma is Associated with Greater Risk for Substance Use Disorders in Women Veterans*, 33 PSYCH. OF ADDICTIVE BEHAVIORS, 477, 477-483 (2019), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC6682420/; Whitney S. Livingston & Rebecca K. Blais, *Military Sexual Trauma and Lower Relationship Satisfaction are Associated with Suicide Risk Among Male Services Members and Veterans*, 10 FRONTIERS IN PSYCHIATRY 1, 3 (2024), available at https://pmc.ncbi.nlm.nih.gov/articles/PMC11176543/pdf/fpsyt-15-1355355.pdf.

[29] *See* VETERANS LEGAL CLINIC, TURNED AWAY: HOW VA UNLAWFULLY DENIES HEALTH CARE TO VETERANS WITH BAD PAPER DISCHARGES, 1 (2020).

3915721

For those who report their experience, the rate of discharge is even higher. A third of service members who reported their sexual assault were discharged within a year of reporting.[30] Reporting survivors are frequently pushed out of service, with 47% of male survivors and 67% of female survivors recounting retaliation after reporting a sexual assault.[31] And, by reporting, these service members are often discharged under less than honorable conditions—restricting their access to future VA benefits connected to their MST.[32] In one DOD study evaluating reports of sexual assault between 2009 and 2015, nearly 30% of those discharged after reporting did not receive an honorable discharge.[33] By pushing out service members who experience MST, the military reduces its own workforce.

MST additionally harms recruitment and retention because survivors who stay in service generally display lower levels of "trust" and "organizational commitment"

---

[30] *See* U.S. DEPARTMENT OF DEFENSE INSPECTOR GENERAL, EVALUATION OF THE SEPARATION OF SERVICE MEMBERS WHO MADE A REPORT OF SEXUAL ASSAULT 35-37 (2016), available at https://media.defense.gov/2016/May/09/2001714241/-1/-1/1/DODIG-2016088.pdf; *see also* FACTS ON UNITED STATES MILITARY SEXUAL VIOLENCE, PROTECT OUR DEFENDERS (2023), available at https://www.protectourdefenders.com/wp-content/uploads/2023/07/MSA-Fact-Sheet-2023-Final-Update-1.pdf.

[31] *See* Adam J. Prichard, *Military Sexual Assault, Post-Service Employment, and Transition Preparation among U.S. Military Veterans*, 19 INT'L J. EVIDENCE-BASED RESEARCH, POLICY, AND PRACTICE 692, 699 (2023).

[32] *See* TURNED AWAY, *supra* note 29, at 1.

[33] *See id.* at 36.

3915721

to the military—sentiments the military recognizes, and empirical data confirms, are "crucial to occupational functioning."[34] A 2018 survey of active duty service personnel confirms this point, finding that service members' trust in the military's ability to "handle" military sexual assault and "ensure safety, privacy, and respect" following an assault increased the "desire to stay on active duty."[35] On the other hand, this same study found that when employees' trust had been violated, they reported higher turnover intentions.[36] As a institutional fixture of military retirement, the VA is likewise subject to this dynamic. When the VA competently and efficiently processes MST claims, it maintains or rebuilds trust amongst veterans. On the other hand, when it fails to "handle" or "respect" MST claims, institutional trust diminishes even further.[37]

When institutional trust is eroded among individual service members, it is contagious and further undermines recruitment and retention efforts. Research finds that service members with no experience of sexual assault nevertheless report declines in mental and occupational health, institutional trust, and a sense of safety because of exposure to personnel experiencing MST.[38] Likewise, service members

---

[34] Rabelo et al., *supra* note 26*,* at 78, 80.

[35] *Id.* at 84, 85.

[36] *See id.* at 80.

[37] *Id.* at 84, 85.

[38] *See id.* at 86; *see also* K.J. Holland et al., *Collateral Damage: Military Sexual*

with no personal history of being sexually harassed report reduced feelings of wellbeing as members of an institution perceived to be tolerant of sexual harassment.[39] These service members are more likely to leave service, and less likely to recommend service to others.

