No. 2026-1053

---

# United States Court of Appeals
# for the Federal Circuit

---

**KARISSA WIGGINS,**
*Claimant-Appellant*

*v.*

**DOUGLAS A. COLLINS, Secretary of Veterans Affairs,**
*Respondent-Appellee*

---

On Appeal from the United States Court of Appeals for Veterans Claims
No. 24-4591

---

**AMICUS BRIEF OF LEGAL AND LEGISLATIVE
SCHOLARS IN SUPPORT OF APPELLANT AND
REVERSAL**

---

Alyson Sandler
COVINGTON & BURLING LLP
One International Place
Suite 1020
Boston, MA 02110
(617) 603-8800

Stacey K. Grigsby
Alexandra Khristine Langton
Larissa Davis
Samuel Aaron Klein
COVINGTON & BURLING LLP
850 Tenth Street, N.W.
Washington, D.C. 20001
(202) 662-6000

*Counsel for Amici Curiae*

December 22, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1053

**Short Case Caption** Wiggins v. Collins

**Filing Party/Entity** Amici Curiae - William Eskridge, Jr.; Anita Krishnakumar; Alexander Zhang; Anya Bernstein

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/22/2025

Signature: /s/ Stacey K. Grigsby

Name: Stacey K. Grigsby

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| William Eskridge, Jr. | | |
| Anita Krishnakumar | | |
| Alexander Zhang | | |
| Anya Bernstein | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐　Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable  ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)  ☐ No  ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable  ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF INTEREST .................................................................1

INTRODUCTION ...................................................................................2

BACKGROUND ......................................................................................3

SUMMARY OF THE ARGUMENT .....................................................11

ARGUMENT .........................................................................................13

I.   Congress Amended Section 7112 to Expedite the
     Adjudication of MST Claims. .......................................................13

     A.   The Text and Statutory History of Section 7112 Shows
          that MST Claims Must Receive Expedited
          Adjudication. ..........................................................................14

     B.   The Circumstances Surrounding the Enactment of the
          Dignity for MST Survivors' Act Also Indicate that MST
          Claims Should Receive Expedited Adjudication...................28

II.  Mandamus Relief Is Warranted Where the VA Has Failed to
     Expedite Adjudications Involving MST Claims.............................30

     A.   Claimants Whose MST Claims Remain Pending for
          Years Without Adjudication by the VA Do Not Have
          Alternative Means of Obtaining Relief. ................................31

     B.   MST Survivors Have a Clear and Indisputable Right to
          Mandamus Relief When the VA Fails to Address Their
          Claims in a Timely Manner. ..................................................33

     C.   Mandamus Relief Is Appropriate for Claimants
          Seeking to Expedite Adjudication of Claims Involving
          MST..........................................................................................35

CONCLUSION ...........................................................................36

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advoc. Health Care Network v. Stapleton,*
581 U.S. 468 (2017) ................................................................. 14

*Almendarez-Torres v. United States,*
523 U.S. 224 (1998) ................................................................. 18

*Bufkin v. Collins,*
604 U.S. 369 (2025) ................................................................. 12

*Cheney v. U.S. Dist. Ct. for D.C.,*
542 U.S. 367 (2004) ............................................................ 31, 35

*Cisneros v. Alpine Ridge Grp.,*
508 U.S. 10 (1993) ................................................................... 21

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,*
601 U.S. 42 (2024) ................................................................... 14

*Dubin v. United States,*
599 U.S. 110 (2023) ................................................................. 18

*In re Forest,*
134 F.4th 1198 (Fed. Cir. 2025).......................................... 13, 19

*Harvey v. Shinseki,*
24 Vet. App. 284 (2011).......................................... 25, 26, 27

*Heller v. McDonough,*
38 Vet. App. 75 (2024).............................................. 32, 34

*Husky Int'l Elecs., Inc. v. Ritz,*
578 U.S. 355 (2016) ................................................................. 12

*Maggitt v. West,*
202 F.3d 1370 (Fed. Cir. 2000) .............................................. 21

*Martin v. O'Rourke,*
891 F.3d 1338 (Fed. Cir. 2018) .......................................... 33

*Merck & Co. v. Reynolds,*
559 U.S. 633 (2010) ............................................................ 27

*Merit Mgmt. Grp., LP v. FTI Consulting, Inc.,*
583 U.S. 366 (2018) ............................................................ 19

*In re Paralyzed Veterans of Am.,*
392 F. App'x 858 (Fed. Cir. 2010) ....................................... 32

*Pierce Cnty., Wash. v. Guillen,*
537 U.S. 129 (2003) ............................................................ 12

*Sharp v. United States,*
580 F.3d 1234 (Fed. Cir. 2009) ........................................... 24

*Snyder v. United States,*
603 U.S. 1 (2024) ................................................................ 14

*Telecommunications Research & Action Center v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) ......................................... 33, 35

*Trainmen v. Baltimore & Ohio R. Co.,*
331 U.S. 519 (1947) ............................................................ 18

*United States v. Schopp,*
938 F.3d 1053 (9th Cir. 2019) ............................................. 18

*United States v. Welden,*
377 U.S. 95 (1964) .............................................................. 17

*Yates v. United States,*
574 U.S. 528 (2015) (plurality opinion) ......................... 13, 18

**Statutes**

5 U.S.C. § 706(1) ..................................................................... 32

28 U.S.C. § 1651 ...................................................................... 31

38 U.S.C. § 1166(d)(2) ................................................................ 5

38 U.S.C. §§ 5109B ...................................................... 4, 23, 26

38 U.S.C. § 7112 ............................................................... *passim*

Dignity for MST Survivors Act, Pub. L. No. 117-300, 136
    Stat. 4379 (2022) ...................................................... *passim*

Veterans Benefits Act of 2003, Pub. L. No. 108-183 ...................... *passim*

Veterans Appeals Improvement and Modernization Act of
    2017 ("AMA") ............................................................... 4

**Other Authorities**

163 Cong. Rec. H4464 (daily ed. May 23, 2017) (statement of
    Rep. Roe) .................................................................... 5

