**IN THE**
# United States Court of Appeals for the Federal Circuit

––––––––––––

KARISSA WIGGINS,

*Petitioner,*

v.

DOUGLAS A. COLLINS, Secretary of Veterans Affairs,

*Respondent.*

––––––––––––

On Appeal from the United States
Court of Appeals for Veterans Claims
No. 24-4591, Hon. Amanda Meredith,
Hon. Joseph Toth, and Hon. Grant Jaquith

––––––––––––

**CORRECTED BRIEF *AMICUS CURIAE* OF
MILITARY-VETERANS ADVOCACY ORGANIZATIONS
IN SUPPORT OF PETITIONER AND REVERSAL**

––––––––––––

John J. Hamill
*Counsel of Record*
**DLA Piper LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: (312) 368-7036

*Attorney for Amicus Curiae*
Military-Veterans Advocacy Organizations

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | No. 26-1053 |
| **Short Case Caption** | Wiggins v. Collins |
| **Filing Party/Entity** | Military-Veterans Advocacy Organizations |

---

**Instructions:**

1.  Complete each section of the form and select none or N/A if appropriate.

2.  Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3.  In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4.  Please do not duplicate entries within Section 5.

5.  Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: **12/23/2025**

Signature: /s/ John J. Hamill

Name: John J. Hamill

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Minority Veterans of America | | |
| Swords to Plowshares | | |
| Modern Military Association of America | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| John J. Hamill<br>Partner, DLA Piper LLP (US) | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☑ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# Table of Contents

**Page**

STATEMENT OF INTEREST OF AMICUS CURIAE............................1

SUMMARY OF ARGUMENT ..................................................5

I.    ARGUMENT ...........................................................7

    A.    Nearly a Third of Women Veterans Have Experienced MST and Associated Mental Health Conditions............................7

        1.    MST remains persistent..................................7

        2.    Statistics show a steady increase in the reporting of MST cases.........................................9

        3.    Members of Congress have recognized that MST is both serious and pervasive.......................9

    B.    The "Long" and "Frustrating" VA Claims Adjudication Process....................................................11

    C.    The Delay in Processing Claims Involving MST Exacerbates Symptoms and Delays Access to Necessary Medical Care. .18

        1.    Survivors of MST suffer long-lasting health outcomes, and the filing of claims can retraumatize them ............18

        2.    Veterans who suffer MST face substantial obstacles in proving their claims .......................................20

        3.    Veterans who seek VA benefits for MST-related conditions are less likely to succeed than veterans seeking typical PTSD benefits .......................................21

        4.    Delays in processing MST claims worsen and compound symptoms....................................................23

    CONCLUSION ...........................................................27

# Table of Authorities

**Page(s)**

**STATUTES AND RULES**

38 U.S.C § 1166(d)(1) ............................................................. 19

38 U.S.C § 1166(d)(2) ............................................................... 7

Fed. R. App. P. 29(a) ................................................................ 1

Training on Military Sexual Trauma, Pub. L. No. 117-300,
136 Stat. 4379 (2022) ....................................................... 9, 12

**OTHER AUTHORITIES**

Aliya Webermann, et al*., Military sexual trauma-related
posttraumatic stress disorder service-connection:
characteristics of claimants and award denial across
gender, race, and compared to combat trauma*, PLoS One,
Vol. 19, Iss. 1 (Jan. 11, 2024) ............................................ 24

*Charting the U.S. Department of Veterans Affairs' Progress
on Meeting the Mental Health Needs of our Veterans:
Discussion of Funding, Mental Health Strategic Plan, and
the Uniform Mental Health Services Handbook*, Hearing
Before the Subcommittee on the Health of the Committee
on Veterans' Affairs, U.S. House of Rep., Serial No. 111-
17 (Apr. 30, 2009) ......................................................... 23, 24

Galovski, Tara E., et al., *State of the Knowledge of VA
Military Sexual Trauma Research*, J. Gen. Intern. Med.
37 (Suppl. 3) (2022) ................................................... *passim*

*Hearing Before the H. Subcomm. On Disability Assistance
and Mem'l Affairs of the H. Comm. On Veterans' Affairs*,
119 Cong. 28 (2025) ................................................ 15, 16, 17

Hugh B. McClean, *Delay, Deny, Wait Till They Die*, 72 SMU
L. Rev. (2019) .................................................................... 26

*Invisible Wounds: Examining the Disability Compensation Benefits Process for Victims of Military Sexual Trauma: Hearing Before the H. Subcomm. On Disability Assistance and Mem'l Affairs of the H. Comm. On Veterans' Affairs*, 112 Cong. (2013) ...................................................................... *passim*

Jenni B. Teeters, et al.*, Substance use disorders in military veterans: prevalence and treatment challenges*, Substance Abuse and Rehabilitation, at 73 (Aug. 30, 2017) ............................... 24

Lindsey Gailmard, Daniel E. Ho, & Mark S. Krass, *Congressional Intervention in Agency Adjudication: The Case of Veterans' Appeals*, 134 Yale L.J. (2025) .................... 11, 12, 13

Nate Morabito, *VA appeals process leaves veterans waiting years for disability payment decisions*, WCNC (Jan. 31, 2023) .......................................................................... 17, 18