Even more pernicious than eroding institutional trust, MST shatters trust between service members. Interpersonal trust is paramount in the Armed Forces because military personnel are expected to entrust their fellow service members with their lives.[40] Unit cohesion and the ability to work together are essential conditions for the success of military operations. When individuals are subjected to sexual violence or harassment, they experience a deep sense of betrayal from their fellow service members.[41] That loss of trust eats away at expectations of mutual protection, and compromises unit solidarity, readiness, and efficiency.[42]

---

*Trauma and Help-Seeking Barriers*, 6 Psych. of Violence 253, 255 (2016), available at https://www.researchgate.net/publication/282447734_Collateral_Damage_Military_Sexual_Trauma_and_Help-Seeking_Barriers.

[39] *See* Rabelo et al., *supra* note 26, at 80.

[40] *See id.* at 86.

[41] *See* Tara E. Galovski et al., *State of the Knowledge of VA Military Sexual Trauma Research*, J Gen Intern Med 825, 826 (2022), available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.ptsd.va.gov/professional/articles/article-pdf/id1598938.pdf.

[42] *See id.*

3915721

As these stories of MST, betrayal, and institutional failure pass from individual service members into recruiting circles and military families—these "key influencers" are less likely to recommend service to their children and other loved ones.[43] This trend is particularly damaging to recruitment efforts because veteran parents are already less likely to recommend service to their children than in prior decades.[44] Several focus groups conducted by RAND in 2017 revealed that "[i]n about half of the female new recruit focus groups, recruits mentioned that at least one influencer was concerned about sexual assault or harassment."[45]

As these fears are amplified by media outlets, they exact an even greater toll on our recruitment capabilities. Disturbing high profile cases and alarming statistical data relating to MST are not uncommon.[46] One scholar describes a consistent

---

[43] Thompson, *supra* note 6; Ahmed Al-Nahhas, *Why I Wouldn't Want my Daughter to Join the Military*, WAVELLROOM (Dec. 22, 2023), https://wavellroom.com/2023/12/22/servicewomen-why-i-wouldnt-want-my-daughter-to-join-the-military/.

[44] *See* Ben Kesling, *The Military Crisis: Even Veterans Don't Want Their Families to Join*, WALL STREET J. (June 30, 2023), https://www.wsj.com/politics/military-recruiting-crisis-veterans-dont-want-their-children-to-join; *see also* Dave Spiva, *Fewer Veterans are Recommending Military Service*, VFW (Nov. 30, 2022), https://www.vfw.org/media-and-events/latest-releases/archives/2022/11/fewer-veterans-are-recommending-military-service.

[45] DOUGLAS YEUNG ET AL., RAND CORPORATION, RECRUITING POLICIES AND PRACTICES FOR WOMEN IN THE MILITARY: VIEWS FROM THE FIELD, 26 (2017).

[46] *See, e.g.,* Blake Stilwell, *The Tailhook Scandal: How a 'Top Gun Mentality' Led to a Disastrous Navy Conference,* MILITARY.COM (Aug. 11, 2022), https://www.military.com/history/tailhook-scandal-how-top-gun-mentality-led-disastrous-navy-conference.html ("For decades, the Tailhook Association was the

narrative in U.S. news reporting on the military as a "'band of brothers' culture that treats military rape as a byproduct of producing 'strong warriors.'"[47]  As a result, members of the civilian, academic, and service populations conclude that the military tolerates MST. This culture of perceived tolerance, within which one service woman joked "rape is part of the job description," unsurprisingly discourages new recruits from enlisting.[48]

This (mis)perception of military life is particularly injurious for recruiting women—who are at once, the most likely to experience MST, and the fastest growing group within active duty and veteran populations.[49] The military

---

top professional association for naval and Marine Corps aviators . . . [at the 1991 Conference] Navy and Marine Corps officers [were] accused of sexually assaulting 83 women and seven men . . .); Dan Boyce, *20 Years after a National Scandal, the U.S. Air Force Academy is Still Dealing with Rising Sexual Assault Rates*, CPR NEWS (Mar. 24, 2023), https://www.cpr.org/2023/03/24/us-air-force-academy-sexual-assault-response/; Bill Chappell, *Vanessa Guillén's Murder Led the U.S. To Deem Military Sexual Harassment a Crime*, NPR (Jan. 27, 2022), https://www.npr.org/2022/01/27/1076143481/vanessa-guillen-murder-military-sexual-harassment-crime.