164 Cong. Rec. H4249 (daily ed. May 21, 2018) ....................... 7

168 Cong. Rec. H5106 (daily ed. May 18, 2022) .................... 11

168 Cong. Rec. H5108 (daily ed. May 18, 2022) ................. 6, 11

Anita S. Krishnakumar, *Statutory History*, 108 Va. L. Rev.
    263, 301 (2022) ......................................................... 12

Carolyn J. Gibson et al., *Military Sexual Trauma in Older
    Women Veterans: Prevalence and Comorbidities* ............... 29

Cong. (Sep. 27, 2021), https://perma.cc/2T9T-8E9B ................ 7

H.R. ___, 117th ............................................................ 7

Discussion Draft, H.R. ___, 117th Cong. (Sept. 27, 2021),
    https://perma.cc/2T9T-8E9B .................................... 19, 22

*Expedite*, Merriam-Webster's Collegiate Dictionary (11th ed.
    2003) ......................................................................... 19

*Expedite*, Oxford English Dictionary, https://perma.cc/KH6X-
    P7C6 (last visited Dec. 9, 2025) ........................ 19, 20, 30

Fed. R. App. P. 29 ................................................................ 1

H.R. 2288, 115th ........................................................... 4, 5

H.R. 6064, 117th ................................................................ 9

H.R. 6961, 117th ................................................................ 9

J. Gen. Intern. Med. 207, 209–10 (2019),
    https://pmc.ncbi.nlm.nih.gov/articles/PMC6957619/ ......... 29

*Military Sexual Trauma Among U.S. Servicewomen During
    Deployment: A Qualitative Study*, 104 Am. J. Pub. Health
    345, 348 (2014),
    https://pmc.ncbi.nlm.nih.gov/articles/PMC3935684/ ......... 5, 6, 7

MST Claims Coordination Act, H.R. 7335, 117th .................... 9

Norman J. Singer, *Sutherland Statutes and Statutory
    Construction* § 47:3 (7th ed. 2010) ...................................... 17

Press Release, *Mrvan Legislation Supporting Survivors of
    Military Sexual Trauma Approved by House of
    Representatives* (May 20, 2022), https://perma.cc/4ND7-
    BU4V ............................................................................... 10

Rachel Kimerling et al., *Military-Related Sexual Trauma
    Among Veterans Health Administration Patients
    Returning from Afghanistan and Iraq* .............................. 29

Supporting Survivors of Military Sexual Trauma Act of
    2020, H.R. 6125, 116th .......................................................... 7

Tara E. Galovski et al., *State of the Knowledge of VA
    Military Sexual Trauma Research* ...................................... 29

Testimony of the Rep. Frank J. Mrvan, Hearing Before H.
    Comm. on Veterans Affs., Subcomm. on Disability
    Assistance and Mem. Affs. (Oct. 20, 2021),
    https://perma.cc/5S8Q-W23V ........................................ 7, 8, 9

U.S. Dep't of Veterans Affairs, *Military Sexual Trauma – A Risk Factor for Suicide* (Nov. 2021), https://perma.cc/NWN7-A7U4?type=image ........................................ 29

U.S. Dep't of Veterans Affairs, *Military Sexual Trauma Fact Sheet* (rev. Mar. 2025), https://perma.cc/6N3N-RAJA ........................ 6

U.S. Dep't of Veterans Affairs, *Military Sexual Trauma in Recent Veterans* (2016), https://perma.cc/XW5B-YWHJ ..................... 6

U.S. Dep't of *Veterans Health Administration and Military Sexual Trauma*, 97 Am. J. Pub. Health 2160, 2163 (2007), https://pmc.ncbi.nlm.nih.gov/articles/PMC2089100/ .......................... 5

# STATEMENT OF INTEREST[1]

*Amici curiae* are academics with expertise in legislation and statutory interpretation. *Amici* have researched and written extensively in these areas and have an academic interest in ensuring that courts understand the tools for statutory interpretation at their disposal. *Amici* include:

- Professor William Eskridge, Jr., Alexander M. Bickel Professor of Public Law, Yale Law School.

- Anita Krishnakumar, Agnes Williams Sesquicentennial Professor of Legislation, Georgetown University Law Center.

- Alexander Zhang, Assistant Professor of Law, University of Texas at Austin, School of Law.

- Anya Bernstein, Jesse Root Professor of Law, University of Connecticut, School of Law.

---

[1] *Amici* declare that: (i) no party's counsel authored this brief in whole or in part; (ii) no party or party's counsel contributed money intended to fund preparing or submitting this brief; and (iii) no person, other than Amici or their counsel have contributed money to prepare or submit this brief. Fed. R. App. P. 29(a)(4)(E). All parties consented to Amici filing this brief. Fed. R. App. P. 29(a)(2).

## INTRODUCTION

This case concerns 38 U.S.C. § 7112, a provision requiring the Secretary of Veterans Affairs to expedite the treatment of certain claims. Originally, Section 7112 was limited to remanded cases. However, in 2022, Congress amended this Section by changing its caption to direct the "Expedited treatment of certain claims," and adding subsection (b), which focuses on claims involving military sexual trauma. *See* 38 U.S.C. § 7112(b). Appellant Karissa Wiggins sought benefits from the Department of Veterans Affairs based on the military sexual trauma and intimate partner violence she suffered while serving in the United States Air Force. After the Court of Veterans Claims issued a court order, the Secretary of Veterans Affairs determined that Ms. Wiggins's case involved military sexual trauma, but it refused to expedite the adjudication of her claim. That refusal violated Section 7112.

Congress meaningfully revised Section 7112 to expand the type of cases that must receive expedited treatment. The amendments to Section 7112 and other changes in federal law reflect Congress's deliberate effort to improve the appeals process for veterans challenging benefits decisions, including survivors of military sexual trauma. The

caption of Section 7112 and statutory history show that expedited treatment of military sexual trauma claims includes expediting their adjudication. This Court should reverse the lower court's holding to the contrary.