Nikki Levy, *Easing the Burden: Military Sexual Trauma, Retaliation, and Veterans Benefits*, 27 Fed. Cir. B.J. (2017-2018) .......................................................................... 21

Office of People Analytics, U.S. Dep't of Def., *Workplace Experience Survey of Military Members* ................................. 8

PBS News Hour, *Sen. Gillibrand: sexual assault in the military an 'epidemic' that's getting worse* (May 24, 2021) .......... 10, 11

Press Release, Congresswoman Julia Brownley, Brownley, Houlahan Introduce Bipartisan Resolution to Mark Military Sexual Trauma Awareness Day (Sept. 25, 2025) ............... 11

Statement of Renee Burbank, National Veterans Legal Services Program, Before the House Committee on Veterans' Affairs, Subcommittee on Disability Assistance and Memorial Affairs (Apr. 10, 2024) ........................................ 12, 17

U.S. Dep't of Def., *Annual Report on Sexual Assault in the Military: Fiscal Year 2012* (May 3, 2013) ............................................. 9

U.S. Dep't of Def., *Annual Report on Sexual Assault in the Military: Fiscal Year 2024* (Apr. 30, 2025) ...................................... 8, 9

U.S. Dep't of Veterans Affairs, Board of Veterans' Appeals, *Annual Report Fiscal Year (FY) 2024* ....................................... *passim*

U.S. Dep't of Veterans Affairs, Board of Veterans' Appeals, *Decision wait times* .............................................................. 16

U.S. Dep't of Veterans Affairs, Office of Inspector General, *Transition to VA Health Care and Utilization of Benefits for Veterans Who Reported Sexual Assault During Military Service*, 22-01275-99 (Mar. 14, 2024).................................. 23

U.S. Dep't of Veterans Affairs, *How to file a claim related to MST*..................................................................... 26, 27

U.S. Dep't of Veterans Affairs, *Manage a legacy VA appeal* ................. 13

U.S. Dep't of Veterans Affairs, *Military Sexual Trauma Research* (Sept. 9, 2016) ........................................................ 7

U.S. Dep't of Veterans Affairs, *Substance Use and PTSD* ..................... 24

U.S. Dep't of Veterans Affairs, *The VA claim process after you file your claim* ............................................................... 12

U.S. Dep't of Veterans Affairs, *VA decision reviews and appeals* ...................................................................... 12, 13

U.S. Government Accountability Office, *Sexual Assault: Better Resource Management Needed to Improve Prevention and Response in the Army National Guard and Army Reserve*, GAO-17-217 (Feb. 2017) ....................................... 25, 26

U.S. Government Accountability Office, *Veterans Affairs: Better Understanding Needed to Enhance Services to Veterans Readjusting to Civilian Life*, GAO-14-676 (Sept. 2014).................................................................... 25

Veterans' Health Administration, *Military Sexual Trauma Fact Sheet* (March 2025) ....................................................... 7

Warrior Allegiance, *Why Is My VA Claim Taking So Long? Understanding Delays in 2025* (2025) ............................................... 12

*Women Warriors Initiative Report,* Wounded Warrior Project (2021) ..................................................................... 22, 25, 27

# RULE 29(a) CONSENTS

Pursuant to Federal Rule of Appellate Procedure Rule 29(a), *amici* certify that all parties have consented to the timely filing of this brief. No party's counsel authored this brief in whole or in part, and no party or party's counsel, or any other person, other than amicus, its members, or its counsel, contributed money that was intended to fund the preparation or submission of this brief.

## STATEMENT OF INTEREST OF AMICUS CURIAE

*Amici* submit this brief to highlight the enormous number of service members and veterans who experience Military Sexual Trauma ("MST"), the significant physical and psychological harms they suffer as a result, and how the Department of Veterans Affairs' ("VA") inexcusable delays in adjudicating their benefits claims exacerbates those serious conditions. *Amici* have an interest in ensuring that the VA provides MST victims with prompt and accurate review of their claims for service-connected benefits, and that the VA avoids retraumatizing this particularly vulnerable population through unjustifiable delays in the claims adjudication process.

*Amici* are non-partisan, nonprofit organizations that serve and advocate for millions of service members, veterans, and military families.

*Amici* understand the challenges faced by survivors of MST, including the obstacles they face in seeking benefits from the VA. *Amici* also have a powerful interest in protecting the wellbeing of service members and veterans, including MST survivors.

*Amicus* Minority Veterans of America ("MVA") is a nationwide nonprofit organization with a mission to create belonging and advance equity and justice for our nation's most marginalized and historically underserved veterans—the more than 10.2 million veterans who are women, people of color, LGBTQ+-identifying, or who are non-religious or religious minorities. MVA directly advises service members and veterans and advocates on their behalf before Congress, the Department of Defense ("DoD"), and the VA on issues that affect them. MVA believes that effectively supporting underserved minority service members and veterans begins by recognizing that social and structural inequities lie at the heart of the problem. MVA's advocacy efforts focus on systemic policy changes that will improve the lives of vulnerable service members and veteran populations. MVA therefore has joined or submitted *amicus* briefs to the Supreme Court and other federal courts in cases that directly affect minority service members and veterans.