[47] *Greenburg*, *supra* note 9, at 6 (citing MEGAN MACKENZIE, GOOD SOLDIERS DON'T RAPE: THE STORIES WE TELL ABOUT MILITARY SEXUAL VIOLENCE (2024)).

[48] Quil Lawrence & Marisa Peñaloza, *Off the Battlefield, Military Women Face Risks from Male Troops*, NPR (Mar. 20, 2013), https://www.npr.org/2013/03/20/174756788/off-the-battlefield-military-women-face-risks-from-male-troops.

[49] *See* Amanda Barroso, *The Changing Profile of the U.S. Military: Smaller in Size, More Diverse, More Women in Leadership*, PEW RESEARCH CENTER (Sept. 10, 2019), https://www.pewresearch.org/short-reads/2019/09/10/the-changing-profile-of-the-u-s-military/.

increasingly relies on female recruits to fill out its ranks, and the success of these recruitment efforts are threatened as MST "drives a high number of women . . . away from a planned career in the military."[50] A series of RAND focus groups revealed that new recruits brought up sexual harassment and sexual assault spontaneously when discussing barriers to enlistment.[51] Surveys conducted by the Army confirm this obstacle to recruitment; in 2023, roughly 20% of women questioned about enlisting were wary of joining due to fears of discrimination.[52]

For all the reasons discussed above, the damage caused by MST to our recruitment and retention capabilities is tremendous. To quote the IRC: "[u]ntil leaders embrace that responsibility and prioritize a safe and respectful workplace for all who serve, the enterprise will fail to recruit and retain a diverse and talented force."[53] And without a diverse and talented force, *amici* recognize that our capacity to ensure the safety and stability of the U.S. is severely compromised.

---

[50] Lawrence & Peñaloza, *supra* note 48.

[51] *See* DOUGLAS YEUNG ET AL., *supra* note 45, at 9, 25.

[52] *See* Tom Bowman, *Low Enlistment Numbers has the Army Rethinking Their Tactics to Attract New Recruits*, NPR (Sept. 25, 2023), https://www.npr.org/2023/09/25/1201617590/low-enlistment-numbers-has-the-army-rethinking-their-tactics-to-attract-new-recr.

[53] INDEPENDENT REVIEW COMMISSION, HARD TRUTHS AND THE DUTY TO CHANGE: RECOMMENDATIONS FROM THE INDEPENDENT REVIEW COMMISSION ON SEXUAL ASSAULT IN THE MILITARY, 7 (July 1, 2021), available at https://media.defense.gov/2021/Jul/02/2002755437/-1/-1/0/IRC-FULL-REPORT-FINAL-1923-7-1-21.PDF/IRC-FULL-REPORT-FINAL-1923-7-1-21.PDF.

17

**C.    The Department of Veterans Affairs' (VA) Failure to Provide Timely and Adequate Benefits to Veterans with MST Harms Military Recruitment and Retention**

For decades, the Veterans Benefits Administration ("VBA") has been plagued with issues related to the timeliness and quality of the claims adjudication process.[54] As of November 2025, the VBA has 165,591 appeals pending on the docket.[55] The VA admits that it has been challenging "to ensur[e] the quality of decisions in the existing disability compensation program."[56] To compound its errors, the VA does not address veterans' claims in a timely manner. On average, a veteran who appeals a VBA decision waits an average of three years for a determination.[57]

Veterans with MST claims are uniquely affected by VA maladministration. First, by reporting their sexual assaults, service members are frequently, and often erroneously, discharged under less than honorable conditions, leading to wrongful denials of their claims. In a study of sexual assault reports between 2009 and 2015,

---

[54] See *generally* U.S. GOVERNMENT ACCOUNTABILITY OFFICE, VA DISABILITY BENEFITS: PLANNING GAPS COULD IMPEDE READINESS FOR SUCCESSFUL APPEALS IMPLEMENTATION (Dec. 12, 2018), available at https://www.gao.gov/products/gao-19-272t.