## BACKGROUND

In 1994, Congress passed the first in a series of laws to improve and expedite the appellate review process for veterans challenging decisions issued by the Department of Veterans Affairs (the "VA"). That year, Congress directed the Secretary of Veterans Affairs (the "Secretary") to "provide for the expeditious treatment, by the Board of Veterans' Appeals and by the regional offices of the Veterans Benefits Administration, of any claim that has been remanded by the Board of Veterans' Appeals [the "Board"] or by the United States Court of Veterans Appeals [the "CAVC"]. . . ." Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658. This provision remained classified as a statutory note for almost ten years.

In 2003, Congress passed a new law to codify the 1994 provision into two new sections of the U.S. Code. *See* Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707, 117 Stat. 2651, 2672–73. These sections

separately addressed claims remanded from the Board and those remanded from the CAVC. *See id.*; *see also* 38 U.S.C. §§ 5109B, 7112. In codifying this provision, Congress maintained its steadfast commitment to speeding the review process for veterans by mandating that cases remanded from both tribunals receive expedited treatment. *See* Veterans Benefits Act of 2003, *supra*, § 707. Moreover, although this codification arose in an omnibus bill that targeted a wide variety of veterans benefits, Congress limited its instruction setting out expedited treatment to only Sections 5109B and 7112. *See generally*, *id.*

As relevant here, Section 7112 initially concerned only remanded cases. These types of cases are, by nature, administrative challenges that have already navigated the agency's appeals process. Nevertheless, still recognizing the need for improvements earlier in the appeals process, Congress passed the Veterans Appeals Improvement and Modernization Act of 2017 ("AMA") with overwhelming bipartisan support. Pub. L. No. 115-55; H.R. 2288, 115th Cong. (2017) (418–0); S. 1024, 115th Cong. (2017) (unanimous consent). The AMA restructured the VA's appeals process by replacing the Legacy VA Appeals System, which was widely criticized for being "slow" and overly "cumbersome," with faster, more

transparent, and veteran-focused processes. *See* H.R. 2288, 115th Cong. (2017); 163 Cong. Rec. H4464 (daily ed. May 23, 2017) (statement of Rep. Roe) (noting the "slow, cumbersome, [and] frustrating" legacy appeals system and the need for modernization).

In the years that followed, Congress continued to improve the appeals process for veterans and turned its focus to a pressing issue in the armed forces: military sexual trauma ("MST"). MST is defined under 38 U.S.C. § 1166(d)(2) as "with respect to a veteran, a physical assault of a sexual nature, battery of a sexual nature, or sexual harassment during active military, naval, air, or space service." 38 U.S.C. § 1166(d)(2). In 2003, as part of the VA's universal screening program, 22% of screened women, and 1% of screened men reported MST. Rachel Kimerling et al., *The Veterans Health Administration and Military Sexual Trauma*, 97 Am. J. Pub. Health 2160, 2163 (2007), https://pmc.ncbi.nlm.nih.gov/articles/PMC2089100/. This figure translated into 29,418 women and 31,797 men in VA care. *Id.*

A 2011 Department of Defense survey similarly found 21.7% of women and 3.3% of men reported unwanted sexual contact since joining the military. Bridgit Burns et al., *Military Sexual Trauma Among U.S.*

*Servicewomen During Deployment: A Qualitative Study*, 104 Am. J. Pub. Health 345, 348 (2014), https://pmc.ncbi.nlm.nih.gov/articles/PMC3935684/. And, in 2016, a VA "National Health Study for a New Generation of U.S. Veterans" surveyed approximately 60,000 veterans and found MST prevalence among 41.5% of women and 4% of men. U.S. Dep't of Veterans Affairs, *Military Sexual Trauma in Recent Veterans* (2016), https://perma.cc/XW5B-YWHJ (last visited Dec. 21, 2025). Although the exact numbers have changed over time, the VA's recent universal MST screening data revealed that approximately one in three women and one in fifty men screened positive for MST—making MST a widespread health concern demanding a structured response. U.S. Dep't of Veterans Affairs, *Military Sexual Trauma Fact Sheet*, https://perma.cc/6N3N-RAJA (rev. Mar. 2025).

Given the VA's tracking of MST, members of Congress were well aware of this "longstanding" problem and that "[s]exual assault in the military continue[d] to be a pervasive issue." 168 Cong. Rec. H5108 (daily ed. May 18, 2022) (statement of Rep. Mrvan) (mentioning the "unconscionable 1 in 3" statistic for women veterans and "1 in 50" statistic for male veterans); *id.* at H5106 (statement of Rep. Luria); *see*

*also id.* at H5107 (statement of Rep. Luria).[2] Congress responded to this problem by passing legislation.

On September 27, 2021, Representative Frank Mrvan presented to the U.S. House of Representatives Veterans Affairs Committee's Subcommittee on Disability Assistance and Memorial Affairs a discussion draft of what would later become the Dignity for MST Survivors Act. H.R. ___, 117th Cong. (Sep. 27, 2021), https://perma.cc/2T9T-8E9B [hereinafter Discussion Draft]; *see also* Testimony of the Rep. Frank J. Mrvan, Hearing Before H. Comm. on Veterans Affs., Subcomm. on Disability Assistance and Mem. Affs. (Oct. 20, 2021), https://perma.cc/5S8Q-W23V. The Discussion Draft would have added a new section to Title 38, Section 7114, and contained a requirement that the Board of Veterans Appeals "promptly determine whether a notice of disagreement filed with the Board is a covered case."

---

[2] Indeed, members of Congress introduced numerous bills related to MST in the years leading up to the amendment of Section 7112. *See, e.g.*, 164 Cong. Rec. H4249 (daily ed. May 21, 2018) (statement of Rep. Dunn regarding the "tragic fact that there are an increasing number of veterans who report experiencing sexual harassment or sexual assault while serving on Active Duty and in our Armed Forces"); Supporting Survivors of Military Sexual Trauma Act of 2020, H.R. 6125, 116th Cong., § 2 (2020).