*Amicus* Swords to Plowshares is a community-based not-for-profit organization in San Francisco providing needs assessment and case management, employment and training, housing, and legal assistance to veterans—particularly veterans who are low-income, experiencing housing insecurity, and living with mental health conditions. Swords to Plowshares promotes and protects the rights of veterans through advocacy, public education, and partnership with local, state, and national entities, as well as direct representation of veterans before the VA and other government agencies. In its legal work, Swords to Plowshares assists hundreds of veterans each year, including MST survivors, at every level of the VA adjudicatory system to obtain both monetary disability benefits and access to healthcare. In its housing work, Swords to Plowshares helps veterans find emergency and temporary shelter and transitional housing, provides permanent supportive housing to 400 veterans, and offers rent support and eviction prevention services.

*Amicus* Modern Military Association of America ("Modern Military") is the nation's largest nonprofit organization dedicated to advancing equality and justice for LGBTQ+ service members, veterans,

and their families.  Modern Military was formed through the merger of two leading organizations—OutServe–SLDN and the American Military Partner Association—each of which played a central role in dismantling discriminatory military policies and advancing equal treatment under the law.

For decades, OutServe–SLDN served as the principal legal and policy advocate for LGBTQ+ service members, who experience MST at disproportionate rates, including through direct representation, impact litigation, and sustained advocacy that, for example, contributed to the repeal of the "Don't Ask, Don't Tell" policy.  OutServe–SLDN advised service members facing investigation or discharge, documented the harms of discriminatory policies, and regularly engaged with Congress, the DoD, and the courts to ensure constitutional and statutory protections were applied to those in uniform.  That legacy of legal expertise and court engagement continues through Modern Military.

Today, Modern Military provides policy analysis, legal referrals, and advocacy on issues including military service eligibility, discharge characterization and upgrades, access to veterans' benefits and healthcare, MST survivor benefits, and equal protection for LGBTQ+

service members, veterans, and their families. Modern Military works closely with impacted individuals, legal practitioners, and government stakeholders, giving the organization deep insight into how discriminatory policies and unlawful interpretations of military and veterans' law affect real-world outcomes for those who serve.

## SUMMARY OF ARGUMENT

MST remains a pervasive and deeply troubling issue within the United States Armed Forces, affecting thousands of service members and veterans each year. Despite increased awareness and ongoing efforts to address MST, recent data reveals that the problem persists at alarming rates, with approximately one-third of women veterans reporting MST and survivors facing significant barriers to justice and care.

*Amici* seek to highlight the significant and unique challenges the VA claims adjudication process poses for MST survivors. The current process is marked by unconscionable delays, insurmountable evidentiary hurdles, and retraumatization. These challenges compound the physical, psychological, and financial harm suffered by MST survivors.

As documented in recent VA and Congressional reports, veterans seeking benefits for MST-related conditions endure lengthy wait times

for VA benefits that can stretch to six years or more. MST survivors face unique evidentiary challenges in establishing their entitlement to benefits based on the underreporting of claims due to shame, embarrassment, and fear of retaliation. The lack of reporting often results in difficulty in providing sufficient evidence that a sexual assault or harassment occurred, thereby making it less likely to establish a claim after years of waiting for VA to adjudicate their claims. These survivors of MST thus doubly suffer, first from a host of long-term physical and psychological conditions caused by their military sexual assaults or harassment, then from the lengthy delays in the adjudication of their claims that exacerbate those conditions.

*Amici* present this information to inform the Court about the devastating real-world consequences associated with the unjustifiable delays in VA's adjudication of benefits claims brought by MST survivors. The stakes couldn't be higher. Timely and compassionate adjudication is not only a matter of justice, but also essential to the health, well-being, and successful reintegration of those who have sacrificed to serve our nation. Our veterans deserve no less.

# I.   ARGUMENT

## A.   Nearly a Third of Women Veterans Have Experienced MST and Associated Mental Health Conditions.

### 1.   MST remains persistent.

Data and studies demonstrate that despite efforts to combat MST, it remains persistent in the armed forces.[1]  The VA's reporting data shows that currently about a third of women veterans report having experienced MST.[2]  MST is defined as "with respect to a veteran, a physical assault of a sexual nature, battery of a sexual nature, or sexual harassment during active military, naval, air, or space service."[3] Beginning in 2004, the DoD recognized the lack of reporting mechanisms for MST and created the Sexual Assault Prevention and Response Office ("SAPRO"), which assists service members with reporting cases of sexual assault.[4]  The DoD issues an annual report on sexual assault in the

---

[1] Galovski, Tara E., et al., *State of the Knowledge of VA Military Sexual Trauma Research*, J. Gen. Intern. Med. 37 (Suppl. 3) at S825 (2022), https://pmc.ncbi.nlm.nih.gov/articles/PMC9481813/pdf/11606_2022_Article_7580.pdf.

[2] Veterans' Health Administration, *Military Sexual Trauma Fact Sheet* (March 2025) https://www.mentalhealth.va.gov/docs/mst_general_factsheet.pdf.

[3] 38 U.S.C § 1166(d)(2).