[55] *See* U.S. DEPARTMENT OF VETERANS AFFAIRS, VETERANS BENEFITS ADMINISTRATION REPORTS: AMA METRICS REPORT – NOVEMBER 2025, available at https://www.benefits.va.gov/REPORTS/ama/.

[56] Statement of Elizabeth H. Curda, et. al., VA Disability Benefits: Agency Has Taken Steps, but Challenges Remain with Managing and Modernizing Program, AO-26-108789 (Oct. 29, 2025) ("Curda Statement"), available at https://www.gao.gov/assets/gao-26-108789.pdf.

[57] *See* VA DISABILITY BENEFITS, *supra* note 54.

30% of service members who reported their assaults were discharged within a year.[58] And nearly 30% of those discharged did not receive an honorable discharge.[59] A less than honorable discharge precludes or reduces a veteran's access to disability benefits. For an MST survivor to recharacterize their discharge, that person must jump through additional hoops and face even longer waiting times.[60]

Second, MST claims are uniquely affected by inefficiencies in VA benefits administration because the lack of documentation for their assault and inadequate VA staff training compounds error rates. In 2018, the Office of Inspector General for the Department of Veterans Affairs reported that denied MST claims had an adjudication error rate of 49%.[61] This error rate forces many veterans to appeal their denied MST claims, which requires them to run the gauntlet of the appeals process to correct unnecessary administrative errors.

This cycle of inaccuracy, deprivation, and delay subverts the moral obligation we owe to our service members and harms the success of our military operations. It

---

[58] *See* EVALUATION, *supra* note 30, at 36-37.

[59] *See id.* at 36.

[60] *See* TURNED AWAY, *supra* note 29.

[61] *See* DEPARTMENT OF VETERAN AFFAIRS OFFICE OF INSPECTOR GENERAL, DENIED POSTTRAUMATIC STRESS DISORDER CLAIMS RELATED TO MILITARY SEXUAL TRAUMA, Rep. No. 17-05248-241, page ii (Aug. 21, 2018), available at https://www.vaoig.gov/sites/default/files/reports/2018-08/VAOIG-17-05248-241.pdf.

fails to uphold the implicit promise we make; that in exchange for committing their lives to the military, service members can trust in this country's ability to care for them on the other side. This failure impacts the military's recruitment and retention efforts in two important ways.

First, the VA's failure to provide veterans with the benefits they need in a timely manner directly harms the veterans who need this support. Veterans who experience MST have higher rates of mental health conditions including post-traumatic stress disorder, substance abuse, and suicide than other veterans.[62] This denial or delay in health care access makes it more likely that veterans with MST— without appropriate care—will suffer severe mental and physical health issues, struggle to maintain employment, and become houseless.

By placing these veterans in this precarious position, the VA contributes to and exacerbates the public's negative misperceptions about veterans' health. While the public generally holds veterans in high regard, communities also harbor some negative stereotypes about veterans' mental and emotional well-being. More than 50% of adults and teens surveyed believe that veterans are likely to leave the military

---

[62] *See* Jennifer Mathews, *Mental Health Counseling can Boost Resilience after Military Sexual Assault*, EDNA BENNETT PIERCE PREVENTION RESEARCH CENTER (May 9, 2025), https://prevention.psu.edu/news/mental-health-counseling-can-boost-resilience-after-military-sexual-trauma/.

3915721

"with some sort of psychological or emotional problem."[63] By not supporting the veterans who seek disability compensation for their mental and emotional distress—or by delaying their access to this compensation—the VA makes it more likely that veterans will suffer additional hardship. This, in turn, perpetuates the stereotype that those who serve in the military will suffer because of their service.

Second, how veterans are treated generally—most visibly through the provision of VA benefits—directly impacts the military's ability to recruit new candidates. For starters, a system that requires veterans to wait years to obtain their benefits wreaks havoc on the military's and VA's reputation, which is borne out in the statistics. More than 60% of Americans feel veterans are poorly supported by the federal government after their service.[64] And that reputational harm directly impacts whether a person is likely to consider the military as a viable career option or whether they will encourage a loved one to enlist.[65] Most significantly, by providing inadequate benefits administration to our veterans, the military depletes institutional trust among those most likely to recommend military service to others: veterans

---

[63] *Less than Half of Americans would Recommend Military Service for Teens*, IPSOS (Jan. 30, 2025), https://www.ipsos.com/en-us/less-half-americans-would-recommend-military-service-teens.