Discussion Draft.  It also defined a covered case as a case "that concern[ed] a claim for compensation based on military sexual trauma experienced by a veteran," and for which the veteran had requested a hearing by filing a Notice of Disagreement ("NOD") with the Board.  *Id.*

At the time, the Discussion Draft outlined three consequences that flowed from the Board's determination that an NOD involved a "covered case."  First, veterans could request an adjudicator of a specific gender. *Id.* ("An appellant of a covered case may request that the hearing is conducted by a Board member of a specific gender.").  Second, adjudicators were limited in what questions they could ask at hearings. *Id.* ("Each Board member who conducts a hearing of a covered case shall, to the extent practicable, refrain from asking questions relating to the military sexual trauma of the appellant if the information the Board member seeks is contained in the evidentiary record.").  Third, the Board could not remand a covered case to the originating agency for a medical examination or medical opinion under certain circumstances and, if it did, the Board had to follow certain procedures.  *Id.* (discussing "EXAMINATIONS").

In line with the Discussion Draft's limited focus on the procedures governing instituted hearings, the draft contemplated titling Section 7114 "Conduct of hearings regarding claims involving military sexual trauma." *Id.*

The following year, Representative Mrvan introduced the version of the Dignity for MST Survivors Act that was eventually passed as part of "a series of bills drafted to improve the veteran's experience during the MST claims process." 168 Cong. Rec. H5106 (statement of Rep. Luria).[3] [4] As relevant here, in both the introduced bill and the enacted law, rather than add Section 7114 to Title 38, Congress amended then-existing Section 7112, which had, until that point, governed only the "Expedited treatment" of claims of remanded cases. *See* Veterans Benefits Act of

---

[3] One of these other bills directed a comprehensive review of medical examinations in connection with MST claims; another directed the Veterans Health Administration and the Veterans Benefits Administration to coordinate responses to MST claims. *See* H.R. 6064, 117th Cong. (2022); MST Claims Coordination Act, H.R. 7335, 117th Cong. (2022).

[4] The enacted version of the Dignity for MST Survivors Act contained two sections designed to improve hearings before the Board of Veterans' Appeals for claims involving MST. *See* H.R. 6961, 117th Cong. (2022). The first section expressly amended 38 U.S.C. § 7102 to require members of the Board to have recently received training on MST and MST-related claims prior to hearing an MST-related claim in a proceeding. *See id.* § 1.

2003, Pub. L. No. 108-183, § 707, 117 Stat. 2651, 2671–73. It also omitted the narrow set of consequences outlined in the Discussion Draft in favor of locating the handling of MST cases within Section 7112.

Specifically, Congress amended Section 7112 to incorporate the Discussion Draft's requirement that the Board make a "prompt[] determination" whether an NOD involved a "covered case" as well as the prior definition of "covered case." Dignity for MST Survivors Act, Pub. L. No. 117-300, 136 Stat. 4379 (2022); *see also* 38 U.S.C. § 7112(b), (c). However, Congress also rewrote the statutory caption to address the "Expedited treatment of 'certain' claims," rather than merely "remanded" claims; and added language to show that new subsection (a), Section 7112's pre-existing statutory language, pertained to "[r]emanded [c]laims" and new subsection (b) pertained to "[c]laims [i]nvolving [m]ilitary [s]exual [t]rauma." 38 U.S.C. § 7112(b), (c).

Representative Mrvan's public comments about the bill after it passed the House noted that "many MST survivors face significant difficulty in accessing healthcare and disability benefits from VA," as well as that "more must be done to improve the claims appeal experience." Press Release, *Mrvan Legislation Supporting Survivors of Military*

*Sexual Trauma Approved by House of Representatives* (May 20, 2022), https://perma.cc/4ND7-BU4V.  To this end, as Representative Mrvan had explained on the House floor, the Dignity for MST Survivors Act sought to "support veterans . . . as they navigate[d] the Board of Veterans' Appeals claims appeal process."  168 Cong. Rec. H5108 (daily ed. May 18, 2022) (statement of Rep. Mrvan).

The Dignity for MST Survivors Act and other MST-related legislation "drafted to improve the veteran's experience during the MST claims process" were signed into law on December 27, 2022.  *See* Dignity for MST Survivors Act, Pub. L. No. 117-300, 136 Stat. 4379 (2022); National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-289, 136 Stat. 4366 (2022); MST Claims Coordination Act, Pub. L. No. 117-303, 136 Stat. 4387 (2022); 168 Cong. Rec. H5106 (daily ed. May 18, 2022) (statement of Rep. Luria).

## SUMMARY OF THE ARGUMENT

This case involves two important revisions to 38 U.S.C. § 7112: First, a revision to its caption, which now calls for the expedited treatment of "certain claims"; and second, the addition of subsection (b), which addresses MST claims.  The Supreme Court of the United States

has often stated that "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016) (quoting *United States v. Quality Stores, Inc.*, 572 U.S. 141, 148 (2014)); *Bufkin v. Collins*, 604 U.S. 369, 386 (2025); *Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129, 145 (2003) (citation omitted); *see also* Anita S. Krishnakumar, *Statutory History*, 108 Va. L. Rev. 263, 301 (2022) (describing a "meaningful revision" presumption that "when Congress adds specific language to a new version of a statute or replaces existing language with new terms, that addition or replacement reflects a deliberate decision to bring the added items with the statute's reach").

The text and context underlying the revisions to Section 7112 reflect a deliberate effort by Congress to improve the speed at which the Secretary resolves challenges to veterans' benefits decisions, including MST claims. The CAVC's decision below, holding that Section 7112 does not compel the Secretary to expedite the adjudication of MST claims, is a misreading of this law. Moreover, because Section 7112 requires the expedited adjudication of MST claims and there is no alternative path to relief, Ms. Wiggins is entitled to mandamus relief.

For these reasons, as explained further below, this Court should reverse the decision on appeal.

## ARGUMENT

### I. Congress Amended Section 7112 to Expedite the Adjudication of MST Claims.

The starting point for interpreting a statute is its text, but often the meaning of that text "'may only become evident when placed in context.'" *In re Forest*, 134 F.4th 1198, 1201 (Fed. Cir. 2025) (citation omitted); *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion) (explaining that "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statue as a whole" (citation and quotation marks omitted) (alterations in original)); *id.* at 552 (Alito, J., concurring in the judgment) ("Titles can be useful devices to resolve doubt about the meaning of a statute.") (citation and quotation marks omitted).