[4] U.S. Dep't of Veterans Affairs, *Military Sexual Trauma Research* (Sept. 9, 2016),

military, based on the reports SAPRO receives.[5]  But the DoD reports undercount the actual prevalence of MST because those reports do not account for incidents of MST that go unreported.[6]

DoD also conducts a biennial congressionally mandated survey to estimate the prevalence of MST.[7]  The survey is confidential for active-duty service members or those in the Reserves, although their participation is not required nor are the participants required to answer

https://www.patientsafety.va.gov/features/Research_yields_insight_on_s exual_misconduct.asp.

[5] U.S. Dep't of Def., *Annual Report on Sexual Assault in the Military: Fiscal Year 2024* (Apr. 30, 2025), https://www.sapr.mil/Portals/156/FY24_Annual_Report.pdf.

[6] Galovski, at S825.  According to the DoD, "almost 87 percent of assaults [in the military] go unreported, meaning that official documentation of an assault rarely exists." *See Invisible Wounds: Examining the Disability Compensation Benefits Process for Victims of Military Sexual Trauma: Hearing Before the H. Subcomm. On Disability Assistance and Mem'l Affairs of the H. Comm. On Veterans' Affairs*, 112 Cong. 30, at 5 (2013) (Statement of Anu Bhagwati), https://www.govinfo.gov/content/pkg/CHRG-112hhrg75614/pdf/CHRG-112hhrg75614.pdf.

[7] Office of People Analytics, Dep't of Def., *Workplace Experience Survey of Military Members*, https://www.opa.mil/research-analysis/opa-surveys/workplace-experiences-survey-of-military-members, (last accessed Dec. 22, 2025).

every question.[8]  While MST is reported by DoD, it is difficult to measure how prevalent it is due to the lack of reporting.

### 2. Statistics show a steady increase in the reporting of MST cases.

In the DoD's most recent annual report on reported sexual assaults involving armed forces members, 8,195 reports were received, with only a 4% decrease in reporting from 2023.[9]  The report notes that the reason for a slight decrease in the reporting rate cannot be fully interpreted because the DoD did not conduct its biennial prevalence report in 2024.[10] Despite this 4% decrease in fiscal year 2024 from fiscal year 2023, overall, between 2012 and 2023, reports of MST increased by 142.9%.[11]

### 3. Members of Congress have recognized that MST is both serious and pervasive.

MST remains a serious ongoing issue that Congress has sought to address.  In 2022, Congress passed the Dignity for MST Survivors Act to

---

[8] *Id.*

[9] U.S. Dep't of Def., *Annual Report on Sexual Assault in the Military*: *Fiscal Year 2024* (Apr. 30, 2025).

[10] *Id.*

[11] U.S. Dep't of Def., *Annual Report on Sexual Assault in the Military: Fiscal Year 2012* (May 3, 2013); *see also* U.S. Dep't of Def., *Annual Report on Sexual Assault in the Military: Fiscal Year 2024* (Apr. 30, 2025).

provide support to veterans who experienced sexual trauma in the military service as they navigate the VA claims appeal process.[12]  The Dignity for MST Survivors Act requires each member of the VA to receive annual training on MST.[13]  The VA must audit language it uses in letters it sends to veterans denying claims to ensure the language is trauma informed to prevent retraumatization.[14]

Senator Kirsten Gillibrand has publicly discussed MST and has described it as an "epidemic" in the military.[15]  As Senator Gillibrand explained, the problem with MST "is getting much worse" because there are "20,000 estimated sexual assaults [in the military] each year, but the percentage of cases that are going to trial is going down, and the percentage of cases ending in conviction is also going down."[16]  The prevalence of sexual assault in the military primarily stems from the

---

[12] Training on Military Sexual Trauma, Pub. L. No. 117-300, 136 Stat. 4379 (2022).

[13] *Id.*

[14] *Id.*

[15] PBS News Hour, *Sen. Gillibrand: sexual assault in the military an 'epidemic' that's getting worse* (May 24, 2021), https://www.pbs.org/newshour/show/sen-gillibrand-sexual-assault-in-military-an-epidemic-thats-getting-worse.

[16] *Id.*

DoD's failure to prosecute perpetrators of MST, and "predators feel that they have more and more leeway to continue to commit these crimes."[17]

Recent action by members of Congress highlights the pervasiveness of MST. As recently as September 2025, Congresswoman Julia Brownley and Congresswoman Chrissy Houlahan announced the reintroduction of a bipartisan resolution to recognize September 25th as Military Sexual Trauma Awareness Day as a way to spread awareness of MST.[18]

## B. The "Long" and "Frustrating" VA Claims Adjudication Process.

MST survivors face significant challenges in obtaining VA benefits. The VA benefits claims process under the Veterans Appeals Improvement and Modernization Act of 2017 ("AMA") can be distilled as follows. *First*, a veteran submits a claim for benefits with the Regional Office of the Veterans Benefits Administration ("VBA").[19] *Second*, the

---

[17] *Id.*

[18] Press Release, Congresswoman Julia Brownley, Brownley, Houlahan Introduce Bipartisan Resolution to Mark Military Sexual Trauma Awareness Day (Sept. 25, 2025), https://juliabrownley.house.gov/brownley-houlahan-introduce-bipartisan-resolution-to-mark-military-sexual-trauma-awareness-day/.

[19] Lindsey Gailmard, Daniel E. Ho, & Mark S. Krass, *Congressional Intervention in Agency Adjudication: The Case of Veterans' Appeals*, 134 Yale L.J. 2461, 2502 (2025).