[64] *See id.*

[65] *See* MEREDITH KLEYKAMP ET AL, WHAT AMERICANS THINK ABOUT VETERANS AND MILITARY SERVICE: FINDINGS FROM A NATIONALLY REPRESENTATIVE SURVEY, RAND (2023), available at https://www.rand.org/pubs/research_reports/RRA1363-7.html.

3915721

themselves. As noted above, the military recruitment efforts rely heavily on familial ties. By not providing veterans with the benefits they have rightly earned, the VA risks severing the military's ties with their best recruiters.

Acknowledging its shortcomings, the VA has undertaken several initiatives to improve the accuracy and timeliness of MST claims, including centralizing claims to enhance benefits delivery, specialized training for VA staff who process claims, and expanding evidentiary markers for MST.[66] These changes directly followed the military's implementation of IRC recommendations relating to military sexual assault, and functioned to strengthen the provision and delivery of benefits to veterans who experienced MST. The sheer volume of initiatives undertaken to reform the claims process in this area over the past decade underscores the significance of MST on veteran health, as well as the substantial aid intended for veteran-victims.

It is also reasonable to assume that Congress—aware of its prior efforts to address military sexual assault and the deficiencies in the administration of MST claims by the VBA—enacted 38 U.S.C. § 7112(b) as part of this wider project of caring for MST survivors. Section 7112(b) should therefore be understood in the context of Congress's overarching objective to eliminate sexual assault in the

---

[66] *See* Curda Statement, *supra* note 56.

3915721

military by promptly providing support to service members and veterans affected by MST and by mitigating its adverse impact on military recruiting and retention. Because disability claims related to MST are more likely to be processed erroneously or belatedly by the VA, expedited review serves to ensure that the VA prioritizes an issue the military has deemed critically important. Moreover, it is intuitive that Congress would accord preferential treatment to MST claims, given that sexual assault is not an inherent risk of military service. Expedited review not only supports veterans harmed during their service but also helps restore confidence in the military enterprise, thereby strengthening recruitment and retention capabilities vital to national security.

In its efforts to eradicate military sexual assault, the IRC stressed the importance of enacting these measures to recruit and retain a talented and diverse military.[67] The efficient and timely provision of benefits is no different. If, after the conclusion of military service, the VA's MST claims process continues to retraumatize veterans, the military will suffer in its ability to maintain sufficient and talented troops in the interests of national security. Congress recognized this—and provided expedited review to veterans with MST claims to mitigate their harm.

---

[67] *See* HARD TRUTHS, *supra* note 53.

## IV. CONCLUSION

Accordingly, *amici* respectfully urge this Court to vacate the decision of the

U.S. Court of Appeals for Veterans Claims, and remand with instructions to grant

Ms. Wiggins' petition for a writ of mandamus.

Respectfully submitted,

Keker, Van Nest & Peters LLP

DATED:  December 22, 2025

/s/ Brook Dooley
John W. Keker
Brook Dooley
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415-391 5400
*Attorneys for Amici Curiae*

3915721

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) and Federal Circuit Rule 29(b) and 32(b)(1). It contains 5,174 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type styles requirements of Federal Rule of Appellate Procedure 32(a)(6). It was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.

DATED: December 22, 2025

*/s/ Brook Dooley*
John W. Keker
Brook Dooley
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415-391 5400
*Attorneys for Amici Curiae*

3915721

## CERTIFICATE OF SERVICE

I, SAMANTHA ROMERO-BOTHI, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on December 22, 2025.

## BRIEF OF FORMER MILITARY OFFICERS AS AMICI CURIAE IN SUPPORT OF APPELLANT KARISSA WIGGINS AND REVERSAL

I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

Executed December 22, 2025, at San Francisco, California.


*/s/ Samantha Romero-Bothi*
SAMANTHA ROMERO-BOTHI

3915721