Section 7112(b) of Title 38 provides that the Board of Veterans Appeals "shall promptly determine whether a notice of disagreement filed with the Board is a covered case." 38 U.S.C. § 7112. The majority in the CAVC concluded that this provision simply requires the Board to

determine whether a case is "covered," but that it "does not compel expedited adjudication" of claims involving MST. Appx1. This reading of the statute is inconsistent with the statute's text and statutory history, and it fails to give meaningful effect to Congress's 2022 amendments to Section 7112.

For the reasons explained below, this Court should reject the CAVC's reading of Section 7112.

**A.      The Text and Statutory History of Section 7112 Shows that MST Claims Must Receive Expedited Adjudication.**

When Congress revises a statutory provision, courts should give that change substantive effect. *See, e.g.*, *Snyder v. United States*, 603 U.S. 1, 12 (2024) (holding that 18 U.S.C. § 666 does not criminalize gratuities, in part because the Court "must respect Congress's choice" to "eliminate[] the gratuities language" from the statute); *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 472–83 (2017) (holding that an amendment adding a new clause expanded the meaning of the term "church plan"); *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 57–58 (2024) (concluding that an amendment that replaced the

narrow class of defendants previously subject to suit with the words "any person" significantly expanded the class of defendants subject to suit).

In this case, the revisions to the text of Section 7112 show that Congress amended the section to direct the Secretary of Veterans Affairs to expedite the treatment of challenges to benefits decisions involving MST claims, and that such expedited treatment includes the expedited adjudication of those claims.

### i.

When Congress adopted the Dignity for MST Survivors Act, it amended the caption of Section 7112 and expressly instructed the Board of Veterans Appeals to expedite the adjudication of MST claims. Prior to this legislation, Section 7112 only instructed the Board to give "[e]xpedited treatment [to] remanded claims." *Supra*, Pub. L. No. 108-183, Title VII, § 707(b)(1), 117 Stat. 2651, 2673, *amended by supra*, Pub. L. No. 117-300, § 2(a)(1), 136 Stat. 4379, 4379–4381; *see also supra*, Veterans' Benefits Improvements Act of 1994, § 302, 108 Stat. at 4658. This earlier limitation on the scope of expedited treatment made sense, because, at the time, Section 7112 concerned only "remanded claims." *Id.* But that focus changed when Congress amended the statute.

In 2022, Congress restructured Section 7112 to designate two distinct classes of claims eligible to receive expedited treatment: remanded claims, and claims involving military sexual trauma. Subsection (a) of the amended Section 7112 maintained Congress's prior commitment to expediting remanded claims. 38 U.S.C. § 7112(a). In the subsection (b), however, Congress articulated its new commitment to also expediting MST claims. That subsection explicitly addresses "Claims Involving Military Sexual Trauma." *Id.* § 7112(b).

In support of these changes to Section 7112's subsections, Congress also amended the caption it used to describe both subsections. That caption now broadly calls for the "Expedited treatment of *certain* claims," *i.e.*, the "remanded claims" described in subsection (a) and the MST claims described in subsection (b). 38 U.S.C. § 7112 (emphasis added).

**ii.**

The CAVC majority acknowledged that Congress explicitly changed the caption, but it nonetheless rebuffed the relevance of this action. Appx6. According to the majority, "the [caption of Section 7112] comprises more or less the extent of the textual support" for Ms. Wiggins's position, and this type of textual support generally carries only

"limited weight in statutory construction . . . ." Appx6–7. Although the majority correctly articulated the *general* rule, it misapplied that rule by improperly limiting the weight of the caption in Section 7112.

Congress's revision to Section 7112's caption carries the same weight as the text in its subsections. 2A Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 47:3 (7th ed. 2010) ("In modern bicameralism and presentment, '[a] legislature considers and passes an entire act, including the title. The same conventions which ensure the accuracy of the remainder of the act also ensure the authenticity of the title."). Therefore, the plain text of Section 7112 directs the Secretary to expedite both remanded claims and MST claims. Indeed, there is no question even by the majority in the CAVC that Section 7112 "can only be read as covering all the types of claims identified in section 7112." Appx6.

On top of that necessary conclusion, recognizing that the Section 7112 directive spans both subsections does not override the meaning of the statutory text—particularly as the caption was rewritten in an act of Congress, not merely in the discretion of the Office of the Law Revision Counsel. *Cf. United States v. Welden*, 377 U.S. 95, 98 (1964) ("Certainly

where, as here, the 'change of arrangement' was made by a codifier without the approval of Congress, it should be given no weight."); *see also United States v. Schopp*, 938 F.3d 1053, 1060–61 n.3 (9th Cir. 2019) (citing *Welden* and concluding that "[c]oncerns typically raised when a section heading is relied upon in construing a statute are not here applicable" because the section "as originally enacted, contained the section heading" (citation omitted)).

It does not matter that subsection (a) uses the term "expeditious treatment," whereas subsection (b) does not. Captions are a "[f]amiliar interpretive guide" to "aid [a court's] construction" so long as the caption is not inconsistent with the statutory text itself. *See Yates v. United States*, 574 U.S. at 540 (plurality opinion); *id.* at 552 (Alito, J., concurring); *Dubin v. United States*, 599 U.S. 110, 121 (2023) (citation and quotation marks omitted); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528–29 (1947)); *Bhd. of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 529 (1947).

Congress could have inserted subsection (b) anywhere in the statutory scheme; indeed, a discussion draft contemplated adding it as

part of an entirely new section of Title 38. Discussion Draft, https://perma.cc/2T9T-8E9B. But the legislature chose to add the provision to Section 7112, governing "Expedited treatment," and revise the caption accordingly. This revision should be honored. *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018) ("In this case, the relevant section heading demonstrates the close connection between the transfer that the trustee seeks to avoid and the transfer that is exempted from that avoiding power pursuant to the safe harbor."); *see also In re Forest*, 134 F.4th at 1202 (construing a subsection of Title 35 and concluding that "the title of [sub]section 154(d) . . . supports that provisional rights can be granted to only a patent that issues before its expiration date").