Regional Office processes and reviews the claim, and ultimately decides whether to grant or deny benefits.[20]  The VA's website states that, in November 2025, it took on average 81.1 days for the VA to complete this process.[21]  But non-governmental reports suggest that throughout 2025, "[m]ost VA disability claims ... [fell] in a range of about four to six months from filing to decision."[22]  *Third*, a veteran who disagrees with the Regional Office's decision may take one of several appellate paths, including: (i) filing a Supplemental Claim with new and relevant evidence that the Regional Office did not have during its initial review; (ii) requesting a "Higher-Level Review"—*i.e.*, a new review of the claim by a senior reviewer; or, as relevant here, (iii) filing a notice of

---

[20] *Id.*

[21] *See* U.S. Dep't of Veterans Affairs, *The VA claim process after you file your claim* (last updated Dec. 2, 2025), https://www.va.gov/disability/after-you-file-claim/.

[22] *See, e.g.*, Warrior Allegiance, *Why Is My VA Claim Taking So Long? Understanding Delays in 2025* (2025), https://warriorallegiance.com/why-is-my-va-claim-taking-so-long-understanding-delays-in-2025; *see also* Statement of Renee Burbank, National Veterans Legal Services Program, Before the House Committee on Veterans' Affairs, Subcommittee on Disability Assistance and Memorial Affairs at 11 n.26 (Apr. 10, 2024), https://nvlsp.org/wp-content/uploads/04.10.2024_Burbank_Testimony.pdf (noting that in April 2024, "the average time a veteran will wait for their initial claim to be processed [was] 158.4 days").

disagreement and starting an appeal with the Board of Veterans Affairs ("BVA") for review by a Veterans Law Judge ("VLJ").[23]

The BVA appeal process is notoriously slow. It has left veterans around the country waiting years for final adjudication of their claims:

> [i]n fiscal year 1991—the first year for which data are available—a veteran waited just under one year (345 days), on average, between submitting their appeal papers and receiving a decision from BVA. **By fiscal year 2023, the average wait time at BVA had grown to more than two years (735 days) for legacy appeals**. In recent years, remand rates from BVA to VBA have ranged from 38.8% to 46.04%, meaning that even a BVA decision does not end a case—the veteran must wait for the [Regional Office] to reconsider its decision and may have to appeal again.[24, 25]

Appeals to the BVA under the AMA in fiscal year 2024, on the other hand, "peaked at about 640 days in March 2024," before slightly decreasing to

---

[23] *See* U.S. Dep't of Veterans Affairs, *VA decision reviews and appeals* (last updated Sept. 30, 2025), https://www.va.gov/decision-reviews/.

[24] *See supra* note 19, at 2506-07 (emphasis added).

[25] A "legacy appeal" is an appeal of a VA claim decision filed before February 19, 2019. *See* U.S. Dep't of Veterans Affairs, *Manage a legacy VA appeal* (last updated Apr. 30, 2025), https://www.va.gov/decision-reviews/legacy-appeals/#:~:text=a%20decision%20review-,For%20decisions%20dated%20before%20February%2019%2C%202019, you%20to%20get%20a%20decision. Benefits claims brought after this date fall under the AMA's appeals process discussed above.

551 days by year end.[26]  Making matters worse, the ***entire*** adjudication process, takes even longer.  According to the VA, in fiscal year 2024, the average time between the filing of an appeal (*i.e.*, filing a notice of disagreement) and the BVA's final disposition of the appeal—including all requisite notices, filings, docketing, and any remands—was approximately (i) ***2,180 days, or 6 years,*** for legacy appeals, and (ii) ***937 days to 1,091 days, or just under 3 years,*** for AMA appeals, depending on whether the veteran chose to submit evidence or participate in a hearing:[27]

| Legacy Appeals Time Interval | Responsible Party | Average Elapsed Processing Time | |
|---|---|---|---|
| Notice of Disagreement Receipt to Statement of the Case* | VBA** | 619 days | AOJ |
| Statement of the Case Issuance to Substantive Appeal (VA Form 9) Receipt* | Appellant | 51 days | |
| Substantive Appeal (VA Form 9) Receipt to Certification of Appeal* | VBA** | 152 days | |
| **From Board Receipt of Certified Appeal to Board Docketing of Appeal*** | **Board** | **143 days** | Board |
| **Docketing of Certified Appeal to Issuance of Board Decision** | **Board** | **476 days** | |
| Average Remand Time Factor | VBA** | 336 days | AOJ |

\* These figures include original appeals only.
\*\* The clear majority of appeals considered by the Board involve claims for disability compensation, and VBA is the responsible party when these appeals are located at the AOJ. However, appeals may also originate with VHA, NCA or OGC.

---

[26] U.S. Dep't of Veterans Affairs, Board of Veterans' Appeals, *Annual Report Fiscal Year (FY) 2024*, at 14, https://department.va.gov/board-of-veterans-appeals/wp-content/uploads/sites/19/2025/04/2024_bva2024ar.pdf.