### iii.

Congress's amendment to Section 7112 also mandates that "Expedited treatment" of MST claims entails their expedited adjudication. The primary meaning of the term "expedite" is to "help forward,[or] hasten the progress of" something. *Expedite*, Oxford English Dictionary, https://perma.cc/KH6X-P7C6 (last visited Dec. 9, 2025). That meaning was the same in 2003. *See Expedite*, Merriam-Webster's

Collegiate Dictionary (11th ed. 2003) (second definition: "to accelerate the process or progress of" something).  Thus, by amending Section 7112 to provide for the "Expedited treatment of certain claims," Congress directed the Board to "help forward, [or] hasten the progress of" resolving MST claims.  *Supra*, Oxford English Dictionary.  Based on the section's text and history, fulfilling this mandate requires expedited adjudication of MST claims.

Start with the text.  Congress was not required to specify every action necessary to expedite adjudication under Section 7112.  It did not outline every step of the process to comply with its mandate in subsection (a) that the Secretary "provide for the expeditious treatment . . . of any claim that is remanded by the Court of Appeals for Veterans Claims."  38 U.S.C. § 7112(a).  This subsection includes only the first step that initiates expedited review (*i.e.*, a remand order); yet the CAVC had no problem concluding that subsection (a) mandates expeditious treatment that entails full adjudication.  *See* Appx7.  But the same is true of subsection (b).  Congress did not include every step that a claimant or the Secretary must follow to expedite the review of MST claims.  As with subsection (a), Congress included only the initial step that is needed to

trigger expedited review: the filing of an NOD. *Maggitt v. West*, 202 F.3d 1370, 1375 (Fed. Cir. 2000) ("Appellate review is initiated by filing an NOD[.]").

That these amendments to the text require expedited adjudication of MST claims is also a simple matter of logic. Congress writes legislation based on established principles of statutory construction. *Finley v. United States*, 490 U.S. 545, 556 (1989) ("What is of paramount importance is that Congress be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts."). In this case, Congress both amended the caption of Section 7112 to expand the call for expedited treatment to "certain claims" and included MST "covered case[s]" in that section.

Had Congress not desired MST cases to receive the same type of expedited adjudication as claims in subsection (a), Congress could have expressly limited the scope of its amendment to the caption in the text of subsection (b). For instance, Congress could have stated: "Notwithstanding the title of this Section, the Secretary shall only promptly determine whether a notice of disagreement filed with the Board is a covered case." *Cf. Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10,

18 (1993) (" As we have noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section."). Congress did not choose that route.

Next, the statutory history surrounding the enacted subsections of Section 7112 also shows that covered cases are entitled to expedited adjudication. The initial Discussion Draft of the Dignity for MST Survivors Act created an entirely new section in Title 38 for MST cases. Discussion Draft, https://perma.cc/2T9T-8E9B. This section was also separate from the "Expedited treatment" of remanded cases found in Section 7112. *Id.* However, Congress ultimately enacted a mandate for the prompt determination of whether an NOD involves and "covered case" and provided the definition of a covered case by amending then-existing Section 7112. *See* Dignity for MST Survivors Act, Pub. L. No. 117-300, 136 Stat. at 4380. In the same respect, Congress declined to adopt a caption for MST claims limited to only the "[c]onduct of hearings," and instead amended its existing caption of Section 7112 to cover the "Expedited treatment of *certain* claims." Dignity for MST Survivors Act, Pub. L. No. 117-300, 136 Stat. at 4380 (emphasis added). Taken together,

these choices signal a conscious decision to have the effect of Section 7112(b) and (c) be similar to the effect of Section 7112(a).

Section 7112 is also the only provision in Title 38 that uses the term "covered case."  Congress's decision to place this unique term in Section 7112 is noteworthy because, in the 2003 Veterans Benefits Improvement Act, only Sections 5109B and 7112 required any type of expedited treatment of veterans claims.  The CAVC had no trouble concluding that expedited treatment for remanded claims under these provisions requires expedited adjudication.  Appx7.  But considering that Congress placed "covered case[s]" in a section whose scope Congress broadened to direct expedited treatment of "certain claims," and whose only other operative provision calls for the expedited adjudication of remanded cases, this choice indicates that Congress desired MST claim adjudications themselves—and not merely determinations of whether MST claims constitute covered cases—to receive the same type of treatment.

Reading Section 7112 as requiring the expedition of both subsections also ensures that no words in the section are improperly disregarded.  This Court recognizes that it "must 'give effect, if possible,

to every clause and word of a statute' and should avoid rendering any of the statutory text meaningless or as mere surplusage." *Sharp v. United States*, 580 F.3d 1234, 1238 (Fed. Cir. 2009) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)). If subsection (c) does not trigger expedition, a "covered case" determination is a statutory road to nowhere, wasting Board resources with no prescribed benefit. It would be nonsensical to enact such a law. Instead, how remanded cases are handled in subsection (a)—that is, through expedited adjudication—is the most relevant guidance on the type of expedited review that is needed for claims entitled to "Expedited treatment" under Section 7112.

Moreover, to give Congress's 2022 amendments meaning, subsections (a) and (b) of Section 7112 must be treated *in pari materia*. Congress grouped these provisions under the same caption, "Expedited treatment of certain claims," signaling that both categories—remands and MST cases—are entitled to accelerated handling. Placing subsection (b) in Section 7112—rather than creating a separate section—reflects a desire to fold MST claims into the expedited treatment regime described in the caption. Reading subsection (b) as a mere classification step would

read out the caption and drain the amendment of operative purpose of creating an accelerated process for particularly vulnerable veterans.

To be sure, the 2022 amendments to Section 7112 make little sense unless read to require expedited adjudication of MST claims.  If Congress did *not* intend to provide for expedited adjudication of MST claims, why would it have added subsection (b) to a provision that requires the expedited treatment of veterans' claims?  And why would it have revised Section 7112's title to include additional claims beyond those previously covered?  The only way to make sense of Congress's 2022 amendments to Section 7112 is to construe subsection (b) to require the expedited treatment of MST claims.