[27] *Id.* at 39-40.

| | Direct Review | Evidence | Hearing | Responsible Party |
|---|---|---|---|---|
| **Average Days to Complete AMA Decision from Notice of Disagreement** | 937 | 1,028 | 1,091 | Board |

Again, however, non-governmental reports suggest that this number is actually higher. As Professor Michael Wishnie of Yale Law School testified to Congress, "[a] Freedom of Information Act disclosure revealed data indicating that the average appeal before BVA has been waiting for an average of ***43 months—1308 days***."[28] Other governmental officials and experts cite similar figures.[29]

---

[28] *Hearing Before the H. Subcomm. On Disability Assistance and Mem'l Affairs of the H. Comm. On Veterans' Affairs*, 119 Cong. 28, at 48 n.26 (2025) (Statement of Michael Wishnie) (emphasis added; internal quotations and citation omitted), https://www.congress.gov/119/meeting/house/118409/documents/HHRG-119-VR09-Transcript-20250624.pdf.

[29] *See, e.g.*, *id.* at 4 (Opening Statement of Mike Bost, Chairman) ("Even with the massive investment Congress has made in the Board, some veterans still are waiting up to 5 years for the Board to decide their claim. The Board still has 200,000 appeals pending and receives over 65,000 appeals a year. Currently, the Board is only able to address roughly 120,000 appeals each year. At this rate, there is no way the Board can eliminate its backlog."); *id.* at 171 (Statement of Professor Adam Zimmerman) ("[T]he VA is *backlogged*. Up until a few years ago, the average benefit claim could take between five to seven years to be resolved. Congress has tried to modernize and streamline appeals. But delays at the VA haven't gone away. The current VA process can leave veterans waiting more than three years to fully resolve their claims.").

The BVA acknowledges this extraordinary delay, stating on its website: "The Board understands that many Veterans and appellants have been waiting a long time for a decision. We acknowledge that this wait can be very frustrating[.]"[30] Despite this acknowledgment, the amount of delay has actually increased in recent years. The BVA's Annual Report for fiscal year 2024 notes that the nearly six-year average length for legacy appeals amounts to "*an increase* of 98 days from FY 2023."[31]

According to the National Veterans Legal Services Program, an "unacceptably high" backlog at the BVA, coupled with an insufficient and limited number of precedential opinions from the Court of Appeals for Veterans Claims, prevents "consistency in judicial and agency decision-making and wait times," and "leav[es] thousands of veterans underserved and disillusioned."[32] As described by Professor Wishnie, "veterans and their families ... are stuck in the hamster wheel of appeals" and

---

[30] *See* U.S. Dep't of Veterans Affairs, Board of Veterans' Appeals, *Decision wait times*, https://department.va.gov/board-of-veterans-appeals/decision-wait-times/.

[31] *See supra* note 26, at 39 (emphasis added).

[32] Statement of Renee Burbank (Apr. 10, 2024), https://nvlsp.org/wp-content/uploads/04.10.2024_Burbank_Testimony.pdf.

[w]hile awaiting a decision, disabilities persist, and hardships can intensify. Some veterans do not survive these trials of bureaucracy. Presently, veterans can expect to wait nearly 4 years for the BVA to decide their appeal. When the veteran finally reaches the CAVC, their claim may have already been subjected to numerous remands. This cyclical process is a devastating reality for veterans.[33]

Further exacerbating this significant issue, this backlog has only grown in recent years, as reflected in the chart below prepared by the VA.[34]



Credit: Department of Veterans Affairs
**Pending appeals by fiscal year**

---

[33] *See supra* note 28 at 48.

[34] Nate Morabito, *VA appeals process leaves veterans waiting years for disability payment decisions*, WCNC (Jan. 31, 2023), https://www.wcnc.com/article/money/va-appeals-process-veterans-disability-payment-decisions/275-180b9b49-a1e2-4404-ac8f-4daf0f2d43e7.

**C.** **The Delay in Processing Claims Involving MST Exacerbates Symptoms and Delays Access to Necessary Medical Care.**

    **1.** **Survivors of MST suffer long-lasting health outcomes, and the filing of claims can retraumatize them.**

Survivors of MST experience a range of long-lasting physical and psychological health conditions. MST is the "leading cause of" PTSD among women veterans and "increases the likelihood of other serious and devastating conditions and consequences such as substance abuse, homelessness, and suicide."[35] Survivors of MST experience feelings of interpersonal betrayal and victim blaming, institutional betrayal, PTSD, major depression, anxiety, eating disorders, substance use disorders, and increased suicidality.[36] Physical symptoms include chronic disease and impaired reproductive health and sexual functioning, along with

---

[35] *Invisible Wounds*, at 22 (Statement of Barbara Van Dahlen).

[36] Galovski at S825. In recognition of these serious conditions, Congress has determined that "post-traumatic stress disorder, anxiety, depression, or other mental health diagnosis described in the current version of the Diagnostic and Statistical Manual of Mental Disorders published by the American Psychiatric Association that the Secretary determines to be related to military sexual trauma" are "covered mental health condition[s]" for purposes of claims for VA compensation. *See* 38 U.S.C. § 1166(d)(1).

increased risks of hypertension, diabetes mellitus, obesity, cardiovascular issues, and chronic pain.[37]

Moreover, the act of filing a claim for PTSD due to MST "often causes extreme stress" on the veteran who has to "repeat the events of the assault in support of their claim."[38] Veterans also fear reprisal for speaking openly about MST, which leads to distrust of comrades and command, creating a dangerous risk in the military.[39] The filing of a claim for benefits thereby can heighten MST survivors' physical and psychological symptoms.