## iv.

Finally, it is also worth pointing out that, on top of misreading the text of Section 7112, the CAVC majority made a blunder with respect to its decision in *Harvey v. Shinseki*, 24 Vet. App. 284, 288–91 (2011).  The CAVC majority concluded that this precedent previously determined that a person was entitled to expedited adjudication only remanded cases under subsection (a).  Appx7 ("[Y]ears before Congress amended 7112 to include subsection (b), this Court held that subsection (a) of the statute

required VA to expeditiously process cases remanded to the Board from this Court." "[T]he use of disparate terminology in subsection (b) signals that Congress envisioned procedures for MST claims distinct from those employed for remanded claims."); *see also id.* (comparing the term "expeditious treatment" of remanded claims in subsection (a) with the "prompt[] determination" that a Notice of Disagreement ("NOD") involves a covered case in subsection (b)).

In *Harvey*, however, the CAVC did not construe Section 7112 at all—let alone do so in light of an explicit and intervening act of Congress to amend the statute. *Harvey* principally concerned whether the Secretary of Veterans' Affairs should be held in civil contempt for failing to expeditiously handle a remanded case in accordance with 38 U.S.C. §§ 5109B and 7112. *Harvey*, 24 Vet. App. at 285. At the time, both Section 5109B and Section 7112 expressly covered only "remanded claims." *Supra*, Pub. L. No. 108-183, Title VII, § 707(a)(1), (b)(1), 117 Stat. at 2672. There was no debate about whether other claims also were entitled to expedited treatment, or even any need to determine whether remanded cases were entitled to expedited treatment. *Harvey*, 24 Vet. App. at 285–86. As a result, even if courts may "assume that, when

Congress enacts statutes, it is aware of relevant judicial precedent," *Harvey* was certainly not relevant precedent that Congress would or should have looked to in amending Section 7112. *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010).

That said, the opinion in *Harvey* provides useful insight on the potential consequences of failing to expedite the adjudication of MST claims. The *Harvey* court explained that "[e]xcessive delays" in processing remanded claims "sap public confidence" and "impugn the [CAVC]'s dignity." *Harvey*, 24 Vet. App. at 288. Something similar can be said of the Secretary's failure to expedite the adjudication of the MST claim here. Congress amended Section 7112 by changing its caption and adding a new subsubsection specifically addressing MST claims. These amendments are "valid mandates of an institution that has express authority over [the Secretary] in matters related to veterans benefits." *Id.* By not giving comparable expedited treatment to MST claims, "it invariably appears that [the Secretary] is ignoring" Congress's mandate. *Id.*

**B.    The Circumstances Surrounding the Enactment of the Dignity for MST Survivors' Act Also Indicate that MST Claims Should Receive Expedited Adjudication.**

Congress's passage of the Dignity for MST Survivors Act was not an arbitrary change to an isolated provision in Title 38.  Rather, this Act and others reflected deliberate changes by Congress to make improvements to the appeals process for survivors of MST.

 MST has consistently affected a significant portion of service members, with rates among women rising from about 22% in 2003 to over 40% in recent VA surveys, while rates among men have increased from roughly 1% to 4% over that same time. *See supra*, Background. These high rates of MST not only affect the military's ability to "maintain[] a mission-ready fighting force," but also have severe mental health consequences for individuals even after service. Letter to Members of the U.S. Senate Veterans Comm. on Armed Forces and U.S. House of Rep. Comm. On Armed Services, from Jules W. Hurst III, Performing the Duties of the Undersecretary of Defense for Personnel and Readiness, (last visited Dec. 18, 2025), https://perma.cc/F5UE-7K2L.

Veterans who have experienced MST are significantly more likely to receive mental health diagnoses, including PTSD, depression, and

substance use disorders, as compared to those without MST exposure. Rachel Kimerling et al., *Military-Related Sexual Trauma Among Veterans Health Administration Patients Returning from Afghanistan and Iraq*, 100 Am. J. Pub. Health 1409, 1410–11 (2010). Women who experienced MST are nine times more likely to develop PTSD than those without MST, and MST survivors frequently present with comorbid depression, anxiety, and substance use disorders. Tara E. Galovski et al., *State of the Knowledge of VA Military Sexual Trauma Research*, 37 J. Gen. Intern. Med. S825, S826–27 (2022).

MST is also a strong predictor of suicidal behavior. Veterans who experienced military sexual trauma face over double the odds of suicidal ideation compared to those without MST, underscoring its devastating and long-lasting impact on mental health. Carolyn J. Gibson et al., *Military Sexual Trauma in Older Women Veterans: Prevalence and Comorbidities*, 35 J. Gen. Intern. Med. 207, 209–10 (2019), https://pmc.ncbi.nlm.nih.gov/articles/PMC6957619/. The VA has acknowledged MST as a risk factor for suicide and severe mental health conditions. U.S. Dep't of Veterans Affairs*, Military Sexual Trauma – A*

*Risk Factor for Suicide* (Nov. 2021), https://perma.cc/NWN7-A7U4?type=image (last visited Dec. 18, 2025).

Congress's amendments to Section 7112—(1) adding subsection (b) on MST claims, and (2) changing the caption to call for the "Expedited treatment" of these claims—reflect its desire for the Secretary to act urgently when handling of this vulnerable population. Merely requiring the swift determination that a case involves MST, but for the Secretary to take no further action, does nothing to "help forward, [or] hasten" the ability of MST survivors to "access[] healthcare and disability benefits from VA" when they disagree with a Board determination. Oxford English Dictionary, *supra*; *see also* Press Release, *supra*. In fact, it would place MST survivors at a disadvantage because, as the VA has recognized, these veterans are exceptionally vulnerable to certain mental health challenges.

## II. Mandamus Relief Is Warranted Where the VA Has Failed to Expedite Adjudications Involving MST Claims.

The VA's failure to expedite adjudications involving MST claims warrants mandamus relief and would otherwise leave survivors of MST without a means of redress. In weighing whether to issue mandamus relief, the court must examine: (1) whether the petitioner has "no other

adequate means to attain" the desired relief; (2) whether the petitioner has a "clear and indisputable" right to issuance of the writ; and (3) be "satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations omitted); *see also* 28 U.S.C. § 1651 (All Writs Act). Under the circumstances here, Ms. Wiggins is entitled to mandamus relief.