### 2. Veterans who suffer MST face substantial obstacles in proving their claims.

Procedural roadblocks render it more challenging for veterans to establish a claim for benefits due to MST. To obtain disability compensation benefits, survivors of MST must establish a service-connected physical or mental health condition. Because the vast majority of military sexual assaults go unreported, official documentation of the

---

[37] Galovski at S825, S827.

[38] *Invisible Wounds*, at 8 (Statement of Lori Perkio).

[39] Galovski, at S826.

assaults rarely exists.[40]   Many victims do not report the incidents to anyone, including family members, for reasons such as "shame, stigma, embarrassment, or fear of retaliation."[41]   In addition, many "MST survivors may be reluctant to disclose their trauma history to healthcare providers, either due to expectations of or prior experiences with negative, invalidating and blaming reactions to disclosure or, perhaps, due to fear of posttraumatic stress responses that describing traumatic events can elicit."[42]  Of the "few who did report the incidence of military sexual trauma, over 75 percent stated that they would not have made the same decision about reporting the incident again due to the consequences it had on their military career."[43]

Because many survivors do not report the incident to authorities for personal reasons and fear of retaliation, they later struggle to provide evidence that the sexual assault and harassment occurred.[44]

---

[40] *Invisible Wounds,* at 5 (Statement of Anu Bhagwati).

[41] *Id.* at 5-6.

[42] Galovski, at S827-28.

[43] *Invisible Wounds*, at 1 (Statement of Chairman Jon Runyan).

[44] Nikki Levy, *Easing the Burden: Military Sexual Trauma, Retaliation, and Veterans Benefits*, 27 Fed. Cir. B.J., at 379 (2017-2018).

Consequently, "veterans who are diagnosed with PTSD as a result of MST must meet a higher evidentiary burden than veterans whose PTSD is unrelated to MST to prove that their stressor is service-connected."[45]

### 3. Veterans who seek VA benefits for MST-related conditions are less likely to succeed than veterans seeking typical PTSD benefits.

MST survivors who seek PTSD-related VA benefits often face worse outcomes than other veterans seeking PTSD-related benefits. Data obtained by the Service Women's Action Network and the American Civil Liberties Union revealed that "between fiscal year 2008 and 2010, only 32.3 percent of MST-based PTSD claims were approved by VA compared to an approval rate of 54.2 percent for all other PTSD claims during this time … [and] women were more likely to receive a 10 to 30 percent disability rating whereas men were more likely to receive a 70 to 100 percent disability rating."[46] Given the difficulty of providing evidence, the VA's PTSD "policy discriminates in practice against veterans who are sexually assaulted or harassed while in uniform" and sets an evidentiary

---

[45] *Id.*

[46] *Invisible Wounds*, at 5 (Statement of Anu Bhagwati).

standard that is "completely unrealistic for the majority of survivors to meet."[47]

In addition, female MST survivors struggled to have the VA recognize MST as connected to their service. One veteran reported that the VA representative ignored the MST in her file and told her she could only receive treatment for anxiety.[48] In a 2018 report, the VA Office of Inspector General ("OIG") "found that nearly half of denied claims related to MST were improperly processed, potentially leading to 'inaccurate claims decisions and psychological harm to MST victims.'"[49]

The VA Office of Inspector General ("OIG") also recently found that "34 percent of veterans who reported sexual assault to SAPRO had not received a service-connected disability rating as of September 30, 2021."[50] OIG recommended that the VA remove potential barriers that "delay

---

[47] *Id.*

[48] *Women Warriors Initiative Report,* Wounded Warrior Project, at 44 (2021), https://www.woundedwarriorproject.org/media/tt0ftq4a/wwp-women-warriors-initiative-report-2021.pdf.

[49] *Id.*

[50] U.S. Dep't of Veterans Affairs, Office of Inspector General, *Transition to VA Health Care and Utilization of Benefits for Veterans Who Reported Sexual Assault During Military Service*, 22-01275-99, at iv (Mar. 14, 2024), https://www.vaoig.gov/sites/default/files/reports/2024-03/vaoig-22-01275-99.pdf.

claims processing or discourage the application for service-connected disability" for MST survivors.[51]

### 4. Delays in processing MST claims worsen and compound symptoms.

When mental health problems are not "readily addressed, they can easily compound and become chronic."[52]  Over time, personal, family, emotional, medical, and financial damages increase, and "[d]elays … can result in self-destructive acts, including suicide."[53]  Without benefits, some veterans lack access to care to treat these conditions.  Veterans with PTSD have an increased risk of developing substance-related problems,[54]

---

[51] *Id.*

[52] *Charting the U.S. Department of Veterans Affairs' Progress on Meeting the Mental Health Needs of our Veterans: Discussion of Funding, Mental Health Strategic Plan, and the Uniform Mental Health Services Handbook*, Hearing Before the Subcommittee on the Health of the Committee on Veterans' Affairs, U.S. House of Rep., Serial No. 111-17, at 26 (Apr. 30, 2009) (Statement of Adrian Atizado), https://www.govinfo.gov/content/pkg/CHRG-111hhrg49915/pdf/CHRG-111hhrg49915.pdf.