### A. Claimants Whose MST Claims Remain Pending for Years Without Adjudication by the VA Do Not Have Alternative Means of Obtaining Relief.

In the absence of mandamus, claimants, like Ms. Wiggins, whose MST claim has remained pending for years, would have no alternative means of obtaining relief. While the writ is not to be used "as a substitute for the regular appeals process," *Cheney*, 542 U.S. at 380–81 (internal citation omitted), where a claimant is awaiting an appealable decision by the Board of Veterans' Appeals, no other avenue of relief is available to them.

For instance, in the present matter, Ms. Wiggins filed her initial NOD with the Board of Veterans' Appeals in November of 2021. Appx 1. She filed a motion for advancement on the docket ("AOD") in March 2022, which the Board denied in May 2022. Appx1. Her claim has remained

pending since then, and denial of a motion for AOD is not appealable. *See, e.g.*, *Heller v. McDonough*, 38 Vet. App. 75, 78 (2024) ("[W]e conclude that a Board denial of an AOD motion is not a final Board decision and is thus not appealable to this Court.").

Thus, in the absence of a mandamus directive from the court ordering swift adjudication of Ms. Wiggins's MST claim, she (and similarly situated claimants) is left without redress. As the CAVC recognized in *Heller*, "a petition continues to be the way to aid [a court's] prospective jurisdiction by compelling action unlawfully withheld or unreasonably delayed." *Id.* at 84.[5]

---

[5] The Administrative Procedure Act ("APA") also authorizes the federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). While some courts have found that the availability of relief under § 706(1) of the APA precludes mandamus relief, the Federal Circuit has never explicitly ruled on this, and in fact treats claims regarding undue agency delay brought under § 706(1) of the APA and claims seeking mandamus relief for the same reason interchangeably. *See, e.g.*, *In re Paralyzed Veterans of Am.*, 392 F. App'x 858, 859-60 (Fed. Cir. 2010) (explaining that the court has "authority under the All Writs Act, 28 U.S.C. § 1651" to address an agency's failure to issue a final rule, and citing 5 U.S.C. § 706(1) in support).

**B. MST Survivors Have a Clear and Indisputable Right to Mandamus Relief When the VA Fails to Address Their Claims in a Timely Manner.**

It is well-established that mandamus is "an appropriate procedural vehicle to address claims of unreasonable delay" by agencies. *Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018). The Federal Circuit utilizes the framework laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 76 (D.C. Cir. 1984) to analyze such claims of unreasonable delay. The *TRAC* court:

> pointed to six factors as relevant to this inquiry: (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find "any impropriety lurking behind agency lassitude" in order to hold that agency action is unreasonably delayed.

*Martin*, 891 F.3d at 1344-45 (quoting *TRAC*, 750 F.2d at 80).

All six *TRAC* factors counsel in favor of concluding that survivors of MST whose claims are subject to unreasonable delay are entitled to mandamus relief. First, as explained at length in Part I, *supra*, Congress

has explicitly provided that claims involving MST should be expedited for review, supporting TRAC factors one and two.

Second, claims of MST inherently involve human health and welfare, supporting factors three and five. As discussed above, Congress has recognized the importance of expediting claims involving MST due to the impact on survivors and risks of delay. *See supra* Part I.B. As the CAVC recognized in this case, the VA's own research indicates that "an MST may increase risks of mental and physical health conditions; readjustment problems, including difficulty finding employment; emotional reactions; and trust and interpersonal problems." Appx9 (citation omitted). Furthermore, "the majority of Veterans who reported post-MST suicidality experienced the onset of suicidal ideation (68%) and attempted suicide for the first time (75%) *after* MST. MST is an independent risk factor for suicide mortality among Veterans using VA services, including MST services." Galovski et al, *supra*, at S827.

When evaluating the fourth factor, the CAVC has considered Congress's intent in prioritizing certain claims for review. *See Heller*, 38 Vet. App. at 86 (noting that the appellant had "presented considerable evidence of the kind that Congress indicated may warrant earlier

consideration and determination… [u]nder these circumstances, we are not convinced that expediting a decision in [the appellant's] appeal would have a considerable effect on the Agency or other similarly situated veterans."). As described in Part I, *supra*, Congress's intent to prioritize review of claims involving MST is clear.

Finally, under the sixth *TRAC* factor, "the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 77 (quoting *Public Citizen Rsch. Group v. Comm'r*, 740 F.2d 21, 32 (D.C. Cir. 1984)). Thus, survivors of MST seeking mandamus relief regarding unduly delayed claims do not need to proffer evidence of bad intent on the part of the VA to warrant mandamus relief.

### C. Mandamus Relief Is Appropriate for Claimants Seeking to Expedite Adjudication of Claims Involving MST.

In addition to finding that the claimant has no alternative means of relief and a clear and indisputable right to relief, this Court "must be satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. For all of the reasons explained in Part I, *supra*, claims involving MST, whose adjudication is delayed unduly, including for years

on end, as in Ms. Wiggins's case on appeal in this Court, present the type of extraordinary circumstance that warrant mandamus relief.

## CONCLUSION

For the foregoing reasons, this Court should reverse the decision of the CAVC and grant the requested relief.

Dated: December 22, 2025        Respectfully submitted,

                                              */s/ Stacey K. Grigsby*
                                              Stacey K. Grigsby
                                              Alexandra Khristine Langton
                                              Larissa Davis
                                              Samuel Aaron Klein
                                              COVINGTON & BURLING LLP
                                              One CityCenter, 850 Tenth St. NW
                                              Washington, DC 20001
                                              (202) 662-6000

                                              Alyson Sandler
                                              COVINGTON & BURLING LLP
                                              One International Place
                                              Suite 1020
                                              Boston, MA 02110
                                              (617) 603-8800

                                              *Counsel for Amici Curiae*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  26-1053

**Short Case Caption:**  Wiggins v. Collins

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes _6,979_ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: _12/22/2025_

Signature: _/s/ Stacey K. Grigsby_

Name: _Stacey K. Grigsby_

Save for Filing