[53] *Id.*

[54] Jenni B. Teeters, et al*., Substance use disorders in military veterans: prevalence and treatment challenges*, Substance Abuse and Rehabilitation, at 73 (Aug. 30, 2017), https://pmc.ncbi.nlm.nih.gov/articles/PMC5587184/pdf/sar-8-069.pdf.

as they have turned to drugs or alcohol in an attempt to self-medicate,[55] which worsens their health and creates a more urgent need for care. On the other hand, veterans who receive PTSD benefits are more likely to continue using mental healthcare, highlighting the importance of timely awarding benefits.[56]

Further, the VA's failure to provide timely benefits "can hinder veterans as they readjust to their civilian lives."[57] When asked to name the top challenges they faced in the transition to civilian life, 25% of women veterans listed "coping with mental health issues related to MST."[58] For veterans in the transition back to civilian life, a timely decision on "disability compensation benefits can potentially lessen the

---

[55] *See* U.S. Dep't of Veterans Affairs, *Substance Use and PTSD*, (last accessed Dec. 22, 2025) https://www.ptsd.va.gov/understand/related/substance_misuse.asp.

[56] Aliya Webermann, et al*., Military sexual trauma-related posttraumatic stress disorder service-connection: characteristics of claimants and award denial across gender, race, and compared to combat trauma*, PLoS One, Vol. 19, Iss. 1 (Jan. 11, 2024), https://www.proquest.com/ptsdpubs/docview/2942118458/9B91C856508 24587PQ/3?accountid=28179&sourcetype=Scholarly%20Journals.

[57] U.S. Government Accountability Office, *Veterans Affairs: Better Understanding Needed to Enhance Services to Veterans Readjusting to Civilian Life*, GAO-14-676, at 21 (Sept. 2014), https://www.gao.gov/assets/gao-14-676.pdf.

[58] *Women Warriors Initiative Report,* at 4.

accompanying financial transition difficulties" and "improve their chances of having positive health, economic, and social outcomes."[59] For example, for veterans in the Army Reserve, "[w]ithout an expedited process to provide more timely decisions, sexual assault victims ... may continue to pay for their care up front, or else face delayed access to care."[60]

This increases the financial burden on veterans and potentially delays access to resources. Where the government does not pay medical costs up front, survivors must "pay out of pocket, use their civilian health insurance if they have any, or let the bills go into collection" while they wait.[61] This adds to the financial costs and stress of seeking treatment, likely exacerbating symptoms.

Meanwhile, the process of accessing the benefits further harms veterans psychologically. "Within the [VBA], disabled veterans are being retraumatized by an overburdened and dysfunctional benefits system

[59] GAO-14-676, at 23, 31.

[60] U.S. Government Accountability Office, *Sexual Assault: Better Resource Management Needed to Improve Prevention and Response in the Army National Guard and Army Reserve*, GAO-17-217, at 1 (Feb. 2017), https://www.gao.gov/assets/690/683537.pdf.

[61] *Id.* at 38.

that Congress intended to be 'veteran-friendly,' but in fact prevents veterans from obtaining the benefits they earned in service."[62] For example, a necessary part of an MST claim is providing VA with a written statement about the incident of MST that causes the veteran's mental health condition today.[63] This requires revisiting traumatic details and recounting harrowing facts that can exacerbate mental health symptoms. To corroborate their claims, veterans may need to reach out to those who can attest to their knowledge of the MST incident or changes in the veteran's behavior.[64] And, the veteran may need to delve into their military file for evidence of markers to help prove to the VA that the MST incident occurred.[65] All of this evidence-development necessary to prevail on a claim can be incredibly painful for the veteran. Denials of claims can "retrigger the sense of betrayal they felt after the initial trauma."[66]

---

[62] Hugh B. McClean, *Delay, Deny, Wait Till They Die*, 72 SMU L. Rev. at 280 (2019).

[63] U.S. Dep't of Veterans Affairs, *How to file a claim related to MST,* https://www.va.gov/resources/military-sexual-trauma-and-disability-compensation/ (last accessed Dec. 22, 2025).

[64] *Id.*

[65] *Id.*

[66] *Women Warriors Initiative Report*, at 8.

As a result, the current delays both deny access to benefits in the interim and retraumatize veterans seeking such help.

## CONCLUSION

For the reasons stated above, *amici* respectfully request the Court reverse the decision of the Court of Appeals of Veterans' Claims and direct it to grant Appellant Karissa Wiggins' Petition for Extraordinary Relief and order the Secretary to adjudicate her 2021 appeal.


Dated: December 23, 2025    By: */s/ John J. Hamill*

John J. Hamill
*Counsel of Record*
**DLA Piper LLP (US)**
444 West Lake Street, Suite 900
Chicago, IL 60606-0089
Tel: (312) 368-7036

*Attorney for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

1.    This Brief complies with the type-volume limitation of Rule 27(d)(2) of the Federal Circuit Rules because it contains 4,782 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), as determined by the word counting feature of Microsoft Word.

2.    This Brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because the Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: December 23, 2025

/s/ *John J. Hamill*
John J. Hamill

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ John J. Hamill*
John J. Hamill